IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **Teja Ravi, Individually and on Behalf of All Others Similarly Situated** : | |
| : | No. 20-1237C |
| **Plaintiff,** : | Judge Firestone |
| : | |
| v. : | |
| : | |
| **The United States of America** : | |
| : | |
| **Defendant.** : | |

**Plaintiff's Opposition to Defendant's Motion to Dismiss**

Plaintiff Teja Ravi ("Plaintiff"), by and through his attorneys, hereby opposes the Motion to Dismiss filed by the United States and states as follows:

I . **The United States is a correct and necessary party to this suit and this Court has jurisdiction to hear the claims.**

To survive a Rule 12(b)(1) challenge to jurisdiction, the Federal Circuit has held unambiguously that "jurisdiction . . . requires no more than a non-frivolous allegation of a contract with the government." *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1353 (Fed. Cir. 2011) (citing, e.g., Lewis v. United States, 70 F.3d 597, 602, 604 (Fed. Cir. 1995)); see also *Hanlin v. United States*, 214 F.3d 1319, 1321 (Fed. Cir. 2000) (explaining that a non-frivolous allegation of the existence of an implied-in-fact contract is sufficient to confer jurisdiction unless another statute divests the court of jurisdiction). When ruling on a motion to dismiss for lack of jurisdiction, the court must "accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Id.* (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)).

Jurisdiction is established here as Mr. Ravi has alleged a non-frivolous allegation of contract with the government. A contractual relationship was formed between Mr. Ravi and the personnel from ICE, as there was offer, acceptance, and consideration. Additionally, the personnel had the authority to contract with the students as they were given the orders to make offers to students from their agency. (*See* Amended Complaint). These students had no idea that the United States government was involved in creating a fake university, and they were assured that this was a real university as ICE obtained real accreditation. When the offers were made to the students, University of Farmington's advertising portrayed it to be a real University, which would provide educational services and degrees. The United States breached their agreement when they did not provide the services as offered.

**II. In addition, the complaint should survive the motion to dismiss under RCFC 12(b)(6).**

Under RCFC 12(b)(6), a complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The factual matters alleged "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56 (citations omitted). When reviewing the complaint, "the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (citing *Papasan v. Allain*, 478 U.S. 265, 283 (1986)) (additional citation omitted). Conclusory statements of law and fact, however, "are not entitled to the assumption of truth" and "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. "'[N]aked assertion[s]' devoid of 'further factual enhancement'" are insufficient to state a claim. Id. at 678 (quoting *Twombly*, 550 U.S. at 557); accord *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

The government cites caselaw from 1984 and 1990 to make its determination of what the government calls "the fourth element" for a breach of contract claim. Under *Cincinnati v. United States*, there is a fourth requirement, "the government representative whose conduct is relied upon must have actual authority to bind the government in contract."

According to more recent caselaw, a viable breach of contract claim requires "four elements: 1) a valid contract between the parties; 2) an obligation or duty arising from that contract; 3) a breach of that duty; and 4) damages caused by that breach." *Claude Mayo Constr. Co., v. United States*, 132 Fed. Cl. 634, 637 (2017) (citing *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989)). Mr. Ravi has plead all of those elements. *See* complaint.

While not an element of contract, Mr. Ravi concedes that there is an authority requirement for which the government references. Mr. Ravi has amended his complaint to include allegations that the government officials who were operating the University of Farmington had the actual authority to operate the University of Farmington; including that the government had the actual authority to contract with the students. Mr. Ravi specifically alleges, "The law enforcement personnel from U.S. Immigration and Customs Enforcement, Homeland Security Investigations whose conduct bound the Defendant in contract with the Plaintiff and the Class members had actual authority to bind the government in contract, because forming these contracts was necessary and essential to the successful performance of the agents' assigned tasks and duties regarding carrying out the Farmington scheme." *See* Amended Complaint, page 10.

Discovery will allow the plaintiffs to further identify the United States personnel involved. A government's representative must have had actual authority to bind the students in contract, as the personnel were given the authority to proceed with the sting operation and take the student money. By accepting the benefits of the tuition money, ICE was bound by the promise to provide

education services to plaintiff. Mr. Ravi should be made whole, as he did not receive the services promised by the contract, and instead he was swindled out of $12,000. The government specifically demonstrated its intent to provide a service in consideration for the $12,000.

*Zhu* differs from this case as the plaintiff in that case did not allege offer and acceptance and he did not allege that a government's representative had actual authority to bind the government in contract. This case alleges offer, acceptance, and actual authority by the government officials. *See* Amended Complaint.

We know that the agents were given the authority to carry out this plot, when the government revealed its involvement. As in this case, when a Defendant has not provided sufficient facts to render Plaintiff's theory of authority implausible, the Court has ordered discovery. *See Mendez v. United States*, 121 Fed. Cl. 370, 386 (2015).

### III. This involves a Contract Dispute and the Gravamen is Actually in Contract, Not in Tort

The court has found that a plaintiff's claim "is not barred simply because it can be stated as a tort." *Dakota Tribal Indus. v. U.S.*, 34 Fed. Cl. 295 (1995). It is s a contract as long as a "contractual obligation" is breached, even if it's also a tort. *See also Morris v. U.S.*, 33 Fed. Cl. 733. The plausible existence of a tort does not, as the defendant claims, wipe out all contract law and the potential for a cause of action under contract law.

The agents made clear their intent to provide educational services. The written and verbal statements manifested an intent to form a binding agreement. The allegations regarding authority have crossed the line from convincible to plausible. *See* Exhibit 1 and 2, Invoices and Website. There was a clear intent to contract; this is seen in the Farmington's offer, the student's acceptance, and acceptance of the consideration of the tuition money.

A breach of contract claim is not barred by torts that the government committed, regarding which the victims have no real means of redress. Misrepresentation is not recoverable under the Federal Torts Claim Act. The government's negligence, in creating the contracts with the students and taking their money, may or may not be recoverable under negligence theory under the Federal Torts Claims Act. The breach of contract claims are the most viable claims, and this court is the appropriate place to litigate those claims. Thus, Mr. Ravi's prayer for relief from the government's actions should be heard, and this honorable court should deny the government's motion to dismiss.

### IV. The Sovereign Capacity Doctrine does not Bar Mr. Ravi's Lawsuit because the government stepped off of its throne to engage in the sale of educational services.

The government stepped off its throne to engage in the sale of educational services. Even if they did not provide the services promised, the government should not be rewarded for the misrepresentations that it made in the act of offering and selling the educational services.

When the government created a website and marketed educational services, it was undeniably acting in the private sphere. There was undeniably an express contract, or in the alternative – implied contract, for educational services. This contract was ratified by the tuition money that the government took from the students.

The government admits that ICE law enforcement officers engaged in these activities. The government does not contend that it was contractors, but the University of Farmington was "staffed" with "law enforcement personnel from U.S. Immigration and Customs Enforcement, Homeland Security Investigations". See *Motion to Dismiss*, 2. Defendant concedes that there were DHS HSI agents operating the University of Farmington.

There is no requirement for Plaintiff to identify any specific person with authority at this juncture. The specific people will be better identified during a period of discovery, as it appears that the ICE personnel used codenames to interact with the students. None of the cases that Defendant cites suggests that it is necessary to identify the specific agents pre-discovery, as their true identities will most likely only be revealed through discovery.

The motion to dismiss should be denied and discovery should be ordered, as the student contracts at issue were only tangentially related to carrying out a law enforcement purpose. HSI agents have previously said the law enforcement purpose was to "identify recruiters and entities engaged in immigration fraud". The student contracts were made to further that law enforcement purpose. The students, who bring the current action, were not suspected of criminal activity. The student contracts were made for a proprietary and not a sovereign purpose, just like how a contract for ICE to buy guns would be a proprietary contract even though it's connected to a law enforcement purpose. This Court should deny the government's motion to dismiss because the government stepped off its throne to engage in the sale of educational services. The government was not acting in a sovereign capacity when forming these contracts as the student contracts were only tangentially related to carrying out a law enforcement purpose.

This case is analogous to *Sommers Oil Co. v. United States*, 241 F.3d 1375 (Fed. Cir. 2001). *Sommers Oil Co.* concerned a government contract made as part of an undercover criminal investigation into tax fraud. The Court found that, despite the contract being part of a criminal investigation, the Court had jurisdiction under the Tucker Act to enforce the contract as long as doing so 1) would not disrupt an active criminal case and 2) would not requiring paying monetary damages for seized contraband. *Id.* at 1378–79 ("If, as Sommers alleges, it has a legal right to the funds as the product of a contractual undertaking by the government to turn those funds over to Sommers, the fact that the government had a temporary need to use the funds as evidence in a criminal case does not defeat Sommers' right to obtain the funds" unless it is contraband). Here, enforcing the contract would also not disrupt the outcome of a criminal case or concern contraband. The students contracted to pay for legitimate educational services. This is what differentiates both *Sommers Oil Co.* and the present matter from *Silva*, where the government contracted to trade the Plaintiff for *contraband.* (In *Silva*, the contraband was illegally imported parrots).

The sovereign capacity doctrine is meant to protect the "delicate and sensitive business of conducting criminal trials" and their civil enforcement analogues, and covers plea agreements, witness protection agreements, immunity agreements, civil enforcement agreements, and undercover law enforcement actions to recover contraband. *Aluminum Shapes, LLC v. United States*, 139 Fed. Cl. 709, 714 (2018). It is not meant to give law enforcement free reigning power to avoid enforcement of every contract they make. As *Sommers Oil Co.* shows, contracts that tangentially serve an undercover law enforcement purpose, but whose enforcement does not

4

directly disrupt a civil or criminal enforcement action, are made in the government's proprietary capacity.

An agreement entered into by the government falls within the sovereign realm, excluding Tucker Act jurisdiction, only where it is the sort that can only be executed by the sovereign such as plea, witness protection, informant and other forms of criminal agreements. 28 U.S.C.A. § 1491(a). *See Stovall v. United States*, 71 Fed. Cl. 696 (2006). Agreements entered into by the government which fall within the proprietary realm, and thus within Tucker Act jurisdiction, include not only the principal class of contract involving the procurement of goods, lands, and services, but any other agreement undertaken by the federal government that has a private analogue, that is, categorically of the sort that can be executed among private entities and individuals. 28 U.S.C.A. § 1491(a). *Id.* Educational services are categorically of the sort that can be executed among private entities and individuals. Thus, agreements for educational services fall within the proprietary realm. As agreements for educational services are in the proprietary realm versus the sovereign realm, these agreements in these cases fall within Tucker Act jurisdiction.

This case is analogous to the Trump University case in the sense that the students were promised educational services that were not received and swindled out of their money. *See Makaeff v. Trump University,* Case No. 10 CV 9040 IEG WVG, filed in Southern District of California. The personnel operating the University of Farmington stepped off their throne to engage in the sale of services similar to the Trump defendants, in the sense that they offered services and the students paid for services that were not received. Thus, as these contracts were only tangentially related to carrying out law enforcement purposes, the Motion to Dismiss should be denied.

## VI.    The government's acceptance of the benefit of the tuition money ratified Mr. Ravi's contract.

A government contract not initially made with actual authority to bind the government can later be ratified. Where there is not initially authority to "bind the United States in contract, the government can still be bound by contract if the contract was ratified by an official with the necessary authority*." Estes Express Lines v. United States*, No. 11-597C, 2017 U.S. Claims LEXIS 930, at *15-16 (Fed. Cl. Aug. 8, 2017) (*Janowsky v. United States*, 133 F.3d 888, 891-92 (Fed. Cir. 1998). "Institutional ratification occurs when the government "seeks and receives the benefits from an otherwise unauthorized contract." *Estes Express Lines v. United States*, No. 11-597C, 2017 U.S. Claims LEXIS 930, at *16 n.3 (Fed. Cl. Aug. 8, 2017) (internal citation omitted). Following *Janowsky*, the Federal Court of Claims has recognized that institutional ratification requires both the "government's acceptance of benefits" and that "an official with the power to ratify must also know of the unlawful promise". *Liberty Ammunition, Inc. v. United States*, 119 Fed. Cl. 368, 406 (2014). Ratifying officials can have "actual or constructive knowledge of the unauthorized acts." *Doe v. United States*, 58 Fed. Cl. 479, 486 (2003). The existence of written communications underlying the contract is considered to be good evidence of "knowledge", even if those written communications were not made with necessary authority. See *Id*. at 487. ("In many cases, one indicator of knowledge is the presence of some written communication between the parties.). In one case, a Court interpreted *Janowsky* to recognize

institutional ratification only where the factors also included "that the agents lacking contracting authority had some similar type of authority, that at least some agents were aware of a proposed agreement detailing the plaintiff's contractual remuneration, and that the Government received a direct benefit from the unauthorized contract." *Id*. at 486.

Here, the accepted benefit was the tuition money that the government kept, and has never returned. The department later carried out raids based on people's status as a student of Farmington (the false I-9s that ICE issued were apparently not valid, even though the students did not know this at the time), a status which was totally dependent on the student having previously made a contract with the ICE agents running Farmington. Thus, at that time, the government must have had actual or constructive knowledge of the contracts. Furthermore, underlying this contract was written communications between the students and the ICE agents, including registration documents, invoices, and receipts sent to the students or visible to them through the Farmington website. There was institutional ratification of the contracts.

For contracts, courts do not look to the internal desires of the parties; rather the courts look to express intent of the parties.

WHEREFORE, Plaintiff respectfully requests that this Court deny the government's motion to dismiss.

Respectfully submitted,

By: /s/*Amy E. Norris, Esq.,* (#1017140)
Amy@mwlc.org
(202) 530-0100
NORRIS LAW, PLLC
616 E Street N.W.
Suite 1156
Washington, DC 20004

Attorney for Teja Ravi