IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **Teja Ravi, Individually and on Behalf of All Others Similarly Situated** : <br> : <br> :        **No. 20-1237C** <br> **Plaintiff,**                       :        **Judge Firestone** <br> : <br> **v.**                                         : <br> : <br> **The United States of America**     : <br> : <br> **Defendant.**                  : | |

**Plaintiff's Opposition to Defendant's Motion for Protective Order**

      Plaintiff Teja Ravi ("Plaintiff"), by and through undersigned counsel, and hereby opposes the government's motion for entry of a protective order and states as follows:

**I.**     **We ask that the government's motion for entry of protective order be dismissed as it does not establish "good cause" for protection and does not overcome the strong presumption in favor of public access to court proceedings.**

      RCFC 26(c) grants this court the authority "[u]pon motion by a party ... from whom discovery is sought, accompanied by a certification that the movant ... for good cause shown ... [to] make an order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense ..." *Forest Products N.W., Inc. v. United States*, 62 Fed. Cl. 109, 114 (Fed. Cl. 2004) (quoting RCFC 26(c)).[1] RCFC 26(c) requires that "good cause" be shown for issuance of a protective order. *Lakeland Partners, L.L.C. v. United States*, 88 Fed. Cl. 124, 133 (Fed. Cl. 2009). The burden of demonstrating "good cause" rests with the party seeking the protection order. *See id.* In order to establish "good cause," a party must specifically demonstrate that "disclosure will cause a clearly defined and serious injury." *Id. (*quoting *Forest Products* 62 Fed. Cl. at 114.) If a court finds particularized harm will result from disclosure of information to the public, the court then balances the public and private interests to decide whether a protective order is necessary. *In re Violation of R. 28(D)*, 635 F.3d 1352, 1358 (Fed. Cir. 2011).

      However, for materials submitted to the court in all adjudicatory proceedings, including material submitted in support of motions for summary judgment, the more rigorous common law right to access applies. *See AmerGen Energy Co., LLC by and through Exelon Generation Co., LLC v. United States*, 115 Fed. Cl. 132, 138 (Fed. Cl. 2014). Unlike RCFC 26(c), the common law right of access starts with the strong presumption in favor of public access to court

---

[1] The RCFC generally mirror the Federal Rules of Civil Procedure (FRCP). *Ross-Hime Designs, Inc. v. United States*, 109 Fed. Cl. 725, 730 n.5 (Fed. Cl. 2013). Rule 26(c) of the RCFC is substantially identical to Rule 26(c) of the FRCP, hence, the court relies on cases both interpreting FRCP 26(c) as well as those interpreting RCFC 26(c). *Id.*

proceedings. *Id*. at 136–138. Hence, a showing of "good cause" is not sufficient. *See id. at 137*. The moving party must also demonstrate compelling reasons for keeping such information out of public view. *Id.*

### A. The government has not established "good cause" because it has not demonstrated that a disclosure will cause a clearly defined and serious injury.

The government has not established a clearly defined injury. Broad allegations of harm, unsubstantiated by specific examples will not suffice. *Lakeland,* 88 Fed. Cl. at 133. "Courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause." *Id.* (quoting 8 Wright, Miller & Marcus, supra, § 2035) (brackets omitted). In *AmerGen,* AmericanGen energy sought protection for materials that may reveal "internal considerations and assessments of its cost structure, business opportunities, and market situations." *AmerGen*, 115 Fed. Cl. at 142. This court dismissed their request, holding that AmerGen had made no effort to identify *specific* information in these materials that would cause *specific* harm. *Id*; *see also Coleman v. County of Suffolk*, 174 F. Supp. 3d 747, 756 (E.D.N.Y. 2016), aff'd, 685 Fed. Appx. 69 (2d Cir. 2017) (rejecting the defendant's motion to seal documents containing law enforcement techniques and procedures because the defendant simply made generalized assertions and did not present "clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encounter if discloser is permitted.")

Similarly, the government does not identify any specific information that would result in specific harm in their motion. Instead, they simply utilize stereotyped and conclusory language, stating that a declaration from the lead case agent explaining the basis of the undercover operation, as well as documents substantiating the certification and authorization process "may contain sensitive information involving law enforcement operations that is not (and should not be) in the public domain." It is far from clear what specific information in these documents deserve protection, and why it should not be in the public domain.

Additionally, several of this court's sister circuits have held that when the government seeks protection for law enforcement operations, the specific information and harm sought to protect needs to be identified in an affidavit by the responsible department head. *See e.g.*, *Black v. Sheraton Corp. of Am*., 564 F.2d 531, 544 (D.C. Cir. 1977) (explaining that it is essential that the affidavit be based on actual personal considerations by the affiant official for the court to properly evaluate the harm). "The requirement of personal knowledge is not born of obeisance to mere formalism; it is important because the most reliable information will come from people with direct knowledge about what interests are threatened by a particular disclosure and how much harm to those interests is likely." *Kelly v. City of San Jose*, 114 F.R.D. 653, 669 (N.D. Cal. 1987). Here, the government provided no such information.

Furthermore, it is very unlikely that the revealing the information will result in serious injury as the operation has been concluded. In order to demonstrate a serious injury, the government needs to establish a present harm. *See AmerGen*, 115 Fed. Cl. at 142; *see also In re Avandia Mktg., Sales Practices and Products Liab. Litig.*, 924 F.3d 662, 678 (3d Cir. 2019) (quoting In re Cendant Corp., 260 F.3d 183, 196 (3d Cir. 2001) ("[S]ealing must be based

on *current evidence* to show how public dissemination of the pertinent materials *now* would cause the competitive harm.") As the University of Farmington operation has been concluded, it is unclear how explaining the basis of the undercover operation or the authorization process would harm the government. Even if the government believes that such information could harm future operations, blanket assertions of harm that "could" come to fruition fall short of the clearly defined and serious injury that the government must articulate to obtain protection under any standard. *See id.*

None of the documents appear classified, and as the undercover operation is complete, the Court should deny the Motion.

## B. The government cannot overcome the strong presumption in favor of public access to court proceedings.

Even if the government can identify a particularized harm, the harm will not be sufficient to overcome the strong presumption in favor of public access to court proceedings. Under RCFC 26(c), the court may consider several factors for the "good cause" balancing test. These include:

> (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to the public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefiting from the order of confidentiality is a public entity or official; and (7) whether the case involves issue[s] important to the public. *Forest Products,* 62 Fed. Cl. at 114 n.9.

While these factors may provide useful guidance for courts conducting a balancing public and private interests, they do not displace the common law right of access standard. *See In re Avandia,* 924 F.3d at 676. For materials submitted to the court in all adjudicatory proceedings, the strong presumption in favor of public access to the materials is the starting point, not just one of multiple factors. *See id. at 677.* "The scale is tipped at the outset in favor of access." *Id.* This presumption should not be disregarded easily. *See id.* The right to access promotes "public confidence in the judicial system; diminishes possibilities for injustice, incompetence, perjury, and fraud; and provides the public with a more complete understanding of the judicial system and a better perception of its fairness. *Id.* (internal quotation marks and brackets omitted). These interests are particularly important to preserve in cases that implicates the public's trust in a government agency. *See, e.g., FTC v. Standard Fin. Management Corp.,* 830 F.2d 404, 412 (1st Cir.1987) (threshold for sealing is elevated because the case involves a government agency and matters of public concern); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 788 (3d Cir. 1994) (explaining that the privacy interest is diminished when the party seeking protection is a public entity subject to legitimate public scrutiny); *United States v. Smith,* 776 F.2d 1104, 1114 (3d Cir.1985) ("[T]he public has a substantial interest in the integrity or lack of integrity of those who serve them in public office").

The University of Farmington operation is of strong interest and concern to the public, as evident from the public outrage following the reveal of the University of Farmington operation.

Hundreds of news articles have been written about the operation with people questioning the legality and integrity of the operation.[2] The public outcry was strong enough for Derek Benner, the Acting Deputy Director for the Immigration and Customs Enforcement at the time, to issue a public statement addressing the operation.[3] When something is unjust, it is better to have more eyes on the issue to fix the issue. Hence, the facts of this case strongly weigh against the issuance of a protection order.

Since the government has not identified a clearly defined injury in its motion for the entry of a protection order, it is impossible at this time to meaningfully balance the conflicting interests. However, for the aforementioned reasons, the government has not presented a sufficiently compelling reason to overcome the strong presumption in favor of public access and the other consideration weighing against the issuance of a protection order.

For all these reasons, we respectfully ask this court to dismiss the government's motion for entry of a protective order.

Respectfully submitted,

By: /s/*Amy E. Norris, Esq., (#1017140)*
Amy@mwlc.org
(202) 830-1225
NORRIS LAW, PLLC
616 E Street N.W.
Suite 1156
Washington, DC 20004

Attorney for Teja Ravi

---

[2] *See e.g.* Amanda Holpuch, *The student sting: the troubling inside story of Ice's fake university*. THE GUARDIAN (Dec. 5, 2020), https://www.theguardian.com/us-news/2020/dec/05/ice-fake-university-farmington-inside-story; Sarah Mervosh, *ICE Ran a Fake University in Michigan to Catch Immigration Fraud,* THE NEW YORK TIMES (Jan. 31, 2019), nytimes.com/2019/01/31/us/farmington-university-arrests-ice.html.

[3] *See ICE Acting Deputy Director sets the record straight on fraud investigations involving undercover schools,* THE IMMIGRATION AND CUSTOMS ENFORCEMENT (Dec. 20, 2019), https://www.ice.gov/news/releases/ice-acting-deputy-director-sets-record-straight-fraud-investigations-involving.