# EXHIBIT A

| Department of Homeland Security | I-20, Certificate of Eligibility for Nonimmigrant Student Status |
|---|---|
| U.S. Immigration and Customs Enforcement | OMB NO. 1653-0038 |

## SEVIS ID:  N0013638381

| SURNAME/PRIMARY NAME | GIVEN NAME | Class of Admission |
|---|---|---|
| Tiyyagura | Ravi Teja | |
| **PREFERRED NAME** | **PASSPORT NAME** | |
| Ravi Teja Tiyyagura | | # F-1 |
| **COUNTRY OF BIRTH** | **COUNTRY OF CITIZENSHIP** | |
| INDIA | INDIA | |
| **DATE OF BIRTH** | **ADMISSION NUMBER** | |
| 27 OCTOBER 1992 | | |
| **FORM ISSUE REASON** | **LEGACY NAME** | **ACADEMIC AND** |
| CONTINUED ATTENDANCE | Ravi Teja Tiyyagura | **LANGUAGE** |

## SCHOOL INFORMATION

| SCHOOL NAME | SCHOOL ADDRESS |
|---|---|
| University of Farmington | 30500 Northwestern Highway, Farmington Hills, MI 48334 |
| University of Farmington | |
| **SCHOOL OFFICIAL TO CONTACT UPON ARRIVAL** | **SCHOOL CODE AND APPROVAL DATE** |
| Edward Roberts | DET214F45311000 |
| Director of Student Affairs | 12 JULY 2016 |

## PROGRAM OF STUDY

| EDUCATION LEVEL | MAJOR 1 | MAJOR 2 |
|---|---|---|
| MASTER'S | Information Technology 11.0103 | None 00.0000 |
| **PROGRAM ENGLISH PROFICIENCY** | **ENGLISH PROFICIENCY NOTES** | **EARLIEST ADMISSION DATE** |
| Required | Student is proficient | |
| **START OF CLASSES** | **PROGRAM START/END DATE** | |
| 05 MARCH 2018 | 21 FEBRUARY 2018 - 31 MARCH 2020 | |

## FINANCIALS

| ESTIMATED AVERAGE COSTS FOR: 12 MONTHS | | STUDENT'S FUNDING FOR: 12 MONTHS | |
|---|---|---|---|
| Tuition and Fees | $  10,000 | Personal Funds | $   2,500 |
| Living Expenses | $   8,500 | Funds From This School | $       0 |
| Expenses of Dependents (0) | $       0 | Family support. | $  25,000 |
| Insurance, books, etc. | $   2,000 | On-Campus Employment | $       0 |
| TOTAL | $  20,500 | TOTAL | $  27,500 |

## REMARKS

Registration, Spring 2018, Session 1.

## SCHOOL ATTESTATION

I certify under penalty of perjury that all information provided above was entered before I signed this form and is true and correct. I executed this form in the United States after review and evaluation in the United States by me or other officials of the school of the student's application, transcripts, or other records of courses taken and proof of financial responsibility, which were received at the school prior to the execution of this form. The school has determined that the above named student's qualifications meet all standards for admission to the school and the student will be required to pursue a full program of study as defined by 8 CFR 214.2(f)(6). I am a designated school official of the above named school and am authorized to issue this form.

X *Edward Roberts*

| SIGNATURE OF: Edward Roberts, Director of Student Affairs | DATE ISSUED | PLACE ISSUED |
|---|---|---|
| | 21 February 2018 | Farmington Hills,MI |

## STUDENT ATTESTATION

I have read and agreed to comply with the terms and conditions of my admission and those of any extension of stay. I certify that all information provided on this form refers specifically to me and is true and correct to the best of my knowledge. I certify that I seek to enter or remain in the United States temporarily, and solely for the purpose of pursuing a full program of study at the school named above. I also authorize the named school to release any information from my records needed by DHS pursuant to 8 CFR 214.3(g) to determine my nonimmigrant status. Parent or guardian, and student, must sign if student is under 18.

X

| SIGNATURE OF: Ravi Teja Tiyyagura | | DATE | |
|---|---|---|---|
| | X | | |
| NAME OF PARENT OR GUARDIAN | SIGNATURE | ADDRESS (city/state or province/country) | DATE |

Appx2

| ICE Form I-20 (3/31/2018) | Page 1 of 3 |
|---|---|

**Department of Homeland Security**
U.S. Immigration and Customs Enforcement

I-20, Certificate of Eligibility for Nonimmigrant Student Status
OMB NO.  1653-0038

---

**SEVIS ID: N0013638381 (F-1)**          **NAME: Ravi Teja Tiyyagura**

**EMPLOYMENT AUTHORIZATIONS**

**CHANGE OF STATUS/CAP-GAP EXTENSION**

**AUTHORIZED REDUCED COURSE LOAD**

**CURRENT SESSION DATES**

| CURRENT SESSION START DATE | CURRENT SESSION END DATE |
|---|---|
| 05 MARCH 2018 | 31 MAY 2018 |

**TRAVEL ENDORSEMENT**

This page, when properly endorsed, may be used for re-entry of the student to attend the same school after a temporary absence from the United States. Each endorsement is valid for one year.

| Designated School Official | TITLE | SIGNATURE | DATE ISSUED | PLACE ISSUED |
|---|---|---|---|---|
| | | X | | |
| | | X | | |
| | | X | | |
| | | X | | |

Appx3

**ICE Form I-20 (3/31/2018)**

**Department of Homeland Security**
U.S. Immigration and Customs Enforcement

I-20, Certificate of Eligibility for Nonimmigrant Student Status
OMB NO. 1653-0038

## INSTRUCTIONS TO STUDENTS

**STUDENT ATTESTATION.** You should read everything on this page carefully. Be sure that you understand the terms and conditions concerning your admission and stay in the United States as a nonimmigrant student before signing the student attestation on page 1 of the Form I-20 A-B. The law provides severe penalties for knowingly and willfully falsifying or concealing a material fact, or using any false document in the submission of this form.

**FORM I-20.** The Form I-20 (this form) is the primary document to show that you have been admitted to school in the United States and that you are authorized to apply for admission into the United States. You must have your Form I-20 with you at all times. If you lose your Form I-20, you must request a new one from your designated school official (DSO) at the school named on your Form I-20.

**VISA APPLICATION.** You must give this Form I-20 to the U.S. consular officer at the time you apply for a visa (unless you are exempt from visa requirements). If you have a Form I-20 from more than one school, be sure to present the Form I-20 for the school you plan to attend. Your visa will include the name of that school, and you must attend that school upon entering the United States. You must also provide evidence of support for tuition and fees and living expenses while you are in the United States.

**ADMISSION.** When you enter the United States, you must present the following documents to the officer at the port of entry: 1) a Form I-20; 2) a valid F-1 visa(unless you are exempt from visa requirements); 3) a valid passport; and 4) evidence of support for tuition and fees and living expenses while you are in the United States. The agent should return all documents to you before you leave the inspection area.

**REPORT TO SCHOOL NAMED ON YOUR FORM I-20 AND VISA.** Upon your first entry to the United States, you must report to the DSO at the school named on your Form I-20 and your F-1 visa (unless you are exempt from visa requirements). If you decide to attend another school before you enter the United States, you must present a Form I-20 from the new school to a U.S. consular officer for a new F-1 visa that names the new school. Failure to enroll in the school, by the program start date on your Form I-20 may result in the loss of your student status and subject you to deportation.

**EMPLOYMENT.** Unlawful employment in the United States is a reason for terminating your F-1 status and deporting you from the United States. You may be employed on campus at your school. You may be employed off-campus in curricular practical training (CPT) if you have written permission from your DSO. You may apply to U.S. Citizenship and Immigration Services (USCIS) for off-campus employment authorization in three circumstances: 1) employment with an international organization; 2) severe and unexpected economic hardship; and 3) optional practical training (OPT) related to your degree. You must have written authorization from USCIS before you begin work. Contact your DSO for details. Your spouse or child (F-2 classification) may not work in the United States

**PERIOD OF STAY.** You may remain in the United States while taking a full course of study or during authorized employment after your program. F-1 status ends and you are required to leave the United States on the earliest of the following dates: 1) the program end date on your Form I-20 plus 60 days; 2) the end date of your OPT plus 60 days; or 3) the termination of your program for any other reason. Contact your DSO for details.

**EXTENSION OF PROGRAM.** If you cannot complete the education program by the program end date on page 1 of your Form I-20, you should contact your DSO at least 15 days before the program end date to request an extension.

**SCHOOL TRANSFER.** To transfer schools, first notify the DSO at the school you are attending of your plan to transfer, then obtain a Form I-20 from the DSO at the school you plan to attend. Return the Form I-20 for the new school to the DSO at that school within 15 days after beginning attendance at the new school. The DSO will then report the transfer to the Department of Homeland Security (DHS). You must enroll in the new school at the next session start date. The DSO at the new school must update your registration in SEVIS.

**NOTICE OF ADDRESS.** When you arrive in the United States, you must report your U.S. address to your DSO. If you move, you must notify your DSO of your new address within 10 days of the change of address. The DSO will update SEVIS with your new address.

**REENTRY.** F-1 students may leave the United States and return within a period of five months.To return, you must have: 1) a valid passport; 2) a valid F-1 student visa (unless you are exempt from visa requirements); and 3) your Form I-20, page 2, properly endorsed for reentry by your DSO. If you have been out of the United States for more than five months, contact your DSO

**AUTHORIZATION TO RELEASE INFORMATION BY SCHOOL.** DHS requires your school to provide DHS with your name, country of birth, current address, immigration status, and certain other information on a regular basis or upon request. Your signature on the Form I-20 authorizes the named school to release such information from your records.

**PENALTY.** To maintain your nonimmigrant student status, you must: 1) remain a full-time student at your authorized school; 2) engage only in authorized employment; and 3) keep your passport valid. Failure to comply with these regulations will result in the loss of your student status and subject you to deportation.

## INSTRUCTIONS TO SCHOOLS

Failure to comply with 8 CFR 214.3(k) and 8 CFR 214.4 when issuing Forms I-20 will subject you and your school to criminal prosecution. If you issue this form improperly, provide false information, or fail to submit required reports, DHS may withdraw its certification of your school for attendance by nonimmigrant students.

**ISSUANCE OF FORM I-20.** DSOs may issue a Form I-20 for any nonimmigrant your school has accepted for a full course of study if that person: 1) plans to apply to enter the United States in F-1 status; 2) is in the United States as an F-1 nonimmigrant and plans to transfer to your school; or 3) is in the United States and will apply to change nonimmigrant status to F-1. DSOs may also issue the Form I-20 to the spouse or child (under the age of 21) of an F-1 student to use to enter or remain in the United States as an F-2 dependent. DSOs must sign where indicated at the bottom of page 1 of the Form I-20 to attest that the form is completed and issued in accordance with regulations.

**ENDORSEMENT OF PAGE 2 FOR REENTRY.** If there have been no substantive changes in information, DSOs may endorse page 2 of the Form I-20 for the student and/or the F-2 dependents to reenter the United States. If there have been substantive changes, the DSO should issue and sign a new Form I-20 that includes those changes.

**RECORDKEEPING.** DHS may request information concerning the student's immigration status for various reasons. DSOs should retain all evidence of academic ability and financial resources on which admission was based, until SEVIS shows the student's record completed or terminated.

**AUTHORITY FOR COLLECTING INFORMATION.** Authority for collecting the information on this and related student forms is contained in 8 U.S.C. 1101 and 1184. The Department of State and DHS use this information to determine eligibility for the benefits requested.The law provides severe penalties for knowingly and willfully falsifying or concealing a material fact, or using any false document in the submission of this form.

**REPORTING BURDEN.** U.S. Immigration and Customs Enforcement collects this information as part of its agency mission under the Department of Homeland Security. The estimated average time to review the instructions, search existing data sources, gather and maintain the needed data, and complete and review the collection of information is 30 minutes (.50 hours) per response. An agency may not conduct or sponsor, and a person is not required to respond to an information collection unless a form displays a currently valid OMB Control number. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to: Office of the Chief Information Officer/Forms Management Branch, U.S. Immigration and Customs Enforcement. 801 I Street NW Stop 5800, Washington, DC 20536-5800. Do not send the form to this address.

**ICE Form I-20 (3/31/2018)**

Appx4

EXHIBIT B

*Homeland Security Investigations*
*Office of the Executive Associate Director*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, D.C. 20536



**U.S. Immigration and Customs Enforcement**

SEP 1 5 2015

MEMORANDUM FOR:     Marlon V. Miller
                    Special Agent in Charge, Detroit
                    Homeland Security Investigations

FROM:               Peter T. Edge
                    Executive Associate Director
                    Homeland Security Investigations

SUBJECT:            ▓▓▓▓▓▓▓▓▓ – Approval and Certification

I have evaluated the request for reauthorization of ▓▓▓▓▓▓▓▓ I have also considered the recommendations of the Undercover Review Committee regarding this operation. The proposal includes a request to exempt the project from certain laws and regulations pertaining to government conduct (under the authority of 8 U.S.C. § 1363a and 19 U.S.C. § 2081, as applicable) in the areas listed below. I find the actions authorized by statute are necessary for the conduct of this undercover investigative operation in the Homeland Security Investigations programmatic areas of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Counter Terrorism and Criminal Exploitation and Identity and Benefit Fraud. I hereby approve and certify ▓▓▓▓▓▓▓▓▓ I authorize ▓▓▓▓▓▓▓▓▓▓ while exempt from certain United States laws and regulations, as allowed by the following statutory authority:

1.  8 U.S.C. § 1363a (a)(1) and 19 U.S.C. § 2081 (a)(1)(A)
    (Related to leasing space)

2.  8 U.S.C. § 1363a (a)(2) and 19 U.S.C. § 2081 (a)(1)(B)
    (Related to acquiring and operating proprietary businesses)

3.  8 U.S.C. § 1363a (a)(3) and 19 U.S.C. § 2081 (a)(2)
    (Related to depositing funds into banks)

4.  8 U.S.C. § 1363a (a)(4) and 19 U.S.C. § 2081 (a)(3)
    (Related to using proceeds to offset expenses)

This authorization to operate ▓▓▓▓▓▓▓▓ expires on February 28, 2016.

www.ice.gov

**Date Submitted** : July 10, 2015

**Date of URC** : August 19, 2015

**Date of Inception** : February 11, 2002

**Name of Operation** : ██████████

**Program Code** : ███

**Current Programmatic Area(s)** : ██████████
██████ ██

**Expansion Programmatic Area(s)** : ██████████████
Counter Terrorism/Criminal Exploitation
███████████

**Location** : SAC Detroit, ████████████████
██████████

**Ops Admin Supervisor** : ████████████████
████████

**Group Supervisor(s)** :



**Expansion Group Supervisor(s)** : ████████████████

**Operation Program Manager** : ███████████████████

**ULC** : ███████████████

**Expansion Case Agent(s)** : SA Stephen Webber, ████████████

**Expansion Undercover Operative(s)** : ████████████████████

**CUFFS Administrator** : ████████████████

**U.S. Attorney's Office(s)** : Eastern District of Michigan ████████████

**Expansion U.S. Attorney's Office(s)** : Eastern District of Michigan

**CUC OPLA Counsel** : ███████████████

**Offsite Location** : Yes, office

**Internet Web Site** : Yes, ████████████

**Special Interest Aliens** : █

**Expansion DEA Designated ASAC** : ██████████

**Open Cases** : ████████████

████████████



**Pending Cases**





**Expansion Related Cases**

astern District of Michigan, Southern Division



**SOU Coordination** ▮ : ▮

**Statutory Exemptions Requested: (List those exemptions the operation currently utilizes) and place "(EXPANSION RELATED)" in front of those that apply.**

1. (Expansion Related) Use appropriated funds to purchase/lease property, buildings, and other facilities in the U.S., D.C. and U.S. territories and possessions.
2. (Expansion Related) Use appropriated funds to establish or to acquire proprietary corporations or business entities as part of the undercover operation, and to operate them on a commercial basis.
3. (Expansion Related) Deposit appropriated funds and/or proceeds in financial institutions.
4. (Expansion Related) Expend proceeds from the undercover operation to offset necessary and reasonable expenses incurred in the operation.

**<u>SENSITIVE CIRCUMSTANCES</u>**

**DHS**

▮ ▮

▮ ▮

▮



**ICE**

- The operation has continued for ▮▮▮▮▮▮▮▮▮▮▮▮ first undercover activity ▮▮▮▮▮▮▮▮▮▮

- The operation will require the use of proceeds generated by the undercover operation to offset necessary and reasonable expenses incurred in the operation of the proprietary business ▮▮▮▮▮▮▮▮▮▮

- (Expansion Related) The undercover operation will require the use of the statutory exemptions under 19 U.S.C. § 2081 and/or 8 U.S.C. § 1363a ▮▮▮▮▮▮▮▮▮▮

**EXPANSION REQUEST:**

HSI Detroit is submitting this expansion request to add ▮▮▮▮▮▮▮▮ **▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and Counter Terrorism/Criminal Exploitation** (as it relates to Student and Exchange Visitor Fraud) to its programmatic areas.

## PURPOSE



### Counter Terrorism/Criminal Exploitation

The enhancement of ███████████████ within the programmatic area of Counter Terrorism/Criminal Exploitation will enable HSI Detroit Special Agents to establish a undercover (UC) school.  This UC school will be used to identify F-1 non-immigrant student visa violators, as well as to attract transfer students who are seeking to fraudulently maintain their student visa status without having to attend class or maintain a full course of study.  By creating a UC school, HSI Detroit will be able to identify student visa violators, recruiters, and school administrators who unlawfully exploit the SEVIS system.



## OBJECTIVE OF EXPANSION



### Counter Terrorism/Criminal Exploitation

███████████████

HSI Detroit has taken a proactive approach to addressing visa fraud. The goal is to identify the full scope of the criminal enterprise, to include not only the student visa violators, but also the recruiters and facilitators of the criminal enterprise. Through the use of the UC school and the information, intelligence, and evidence gathered by UC operatives, HSI Detroit will be able to identify the methods and means through which criminal academic institutions communicate with recruiters worldwide.



**METHOD TO ACHIEVE OBJECTIVE**



**Counter Terrorism/Criminal Exploitation**

Based upon the successful UC model of HSI Newark ████████████
█████ seeks authorization to use two forms of UC activity to meet its objectives set forth above.  First, the CUC will create a "virtual" school within SEVIS.  In addition, the CUC will create a UC website advertising the school.  This UC school will exist within SEVIS and have an internet presence as a means to backstop its identity as well as serve as a way for a UCA, posing as a "Designated School Official" (DSO) to accept and transfer UCAs and Cis purporting to be students to and from academic institutions suspected to be involved in fraudulently sponsoring F-1 non-immigrant students.

Secondly, the CUC seeks authorization to rent an UC school storefront.  This UC facility will consist of an office / reception area in addition to a small classroom if needed.  This UC school will serve as a facility in which recorded UC meetings can occur between the UC DSO and students who are in violation of the conditions of their student visa and who are seeking a corrupt school which does not require them to attend classes while allowing them to keep their status.  The UC school will assist HSI Detroit and other domestic and international HSI offices to potentially locate individuals involved in the recruitment of foreign nationals in an attempt to exploit the non-immigrant visa system.

The UC DSO will attempt to, through a variety of means, contact these students and arrange a face-to-face meeting at the UC facility.  The UC DSO will engage in dialogue with the subject seeking to become a student and explain that this school is not a legitimate school and only for those seeking a student visa without requiring them to attend any classes.  Those interested in legitimately attending classes as prescribed by their visa classification, would be referred to a local school which has been vetted by HSI and SEVP.

This UC school will also seek to be introduced into the underground network of suspected nefarious schools and international recruiters engaging in visa fraud as well as other criminal activities. The UC school will be available for other HSI offices investigating visa fraud related to education. Once the UC school is inserted into the circuit of nefarious schools, the UC school would act as a haven for those students not encountered during an enforcement action at another school. The transfer would lead the individual to believe that he/she would be continuing his/her fraudulent non-immigrant status. This will allow HSI yet another method to identify, locate, arrest and prosecute those students and facilitators involved in this fraud.



**UNDERCOVER ACTIVITY SUMMARY:**

**CURRENT:**



**EXPANSION:**

**Counter-Proliferation Investigations**



**Counter Terrorism/Criminal Exploitation**
Operation Sand Dollar will utilize UCA's and a backstopped UC school that will be represented with a brick and mortar storefront (rented office space) and the establishment of a website. UCAs will employ a variety of methods to conduct business with targets of investigation, to include but not limited to, telephonic communication, email communication, and face to face meetings.  The UC activity will focus on identifying and furthering investigations involving student visa violators, recruiters and facilitators. The information, intelligence, and evidence gathered by UC activity will assist in identifying the methods and means through which criminal academic institutions communicate with recruiters worldwide.



**EXPANSION POTENTIAL:**



**Counter Terrorism/Criminal Exploitation**

This enhancement has the potential to identify global conspirators from a multitude of source countries as well as those employees, managers and executives of the academic institution engaged in criminal activity. The student populations at these types of institutions are from numerous countries/continents of origin. This expansion will facilitate the identification and vetting of such students in similar corrupt institutions. Moreover, this expansion will facilitate the identification of similar institutions that provide comparable services through exploitation and circumvention of the SEVIS



*EXPANSION CASE BRIEFS*



**COUNTER TERRORISM/CRIMINAL EXPLOITATION**

**Operation Paper Chase**
**Eastern District of Michigan,**

███████████████ seeks to establish a undercover (UC) school in order to identify F-1 non-immigrant student visa violators and attract transfer students who are seeking to fraudulently maintain their student visa status without having to attend class or maintain a full course of study. This UC school will exist within SEVIS and the internet as a means to backstop its identity as well as serve as a way for a UCA, posing as a "Designated School Official" (DSO) to accept and transfer UCAs and Cis purporting to be students to and from academic institutions suspected to be involved in fraudulently sponsoring F-1 non-immigrant students and committing other criminal violations.   This UC school will serve as a facility in which recorded UC meetings can occur.  The UC DSO will attempt to, through a variety of means, contact these students and arrange face-to-face meetings at the UC facility.  The UC DSO will engage in dialogue with the subject seeking to become a student and explain that this school is not a legitimate school and only for those seeking a student visa without requiring them to attend any classes.  Those interested in legitimately attending classes as prescribed by their visa classification, would be referred to a local school which has been vetted by HSI and SEVP.  Through utilization of the school, HSI Detroit will identify student visa violators, recruiters, and criminal school administrators who exploit the SEVIS system.

Between the months of September and November of 2015, ████████████████ will create a "virtual" school within SEVIS.  In addition, ██████████████ will create a UC website advertising the school. In August 2015, ██████████████████ will seek to rent a UC school storefront.  This UC facility will consist of an office / reception area in addition to a small classroom, if needed.  The UC school will assist HSI Detroit and other domestic and international HSI offices to potentially locate individuals involved in the recruitment of foreign nationals in an attempt to exploit the non-immigrant visa system. This UC platform will allow HSI Detroit to proactively identify, locate, arrest and prosecute students involved in fraud as well as the facilitators of the same. HSI Detroit anticipates prosecuting violations of 18 U.S.C. § 1546, Fraud and misuse of visas, permits, and other documents.

**Statutory Exemption(s):**
    **2.  Use appropriated funds to establish or to acquire proprietary corporations or business entities as part of the undercover operation, and to operate them on a commercial basis.**
    **3.  Deposit appropriated funds and proceeds in financial institutions.**
    **4.  Expend proceeds from the operation to offset necessary and reasonable expenses incurred in the operation.**

**DHS Sensitive Circumstance(s):**
    ▌████████████████████████████████████████
    ▌████████████████████████████████████

**ICE Sensitive Circumstance(s):** -
    • ████████████████████████████████████████████
    ▌████████████████████████████████████████

████████████████

- **The operation will require the use of proceeds generated by the undercover operation to offset necessary and reasonable expenses incurred in the operation of the proprietary business.**
- ██████████████████████████████████████████████████  ██████████████
- **The undercover operation will require the use of the statutory exemptions under 19 U.S.C. § 2081 and/or 8 U.S.C. § 1363a.**





## INVESTIGATIONS REQUIRING MAIN DOJ CONCURRENCE

*CASE BRIEFS*





**COUNTER TERRORISM/CRIMINAL EXPLOITATION**

**Operation Paper Chase**
**Eastern District of Michigan,**
Potential_x___          Ongoing___

seeks to establish a undercover (UC) school in order to identify F-1 non-immigrant student visa violators and attract transfer students who are seeking to maintain their student visa status without having to attend class or maintain a full course of study. This UC school will exist within SEVIS and the internet as a means to backstop its identity as well as serve as a way for a UCA, posing as a "Designated School Official" (DSO) to accept and transfer UCA and confidential informants purporting to be students to and from academic institutions suspected to be involved in fraudulently sponsoring F-1 non-immigrant students and other criminal violations.   This UC school will serve as a facility in which recorded UC meetings can occur. The UC DSO will attempt to, through a variety of means, contact these students and arrange a face to face meeting at the UC facility.  The UC DSO will engage in dialogue with the subject seeking to become a student and explain that this school is not a legitimate school and only for those seeking a student visa without requiring them to attend any classes.  Those interested in legitimately attending classes as prescribed by their visa

classification, would be referred to a local school which has been vetted by HSI and SEVP.  Through utilization of the virtual school, ▮▮▮▮▮▮▮▮▮▮▮▮ will identify student visa violators, recruiters, and criminal school administrators who exploit the SEVIS system.

Between the months of March and April 2015, Operation ▮▮▮▮▮▮▮ will create a "virtual" school within SEVIS.  In addition, Operation ▮▮▮▮▮▮ will create a UC website advertising the school.  In May, Operation ▮▮▮▮▮ will seek to rent a UC school storefront.  This UC facility will consist of an office / reception area in addition to a small classroom if needed.  The UC school will assist HSI Detroit and other domestic and international HSI offices to potentially locate individuals involved in the recruitment of foreign nationals in an attempt to exploit the non-immigrant visa system. This UC platform will allow HSI Detroit to proactively identify, locate, arrest and prosecute students involved in fraud. HSI Detroit anticipates prosecuting violations of 18 U.S.C. § 1546, Fraud and misuse of visas, permits, and other documents.

**Statutory Exemption(s):**
   **2.  Use appropriated funds to establish or to acquire proprietary corporations or business entities as part of the undercover operation, and to operate them on a commercial basis.**
   **3.  Deposit appropriated funds and proceeds in financial institutions.**
   **4.  Expend proceeds from the operation to offset necessary and reasonable expenses incurred in the operation.**

**DHS Sensitive Circumstance(s):**
▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**ICE Sensitive Circumstance(s): -**
▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮
•   **The operation will require the use of proceeds generated by the undercover operation to offset necessary and reasonable expenses incurred in the operation of the proprietary business.**
•   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮   **The undercover operation will require the use of the statutory exemptions under 19 U.S.C. § 2081 and/or 8 U.S.C. § 1363a.**

## SECURITY OF OPERATION:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮



4.  All appropriate SOPs and HSI Directives will be followed.











**Expansion Budget Increase Request:**

████████████████ is asking for a budget increase in the expansion request due to the addition of three programmatic areas as well as the rental of an off-site location for the UC Sevis school.  The majority of the funding increase will be for the following OCC Codes;



*Homeland Security Investigations*
*Office of the Executive Associate Director*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, D.C. 20536



FEB 2 9 2016

**U.S. Immigration
and Customs
Enforcement**

MEMORANDUM FOR:    Marlon V. Miller
Special Agent in Charge, Detroit
Homeland Security Investigations

FROM:    Peter T. Edge
Executive Associate Director
Homeland Security Investigations

SUBJECT:    ███████████ – Approval and Certification

I have evaluated the request for reauthorization of ██████████ I have also considered
the recommendations of the Undercover Review Committee regarding this operation. The
proposal includes a request to exempt the project from certain laws and regulations pertaining to
government conduct (under the authority of 8 U.S.C. § 1363a and 19 U.S.C. § 2081, as
applicable) in the areas listed below. I find the actions authorized by statute are necessary for the
conduct of this undercover investigative operation in the Homeland Security Investigations
programmatic areas of ██████████████████████████████████
Counter Terrorism and Criminal Exploitation and Identity and Benefit Fraud. I hereby approve
and certify ████████████. I authorize ██████████ to operate, while exempt
from certain United States laws and regulations, as allowed by the following statutory authority:

1.    8 U.S.C. § 1363a (a)(1) and 19 U.S.C. § 2081 (a)(1)(A)
    (Related to leasing space)

2.    8 U.S.C. § 1363a (a)(2) and 19 U.S.C. § 2081 (a)(1)(B)
    (Related to acquiring and operating proprietary businesses)

3.    8 U.S.C. § 1363a (a)(3) and 19 U.S.C. § 2081 (a)(2)
    (Related to depositing funds into banks)

4.    8 U.S.C. § 1363a (a)(4) and 19 U.S.C. § 2081 (a)(3)
    (Related to using proceeds to offset expenses)

This authorization to operate ██████████ expires on August 31, 2016.

www.ice.gov

Appx31

**Date Submitted**       : January 16, 2016

**Date of URC**          : February 17, 2016

**Date of Inception**    : February 11, 2002

**Name of Operation**    : ███████████

**Program Code**         : ███

**Programmatic Area(s)**  : ███████████████

Counter Terrorism/Criminal Exploitation

███████████████████

**Location**             : SAC Detroit, ████████████████████████

████████████

**Ops Admin Supervisor**  : ████████████████████████

████████████

**Group Supervisor(s)**   :



**Operation Program Manager** : ███████████████████████████

**ULC** : ███████████████████████████████

**Case Agents** : ████████████   ████████████
█████████████   ██████████████
█████████   ████████████
███████████   ██████████

**Undercover Operative(s)** : ████████████████████████████
████████████████████████████████
██████████████████████████████

**CUFFS Administrator** : ████████████████████████

**U.S. Attorney's Office(s)** : Eastern District of Michigan
████████████████████

**CUC OPLA Counsel** : ███████████████████

**Offsite Location** : █

**Internet Web Site** : ████████████████████

**Special Interest Aliens** : ████████████

**DEA Designated ASAC** : ███████████████████████████

**Open Cases** : ████████

████████████████████████
████████████

████████████████████████

████████





: **Counter Terrorism/Criminal Exploitation**

astern District of Michigan Southern Division

:

**Pending Cases** :





**Statutory Exemptions Requested: (List those exemptions the operation currently utilizes).**

1. Use appropriated funds to purchase/lease property, buildings, and other facilities in the U.S., D.C. and U.S. territories and possessions.
2. Use appropriated funds to establish or to acquire proprietary corporations or business entities as part of the undercover operation, and to operate them on a commercial basis.
3.  Deposit appropriated funds and/or proceeds in financial institutions.
4.  Expend proceeds from the undercover operation to offset necessary and reasonable expenses incurred in the operation.

<u>**SENSITIVE CIRCUMSTANCES**</u>

**DHS**



**ICE**

1.    The operation has continued for ███████████████████ first
       undercover   activity ████████████████

2.    ████████████████████████████████████████
       ████████████

3.    The operation will require the use of proceeds generated by the undercover
       operation to offset necessary and reasonable expenses incurred in the operation
       of the proprietary business (████████████████

4.    The undercover operation will require the use of the statutory exemptions under
       19 U.S.C. § 2081 and/or 8 U.S.C. § 1363a ████████████████

5.    ████████████████████████████████████████
       ████████████████

6.    ████████████████████████████████████████
       ████████████████████████████████████
       █████

**<u>UNDERCOVER ACTIVITY SUMMARY:</u>**



███████

The recent expansion of Operation ██████████ to include Counter Terrorism/Criminal Exploitation and Identity and Benefit Fraud will allow HSI Detroit to more efficiently identify student visa violators, recruiters and school administrators who unlawfully exploit the SEVIS system as well as identify similar institutions that provide comparable service through the exploitation and circumvention of SEVIS.  The expansion will also allow HSI Detroit to more efficiently identify, infiltrate, dismantle and prosecute criminal organizations involved in the illegal procurement of counterfeit identity documents that can facilitate such crimes as money laundering and terrorism.













***POTENTIAL INVESTIGATIONS AND UNDERCOVER ACTIVITY***











**Counter Terrorism/Criminal Exploitation**


**Operation Paper Chase**
**Eastern District of Michigan,**

Operation Paper Chase is a HSI Detroit investigation targeting Student and Exchange Visitor Program (SEVP) schools, Designated School Officials (DSO), private immigration services businesses and other entities who fraudulently utilize the SEVP to endanger national security, commit visa fraud, smuggle and harbor illegal aliens for profit, launder money, and commit other violations of federal law.  The investigation is also intended to identify aliens who are exploiting the student visa process and to obtain clarity as to the level and method of student and employment based benefit fraud within the HSI Detroit AOR. UCAs are in the process of establishing a UC school in order to attract and identify F-1 non-immigrant student visa violators who are seeking to maintain their current visa status without having to attend class or maintain a full course of study. The school will exist within SEVIS as a means to backstop its identity as well as serve as a way for a UCA, posing as a "Designated School Official" (DSO), to accept and transfer UCAs and Cis purporting to be students to and from academic institutions suspected to be involved in fraudulently sponsoring F-1 non-immigrant students and other criminal violations.   This UC school will serve as a facility in which recorded UC meetings can occur. The UCA DSO will attempt to, through a variety of means, identify aliens seeking F-1 status solely for the purpose of obtaining legal immigration status and work authorization through fraudulent means.   The UCA DSO will engage in

dialogue with the subject seeking to become a student and explain that this school is not a legitimate school and only for those seeking a student visa without requiring them to attend any classes.  Those interested in legitimately attending classes as prescribed by their visa classification will be referred to a local school which has been vetted by HSI and SEVP.

During the next reporting period, UCAs will secure a location for a UC school storefront. This UC facility will consist of an office / reception area in addition to a small classroom, if needed.  The UC school will assist HSI Detroit and other domestic and international HSI offices to potentially locate individuals involved in the recruitment of foreign nationals in an attempt to exploit the non-immigrant visa system. This UC platform will allow HSI Detroit to proactively identify, locate, arrest and prosecute students involved in fraud. UCAs anticipate the school will be open and be able to accept students by March 2016. UCAs will also complete a build of the school's website to be used in attracting students. In addition, UCAs will attempt to obtain accreditation from several national and regional accrediting bodies. HSI Detroit anticipates prosecuting violations of 18 U.S.C. § 1546, Fraud and misuse of visas, permits, and other documents and 18 U.S.C. § 1956 Money Laundering.

**Statutory Exemption(s):**
  **2.  Use appropriated funds to establish or to acquire proprietary corporations or business entities as part of the undercover operation, and to operate them on a commercial basis.**
  **3.  Deposit appropriated funds and proceeds in financial institutions.**
  **4.  Expend proceeds from the operation to offset necessary and reasonable expenses incurred in the operation.**

**DHS Sensitive Circumstance(s):**



**ICE Sensitive Circumstance(s): -**

- **The operation will require the use of proceeds generated by the undercover operation to offset necessary and reasonable expenses incurred in the operation of the proprietary business.**
- **The undercover operation will require the use of the statutory exemptions under 19 U.S.C. § 2081 and/or 8 U.S.C. § 1363a.**







**INVESTIGATIONS REQUIRING MAIN DOJ CONCURRENCE**



[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

**COUNTER TERRORISM/CRIMINAL EXPLOITATION**

▓▓▓▓▓▓▓▓▓▓ **Operation Paper Chase**
▓▓▓▓▓▓▓▓▓▓**, Eastern District of Michigan,** ▓▓▓▓▓▓▓
Potential_x___        Ongoing___

Operation Paper Chase is a HSI Detroit, National Security Group (NSG) led investigation targeting Student and Exchange Visitor Program (SEVP) schools, Designated School Officials (DSO), private immigration services businesses, and other entities who fraudulently utilize the SEVP to endanger national security, commit visa fraud, smuggle and harbor illegal aliens for profit, launder money, and commit other violations of federal law.  The investigation is also intended to identify aliens who are exploiting the student visa process and to obtain clarity as to the level and method of student and employment based benefit fraud within the HSI Detroit area of responsibility. UCAs are in the process of establishing a UC school in order to attract and identify F-1 non-immigrant student visa violators who are seeking to maintain their current visa status without having to attend class or maintain a full course of study. The school will exist within SEVIS as a means to backstop its identity as well as serve as a way for a UCA, posing as a "Designated School Official" (DSO), to accept and transfer UCA and confidential informants purporting to be students to and from academic institutions suspected to be involved in fraudulently sponsoring F-1 non-immigrant students and other criminal violations.   This UC school will serve as a facility in which recorded UC meetings can occur. The UC DSO will attempt to, through a variety of means, contact these students and arrange a face to face meeting at the UC facility. The UC DSO will engage in dialogue with the subject seeking to become a student and explain that this school is not a legitimate school and only for those seeking a student visa without requiring them to attend any classes.  Those interested in legitimately attending classes as prescribed by their visa classification, would be referred to a local school which has been vetted by HSI and SEVP.

During the next reporting period, UCAs will secure a location for a UC school storefront. This UC facility will consist of an office / reception area in addition to a small classroom if needed.  The UC school will assist HSI Detroit and other domestic and international HSI offices to potentially locate individuals involved in the recruitment of foreign nationals in an attempt to exploit the non-immigrant visa system. This UC platform will allow HSI Detroit to proactively identify, locate, arrest and prosecute students involved in fraud. UCAs anticipate the school will be open and able to accept students by March 2016. UCAs will also complete a build of the school's website to be used in attracting students. In addition, UCAs will attempt to obtain accreditation from several national and regional accrediting bodies. HSI Detroit anticipates pursing violations of 18 U.S.C. § 1546, Fraud and misuse of visas, permits, and other documents and 18 U.S.C. § 1956 Money Laundering.

**Statutory Exemption(s):**
**2.  Use appropriated funds to establish or to acquire proprietary corporations or business entities as part of the undercover operation, and to operate them on a commercial basis.**
**3.  Deposit appropriated funds and proceeds in financial institutions.**

▓▓▓▓▓▓▓▓▓

**4. Expend proceeds from the operation to offset necessary and reasonable expenses incurred in the operation.**

**DHS Sensitive Circumstance(s):**

- 

**ICE Sensitive Circumstance(s): -**

- 
- **The operation will require the use of proceeds generated by the undercover operation to offset necessary and reasonable expenses incurred in the operation of the proprietary business.**
- 
- **The undercover operation will require the use of the statutory exemptions under 19 U.S.C. § 2081 and/or 8 U.S.C. § 1363a.**





## SECURITY OF OPERATION:



4. All appropriate SOPs and HSI Directives will be followed.



















*This page left blank intentionally*

*Homeland Security Investigations*
*Investigative Programs*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, D.C. 20536



**U.S. Immigration
and Customs
Enforcement**

AUG 3 0 2016

MEMORANDUM FOR:     Marlon V. Miller
                    Special Agent in Charge, Detroit
                    Homeland Security Investigations

FROM:               Peter T. Edge
                    Executive Associate Director
                    Homeland Security Investigations

SUBJECT:            ███████████████ – Approval and Certification

I have evaluated the request for reauthorization of ████████████.  I have also considered the recommendations of the Undercover Review Committee regarding this operation.  The proposal includes a request to exempt the project from certain laws and regulations pertaining to government conduct (under the authority of 8 U.S.C. § 1363a and 19 U.S.C. § 2081, as applicable) in the areas listed below.  I find the actions authorized by statute are necessary for the conduct of this undercover investigative operation in the Homeland Security Investigations programmatic areas of ██████████████, Counter Terrorism/Criminal Exploitation, Identity and Benefit Fraud, and ████████████████  I hereby approve and certify ██████████████ I authorize ██████████████ to operate, while exempt from certain United States laws and regulations, as allowed by the following statutory authority:

1.     8 U.S.C. § 1363a (a)(1) and 19 U.S.C. § 2081 (a)(1)(A)
       (Related to leasing space)

2.     8 U.S.C. § 1363a (a)(2) and 19 U.S.C. § 2081 (a)(1)(B)
       (Related to acquiring and operating proprietary businesses)

3.     8 U.S.C. § 1363a (a)(3) and 19 U.S.C. § 2081 (a)(2)
       (Related to depositing funds into banks)

4.     8 U.S.C. § 1363a (a)(4) and 19 U.S.C. § 2081 (a)(3)
       (Related to using proceeds to offset expenses)

This authorization to operate ██████████████ expires on February 28, 2017.

www.ice.gov

**Date Submitted**            : July 15, 2016

**Date of URC**               : August 17, 2016

**Date of Inception**         : February 11, 2002

**Name of Operation**         : ███████████

**Program Code**              : ███

**Programmatic Area(s)**      : ███████████

Counter Terrorism/Criminal Exploitation

████████████████

**Location**                  : SAC Detroit, █████████████████

**Ops Admin Supervisor**      : ██████████████████

**Group Supervisor(s)**       :



**Operation Program Manager** : █████████████████████████

**ULC** : ████████████████████████

**Case Agents** : ████████████████████████████████████

**Undercover Operative(s)** : ████████████████████████████████

**CUFFS Administrator** : ██████████████████████

**Last UOU Field Review** : 05/15

**U.S. Attorney's Office(s)** : Eastern District of Michigan
███████████████████

**CUC OPLA Counsel** : ████████████████████████

**Offsite Location** : Yes, Farmington University, located in a multi-use building.

**Internet Web Site** : ████████████████

**Special Interest Aliens** : ██████████

**DEA Designated ASAC** : █████████████████████████

██████████████

**Open Cases**







: **Counter Terrorism/Criminal Exploitation**

, Eastern District of Michigan
Southern Division

**Pending Cases**                          :



**Statutory Exemptions Requested:**

1. Use appropriated funds to purchase/lease property, buildings, and other facilities in the U.S., D.C. and U.S. territories and possessions.

2. Use appropriated funds to establish or to acquire proprietary corporations or business entities as part of the undercover operation, and to operate them on a commercial basis.

3. Deposit appropriated funds and/or proceeds in financial institutions.

4. Expend proceeds from the undercover operation to offset necessary and reasonable expenses incurred in the operation.

## SENSITIVE CIRCUMSTANCES

**DHS**



**ICE**

1. Investigations and/or operations that continue ████████████████████ the first undercover activity ████████████████

4. The undercover operation will require the use of proceeds generated by the undercover operation to offset necessary and reasonable expenses incurred in the operation of the proprietary business ████████████████

5.    The undercover operation will require the use of the statutory exemptions under 19 U.S.C. § 2081 and/or 8 U.S.C. § 1363a █████████████████

██  ████████████████████████████████████████████████
████████████████████████████████████

**UNDERCOVER ACTIVITY SUMMARY:**

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

The recent expansion of Operation ███████████ to include Counter Terrorism/Criminal Exploitation, ██████████████████████████████████████████ will allow HSI Detroit to more efficiently identify student visa violators, recruiters and school administrators who unlawfully exploit the SEVIS system as well as identify similar institutions that provide a comparable service through the exploitation and circumvention of SEVIS. ███████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████

████████













**_POTENTIAL INVESTIGATIONS AND UNDERCOVER ACTIVITY_**







**Counter Terrorism/Criminal Exploitation**

**Operation Paper Chase**
**Eastern District of Michigan,**

Operation Paper Chase is an HSI Detroit investigation targeting Student and Exchange Visitor Program (SEVP) schools, Designated School Officials (DSO), private immigration services businesses and other entities who fraudulently utilize the SEVP to endanger national security, commit visa fraud, smuggle and harbor illegal aliens for profit, launder money, and commit other violations of federal law.  The investigation is also intended to identify aliens who are exploiting the student visa process as well as to obtain clarity as to the level and method of student and employment based benefit fraud within the HSI Detroit AOR.  UCAs are in the process of establishing a UC school in order to attract and identify F-1 non-immigrant student visa violators who are seeking to maintain their current visa status without having to attend class or maintain a full course of study. The school will exist within SEVIS as a means to backstop its identity as well as serve as a way for a UCA, posing as a "Designated School Official" (DSO), to accept and transfer UCAs and CIs purporting to be students to and from academic institutions suspected to be involved in fraudulently sponsoring F-1 non-immigrant students and other criminal violations.  This UC School will serve as a facility in which recorded UC meetings will occur. The UCA DSO will attempt to, through a variety of means, identify aliens seeking F-1 status solely for the purpose of obtaining legal immigration status and work authorization through fraudulent means.  The UCA DSO will engage in dialogue with the subject seeking to become a student and explain that this school is not a legitimate school and only for those seeking a student visa without requiring them to attend any classes.  Those interested in legitimately attending classes as prescribed by their visa classification will be referred to a local school which has been vetted by HSI and SEVP.  On May 1, 2016, the lease of the commercial space housing the UC storefront began.  The property is in the process of being fully equipped and furnished.

Upon completion, it will house numerous offices and a large multi-purpose instructional environment.

On May 13, 2016, The Accrediting Commission of Career Schools and Colleges, a U.S. Department of Education chartered national accreditor, agreed to nationally accredit the HSI Detroit UC School.  This will allow the UC School to have a website operating with an .edu domain. During the next reporting period, it is anticipated that the UC storefront will be completed and the school's website brought online.  This will allow the first phase of UC operations, the identifying and recruitment of foreign student targets, to commence.  Efforts to facilitate this will include a targeted marketing and advertising campaign and the use of sources of information and confidential informants to introduce UCAs acting as school officials.  The initial criminal violations include 18 U.S.C. § 1546, visa/immigration fraud, and 18 U.S.C. § 1343 - Wire Fraud, 18 U.S.C. § 1546 - Fraud and misuse of visas, permits, and other documents and 18 U.S.C. § 1956 - Money Laundering.

**Statutory Exemption(s):**
1.  Use of appropriated funds to [purchase or] lease property, buildings, and other facilities in the United States, the District of Columbia, and U.S. territories and possessions.
2.  Use appropriated funds to establish or to acquire proprietary corporations or business entities as part of the undercover operation, and to operate them on a commercial basis.
3.  Deposit appropriated funds and proceeds in financial institutions.
4.  Expend proceeds from the operation to offset necessary and reasonable expenses incurred in the operation.

**DHS Sensitive Circumstance(s):**



**ICE Sensitive Circumstance(s): -**

- The operation will require the use of proceeds generated by the undercover operation to offset necessary and reasonable expenses incurred in the operation of the proprietary business.

- The undercover operation will require the use of the statutory exemptions under 19 U.S.C. § 2081 and/or 8 U.S.C. § 1363a.









## INVESTIGATIONS TRIGGERING  MAIN DOJ SENSITIVE CIRCUMSTANCES

### COUNTER TERRORISM/CRIMINAL EXPLOITATION

**Operation Paper Chase**
**, Eastern District of Michigan,**

Potential _x___        Ongoing____



Operation Paper Chase is a HSI Detroit investigation targeting Student and Exchange Visitor Program (SEVP) schools, Designated School Officials (DSO), private immigration services businesses and other entities who fraudulently utilize the SEVP to endanger national security, commit visa fraud, smuggle and harbor illegal aliens for profit, launder money, and commit other violations of federal law.  The investigation is also intended to identify aliens who are exploiting the student visa process as well as to obtain clarity as to the level and method of student and employment based benefit fraud within the HSI Detroit AOR. UCAs are in the process of establishing a UC school in order to attract and identify F-1 non-immigrant student visa violators who are seeking to maintain their current visa status without having to attend class or maintain a full course of study. The school will exist within SEVIS as a means to backstop its identity as well as serve as a way for a UCA, posing as a "Designated School Official" (DSO), to accept and transfer UCAs and CIs purporting to be students to and from academic institutions suspected to be involved in fraudulently sponsoring F-1 non-immigrant students and other criminal violations.   This UC school will serve as a facility in which recorded UC meetings will occur. The UCA DSO will attempt to, through a variety of means, identify aliens seeking F-1 status solely for the purpose of obtaining legal immigration status and work authorization through fraudulent means.   The UCA DSO will engage in dialogue with the subject seeking to become a student and explain that this school is not a legitimate school and only for those seeking a student visa without requiring them to attend any classes.  Those interested in legitimately attending classes as prescribed by their visa classification will be referred to a local school which has been vetted by HSI and SEVP.  On May 1, 2016, the lease of the commercial space housing the UC storefront began.  The property is in the process of being fully equipped and furnished. Upon completion, it will house numerous offices and a large multi-purpose instructional environment.

On May 13, 2016, The Accrediting Commission of Career Schools and Colleges, a U.S. Department of Education chartered national accreditor, agreed to nationally accredit the HSI Detroit UC School.  This will allow the UC School to have a website operating with an .edu domain. During the next reporting period, it is anticipated that the UC storefront will be completed and the school's website brought online.  This will allow the first phase of UC operations, the identifying and recruitment of foreign student targets, to commence.  Efforts to facilitate this will include a targeted marketing and advertising campaign and the use of sources of information and confidential informants to introduce UCAs acting as school officials.  The initial criminal violations include 18 U.S.C. § 1546 - Visa/immigration fraud, 18 U.S.C. § 1343 - Wire fraud, 18 U.S.C. § 1546 - Fraud and misuse of visas, permits, and other documents and 18 U.S.C. § 1956 - money laundering.

**Statutory Exemption(s):**

1. **Use of appropriated funds to [purchase or] lease property, buildings, and other facilities in the United States, the District of Columbia, and U.S. territories and possessions**
2. **Use appropriated funds to establish or to acquire proprietary corporations or business entities as part of the undercover operation, and to operate them on a commercial basis.**
3  **Deposit appropriated funds and proceeds in financial institutions.**

**4**   **Expend proceeds from the operation to offset necessary and reasonable expenses incurred in the operation.**

**DHS Sensitive Circumstance(s):**

■

■

**ICE Sensitive Circumstance(s): -**

- 
- **The operation will require the use of proceeds generated by the undercover operation to offset necessary and reasonable expenses incurred in the operation of the proprietary business.**
- 
- **The undercover operation will require the use of the statutory exemptions under 19 U.S.C. § 2081 and/or 8 U.S.C. § 1363a.**
-



**SECURITY OF OPERATION:**

1.

4.  All appropriate SOPs and HSI Directives will be followed.

















*Homeland Security Investigations*
*Office of the Executive Associate Director*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, D.C. 20536

 

**U.S. Immigration
and Customs
Enforcement**

FEB 2 3 2017

MEMORANDUM FOR:   Steve K. Francis
                  Acting Special Agent in Charge, Detroit
                  Homeland Security Investigations

FROM:             Peter T. Edge *Peter T. Edge*
                  Executive Associate Director
                  Homeland Security Investigations

SUBJECT:          ███████████████ – Approval and Certification

I have evaluated the request for reauthorization of ███████████████ I have also considered
the recommendations of the Undercover Review Committee regarding this operation. The
proposal includes a request to exempt the project from certain laws and regulations pertaining to
government conduct (under the authority of 8 U.S.C. § 1363a and 19 U.S.C. § 2081, as
applicable) in the areas listed below. I find the actions authorized by statute are necessary for the
conduct of this undercover investigative operation in the Homeland Security Investigations
programmatic areas of ██████████ Counter Terrorism/Criminal Exploitation, ███████
Identity & Benefit Fraud, and ████████████████████ I hereby approve and certify
████████████████ I authorize ████████████████ to operate, while exempt from certain
United States laws and regulations, as allowed by the following statutory authority:

1.   8 U.S.C. § 1363a (a)(1) and 19 U.S.C. § 2081 (a)(1)(A)
     (Related to leasing space)

2.   8 U.S.C. § 1363a (a)(2) and 19 U.S.C. § 2081 (a)(1)(B)
     (Related to acquiring and operating proprietary businesses)

3.   8 U.S.C. § 1363a (a)(3) and 19 U.S.C. § 2081 (a)(2)
     (Related to depositing funds into banks)

4.   8 U.S.C. § 1363a (a)(4) and 19 U.S.C. § 2081 (a)(3)
     (Related to using proceeds to offset expenses)

This authorization to operate ████████████████ expires on August 31, 2017.

www.ice.gov

Appx103

**Date Submitted**            : February 3, 2017

**Date of URC**               : February 15, 2017

**Date of Inception**         : ████████████

**Name of Operation**         : ████████

**Program Code**              : ██

**Programmatic Area(s)**      : ████████

Counter Terrorism/Criminal Exploitation

████████████████

**Location**                  : SAC Detroit, ████████████████

████████

**Ops Admin Supervisor**      : ████████████████

████████

**Operation Group Supervisor** : ████████████████

**Operation Program Manager**  : ████████████████

**ULC**                       : ████████████████

**Undercover Operative(s)**   : ████████████████

████████████████

**CUFFS Administrator**       : ████████████

**Last UOU Field Review**     : ████

**U.S. Attorney's Office(s)**   : Eastern District of Michigan

███████████████

**CUC OPLA Counsel**   : ████████████████████████

**Offsite Location**   : Yes, Storefront

**Internet Web Site**   : ████████████

**Special Interest Aliens**   : ████████

**DEA Designated ASAC**   : ███████████████████████████

**Open Cases**   : ██████

████████████████
██████████

██████████

████████████████
██████████

████████████████
██████████

██████████████████

████████████████████
██████████

████████████████
██████████

████████

—



: **Counter Terrorism/Criminal Exploitation**

Eastern District of Michigan Southern Division

**SOU Coordination**          :

**Statutory Exemptions Requested:**

1. Use appropriated funds to purchase/lease property, buildings, and other facilities in the U.S., D.C. and U.S. territories and possessions.

2. Establish or acquire proprietary corporations or business entities as part of the undercover operation, and to operate them on a commercial basis.

3. Deposit appropriated funds and/or proceeds in financial institutions.

4. Use proceeds from the undercover operation to offset necessary and reasonable expenses incurred in the operation.

<u>**SENSITIVE CIRCUMSTANCES**</u>

**DHS**



**ICE**

- ▪ Investigations and/or operations that continue for █████████████████ the first undercover activity.

- ▪ ████████████████████████████████████████████

- ▪ ████████████████████████████████████████████████████

- ▪ ████████████████████████████████████████████████████

- ▪ The undercover operation will require the use of proceeds generated by the undercover operation to offset necessary and reasonable expenses incurred in the operation of the proprietary business.

- ▪ The undercover operation will require the use of the statutory exemptions under 19 U.S.C. § 2081 and/or 8 U.S.C. § 1363a.

- ▪ ████████████████████████████████████████████

**UNDERCOVER ACTIVITY SUMMARY:**





The recent expansion of Operation ███████ to include the Counter Terrorism/ Criminal Exploitation programmatic area will allow HSI Detroit to more efficiently identify student visa violators, recruiters and school administrators who unlawfully exploit the Student Exchange Visitor Information System (SEVIS) system as well as identify similar institutions that provide a comparable service through the exploitation and circumvention of SEVIS.  The expansion will also allow HSI Detroit to more efficiently identify, infiltrate, dismantle and prosecute criminal organizations involved in the illegal procurement of counterfeit identity documents, counterfeit goods, narcotics and illicit proceeds that can facilitate such crimes as money laundering and terrorism as well as identify transnational criminal organizations (TCOs). The expansion provides HSI with a unique opportunity to initiate undercover operations to penetrate and ultimately dismantle these organizations.



**POTENTIAL INVESTIGATIONS AND UNDERCOVER ACTIVITY**



**COUNTER TERRORISM/CRIMINAL EXPLOITATION**

**Operation Paper Chase**
██████████████ **, Eastern District of Michigan,** ██████████████

Operation Paper Chase is an investigation targeting Student and Exchange Visitor Program (SEVP) schools, Designated School Officials (DSO), and both legitimate and fraudulent institutions, immigration services businesses, employment agencies/consultancies, and other entities who fraudulently utilize the SEVP to endanger national security, commit visa fraud, smuggle and harbor illegal aliens for profit, launder money, and commit other violations of federal law.  The primary UC investigative vehicle supporting the operation is an undercover (UC) storefront operating as a State of Michigan licensed and nationally accredited private university.  The storefront is located in a commercial office building in the greater metropolitan Detroit area and is staffed fulltime by HSI Detroit UCAs.  The school also maintains a website and a significant and active social media presence.  The UC methods target students who are already present in the U.S. and predisposed to the criminal activity so that the operation will not directly facilitate the entry of aliens.  The covert efforts have resulted in numerous inquiries from students seeking to attend the undercover school without actually attending classes while receiving immediate work authorization in violation of numerous regulations governing the student visa programs and federal laws.  All students who are enrolled at the school will be fully vetted, including criminal history checks and for JTTF interest, before any benefit is provided.  If a student does appear to have immediate or national security concern that nonimmigrant will be compartmentalized away from the investigation using administrative or criminal apprehension.  A series of operational phases were developed during the anticipated three years of operations.  The undercover school became operational in fall 2016 and is currently considered to be in Phase 1 of the operation, the enrollment of students to create a critical mass. Phase 2 is the targeting of criminal violators and using the operation to support other UC activities.  Phase 3 includes the prosecution of criminal targets and administrative immigration charges against those aliens who engaged in fraud. ███████████████████████████████████████████████████████

████████████████████████████████████████████  Despite being located outside of Michigan, all of these schools have significant numbers of enrolled students authorized for CPT living and working within the Detroit AOR.  In addition, HSI Detroit has identified and engaged in undercover email exchanges with a number of individuals who are student recruiters for a number of the above schools.  Also, the Accrediting Counsel for Independent Colleges and Schools (ACICS) recent loss of U.S. Department of Education recognition has led to a large number of foreign students from ACICS schools to be no longer eligible for an 18 month post-graduation work authorization.  As such, these students are frantically seeking out accredited schools that offer immediate work authorization, including the HSI Detroit undercover school. In the past month, UCAs have conducted nearly 20 monitored phone conversations and a number UC meets at the storefront,

██████████████████

including "walk-ins", with students with the desire to engage in fraud so they can "pay to stay and work" without going to school or obtaining an education.

In the next six months, UCAs will continue to pose as DSOs and conduct monitored phone calls and email communications with aliens seeking fraudulent immigration benefits. Numerous additional UC methods will be employed at the storefront, including audio/visual surveillance of meets. HSI Detroit intends to covertly engage suspects in incriminating conversations and acts with the goal of using that information to obtain arrest and search warrants, indictments, convictions, and removal of criminal aliens and those deemed threats to national security. The initial criminal violations include 18 U.S.C. § 1546 - Visa/Immigration Fraud, and 18 U.S.C. § 1343 - Wire Fraud, 18 U.S.C. § 1546 - Fraud and Misuse of visas, permits, and other documents and 18 U.S.C. § 1956 - Money Laundering.

Statutory Exemptions: 1, 2, 3, 4









**SECURITY OF OPERATION:**



All appropriate SOPs and HSI Directives are followed.













*Homeland Security Investigations*
*Office of the Executive Associate Director*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, D.C. 20536



U.S. Immigration
and Customs
Enforcement

SEP 0 1 2017

MEMORANDUM FOR:     Steve K. Francis
Special Agent in Charge, Detroit
Homeland Security Investigations

FROM:     Derek N. Benner
(A) Executive Associate Director
Homeland Security Investigations

SUBJECT:     ▇▇▇▇▇▇▇▇ – Approval and Certification

I have evaluated the request for reauthorization of ▇▇▇▇▇▇. I have also considered
the recommendations of the Undercover Review Committee regarding this operation. The
proposal includes a request to exempt the project from certain laws and regulations pertaining to
government conduct (under the authority of 8 U.S.C. § 1363a and 19 U.S.C. § 2081, as
applicable) in the areas listed below. I find the actions authorized by statute are necessary for the
conduct of this undercover investigative operation in the Homeland Security Investigations
programmatic areas of ▇▇▇▇▇▇ Counter Terrorism/Criminal Exploitation, ▇▇▇▇▇
Identity & Benefit Fraud, and ▇▇▇▇▇▇▇▇▇ I hereby approve and certify
▇▇▇▇▇▇ I authorize ▇▇▇▇▇▇ to operate, while exempt from certain
United States laws and regulations, as allowed by the following statutory authority:

1.     8 U.S.C. § 1363a (a)(1) and 19 U.S.C. § 2081 (a)(1)(A)
(Related to leasing space)

2.     8 U.S.C. § 1363a (a)(2) and 19 U.S.C. § 2081 (a)(1)(B)
(Related to acquiring and operating proprietary businesses)

3.     8 U.S.C. § 1363a (a)(3) and 19 U.S.C. § 2081 (a)(2)
(Related to depositing funds into banks)

4.     8 U.S.C. § 1363a (a)(4) and 19 U.S.C. § 2081 (a)(3)
(Related to using proceeds to offset expenses)

This authorization to operate ▇▇▇▇▇▇ expires on February 28, 2018.

www.ice.gov

**Date Submitted** : July 20, 2017

**Date of URC** : August 16, 2017

**Date of Inception** : February 11, 2002

**Name of Operation** : ███████████

**Program Code** : ███

**Programmatic Area(s)** : ████████████
Counter Terrorism/Criminal Exploitation
█████████████

**Location** : HSI Detroit
████████████

**Ops Admin Supervisor** : ███████████████

**Operation Group Supervisor** : ████████████████

**Operation Program Manager** : ████████████████

**ULC** : █████████████████

**Undercover Operative(s)** : ████████████████████

**CUFFS Administrator** : ██████████████

**Last UOU Field Review** : 07/17

**U.S. Attorney's Office(s)** : Eastern District of Michigan
████████



**CUC OPLA Counsel**

**Offsite Location**

**Internet Web Site**

**Special Interest Aliens**

**DEA Designated ASAC**

**Open Cases**

: **Counter Terrorism/Criminal Exploitation** Eastern District of Michigan,

**SOU Coordination**

**Statutory Exemptions Requested:**

1. Use of appropriated funds to purchase/lease property, buildings, and other facilities in the United States, the District of Columbia and U.S. territories and possessions.
2. Establish or acquire proprietary corporations or business entities as part of the undercover operation, and to operate them on a commercial basis.



3. Deposit appropriated funds and/or proceeds in banks or other financial institutions.
4. Use proceeds from the undercover operation to offset necessary and reasonable expenses incurred in the operation.

## SENSITIVE CIRCUMSTANCES

**DHS**



**ICE**

- ▮. Investigations and/or operations that continue ▓▓▓▓▓▓▓▓ the first undercover activity.
- ▮. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
- ▮. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
- ▮ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
- ▮ The undercover operation will require the use of proceeds generated by the undercover operation to offset necessary and reasonable expenses incurred in the operation of the proprietary business.
- ▮. The undercover operation will require the use of the statutory exemptions under 19 U.S.C. § 2081 and/or 8 U.S.C. § 1363a.
- ▮. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

## UNDERCOVER ACTIVITY SUMMARY:



The expansion of Operation ████████ to include the Counter Terrorism/Criminal Exploitation programmatic area earlier in 2017 allows HSI Detroit to more efficiently identify student visa violators, recruiters and school administrators who unlawfully exploit the Student Exchange Visitor Information System (SEVIS) system as well as identify similar institutions that provide a comparable service through the exploitation and circumvention of SEVIS.

**OPERATIONAL RESULTS:**





## COUNTER TERRORISM/CRIMINAL EXPLOITATION



**Operation Paper Chase**
Eastern District of Michigan,

Operation Paper Chase is an investigation targeting Student and Exchange Visitor Program (SEVP) schools, Designated School Officials (DSO), and both legitimate and fraudulent institutions, immigration services businesses, employment agencies/consultancies, and other entities who fraudulently utilize the SEVP to endanger national security, commit visa fraud, smuggle and harbor illegal aliens for profit, launder money, and commit other violations of federal law. The primary UC investigative vehicle supporting the operation is a UC storefront operating as a State of Michigan licensed and nationally accredited private university. The storefront is located in a commercial office building in the greater metropolitan Detroit area and is staffed fulltime by HSI Detroit UCAs. The school also maintains a website and a significant and active social media presence. The UC methods target students who are already present in the U.S. and predisposed to the criminal activity so that the operation will not directly facilitate the entry of aliens. The covert efforts have resulted in numerous inquiries from students seeking to attend the undercover school without actually attending classes while receiving immediate work authorization in violation of numerous regulations governing the student visa programs and federal laws. All students who are enrolled at the school will be fully vetted, including criminal history checks and for JTTF interest, before any benefit is provided. If a student does appear to have immediate or national security concern that nonimmigrant will be compartmentalized away from the investigation using administrative or criminal apprehension. A series of operational phases were developed during the anticipated three years of operations. The undercover school became operational in fall 2016 and is currently considered to be in

Phase 1 of the operation, the enrollment of students to create a critical mass. Phase 2 is the targeting of criminal violators and using the operation to support other UC activities. Phase 3 includes the prosecution of criminal targets and administrative immigration charges against those aliens who engaged in fraud. █████████████████████████████

Despite being located outside of Michigan, all of these schools have significant numbers of enrolled students authorized for Curricular Practical Training (CPT) living and working within the Detroit AOR.  In addition, HSI Detroit has identified and engaged in undercover email exchanges with a number of individuals who are student recruiters for a number of the above schools.  Also, the Accrediting Counsel for Independent Colleges and Schools (ACICS) recent loss of U.S. Department of Education recognition has led to a large number of foreign students from ACICS schools to be no longer eligible for an 18 month post-graduation work authorization.  As such, these students are frantically seeking out accredited schools that offer immediate work authorization, including the HSI Detroit undercover school. UCAs posing as DSOs have made hundreds of monitored phone calls with aliens seeking fraudulent immigration benefits. In addition, at least 50-videotaped meets have been conducted at the storefront. The CUC is in receipt of proceeds through this UC activity.

Over the next several months, Phase 1 efforts will continue as we transition to Phase 2, the targeting of primarily criminal violators.  UC operations have already identified student recruiters who each have committed numerous violations of 18 U.S.C § 1546, Visa/Immigration Fraud, 8 U.S.C § 1424, Harboring, and 18 U.S.C § 1343, Wire Fraud. UCAs will continue to pose as DSOs and conduct monitored phone calls and email communications with aliens seeking fraudulent immigration benefits.  Numerous additional UC methods will be employed at the storefront including audio/visual surveillance of meets.  HSI Detroit intends to covertly engage suspects in incriminating conversations and acts with the goal of using that information to obtain arrest and search warrants, indictments, convictions, and removal of criminal aliens and those deemed threats to national security.  The initial criminal violations include 18 U.S.C. § 1546, Visa/Immigration Fraud, 18 U.S.C. § 1343, Wire Fraud, 18 U.S.C. § 1546, Fraud and Misuse of visas, permits, and other documents and 18 U.S.C. § 1956, Money Laundering.







██████████████████████████████████████
████████

██████████████████████████████
███████████████████
███████████

**SECURITY OF OPERATION:**

████████████████████████████

███████████████████████████████████
█████████████████████████████
█████████████████████████████
█████████████████████████████
███████████████████████████
█████████████████████████

█. ████████████████████████ All appropriate SOPs and HSI Directives
are followed.

**SAFETY OF PERSONS:**

███████████████████████████████████
███████████████████████████████████
████████

███████████████████████████████████
███████████████████████████████████
███████████████████████████

███████████████████████████████████
█████
███████













*Homeland Security Investigations*
*Office of the Executive Associate Director*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, D.C. 20536

MAR 0 6 2018



**U.S. Immigration and Customs Enforcement**

MEMORANDUM FOR:     Steve K. Francis
Special Agent in Charge, Detroit
Homeland Security Investigations

FROM:     Derek N. Benner
Deputy Executive Associate Director and
Senior Official Performing the Duties of the
HSI Executive Associate Director

SUBJECT:     ███████████████ – Approval and Certification

I have evaluated the request for reauthorization of ███████████ I have also considered the recommendations of the Undercover Review Committee regarding this operation. The proposal includes a request to exempt the project from certain laws and regulations pertaining to government conduct (under the authority of 8 U.S.C. § 1363a and 19 U.S.C. § 2081, as applicable) in the areas listed below. I find the actions authorized by statute are necessary for the conduct of this undercover investigative operation in the Homeland Security Investigations programmatic areas of ███████████, Counter Terrorism/Criminal Exploitation, ███████ Identity & Benefit Fraud, and ███████████████████ I hereby approve and certify ███████████ I authorize ███████████████ to operate, while exempt from certain United States laws and regulations, as allowed by the following statutory authority:

1.    8 U.S.C. § 1363a (a)(1) and 19 U.S.C. § 2081 (a)(1)(A)
(Related to leasing space)

2.    8 U.S.C. § 1363a (a)(2) and 19 U.S.C. § 2081 (a)(1)(B)
(Related to acquiring and operating proprietary businesses)

3.    8 U.S.C. § 1363a (a)(3) and 19 U.S.C. § 2081 (a)(2)
(Related to depositing funds into banks)

4.    8 U.S.C. § 1363a (a)(4) and 19 U.S.C. § 2081 (a)(3)
(Related to using proceeds to offset expenses)

This authorization to operate ███████████ expires on August 31, 2018.

www.ice.gov

**Date Submitted**              : January 10, 2018

**Date of URC**                 : February 21, 2018

**Date of Inception**           : February 11, 2002

**Name of Operation**           : █████████

**Program Code**                : █

**Programmatic Area(s)**        : █████████
                                  Counter Terrorism/Criminal Exploitation
                                  ████████████

**Office Location**             ████████

**Operation Admin Overseer**    : ████████████████

**Operation Group Supervisor**  ████████████████

**Operation Program Manager**   ████████████████

**ULC**                         ████████████████

**Undercover Operative(s)**     ████████████████

**CUFFS Administrator**         ████████████

**Last UOU Field Review**       : 07/17
                                                        ████████



**U.S. Attorney's Office(s)** : Eastern District of Michigan

**CUC OPLA Counsel** :

**Offsite Location**

**Internet Web Site**

**Special Interest Aliens**

**DEA Designated ASAC** :

**Open Cases**

: **Counter Terrorism/Criminal Exploitation**

EDMI, Southern Michigan,

:

**SOU Coordination** :

**Statutory Exemptions Requested:**

1. Use appropriated funds to purchase/lease property, buildings, and other facilities in the United States, the District of Columbia and U.S. territories and possessions
2. Establish or acquire proprietary corporations or business entities as part of the undercover operation, and to operate them on a commercial basis.

3. Deposit appropriated funds and/or proceeds in banks and other financial institutions.
4. Use proceeds from the operation to offset necessary and reasonable expenses incurred in the operation.

## SENSITIVE CIRCUMSTANCES

**DHS**



**ICE**

Investigations and/or operations that continue for ███████████ the first undercover activity.

The undercover operation will require the use of proceeds generated by the undercover operation to offset necessary and reasonable expenses incurred in the operation of the proprietary business.

The undercover operation will require the use of the statutory exemptions under 19 U.S.C. § 2081 and/or 8 U.S.C. § 1363a.

## UNDERCOVER ACTIVITY SUMMARY:



The Counter Terrorism/Criminal Exploitation programmatic area allows HSI Detroit to more efficiently identify student visa violators, recruiters and school administrators who unlawfully exploit the Student Exchange Visitor Information System (SEVIS) system, as well as identify similar institutions that provide a comparable service through the exploitation and circumvention of SEVIS.





**POTENTIAL INVESTIGATIONS AND UNDERCOVER ACTIVITY**





**COUNTER TERRORISM/CRIMINAL EXPLOITATION**

**Operation Paper Chase**
**, Eastern District of Michigan,**

Operation Paper Chase is an investigation targeting Student and Exchange Visitor Program (SEVP) schools, Designated School Officials (DSO), and both legitimate and fraudulent institutions, immigration services businesses, employment agencies/consultancies, and other entities who fraudulently utilize the SEVP to endanger national security, commit visa fraud, smuggle and harbor illegal aliens for profit, launder money, and commit other violations of federal law. The primary UC investigative vehicle supporting the operation is a UC storefront operating as a State of Michigan licensed and nationally accredited private university. The storefront is located in a commercial office building in the greater metropolitan Detroit area and is staffed fulltime by HSI Detroit UCAs. The school also maintains a website and a significant and active social media presence. The UC methods target students who are already present in the United States and predisposed to the criminal activity so that the operation will not directly facilitate the entry of aliens. The covert efforts have resulted in numerous inquiries from students seeking to attend the undercover school without actually attending classes while receiving immediate work authorization in violation of numerous regulations governing the student visa programs and federal laws. All students who are enrolled at the school will be fully vetted, including criminal history checks and for JTTF interest, before any benefit is provided. If a student does appear to have immediate or national security concern, that nonimmigrant will be compartmentalized away from the investigation using administrative or criminal apprehension. A series of operational phases were developed during the anticipated three years of operations. The undercover school became operational in fall 2016 and is currently considered to be in Phase 1 of the operation, the enrollment of students to create a critical mass. Phase 2 is the targeting of criminal violators and using the operation to support other UC activities. Phase 3 includes the prosecution of criminal

targets and administrative immigration charges against those aliens who engaged in fraud.   Since April 2014, HSI Detroit has identified and engaged in undercover email exchanges with individuals who are student recruiters for a number of the above schools.  UCAs posing as DSOs have made hundreds of monitored phone calls with aliens seeking fraudulent immigration benefits.  In addition, at least 50-videotaped meets have been conducted at the storefront.  The CUC is in receipt of proceeds through this UC activity.

Over the next several months, UC operations will continue Phase 2, targeting significant student recruiters.  UC operations have already identified student recruiters who each have committed numerous violations of 18 U.S.C § 1546, Fraud and misuse of visas, permits and other documents; 8 U.S.C § 1324, Bringing in and harboring certain aliens, and 18 U.S.C § 1343, Fraud by wire, radio, or television.  UCAs will continue to pose as DSOs and conduct monitored phone calls and email communications with aliens fraudulently seeking immigration benefits.  Numerous additional UC methods will be employed at the storefront including audio/visual surveillance of meets.  HSI Detroit intends to covertly engage suspects in incriminating conversations and acts with the goal of using that information to obtain arrest and search warrants, indictments, convictions, and removal of criminal aliens and those deemed threats to national security.  The initial criminal violations include 18 U.S.C. § 1343, Fraud by wire, radio, or television; 18 U.S.C. § 1546, Fraud and misuse of visas, permits, and other documents; and 18 U.S.C. § 1956, Laundering of monetary instruments.

No foreign undercover activity is anticipated at this time.









ll appropriate SOPs and HSI Directives are followed.











*Homeland Security Investigations*
*Office of the Executive Associate Director*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, D.C.  20536



SEP 1 0 2018

**U.S. Immigration and Customs Enforcement**

MEMORANDUM FOR:    Steve K. Francis
Special Agent in Charge, Detroit
Homeland Security Investigations

FROM:    Derek N. Benner
Deputy Executive Associate Director and
Senior Official Performing the Duties of the
HSI Executive Associate Director

SUBJECT:    ███████████████ – Approval and Certification

I have evaluated the request for reauthorization of ███████████. I have also considered the recommendations of the Undercover Review Committee regarding this operation.  The proposal includes a request to exempt the project from certain laws and regulations pertaining to government conduct (under the authority of 8 U.S.C. § 1363a and 19 U.S.C. § 2081, as applicable) in the areas listed below.  I find the actions authorized by statute are necessary for the conduct of this undercover investigative operation in the Homeland Security Investigations programmatic areas of ████████, Counter Terrorism/Criminal Exploitation, ████████ Identity & Benefit Fraud, and ████████████████.  I hereby approve and certify ████████████ I authorize ███████████ to operate, while exempt from certain United States laws and regulations, as allowed by the following statutory authority:

1.  8 U.S.C. § 1363a (a)(1) and 19 U.S.C. § 2081 (a)(1)(A)
(Related to leasing space)

2.  8 U.S.C. § 1363a (a)(2) and 19 U.S.C. § 2081 (a)(1)(B)
(Related to acquiring and operating proprietary businesses)

3.  8 U.S.C. § 1363a (a)(3) and 19 U.S.C. § 2081 (a)(2)
(Related to depositing funds into banks)

4.  8 U.S.C. § 1363a (a)(4) and 19 U.S.C. § 2081 (a)(3)
(Related to using proceeds to offset expenses)

This authorization to operate ███████████ expires on February 28, 2019.

www.ice.gov

Appx158



# UNDERCOVER OPERATION
# REAUTHORIZATION REQUEST

**Date Submitted**            : July 25, 2018

**Date of URC**               : August 15, 2018

**Date of Inception**         : February 11, 2002

**Name of Operation**         : ██████████

**Program Code**              : ██

**Programmatic Area(s)**      : ██████████
                                Counter Terrorism/Criminal Exploitation
                                ████████████
                                ██████████████████

**Office Location**           : HSI Detroit
                                ████████████

**Operation Admin Overseer**  : ████████████████████████

**Operation Group Supervisor** : ██████████████████████████████

**Operation Program Manager** : ██████████████████████████

**ULC**                       : ████████████████████████

**Undercover Operative(s)**   : ██████████████████████████
                                ██████████████████████████
                                ██████████████████████████
                                ██████████████████████████

**CUFFS Administrator**       : ██████████████████
                                ████████

**Last UOU Field Review**     : 02/18

**U.S. Attorney's Office(s)** : Eastern District of Michigan

**CUC OPLA Counsel**

**Offsite Location**

**Internet Web Site**

**Special Interest Aliens**

**DEA Designated ASAC** :

**Open Cases**

: **Counter Terrorism/Criminal Exploitation**
            ‐ OPERATION PAPER
CHASE,                          , EDMI,
Southern Michigan,

**SOU Coordination**

**Statutory Exemptions Requested:**

1. Use appropriated funds to purchase/lease property, buildings, and other facilities in the United States, the District of Columbia and U.S. territories and possessions
2. Establish or acquire proprietary corporations or business entities as part of the undercover operation, and to operate them on a commercial basis.
3. Deposit appropriated funds and/or proceeds in banks and other financial institutions.
4. Use proceeds from the operation to offset necessary and reasonable expenses incurred in the operation.

**SENSITIVE CIRCUMSTANCES**

**DHS**



**ICE**

- Investigations and/or operations that continue ████████████ the first undercover activity.

- The undercover operation will require the use of proceeds generated by the undercover operation to offset necessary and reasonable expenses incurred in the operation of the proprietary business.
- The undercover operation will require the use of the statutory exemptions under 19 U.S.C. § 2081 and/or 8 U.S.C. § 1363a.

**UNDERCOVER ACTIVITY SUMMARY:**



The Counter Terrorism/Criminal Exploitation programmatic area allows HSI Detroit to more efficiently identify student visa violators, recruiters and school administrators who unlawfully exploit the Student Exchange Visitor Information System (SEVIS) system, as well as identify similar institutions that provide a comparable service through the exploitation and circumvention of SEVIS.





**COUNTER TERRORISM/CRIMINAL EXPLOITATION**

███████████, OPERATION PAPER CHASE
████████████████, Eastern District of Michigan, ███████████████

Operation Paper Chase is an HSI Detroit  National Security Group (NSG) led investigation targeting Student and Exchange Visitor Program (SEVP) schools, Designated School Officials (DSO) and both legitimate and fraudulent institutions, immigration services businesses, employment agencies/consultancies, and other entities who fraudulently utilize the SEVP to endanger national security, commit visa fraud, smuggle and harbor illegal aliens for profit, launder money, and commit other violations of federal law.  The primary UC investigative vehicle supporting the operation is an undercover (UC) storefront operating as a State of Michigan licensed and nationally accredited private university.  The storefront is in a commercial office building in the greater metropolitan Detroit area and is staffed fulltime by HSI Detroit UCAs.  The school also maintains a website and a significant and active social media presence.  The identification of students seeking to solely maintain their immigration status and obtain work authorization is being conducted using a variety of methods: the analysis of SEVP student data is used to identify patterns of enrollment consistent with past fraud, UCAs visiting online forums frequented by foreign students, and targeted marketing on known social media platforms that engage in criminal activity. These initial methods also ensure that the students are already present in the United States and predisposed to the criminal activity so that the operation will not directly facilitate the entry of aliens.  However, there remains the likelihood that operations will have a foreign nexus, including phone calls, emails, financial transactions, and travel.  This undercover activity will be closely coordinated with the appropriate U.S. law enforcement representatives in the countries or regions where they occur. The covert efforts have resulted in numerous inquiries from students seeking to attend the undercover school without actually attending classes, while receiving immediate work authorization in violation of

numerous regulations governing the student visa programs and federal laws.  All students who are enrolled at the school will be fully vetted, including criminal history checks and for JTTF interest, before any benefit is provided.  If a student does appear to have immediate or national security concern, that nonimmigrant will be compartmentalized away from the investigation using administrative or criminal apprehension.  Additionally, HSI Detroit expects to further identify and seize criminal assets and eliminate national security threats by dismantling criminal organizations that allow non-immigrants to obtain immigration status fraudulently and operate within the U.S. with impunity.  At the start of the operation and in conjunction with the U.S. Attorney's Office for the Eastern District of Michigan, a series of operational phases were developed during the anticipated three years of operations including: Phase 1, enrollment of students to create a critical mass, Phase 2, targeting of criminal violators and using the operation to support other UC activities, and Phase 3 which includes the prosecution of criminal targets and administrative immigration charges against those aliens who engaged in fraud.  In January 2018, Phase 1 was deemed complete.  Current enrollment exceeds 600 students.  Efforts continue to restrict further growth.  Phase 2 is now focusing on the identification of criminal actors, both individuals and entities.  We currently have 7 recruiters deemed criminal targets.  They are collectively responsible for approximately 400 enrolled students and have been paid over $80,000 in POE.  We also have a student who is an alien member of the U.S. Army under the MAVSI (Military Accessions Vital to National Interests) program, which allows for accelerated naturalization.  Prosecution for attempted naturalization fraud has been accepted.

In addition, HSI Detroit has identified and engaged in undercover email exchanges with a number of individuals who were student recruiters for a number of the above schools.  They have provided detailed accounts what is actually required of students in these programs: Curriculum Practical Training (CPT) authorization on Day 1, lack of attendance does not affect SEVIS status, etc.  In addition, the continuing issues surrounding the Accrediting Counsel for Independent Colleges and Schools (ACICS) has led to a large number of foreign students from ACICS schools to be no longer eligible for an 18-month post-graduation science, technology, engineering and math (STEM) work authorization.  As such these, students are frantically seeking out accredited schools that offer immediate work authorization, including the HSI Detroit undercover school. In the past month, UCAs have conducted hundreds of monitored phone conversations and a number UC meets at the storefront, including "walk-ins", with students seeking Day 1 CPT with the desire to engage in fraud so they can "pay to stay and work" without going to school or obtaining an education.  The UC University had a large volume of requests from students for fraudulent academic transcripts and attendance records to reply to the increased issuance by U.S. Citizenship and Immigration Services (USCIS) of Notice of Intent to Deny their H1B visa adjustment applications.

HSI Detroit anticipates continuance of Phase 2 through the next six months, during which, UCAs will continue to pose as DSOs and conduct monitored phone calls and email communications with aliens seeking fraudulent immigration benefits.  Numerous additional UC methods will be employed at the storefront, including audio/visual surveillance of meets.  HSI Detroit intends to covertly engage suspects in incriminating conversations and acts with the goal of using that information to obtain arrest and search warrants, indictments, convictions,

and removal of criminal aliens and those deemed threats to national security.  The initial criminal violations include 18 U.S.C. § 371, Conspiracy, 18 U.S.C. § 1546, Fraud and misuse of visas, permits, and other documents, 18 U.S.C. § 1343, Fraud by wire, radio, or television, and 18 U.S.C. § 1956, Laundering of monetary instruments.

No foreign undercover activity is anticipated at this time.









Appx169



All appropriate SOPs and HSI Directives are followed.











*Homeland Security Investigations*
*Office of the Executive Associate Director*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, D.C. 20536

MAR 1 5 2019



**U.S. Immigration and Customs Enforcement**

MEMORANDUM FOR:     Steve K. Francis
                    Special Agent in Charge, Detroit
                    Homeland Security Investigations

FROM:               Derek N. Benner
                    Executive Associate Director
                    Homeland Security Investigations

SUBJECT:            ██████████████ – Approval and Certification

I have evaluated the request for reauthorization of ████████████ I have also considered the recommendations of the Undercover Review Committee regarding this operation. The proposal includes a request to exempt the project from certain laws and regulations pertaining to government conduct (under the authority of 8 U.S.C. § 1363a and 19 U.S.C. § 2081, as applicable) in the areas listed below. I find the actions authorized by statute are necessary for the conduct of this undercover investigative operation in the Homeland Security Investigations programmatic areas of ███████████ Counter Terrorism/Criminal Exploitation, ████████ Identity & Benefit Fraud, and ██████████████████ I hereby approve and certify ████████████. I authorize ███████████ to operate, while exempt from certain United States laws and regulations, as allowed by the following statutory authority:

1.   8 U.S.C. § 1363a (a)(1) and 19 U.S.C. § 2081 (a)(1)(A)
     (Related to leasing space)

2.   8 U.S.C. § 1363a (a)(2) and 19 U.S.C. § 2081 (a)(1)(B)
     (Related to acquiring and operating proprietary businesses)

3.   8 U.S.C. § 1363a (a)(3) and 19 U.S.C. § 2081 (a)(2)
     (Related to depositing funds into banks)

4.   8 U.S.C. § 1363a (a)(4) and 19 U.S.C. § 2081 (a)(3)
     (Related to using proceeds to offset expenses)

This authorization to operate ███████████ expires on August 31, 2019.

www.ice.gov



# UNDERCOVER OPERATION
# REAUTHORIZATION REQUEST

**Date Submitted**              : January 9, 2019

**Date of URC**                 : February 20, 2019

**Date of Inception**           : February 11, 2002

**Name of Operation**           : ███████

**Program Code**                : ██

**Programmatic Area(s)**        : █████████
                                  Counter Terrorism/Criminal Exploitation
                                  ██████
                                  ████████
                                  ███████████

**Office Location**             : HSI Detroit
                                  ████████
                                  ██████
                                  ████████

**Operation Admin Overseer**    : ████████████████████

**Operation Group Supervisor**  : █████████████████████

**Operation Program Manager**   : ███████████████

**ULC**                         : ██████████████
                                  ██████████████

**Undercover Operative(s)**     : ████████████████
                                  █████████████████
                                  ████████████████
                                  █████████████████
                                  ██████████████████
                                  █████████████████

**CUFFS Administrator**         : ███████████████
                                  ███████

**Last UOU Field Review**       : 08/18

**U.S. Attorney's Office(s)**          : Eastern District of Michigan
██████████████████
████████████

**CUC OPLA Counsel**          :██████████████████

**Offsite Location**          ███████████

**Internet Web Site**          : Yes. www.universityoffarmington.edu CTCEU, ████████
████████████████████
██████████████████████████
████████████████████

**Special Interest Aliens**          :██

**DEA Designated ASAC**          :██████████████████████

**Open Cases**          ████████████
██████████████
██████████████
██████████████████

: **Counter Terrorism/Criminal Exploitation**
████████████ - OPERATION PAPER
CHASE, ████████████████, EDMI,
Southern Michigan, ██████████

:████████
████████████████████████████
████████████████

████████████████████████
██████████████████

████████████████████████
██████████████████████

████████████████
███████████████████████████
██████████████████

██████████████████
██████████████████

██████████████████
████████████████████████

██████████████████████████████████

**SOU Coordination** :██████████████

**Statutory Exemptions Requested:**

1. Use appropriated funds to purchase/lease property, buildings, and other facilities in the United States, the District of Columbia and U.S. territories and possessions
2. Establish or acquire proprietary corporations or business entities as part of the undercover operation, and to operate them on a commercial basis.
3. Deposit appropriated funds and/or proceeds in banks and other financial institutions.
4. Use proceeds from the operation to offset necessary and reasonable expenses incurred in the operation.

## <u>SENSITIVE CIRCUMSTANCES</u>

**DHS**

- ██ ████████████████████████████████
  ███████████████████████████████
  ██████████████████████████████
  ████████████████████████
- ██ ████████████████████████████████
  ███████████

**ICE**

- ██ Investigations and/or operations that continue ████████████ the first undercover activity.
- ██ ███████████████████████████████
  ███████████████████
- ██ ████████████████████████████████
  ████████████████████████████████
  ███████████████████████████
  ██████████████████████
- ██ ████████████████████████████████
  ██████████████████
- ██ The undercover operation will require the use of proceeds generated by the undercover operation to offset necessary and reasonable expenses incurred in the operation of the proprietary business.
- ██ The undercover operation will require the use of the statutory exemptions under 19 U.S.C. § 2081 and/or 8 U.S.C. § 1363a.

■ ████████████████████████████████████████
████████████████████████████████████████████
████████████████

## UNDERCOVER ACTIVITY SUMMARY:

████████████████████████████████████████
████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
███████████████████

████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
████████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████

████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
████████████████████████████████████████
█████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
███████████████████████████

The Counter Terrorism/Criminal Exploitation programmatic area allows HSI Detroit to more efficiently identify student visa violators, recruiters and school administrators who unlawfully exploit the Student Exchange Visitor Information System (SEVIS) system, as well as identify similar institutions that provide a comparable service through the exploitation and circumvention of SEVIS. ██████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████



**Op** ▮▮▮▮▮▮ *FOUO - Law Enforcement Sensitive Page 5 of 19*

**COUNTER TERRORISM/CRIMINAL EXPLOITATION**

████████████████ **OPERATION PAPER CHASE**
████████████████████ **, Eastern District of Michigan,** ████████████████

Operation Paper Chase is an HSI Detroit National Security Group (NSG) led investigation

*Op* ████████████ *FOUO - Law Enforcement Sensitive Page 6 of 19*

targeting Student and Exchange Visitor Program (SEVP) schools, Designated School Officials (DSO) and both legitimate and fraudulent institutions, immigration services businesses, employment agencies/consultancies, and other entities who fraudulently utilize the SEVP to endanger national security, commit visa fraud, smuggle and harbor illegal aliens for profit, launder money, and commit other violations of federal law.  The primary UC investigative vehicle supporting the operation is an undercover (UC) storefront operating as a State of Michigan licensed and nationally accredited private university.  The storefront is in a commercial office building in the greater metropolitan Detroit area and is staffed fulltime by HSI Detroit UCAs.  The school also maintains a website and a significant and active social media presence.  The identification of students seeking to solely maintain their immigration status and obtain work authorization is being conducted using a variety of methods: the analysis of SEVP student data is used to identify patterns of enrollment consistent with past fraud, UCAs visiting online forums frequented by foreign students, and targeted marketing on known social media platforms that engage in criminal activity. These initial methods also ensure that the students are already present in the United States and predisposed to the criminal activity so that the operation will not directly facilitate the entry of aliens.  However, there remains the likelihood that operations will have a foreign nexus, including phone calls, emails, financial transactions, and travel.  This undercover activity will be closely coordinated with the appropriate U.S. law enforcement representatives in the countries or regions where they occur. The covert efforts have resulted in numerous inquiries from students seeking to attend the undercover school without attending classes, while receiving immediate work authorization in violation of numerous regulations governing the student visa programs and federal laws.  All students who are enrolled at the school will be fully vetted, including criminal history checks and for JTTF interest before any benefit is provided.  If a student does appear to have immediate or national security concern, that nonimmigrant will be compartmentalized away from the investigation using administrative or criminal apprehension. Additionally, HSI Detroit expects to further identify and seize criminal assets and eliminate national security threats by dismantling criminal organizations that allow non-immigrants to obtain immigration status fraudulently and operate within the U.S. with impunity.  At the start of the operation and in conjunction with the U.S. Attorney's Office for the Eastern District of Michigan, a series of operational phases were developed during the anticipated three years of operations including: Phase 1, enrollment of students to create a critical mass, Phase 2, targeting of criminal violators and using the operation to support other UC activities, and Phase 3 which includes the prosecution of criminal targets and administrative immigration charges against those aliens who engaged in fraud.  In January 2018, Phase 1 was deemed complete. Current enrollment exceeds 600 students.  Enrollment has closed, and the school has stopped accepting students.  Phase 2 is complete and HSI Detroit has identified eight brokers who recruited students to the university. The brokers have received fees both from the students and the university and one broker has recruited nearly 400 students.  To date, UCAs have paid the brokers approximately $120,000 in Payment of Evidence (POE) as part of the conspiracy.  In addition, one broker has received nearly $180,000 in Money Laundering (MLD) points after taking a portion of the student's tuition fees as payment. Currently, HSI Detroit is planning for the implementation of Phase 3 which will include a nationwide enforcement action scheduled for January 30, 2019.  The operation will involve the federal criminal arrest of 8 to 10 targets and the administrative arrest of approximately 750 aliens located in 38 states.  This number includes both current students and those who have been terminated. Aliens who have transferred to another school or who have a received H1B status will be evaluated on a case by case basis by each local office in

*Op*███████ *FOUO - Law Enforcement Sensitive Page 7 of 19*

consultation with OPLA to determine if they are amenable to removal proceedings.

In March 2019, agents will work in an undercover capacity with students who continue to provide information on other student recruiter targets and other suspect universities involved in alleged criminal activities. Agents have also identified an alleged marriage fraud ring and will continue to communicate with identified targets in an undercover capacity using undercover assets.  The initial criminal violations include 18 U.S.C. § 371, Conspiracy, 18 U.S.C. § 1546, Fraud and misuse of visas, permits, and other documents, 18 U.S.C. § 1343, Fraud by wire, radio, or television, and 18 U.S.C. § 1956, Laundering of monetary instruments.

No foreign undercover activity is anticipated at this time.

*Op* ███████████ *FOUO - Law Enforcement Sensitive Page 8 of 19*



*Op* ▮▮▮▮▮▮ *FOUO - Law Enforcement Sensitive Page 9 of 19*









All appropriate SOPs and HSI Directives are followed.









*Op* ███ *FOUO - Law Enforcement Sensitive Page 17 of 19*



EXHIBIT C



# International Students

## Application for Admission

**All International Students, both undergraduate and graduate, must complete the form below.** Return completed applications to University of Farmington, Office of Admissions, 30500 Northwestern Highway, Suite 210, Farmington Hills, MI 48335 or email to admissions@universityoffarmington.edu. **A non-refundable application fee of $100 is required prior to processing.** Payments may accompany application or be invoiced upon receipt.

### General Information

Check one: ☐ Undergraduate application   ☑ Graduate application

Tiyyagura                    Ravi                    Teja

1. Family name          First          Middle          Maiden

2. Gender ☑ Male ☐ Female   3. Date of birth *[Month/Day/Year]* 10 / 27 / 1992   4. Place of birth *[City, Country]* Hydreabad,India

2525 Old farm rd    Apt-428

5. Mailing address *(This address will be used for all university correspondence)*          *Number and Street*          *Apt #*

Houston                    Texas                    77063                    US

*City*          *State or Province*          *Postal Code*          *Country*

6. Permanent address *(In your home country)*   *Number and Street*          *Apt #*

*City*          *State or Province*          *Postal Code*          *Country*

raviteja.reddy14@gmail.com

7. Primary email          Secondary email          Phone number

8. Which of the following do you consider to be your racial/ethnic background? Please check any that apply.

☑ Asian   ☐ Black/African American   ☐ Hispanic/Latino   ☐ Pacific Islander   ☐ White/Caucasian   ☐ Other

9. What is your native language? Telugu

### Citizenship

10. Country of citizenship India          Passport Number (attach copy)

11. Are you a permanent resident of the United States? *(If yes, please submit a copy of your green card)* ☐ Yes ☑ No

12. Are you currently inside the U.S. on a valid visa? ☑ Yes ☐ No   If yes, what visa do you have? F-1(EAD)

13. What type of visa will you use to study at UF? ☑ F-1 ☐ J-1 ☐ Other_____

14. Have you applied to **UF** before? ☐ Yes ☑ No   15. To which session and year are you applying now? Winter 2016

16. What type of student will you be? ☐ Non-degree-seeking student   ☐ Visiting/Exchange student   ☑ Degree-seeking student

17. At which level will you study? ☐ Bachelor's ☑ Master's

18. What is your intended academic major and degree? MS – Information Technology

A nationally accredited institution authorized to enroll international students by the U.S. Department of Homeland Security.

## Educational Background

19.  Please list all high schools and universities you have attended.

| Name of High School or University | Country | Start Date (Month/Year) | End Date (Month/Year) | Degree Earned |
|---|---|---|---|---|
| NPU | US | Aug 2015 | Dec 2016 | Master |
| JNTUH | India | Oct2010 | May2014 | bachelor |
| Ratna junior college | India | June2009 | Mar2010 | high school |
| | | | | |

20.  If you have not graduated from your current school, list each class you are taking in your final year.

| Semester 1 | | Semester 2 | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

21.  Are you on probation, suspension or dismissal at another college or university?  ☐ Yes  ☑ No   If yes, please explain.

22.  Please list scores and test dates for any exams you have completed.

| Exams | Scores | Test date |
|---|---|---|
| TOEFL/IELTS | | |
| ACT/SAT | | |
| GRE/GMAT | | |

23.  How did you learn about the University of Farmington?

## Emergency Contact

24. ☑ Parent/Guardian   ☑ Spouse   ☑ Other

Family name          First          Middle

Phone number          Email          Address

## Attestation

25.  Did an agency help you with your application to UF?  ☑ Yes  ☑ No

If yes, write the name of the agency or company that assisted you.

26.  I certify that the information provided on this application is true and complete. I understand that the misrepresentation of facts will be cause for refusal or revocation of admission to the university.

T. Ravi Teja                                        02-13-2018

Legal Signature                                      Date

Appx197

EXHIBIT D



University of Farmington
*Office of Admissions*
30500 Northwestern Highway
Farmington Hills, MI 48334

February 15, 2018

Ravi Teja Tiyyagura
2525 Old Farm Rd.
Apt. #: 428
Houston, TX  77063

Dear Ravi Teja,

It is with great pleasure to inform you of your admission to the University of Farmington for the Spring 2017 Quarter, Session one, beginning March 5, 2018.

You were chosen from the largest and most competitive applicant pool in the institution's history for this opportunity. On behalf of myself and our faculty, students, and alumni - congratulations and welcome to the global community that is the University of Farmington!

Your admission to the University of Farmington is a reflection on your past academic achievements and future goals. We are confident in your ability to prosper and succeed at the University of Farmington.

At the University of Farmington, you will be part of a diverse community, where undergraduate, graduate, and international students work alongside renowned faculty in an environment of ingenuity, creativity, and innovation.  The professional faculty at the University of Farmington are drawn directly from business and industry and will provide you experiences needed to succeed in your career by exposing you to a blend of traditional, applied, and practical educational opportunities.

The opportunities a degree from the University of Farmington holds are endless.

If you have any further questions regarding your acceptance and next steps in the admissions process, please contact us at admissions@universityoffarmington.edu.

The University of Farmington community welcomes you, and I personally look forward to greeting you on campus.

Sincerely,

*Carey Ferrante*

Carey Ferrante
Assistant Director of Admissions

248.702.6316                                                admissions@universityoffarmington.edu

A nationally accredited institution authorized to enroll international students by the U.S. Department of Homeland Security.

Appx199

**Department of Homeland Security**
U.S. Immigration and Customs Enforcement

I-20, Certificate of Eligibility for Nonimmigrant Student Status
OMB NO. 1653-0038

## SEVIS ID:  N0013638381

| | | Class of Admission |
|---|---|---|
| **SURNAME/PRIMARY NAME** Tiyyagura | **GIVEN NAME** Ravi Teja | |
| **PREFERRED NAME** Ravi Teja Tiyyagura | **PASSPORT NAME** | **F-1** |
| **COUNTRY OF BIRTH** INDIA | **COUNTRY OF CITIZENSHIP** INDIA | |
| **DATE OF BIRTH** 27 OCTOBER 1992 | **ADMISSION NUMBER** | |
| **FORM ISSUE REASON** CONTINUED ATTENDANCE | **LEGACY NAME** Ravi Teja Tiyyagura | **ACADEMIC AND LANGUAGE** |

### SCHOOL INFORMATION

| | |
|---|---|
| **SCHOOL NAME** University of Farmington University of Farmington | **SCHOOL ADDRESS** 30500 Northwestern Highway, Farmington Hills, MI 48334 |
| **SCHOOL OFFICIAL TO CONTACT UPON ARRIVAL** Ali Milani Director of International Admissions | **SCHOOL CODE AND APPROVAL DATE** DET214F45311000 12 JULY 2016 |

### PROGRAM OF STUDY

| | | |
|---|---|---|
| **EDUCATION LEVEL** MASTER'S | **MAJOR 1** Information Technology 11.0103 | **MAJOR 2** None 00.0000 |
| **PROGRAM ENGLISH PROFICIENCY** Required | **ENGLISH PROFICIENCY NOTES** Student is proficient | **EARLIEST ADMISSION DATE** |
| **START OF CLASSES** 05 MARCH 2018 | **PROGRAM START/END DATE** 21 FEBRUARY 2018 - 31 MARCH 2020 | |

### FINANCIALS

| **ESTIMATED AVERAGE COSTS FOR:** 12 MONTHS | | **STUDENT'S FUNDING FOR:** 12 MONTHS | |
|---|---|---|---|
| Tuition and Fees | $  10,000 | Personal Funds | $   2,500 |
| Living Expenses | $   8,500 | Funds From This School | $     0 |
| Expenses of Dependents (0) | $     0 | Family support. | $  25,000 |
| Insurance, books, etc. | $   2,000 | On-Campus Employment | $     0 |
| TOTAL | $  20,500 | TOTAL | $  27,500 |

### REMARKS

CPT authorization for required externship.

### SCHOOL ATTESTATION

I certify under penalty of perjury that all information provided above was entered before I signed this form and is true and correct. I executed this form in the United States after review and evaluation in the United States by me or other officials of the school of the student's application, transcripts, or other records of courses taken and proof of financial responsibility, which were received at the school prior to the execution of this form. The school has determined that the above named student's qualifications meet all standards for admission to the school and the student will be required to pursue a full program of study as defined by 8 CFR 214.2(f)(6). I am a designated school official of the above named school and am authorized to issue this form.

| X _____ | **DATE ISSUED** | **PLACE ISSUED** |
|---|---|---|
| **SIGNATURE OF:** Ali Milani, Director of International Admissions | 02 March 2018 | Farmington Hills,MI |

### STUDENT ATTESTATION

I have read and agreed to comply with the terms and conditions of my admission and those of any extension of stay. I certify that all information provided on this form refers specifically to me and is true and correct to the best of my knowledge. I certify that I seek to enter or remain in the United States temporarily, and solely for the purpose of pursuing a full program of study at the school named above. I also authorize the named school to release any information from my records needed by DHS pursuant to 8 CFR 214.3(g) to determine my nonimmigrant status. **Parent or guardian, and student, must sign if student is under 18.**

| X _____ | | |
|---|---|---|
| **SIGNATURE OF:** Ravi Teja Tiyyagura | **DATE** | |
| | X _____ | |
| **NAME OF PARENT OR GUARDIAN** | **SIGNATURE** | **ADDRESS** (city/state or province/country)   **DATE** |

**ICE Form I-20 (3/31/2018)**

Appx200

Page 1 of 3

**Department of Homeland Security**
U.S. Immigration and Customs Enforcement

I-20, Certificate of Eligibility for Nonimmigrant Student Status
OMB NO. 1653-0028

---

## SEVIS ID: N0013638381 (F-1)          NAME: Ravi Teja Tiyyagura

### EMPLOYMENT AUTHORIZATIONS

| TYPE | FULL/PART-TIME | STATUS | START DATE | END DATE |
|------|----------------|--------|-----------|----------|
| CPT | FULL TIME | APPROVED | 02 MARCH 2018 | 28 FEBRUARY 2019 |

### EMPLOYER INFORMATION

| TYPE | | AUTHORIZATION DATES | |
|------|--|---------------------|--|
| CPT | | 02 MARCH 2018 - 28 FEBRUARY 2019 | |
| **EMPLOYER NAME** | **START DATE** | **END DATE** | **CITY & STATE** |
| Sira Consulting Inc | 02 MARCH 2018 | 28 FEBRUARY 2019 | Houston, TX |

### CHANGE OF STATUS/CAP-GAP EXTENSION

### AUTHORIZED REDUCED COURSE LOAD

### CURRENT SESSION DATES

| CURRENT SESSION START DATE | CURRENT SESSION END DATE |
|----------------------------|--------------------------|
| 05 MARCH 2018 | 31 MAY 2018 |

### TRAVEL ENDORSEMENT

This page, when properly endorsed, may be used for re-entry of the student to attend the same school after a temporary absence from the United States. Each endorsement is valid for one year.

| Designated School Official | TITLE | SIGNATURE | DATE ISSUED | PLACE ISSUED |
|----------------------------|-------|-----------|-------------|--------------|
| | | X | | |
| | | X | | |
| | | X | | |
| | | X | | |

Appx201

**ICE Form I-20 (3/31/2018)**                                                                 Page 2 of 3

**Department of Homeland Security**
U.S. Immigration and Customs Enforcement

I-20, Certificate of Eligibility for Nonimmigrant Student Status
OMB NO. 1653-0038

---

**INSTRUCTIONS TO STUDENTS**

**STUDENT ATTESTATION.** You should read everything on this page carefully. Be sure that you understand the terms and conditions concerning your admission and stay in the United States as a nonimmigrant student before signing the student attestation on page 1 of the Form I-20 A-B. The law provides severe penalties for knowingly and willfully falsifying or concealing a material fact, or using any false document in the submission of this form.

**FORM I-20.** The Form I-20 (this form) is the primary document to show that you have been admitted to school in the United States and that you are authorized to apply for admission to the United States in an F-1 class of admission. You must have your Form I-20 with you at all times. If you lose your Form I-20, you must request a new one from your designated school official (DSO) at the school named on your Form I-20.

**VISA APPLICATION.** You must give this Form I-20 to the U.S. consular officer at the time you apply for a visa (unless you are exempt from visa requirements). If you have a Form I-20 from more than one school, be sure to present the Form I-20 for the school you plan to attend. Your visa will include the name of that school, and you must attend that school upon entering the United States. You must also provide evidence of support for tuition and fees and living expenses while you are in the United States.

**ADMISSION.** When you enter the United States, you must present the following documents to the officer at the port of entry: 1) a Form I-20; 2) a valid F-1 visa(unless you are exempt from visa requirements); 3) a valid passport; and 4) evidence of support for tuition and fees and living expenses while you are in the United States. The agent should return all documents to you before you leave the inspection area.

**REPORT TO SCHOOL NAMED ON YOUR FORM I-20 AND VISA.** Upon your first entry to the United States, you must report to the DSO at the school named on your Form I-20 and your F-1 visa (unless you are exempt from visa requirements). If you decide to attend another school before you enter the United States, you must present a Form I-20 from the new school to a U.S. consular officer for a new F-1 visa that names the new school. Failure to enroll in the school, by the program start date on your Form I-20 may result in the loss of your student status and subject you to deportation.

**EMPLOYMENT.** Unlawful employment in the United States is a reason for terminating your F-1 status and deporting you from the United States. You may be employed on campus at your school. You may be employed off-campus in curricular practical training (CPT) if you have written permission from your DSO. You may apply to U.S. Citizenship and Immigration Services (USCIS) for off-campus employment authorization in three circumstances: 1) employment with an international organization; 2) severe and unexpected economic hardship; and 3) optional practical training (OPT) related to your degree. You must have written authorization from USCIS before you begin work. Contact your DSO for details. Your spouse or child (F-2 classification) may not work in the United States

**PERIOD OF STAY.** You may remain in the United States while taking a full course of study or during authorized employment after your program. F-1 status ends and you are required to leave the United States on the earliest of the following dates: 1) the program end date on your Form I-20 plus 60 days; 2) the end date of your OPT plus 60 days; or 3) the termination of your program for any other reason. Contact your DSO for details.

**EXTENSION OF PROGRAM.** If you cannot complete the education program by the program end date on page 1 of your Form I-20, you should contact your DSO at least 15 days before the program end date to request an extension.

**SCHOOL TRANSFER.** To transfer schools, first notify the DSO at the school you are attending of your plan to transfer, then obtain a Form I-20 from the DSO at the school you plan to attend. Return the Form I-20 for the new school to the DSO at that school within 15 days after beginning attendance at the new school. The DSO will then report the transfer to the Department of Homeland Security (DHS). You must enroll in the new school at the next session start date. The DSO at the new school must update your registration in SEVIS.

**NOTICE OF ADDRESS.** When you arrive in the United States, you must report your U.S. address to your DSO. If you move, you must notify your DSO of your new address within 10 days of the change of address. The DSO will update SEVIS with your new address.

**REENTRY.** F-1 students may leave the United States and return within a period of five months.To return, you must have: 1) a valid passport; 2) a valid F-1 student visa (unless you are exempt from visa requirements); and 3) your Form I-20, page 2, properly endorsed for reentry by your DSO. If you have been out of the United States for more than five months, contact your DSO

**AUTHORIZATION TO RELEASE INFORMATION BY SCHOOL.** DHS requires your school to provide DHS with your name, country of birth, current address, immigration status, and certain other information on a regular basis or upon request. Your signature on the Form I-20 authorizes the named school to release such information from your records.

**PENALTY.** To maintain your nonimmigrant student status, you must: 1) remain a full-time student at your authorized school; 2) engage only in authorized employment; and 3) keep your passport valid. Failure to comply with these regulations will result in the loss of your student status and subject you to deportation.

**INSTRUCTIONS TO SCHOOLS**

Failure to comply with 8 CFR 214.3(k) and 8 CFR 214.4 when issuing Forms I-20 will subject you and your school to criminal prosecution. If you issue this form improperly, provide false information, or fail to submit required reports, DHS may withdraw its certification of your school for attendance by nonimmigrant students.

**ISSUANCE OF FORM I-20.** DSOs may issue a Form I-20 for any nonimmigrant your school has accepted for a full course of study if that person: 1) plans to apply to enter the United States in F-1 status; 2) is in the United States as an F-1 nonimmigrant and plans to transfer to your school; or 3) is in the United States and will apply to change nonimmigrant status to F-1. DSOs may also issue the Form I-20 to the spouse or child (under the age of 21) of an F-1 student to use to enter or remain in the United States as an F-2 dependent. DSOs must sign where indicated at the bottom of page 1 of the Form I-20 to attest that the form is completed and issued in accordance with regulations.

**ENDORSEMENT OF PAGE 2 FOR REENTRY.** If there have been no substantive changes in information, DSOs may endorse page 2 of the Form I-20 for the student and/or the F-2 dependents to reenter the United States. If there have been substantive changes, the DSO should issue and sign a new Form I-20 that includes those changes.

**RECORDKEEPING.** DHS may request information concerning the student's immigration status for various reasons. DSOs should retain all evidence of academic ability and financial resources on which admission was based, until SEVIS shows the student's record completed or terminated.

**AUTHORITY FOR COLLECTING INFORMATION.** Authority for collecting the information on this and related student forms is contained in 8 U.S.C. 1101 and 1184. The Department of State and DHS use this information to determine eligibility for the benefits requested.The law provides severe penalties for knowingly and willfully falsifying or concealing a material fact, or using any false document in the submission of this form.

**REPORTING BURDEN.** U.S. Immigration and Customs Enforcement collects this information as part of its agency mission under the Department of Homeland Security. The estimated average time to review the instructions, search existing data sources, gather and maintain the needed data, and complete and review the collection of information is 30 minutes (.50 hours) per response. An agency may not conduct or sponsor, and a person is not required to respond to an information collection unless a form displays a currently valid OMB Control number. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to: Office of the Chief Information Officer/Forms Management Branch, U.S. Immigration and Customs Enforcement. 801 I Street NW Stop 5800, Washington, DC 20536-5800. Do not send the form to this address.

---

**ICE Form I-20 (3/31/2018)**

Appx202

Page 3 of 3

EXHIBIT E

| | |
|---|---|
| **From:** | Vinith errabelli |
| **To:** | carey.ferrante@universityoffarmington.edu |
| **Cc:** | raviteja reddy |
| **Subject:** | Raviteja Tiyyagura |
| **Date:** | Wednesday, March 21, 2018 12:25:18 PM |

Hai Carey, Raviteja Tiyyagura didnt receive student id and CPT i20 hard copies, he paid 2500$, plz mail him tho his address which is on his file.

Thanks
VIn

EXHIBIT F

| | |
|---|---|
| **From:** | studentaccounts@universityoffarmington.edu |
| **To:** | "raviteja reddy" |
| **Subject:** | RE: HIGH PRIORITY EMAIL - H1B RFE |
| **Date:** | Friday, November 9, 2018 10:50:00 AM |
| **Attachments:** | image004.png |

Mr. Tiyyagura,

Please refrain from sending the same email to multiple school email accounts.  It is unnecessary and creates more work on our end thus causing a delay in your request.

Please send all transcript requests to transcripts@universityoffarmington.edu.  Please allow 3-4 weeks to process your request for transcripts.  Because you are enrolled under the "special arrangement" and have not been attending any classes since your admission here, we have to deceitfully make up these classes/documents for you.

Please remember to keep this "special arrangement" to yourself so neither you or the school gets in to trouble because it is illegal.

Regards,

Office of Student & International Affairs

University of Farmington

30500 Northwestern Highway, Suite 210

Farmington Hills, MI 48334



A nationally accredited institution authorized to enroll international students by the U.S. Department of Homeland Security.

ACCSC

**From:** raviteja reddy <raviteja.reddy14@gmail.com>
**Sent:** Thursday, November 8, 2018 12:39 PM
**To:** info@universityoffarmington.edu; studentaccounts@universityoffarmington.edu
**Subject:** HIGH PRIORITY EMAIL - H1B RFE

Hi Team,

Hope this email finds you well .

I am Ravi Teja Tiyyagura  My Employer has filed H1B visa for this year and it has got picked in the lottery (Receipt Number - WAC1816351012). But I got an RFE from USCIS to provide some more Documents from my school to move forward.  I have attached RFE document . Can you please provide me the concerned documentation so that i can submit my RFE . Thank you .

Regards,
Ravi

October 18, 2018

**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
California Service Center
Laguna Niguel, CA 92607-0590



**U.S. Citizenship
and Immigration
Services**



SIRA CONSULTING INC
c/o SUNITA THEREJA KAPOOR
LAW OFFICE OF SUNITA KAPOOR PC
2825 WILCREST DR STE 615
HOUSTON, TX 77042

WAC1816351012

Form I-129, Petition for a Nonimmigrant Worker

<u>**REQUEST FOR EVIDENCE**</u>

**IMPORTANT: THIS NOTICE CONTAINS YOUR UNIQUE NUMBER. THE ORIGINAL
NOTICE MUST BE SUBMITTED WITH THE REQUESTED EVIDENCE.**

You are receiving this notice because U.S. Citizenship and Immigration Services (USCIS) requires
additional evidence to process your form. Please provide the evidence requested below. Include
duplicate copies if you are requesting consular notification.

**Your response must be received in this office by January 13, 2019.**

Please note that you have been allotted the maximum period allowed for responding to a Request for
Evidence (RFE). The time period for responding cannot be extended. Title 8, Code of Federal
Regulations (8 CFR) § 103.2(b)(8)(iv). Because many immigration benefits are time sensitive, you are
encouraged to respond to this request as early as possible, but no later than the deadline provided
above. If you do not respond to this notice within the allotted time, your case may be denied. The
regulations do not provide for an extension of time to submit the requested evidence.

You must submit all requested evidence at the same time. If you submit only some of the requested
evidence, USCIS will consider your response a request for a decision on the record. 8 CFR
§ 103.2(b)(11).

If you submit a document in any language other than English, the document must be accompanied by a
full and **complete** English translation. The translator must certify that the translation is accurate and he
or she is competent to translate from that language to English. **If you submit a foreign language
translation in response to this request for evidence, you must also include a copy of the foreign
language document.**

Processing of your Form I-129 will resume upon receipt of your response. If you have not heard from
USCIS within **60 days of responding**, you may contact the USCIS Contact Center at **1-800-375-5283**.
If you are hearing impaired, please call the USCIS Contact Center TDD at **1-800-767-1833**.

On April 12, 2018, your organization, SIRA CONSULTING INC, filed a Petition for a Nonimmigrant
Worker (Form I-129), with U.S. Citizenship and Immigration Services (USCIS), seeking to classify

TIYYAGURA, RAVI TEJA (beneficiary) as a temporary worker in a specialty occupation (H-1B) under section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act (INA).

A specialty occupation is one that requires the theoretical and practical application of a body of highly specialized knowledge and that requires the attainment of a bachelor's or higher degree in a specific specialty, or its equivalent, as a minimum, for entry into the occupation in the United States.

You seek new employment for the beneficiary and requested that USCIS change the beneficiary's status. You stated on the Form I-129 that you are an information technology consulting services and an information technology solutions business. You seek to employ the beneficiary as a Application Developer from October 1, 2018 to September 1, 2021.

To process your petition and determine whether your organization and the beneficiary are eligible, additional information is required. This request provides suggested evidence that you may submit to satisfy each requested item. You may:

- Submit one, some, or all of these items;
- Submit none of the suggested items and instead submit other evidence to satisfy the request;
- Explain how the evidence in the record already establishes eligibility; or
- Request a decision based on the record.

Please note that you are responsible for providing evidence showing that your organization and the beneficiary meet all requirements and are eligible for the requested benefit at the time you filed the Form I-129. Also, note that statements made in cover letters should be supported with additional documentary evidence.



### Filing Requirements

The Form I-129 requires the following item(s). Please properly complete or provide the following:

### Employer-Employee Relationship

As an employer who seeks to sponsor a temporary worker in an H-1B specialty occupation, you must establish that, among other things:

- The beneficiary will be employed in a specialty occupation. This means that the employer has specific and non-speculative qualifying assignments in a specialty occupation for the beneficiary for the entire time requested in the petition; and
- The employer will maintain an employer-employee relationship with the beneficiary by having the right to control the beneficiary's work, which may include the ability to hire, fire, or supervise the beneficiary, for the duration of the requested validity period.

Also, you should be able to establish that the above elements will continue to exist throughout the duration of the requested H-1B validity period.

USCIS must determine if you satisfy all of the above elements through evidence that describes (with no one factor being decisive or exhaustive):

- the skill required to perform the specialty occupation;
- the source of the instrumentalities and tools required to perform the specialty occupation;
- the location of the work;
- the duration of the relationship between you and the beneficiary;

- whether you have the right to assign additional work to the beneficiary;
- the extent of the beneficiary's discretion over when and how long to work;
- the method of payment of the beneficiary's salary;
- the beneficiary's role in hiring and paying assistants;
- whether the specialty occupation work is part of your regular business;
- whether you are in business;
- the provision of employee benefits;
- the tax treatment of the beneficiary;
- whether you can hire or fire the beneficiary or set rules and regulations on the beneficiary's work;
- whether, and if so, to what extent you supervise the beneficiary's work; and/or
- whether the beneficiary reports to someone higher in your organization.

To satisfy these requirements, you submitted:

- Copy of a signed Employment Agreement between you and the beneficiary;
- A description of the performance review process.

The following item(s) explain why the submitted evidence is deficient and requests additional evidence to render a final decision.

**Right to Control & Services in a Specialty Occupation at Third Party Off-Site Employment:** To qualify as a U.S. employer, you must establish that you have an employer-employee relationship with the beneficiary by having the right to control the beneficiary's work, which may include the ability to hire, fire, or supervise the beneficiary, for the duration of the requested validity period.

When a beneficiary will be placed at one or more third-party worksites, a petitioner must demonstrate that it has specific and non-speculative qualifying assignments in a specialty occupation for the beneficiary for the entire time requested on the petition. A petitioner will need to show that:

- It has a specific work assignment in place for the beneficiary;
- The petition is properly supported by a Labor Condition Application (LCA) that corresponds to such work; and
- The actual work to be performed by the H-1B beneficiary will be in a specialty occupation based on the work requirements imposed by the end-client who uses the beneficiary's services. *See Defensor v. Meissner*, 201 F.3d 384, 387 (5th Cir. 2000).

The evidence is insufficient to establish that a valid employer-employee relationship will exist for the duration of the requested validity period.

Your petition does not establish when, where, or for whom the beneficiary is assigned to work pursuant to an end-client engagement for the requested validity period.  You have not documented the end-client, the end-client's vendor through whom the beneficiary is assigned to work (if applicable), the physical work location, or the contracted dates of service. Part 5 of your petition indicates the work location as 7777 Market Center Ave Ste A, El Paso, TX 79912 with no other information about the employer at this address.

Absent evidence such as valid contracts, statements of work, work orders, service agreements between the end-client and all other companies involved in the beneficiary's placement or any other evidence you believe would support your claim of a specialty occupation, the evidence does not establish the work to be completed; that the duties to be performed are those of a computer related position; and that the beneficiary will perform services in a specialty occupation and that you have the right to



CSCI129CSCI1200000817164I                                                                                          www.uscis.gov

control when, where, and how the beneficiary performs the job through the duration of the requested H-1B validity period and and that such work requires a bachelor's or higher degree or its equivalent in a specific specialty.

You may submit additional evidence to satisfy this requirement.  Evidence may include, but is not limited to:

- A complete itinerary of services or engagements that specifies the dates of each service or engagement, the names and addresses of any end-client where the services will be performed for the requested employment period of time requested.
- A copy of an employment offer letter that describes in detail the nature of the employer-employee relationship and the services to be performed by the beneficiary.
- A copy of relevant portions of valid contracts between you and a client that establishes that while your employees are placed at the third-party work site, you will continue to have the right to control your employees.
- Copies of signed contractual agreements, statements of work, work orders or service agreements between you and the authorized officials of the ultimate end-client companies where the work will actually be performed by the beneficiary. The documentation should provide information such as:
    - a detailed description of the duties the beneficiary will perform;
    - the qualifications that are required to perform the job duties;
    - salary or wages paid, hours worked, benefits;
    - a brief description of who will supervise the beneficiary; and
    - any other related evidence.
- Evidence of actual work assignments, which may include technical documentation, milestone tables, marketing analysis, cost-benefit analysis, brochures, and funding documents.
- Copies of relevant, signed contractual agreements between your organization and all other companies involved in the beneficiary's placement, if your organization has not directly contracted with the third-party worksite.
- A letter ((If submitted, must be supported with statements of work, work orders and/or service agreements between end-client and all companies involved in beneficiary's placement) signed by an authorized official of each ultimate end-client company where the beneficiary will actually work. The letter should provide information, such as:
    - a detailed description of the specialized duties the beneficiary will perform;
    - the qualifications required to perform those duties
    - the duration of the job;
    - salary or wages paid, hours worked, benefits; and
    - a detailed description of who will supervise the beneficiary.
- A copy of the end client's position description and/or any other documentation that describes:
    - the skills required to perform the job;
    - the source of the instrumentalities and tools needed to perform the job;
    - the product to be developed or the service to be provided;
    - the location where the beneficiary will perform the duties;
    - the duration of the relationship between you and beneficiary;
    - whether you have the right to assign additional duties;
    - the extent of your discretion over when and how long the beneficiary will work;
    - the method of payment;
    - your role in paying and hiring assistants to be utilized by the beneficiary;
    - whether the work to be performed is part of your regular business;
    - the provision of employee benefits; and/or
    - the tax treatment of the beneficiary in relation to you.



- A description of the performance review process.
- A copy of your organizational chart, demonstrating the beneficiary's supervisory chain.
- Documentary evidence showing that:
  - the end-client requires the beneficiary's services; and
  - the end-client's requirements (if any) for the position, for all of the client facilities where the beneficiary will be employed.
- Additional information about the end-client's business such as:
  - company brochures;
  - Internet website; and
  - any other printed work which outlines, in detail, their services.
- Any other evidence you feel will meet the requirement.

### Completion of a Bachelor's or Higher Degree in a Specific Specialty

To qualify to perform services in a specialty occupation, the beneficiary must meet at least one of the following criteria:

1. Hold a United States bachelor's or higher degree required by the specialty occupation from an accredited college or university;
2. Hold a foreign degree determined to be equivalent to a United States bachelor's or higher degree required by the specialty occupation from an accredited college or university;
3. Hold an unrestricted state license, registration or certification which authorizes him or her to fully practice the specialty occupation and be immediately engaged in that specialty in the state of intended employment; or
4. Have education, specialized training, and/or progressively responsible experience that is equivalent to completion of a United States bachelor's or higher degree in the specialty occupation, and have recognition of expertise in the specialty through progressively responsible positions directly related to the specialty.

USCIS interprets the term degree to mean not just any degree, but a degree in a field of study that is related to the position. Accordingly, you must show that the beneficiary has obtained a bachelor's or higher degree or its equivalent that is required by the specialty occupation.

To show that the beneficiary possesses a bachelor's degree or higher or its equivalent that is required by the position, you submitted:

- A copy of the beneficiary's U.S. degree;
- Copies of the beneficiary's U.S. college transcripts;
- A copy of the beneficiary's foreign degree;
- Copies of the beneficiary's foreign school transcripts;
- An evaluation of the beneficiary's foreign education from a foreign education credentials evaluation service.

It appears from your descriptions of the position that the beneficiary will perform the duties of a Software Developer. You also provided a certified Labor Condition Application (LCA) for a Software Developer position. The *Occupational Outlook Handbook* indicates that many Software Developers have bachelor's degrees in computer science, software engineering or closely related fields. The beneficiary has a U.S. Master's degree in Electrical Engineering. Accordingly, it appears that the beneficiary's U.S. degree is not required by the position.

You also provided the beneficiary's foreign education without an evaluation that indicates that the beneficiary possesses a foreign Bachelor's degree in Electrical & Electronics Engineering. Therefore,



CSCI129CSCII2000008171641
www.uscis.gov

it does not appear that the beneficiary has obtained a bachelor's degree or higher in the specific specialty required by the position.

You may submit additional evidence to satisfy this requirement. Evidence may include, but is not limited to, a combination of the following or similar types of evidence:

- Copies of the beneficiary's foreign and/or U.S. college degree(s).
- Copies of the beneficiary's college or university transcripts, which include all courses taken toward the degree. The transcripts should be signed and dated by the person in charge of the records.
- Documents to show that the beneficiary's knowledge and education are directly related to and required by the position.
- Documents to show the beneficiary completed the requirements to obtain a U.S. bachelor's degree or higher from an accredited college or university at the time of filing.
- Documents to show the beneficiary obtained a bachelor's degree or higher or its equivalent in the specific specialty required by the position.
- Evidence that the beneficiary possesses any required state license, registration or certification to practice the specialty occupation and be immediately engaged in that specialty in the state of intended employment.
- An advisory evaluation of the beneficiary's foreign educational credentials by a credentials evaluation service that specializes in evaluating foreign educational credentials. This evaluation should:
  - Address the beneficiary's educational achievements as to equivalent education in the United States including the field of study;
  - Consider formal post-secondary education only and not training or experience;
  - Provide a detailed description of the material evaluated rather than conclusions;
  - Provide a brief description of the qualifications and experience of the evaluator;
  - Include all the documentation provided by the beneficiary for the evaluation; and
  - Cite any reference material used by the evaluator.
- An evaluation from an official who has authority to grant college-level credit for training and/or experience in the specialty. The evaluation from an official:
  - Must be accompanied by evidence to establish that the college or university is accredited and that it has a program for granting college-level credit based on training and/or experience. Stating in a letter that the school has such a program may not be sufficient. Also, training or experience derived from internship programs may not satisfy this requirement unless you establish that the experience or training claimed was gained through enrollment in the particular college or university's internship program; and
  - Should be on behalf of the college or university where he or she is employed. The evaluation should describe the material evaluated and establish that the areas of training and/or experience are related to the specialty. The evaluation should be accompanied by evidence that the particular official is authorized to grant college-level credit on behalf of their institution and holds a bachelor's or higher degree in the field of study or a closely related field the official is evaluating. The evaluation should also be accompanied by evidence of the number of credits the evaluator may grant for training and/or experience as part of the program.
- The results of recognized college-level equivalency examinations or special credit programs, such as the College Level Examination Program (CLEP), or Program on Noncollegiate Sponsored Instruction (PONSI).
- Evidence of certification or registration for the beneficiary from a nationally-recognized professional association or society for the specialty that is known to grant certification or registration to persons in the occupational specialty who have achieved a certain level of

competence in the specialty.

- Documentary evidence showing 12 years of specialized training, and/or progressively responsible work experience in the field related to the specialty.
- Copies of affidavits or letters from present or former employers.
- Copies of personnel records.
- Copies of any other documents that reflect promotion or achievement of progressively responsible positions directly related to the specialty that demonstrate that the beneficiary's training and/or work experience included:
  - The theoretical and practical application of specialized knowledge required by the specialty occupation;
  - That the beneficiary's experience was gained while working with peers, supervisors, or subordinates who have a degree or its equivalent in the specialty occupation; and
  - That the experience was progressively responsible.
- If you are claiming that the beneficiary has education, specialized training, and/or progressively responsible experience that is equivalent to completion of a United States bachelor's or higher degree in the specialty occupation; you must also show that the beneficiary has recognition of expertise in the specialty, through progressively responsible positions directly related to the specialty. Evidence of recognition of expertise should consist of at least one of the following types of evidence:
  - Recognition of expertise in the specialty occupation by at least two recognized authorities in the same specialty occupation;
  - Membership in a recognized foreign or United States association or society in the specialty occupation;
  - Published material by or about the beneficiary in professional publications, trade journals, books, or major newspapers;
  - Licensure or registration to practice the specialty occupation in a foreign country; or
  - Achievements that a recognized authority has determined to be significant contributions to the field of the specialty occupation.



A recognized authority means a person or an organization with expertise in a particular field, and the expertise to render the type of opinion requested. Such opinion must state: the writer's qualifications as an expert; the writer's experience giving such opinions; how the conclusions were reached; and the basis for the conclusions supported by copies or citations of any research material used.

**Maintaining Status:** The record indicates that the beneficiary is currently a F1 status.

Submit copies of the beneficiary's pay records (leave and earnings statements, pay stubs, etc.) from the last two pay periods to show that the beneficiary has maintained nonimmigrant status.

<u>PLEASE RETURN THE REQUESTED INFORMATION AND ALL SUPPORTING DOCUMENTS
WITH THIS ORIGINAL REQUEST ON TOP TO:
**U.S. CITIZENSHIP AND IMMIGRATION SERVICES
P.O. BOX 10590
LAGUNA NIGUEL, CA. 92607-0590**</u>

Sincerely,

Case 1:20-cv-01237-NBF   Document 33   Filed 07/19/21   Page 215 of 306

Kathy A. Baran
Director, California Service Center
Officer: XO0062

CSCI129CSCI12000008171641                    Appx215                    www.uscis.gov

EXHIBIT G

(Audio Recording Filed Under Separate Event
In This Docket Entry)

EXHIBIT H

Print Document

11/17/2020

# Invoice



Office of Student Accounts
University of Farmington
30500 NW Highway, Suite 205
Farmington Hills, Michigan 48334
Office Phone: 2487026719
studentaccounts@universityoffarmington.edu

**Bill To**
Ravi Teja Tiyyagura
2525 Old Farm Road
Apt. 428
Houston, TX 77063
raviteja.reddy14@gmail.com

**Invoice Number:** I181208851
**Invoice Date:** 12/07/2018
**Payment Terms:** Payment 30 days after invoice date

**Invoice Due Date:** 01/06/2019
**Invoice Amount:** 2,500.00
**Created By:** Office of Student Accounts

**Ship To**
Ravi Teja Tiyyagura
raviteja.reddy14@gmail.com

| Item Name | Unit Price | Total |
|---|---|---|
| Tuition, Winter Term 2018 | 2,500.00 | 2,500.00 |

Subtotal: $ 2,500.00
**Invoice Amount** **$ 2,500.00**
Credit Card on 01/06/2019: (1,000.00)
Credit Card on 01/06/2019: (900.00)
Credit Card on 01/06/2019: (300.00)
Credit Card on 01/06/2019: (300.00)
**Invoice Balance:** **$ 0.00**

**Comments:**
Tuition for Winter 2018 will be billed 2/1/2019.

Appx218

https://manage.invoiceasap.com/view/print.php

1/9

Print Document

**Terms & Conditions:**

Initial enrollment deposit or related fee is due upon receipt of I-20.

Balance of tuition is due within 30 days of enrollment or the start of a new term.

Fees for student ID replacement, transcripts, or diplomas are due within 30 days of request.

A $25 late fee will be charged on all invoices.

Tuition and Fees can also be paid by check. Please mail a copy of invoice and check to Student Accounts, University of Farmington, 30550 Northwestern Highway, Farmington Hills, MI 48334.

Appx219

Print Document

11/17/2020

# Invoice



Office of Student Acconuts
University of Farmington
30500 NW Highway, Suite 205
Farmington Hills, Michigan 48334
Office Phone: 2487026719
studentaccounts@universityoffarmington.edu

**Invoice Number:** I180907170
**Invoice Date:** 09/06/2018
**Payment Terms:** Payment 30 days after invoice date
**Invoice Due Date:** 10/06/2018
**Invoice Amount:** 2,500.00
**Created By:** Office of Student Accounts

**Bill To**
Ravi Teja Tiyyagura
2525 Old Farm Road
Apt. 428
Houston, TX 77063
raviteja.reddy14@gmail.com

**Ship To**
Ravi Teja Tiyyagura
raviteja.reddy14@gmail.com

| Item Name | Unit Price | Total |
|---|---|---|
| Tuition, Fall 2018 | 2,500.00 | 2,500.00 |

**Comments:**
Tuition for Winter 2018 will be billed 12/1/2018.

| | |
|---|---|
| Subtotal: | $ 2,500.00 |
| **Invoice Amount** | **$ 2,500.00** |
| Credit Card on 10/02/2018: | (700.00) |
| Credit Card on 10/03/2018: | (1,800.00) |
| **Invoice Balance:** | **$ 0.00** |

Appx220

Appx220

Print Document

**Terms & Conditions:**

Initial enrollment deposit or related fee is due upon receipt of I-20.

Balance of tuition is due within 30 days of enrollment or the start of a new term.

Fees for student ID replacement, transcripts, or diplomas are due within 30 days of request.

A $25 late fee will be charged on all invoices.

Tuition and Fees can also be paid by check. Please mail a copy of invoice and check to Student Accounts, University of Farmington, 30550 Northwestern Highway, Farmington Hills, MI 48334.

Appx221

11/17/2020

Print Document

5/9

# Invoice

Office of Student Accounts
University of Farmington
30500 NW Highway, Suite 205
Farmington Hills, Michigan 48334
Office Phone: 2487026719
studentaccounts@universityoffarmington.edu

**Invoice Number:** I180530328
**Invoice Date:** 05/30/2018
**Payment Terms:** Payment 30 days after invoice date

**Invoice Due Date:** 06/29/2018
**Invoice Amount:** 2,500.00
**Created By:** Office of Student Accounts

**Bill To**
Ravi Teja Tiyyagura
2525 Old Farm Road
Apt. 428
Houston, TX 77063
raviteja.reddy14@gmail.com

**Ship To**
Ravi Teja Tiyyagura
raviteja.reddy14@gmail.com

| Item Name | Unit Price | Total |
|---|---|---|
| Tuition, Summer 2018 | 2,500.00 | 2,500.00 |

| | | |
|---|---|---|
| Subtotal: | | $ 2,500.00 |
| Invoice Amount | | **$ 2,500.00** |
| Credit Card on 06/28/2018: | | (1,000.00) |
| Credit Card on 06/28/2018: | | (500.00) |
| Credit Card on 06/29/2018: | | (300.00) |
| Credit Card on 06/29/2018: | | (670.00) |
| Credit Card on 06/29/2018: | | (30.00) |
| **Invoice Balance:** | | **$ 0.00** |

**Comments:**
Tuition for Fall 2018 will be billed 9/1/2018.

Appx222

Appx222

Print Document

**Terms & Conditions:**

Initial enrollment deposit or related fee is due upon receipt of I-20.

Balance of tuition is due within 30 days of enrollment or the start of a new term.

Fees for student ID replacement, transcripts, or diplomas are due within 30 days of request.

A $25 late fee will be charged on all invoices.

Tuition and Fees can also be paid by check. Please mail a copy of invoice and check to Student Accounts, University of Farmington, 30550 Northwestern Highway, Farmington Hills, MI 48334.

Appx223

Print Document

# Invoice

Paid

Office of Student Accounts
University of Farmington
30500 NW Highway, Suite 205
Farmington Hills, Michigan 48334
Office Phone: 2487026719
studentaccounts@universityoffarmington.edu

**Invoice Number:** I180221412
**Invoice Date:** 02/21/2018
**Payment Terms:** Payment 30 days after invoice date
**Invoice Due Date:** 03/23/2018
**Invoice Amount:** 2,500.00
**Created By:** Office of Student Accounts

**Bill To**
Ravi Teja Tiyyagura
2525 Old Farm Road
Apt. 428
Houston, TX 77063
raviteja.reddy14@gmail.com

**Ship To**
Ravi Teja Tiyyagura
raviteja.reddy14@gmail.com

| Item Name | Unit Price | Total |
|---|---|---|
| Initial Attendance/I-20 Issuance | 1,000.00 | 1,000.00 |
| Tuition, Spring Term 2018 | 1,500.00 | 1,500.00 |

**Comments:**
Congratulations on your acceptance to the University of Farmington!

Appx224

Print Document

| | |
|---|---|
| Subtotal: | $ 2,500.00 |
| **Invoice Amount** | **$ 2,500.00** |
| Credit Card on 02/26/2018: | (1,000.00) |
| Credit Card on 03/16/2018: | (500.00) |
| Credit Card on 03/17/2018: | (500.00) |
| Credit Card on 03/19/2018: | (500.00) |
| **Invoice Balance:** | **$ 0.00** |

**Terms & Conditions:**

Initial enrollment deposit or related fee is due upon receipt of I-20.

Balance of tuition is due within 30 days of enrollment or the start of a new term.

Fees for student ID replacement, transcripts, or diplomas are due within 30 days of request.

A $25 late fee will be charged on all invoices.

Tuition and Fees can also be paid by check. Please mail a copy of invoice and check to Student Accounts, University of Farmington, 30550 Northwestern Highway, Farmington Hills, MI 48334.

Appx225

11/17/2020

Print Document

| Customer Name | Date | Number | Subtotal | Tax Total | Total | Balance |
|---|---|---|---|---|---|---|
| Ravi Teja Tiyyagura | 12/07/2018 | I181208851 | 2,500.00 | 0.00 | 2,500.00 | 0.00 |
| Ravi Teja Tiyyagura | 09/06/2018 | I180907170 | 2,500.00 | 0.00 | 2,500.00 | 0.00 |
| Ravi Teja Tiyyagura | 05/30/2018 | I180530328 | 2,500.00 | 0.00 | 2,500.00 | 0.00 |
| Ravi Teja Tiyyagura | 02/21/2018 | I180221412 | 2,500.00 | 0.00 | 2,500.00 | 0.00 |
| **Totals** | | | **10,000.00** | **0.00** | **10,000.00** | **0.00** |

Appx226

https://manage.invoiceasap.com/view/print.php

EXHIBIT I

6/10/2021

# RAVI TEJA TIYYAGURA Born 10-27-1992 - TRAVEL Event Admission Class = , Admission Class = - Event

| Event | |
|---|---|
| Event ID | 4171632095 |
| Event Type | Departure |
| Event Category | TRAVEL |
| Event Date | 02-01-2019 |
| Event Admit Until Date | |
| Admit Until Date | |
| I-94 Number | |
| Admission Class | |
| Event Admission Class | |
| Arrival Country Code | ARE |
| Departure Country Code | USA |
| Port of Entry | AUH |
| Port of Departure | IAD |
| Travel Mode | A |
| Location Code | WAS |
| Air Carrier Code | EY |
| Flight Number | 130 |
| Vessel Name | |
| Vessel Number | |
| Vessel Country | |
| Voyage Number | |
| Passenger Number | AXBDCY |
| Passenger Status | OBD |

Appx228

Appx228

6/10/2021

PCQS508 - Details

## Event

| | |
|---|---|
| USCIS Form Type | |
| USCIS Receipt Number | |
| USCIS Receipt Sequence Number | |
| SEVIS ID | |
| New SEVIS ID | 2871617569 |
| Completing Event ID | Reported |
| Primary Action Code | LS |
| Reconciliation Code | |
| Event Comments | |
| Event Alias ID List | 838255050 |
| Event Address ID List | 2152648870 |
| Event Doc ID List | 1522862251 |
| Create DateTime | 02-02-2019 22:18:43 -05:00 |
| Event Sequence Number | 5 |
| Total Events in Person Record | 20 or more |

FOR OFFICIAL USE ONLY (FOUO) - (2021-06-10 11:02:14 CDT)

Appx229

Appx229

ADDITIONAL APPENDIX DOCUMENTS

| | |
|---|---|
| **From:** | Amy E Norris |
| **To:** | Oh, Meen-Geu (CIV) |
| **Cc:** | Anna L Nathanson; Mamoun Mahayni; Charles Fraser |
| **Subject:** | Fwd: Ravi v. US, No. 20-1237C (Fed. Cl.) |
| **Date:** | Monday, November 30, 2020 10:33:05 AM |
| **Attachments:** | I180530328.pdf |

See attached reply from Teja Ravi. Sorry for the late reply. His full legal name is Ravi Teja Tiyyagura. Attached is an invoice from the University of Farmington for him. I hope this helps!

We would be happy to amend the complaint to his full legal name, but I'm not sure if it's necessary at this point in the litigation. Let me know if you think otherwise.

I hope you had a great Thanksgiving.

Best regards,

Amy Norris
Attorney at Law
**Metropolitan Washington Law Consortium**
Washington, DC
Telephone: (202) 830-1225
amy@mwlc.org

This message contains privileged and confidential information intended solely for the use of the individual(s) or entity(s) named above. Any disclosure, distribution, copying or use of the information to, or by, others is strictly prohibited. If you have received this message in error, please advise the sender by immediate reply and delete the original message.

---------- Forwarded message ---------
From: **teja ravi**
Date: Mon, Nov 30, 2020 at 9:28 AM
Subject: Re: Ravi v. US, No. 20-1237C (Fed. Cl.)
To: Amy E Norris <norris.ae@gmail.com>
CC: Mamoun Mahayni <mxm1059@case.edu>

Hi Amy,

I'm sorry for delay. I went Out of Station.
My full legal name- Ravi Teja Tiyyagura

Please find the attached invoice of my Receipt.

Thanks & Regards,
Teja.

Department of Homeland Security
Delegation Number: 7030 .2

# Delegation of Authority to the Assistant Secretary for U.S. Immigration and Customs Enforcement

## 1. Purpose

This delegation vests in the Assistant Secretary for U.S. Immigration and Customs Enforcement (ICE) and through him to Customs officers, immigration officers, officers and agents of the Federal Protective Service (FPS), and other officers or employees of ICE the authorities described herein in order to accomplish the mission of ICE. This delegation is made through, and the exercise of any authorities therein is subject to the authority, direction, and control of, the Under Secretary for Border and Transportation Security.

## 2. Delegations

Pursuant to the authority vested in the Secretary of Homeland Security by law, including the Homeland Security Act of 2002 ("the Act"), I hereby delegate to the Assistant Secretary for ICE:

(A)   All authority vested in me by section 403(1) of the Homeland Security Act of 2002 and transferred to ICE by the Department of Homeland Security Reorganization Plan of January 30, 2003; and subject to a delegation of authority from the Department of the Treasury issued pursuant to section 412(a)(1) of the Act. Authorities delegated to ICE by the transfer of authorities under the Act or by delegation from the Secretary of the Treasury include 19 U.S.C. 482, 507, 1401, 1467, 1486, 1499, 1581, 1582, 1584, 1587, 1589a, 1590, 1595, 1628, 1703, and 2081. These authorities are subject to the limitations and reservations specified below and are solely for the purpose of enforcing the laws investigated by the U.S. Customs Service as of the date of the transfer to the Department of Homeland Security.

(B)   Authority vested in the Secretary of the Treasury, and delegated to the Secretary of Homeland Security by the delegation of authority from the Department of the Treasury issued pursuant to section 412(a)(1) of the Act, to examine documents, and to summons persons or tangible items

under 19 U.S.C. 1509; authority to subpoena persons or items under 21 U.S.C. 967, 22 U.S.C. 2778(e), 31 U.S.C. 5318, 50 U.S.C. 1702, and regulations promulgated there under authorizing investigation and enforcement by the U.S. Customs Service; and any other law for which the Assistant Secretary for ICE has investigative jurisdiction through the transfer of the U.S. Customs Service, Office of Investigations, to the ICE.

(C)   All authority vested in me by section 441 of the Homeland Security Act of 2002 respecting the Detention and Removal Program, the Intelligence Program, and the Investigations Program (6 U.S.C. 251(2) – (4)) of the former Immigration and Naturalization Service, and transferred to the ICE by the Department of Homeland Security Reorganization Plan of January 30, 2003.

(D)   All authority vested in me by sections 403(3) and 1706 of the Homeland Security Act of 2002 respecting the FPS and transferred to the ICE by the Department of Homeland Security Reorganization Plan of January 30, 2003.

(E)   All authority vested in me by the Homeland Security Act of 2002 and the Reorganization Plan of November 25, 2002, as modified January 30, 2003, respecting the investigation of misconduct committed by officers, agents, or employees of U.S. Customs and Border Protection (CBP), ICE, and U.S. Citizenship and Immigration Services (CIS).

(F)   In consultation with the Commissioner of CBP, as appropriate, authority to issue an award of compensation to an informer under section 619, Tariff Act of 1930, as amended, (19 U.S.C. 1619), only with the approval of the Secretary of Homeland Security when claimed in connection with any decision which has been acted upon or approved by the Secretary of Homeland Security.

(G)   Authority to investigate criminal violations of section 333 of Title 31 involving the misuse of the name or symbol of ICE or the title or name of any employee of the ICE; or the name or symbol of the Department of the Treasury or the Secretary or any Treasury employee in connection with activities within the jurisdiction of the ICE.

(H)   Authority under section 103(a)(1) of the Immigration and Nationality Act of 1952, as amended ("the INA"), 8 U.S.C. 1103(a)(1), to enforce and administer the immigration laws (as defined in section 101(a)(17) of the INA) 18 U.S.C. 1101(a)(17) with respect to matters within the jurisdiction of ICE.

(I)     Authority to investigate alleged civil and criminal violations of the immigration laws, including but not limited to alleged fraud with respect to applications or determinations within the jurisdiction of the CBP or the CIS, and make recommendations for prosecutions or other appropriate action when deemed advisable.

(J)     Authority to register and fingerprint aliens in the United States, and exercise other functions relating to registration and changes of addresses as  provided by section 262-66 of the INA, 8 U.S.C. 1302-06.

(K)     Authority to place removable aliens in removal proceedings.

(L)     Authority to cancel a notice to appear for removal proceedings before jurisdiction vests with the Executive Office for Immigration Review of the Department of Justice (the "EOIR").

(M)     Authority to parole an applicant for admission into the United States under section 212(d)(5) of the INA, 8 U.S.C. 1182(d)(5).

(N)     Authority to exercise prosecutorial discretion in immigration enforcement matters (including permitting withdrawal of an application for admission or voluntary return, and granting deferred action).

(O)     All authorities provided by section 287 of the INA, 8 U.S.C. 1357 (except for subsection 287(g)), and 8 C.F.R. Part 287 (except for subsections 287.10 and 287.11);

(P)     Authority to consent on behalf of the Department of Homeland Security to a plea or other agreement in connection with criminal proceedings promising non-removal or other immigration benefits (see 28 C.F.R. 0.197); Provided that, such authority shall be exercised in consultation with the Director of CIS and the Commissioner of CBP with respect to any benefits, actions or determinations under their respective jurisdictions.

(Q)     Authority to administer and enforce sections 274A (8 U.S.C. 1324a), 274C (8 U.S.C. 1324c), and 274D (8 U.S.C. 1324d) of the INA, including authority to issue orders.

(R)     Authority to grant voluntary departure under section 240B of the INA, 8 U.S.C. 1229c.

(S)     Authority provided by section 235(d) of the INA (8 U.S.C. 1225(d)), including but not limited to administering oaths, taking evidence, and

requiring by subpoena the attendance and testimony of witnesses and the production of books, papers, and documents.

(T)     Authority under the immigration laws, including but not limited to sections 235, 236, and 241 of the INA (8 U.S.C. 1225, 1226, and 1231), to issue and execute detainers and warrants of arrest or removal, detain aliens, release aliens on bond and other appropriate conditions as provided by law, and remove aliens from the United States.

(U)     Authority to approve surety bonds issued pursuant to the immigration laws, to determine whether such surety bonds have been breached, and to take appropriate action to protect the interests of the United States with respect to such surety bonds.

(V)     Authority to exercise departure control authorities under section 215 of the INA, (8 U.S.C. 1185) and 8 C.F.R. Part 215.

(W)     Authority to grant stays of removal under 8 C.F.R. 241.6.

(X)     Authority to permit self-removal under 8 C.F.R. 241.7.

(Y)     Authority to reinstate exclusion, deportation and removal orders under section 241 of the INA, 8 U.S.C. 1231, and 8 C.F.R. 241.8.

(Z)     Authority, in consultation and cooperation with the Commissioner of CBP, the Director of CIS, the Under Secretary for Management, and the Director of the Office of Shared Services, to administer the program to collect information relating to nonimmigrant foreign students and other exchange program participants (SEVIS), as provided by section 442(a)(4) of the Homeland Security Act of 2002.

(AA)    Authority to enforce the forfeiture and civil penalty provisions of the immigration laws, including but not limited to section 274 of the INA, 8 U.S.C.1324.

(BB)    Authority, in consultation with appropriate components of the Department of Justice, the Department of Homeland Security, and other governmental entities, to make determinations in matters within the jurisdiction of the ICE with respect to "S", "T", and "U" nonimmigrants.

(CC)    Authority to take action under 8 C.F.R. 235.8(b) with respect to certain inadmissible aliens.

(DD)    Authority to make certifications under section 294 of the INA, 8 U.S.C. 1363a, with respect to undercover investigations and to exercise authorities authorized under section 294 pursuant to such certifications.

(EE)   Authority to design and implement the managerial rotation program described in section 441(a)(4) of the Homeland Security Act of 2002 with respect to employees of ICE.

(FF)   Authority to establish offices and station officers and employees of the ICE in foreign countries as provided by section 103(a)(7) of the INA, 8 U.S.C. 1103(a)(7), and other applicable law, and to perform such other activities with respect to the international operations of the Department of Homeland Security as the Secretary may direct.

(GG)   Authority to maintain a central file as provided by section 290 of the INA, 8 U.S.C. 1360, and other records systems and files necessary and appropriate for the operations of ICE, in accordance with applicable law.

(HH)   With respect to the transferred functions of the FPS, authority to:

    (1)   Protect buildings, grounds, and property that are owned, occupied, or secured by the Federal Government;

    (2)   At the request of any Federal agency having charge or control of property owned or occupied by the Federal Government, detail officers and agents for the protection of property and persons on the property;

    (3)   Designate employees of the Department of Homeland Security as officers and agents; detail officers and agents on request of other agencies; and use facilities and services of existing Federal, State and local law enforcement agencies, with the consent of those agencies;

    (4)   Authorize officers and agents of FPS who have been duly authorized to perform investigative functions, while engaged in the performance of their duties in conducting investigations, the power to administer oaths to any person;

    (5)   Purchase, repair, and clean uniforms of officers and agents;

    (6)   Authorize issuance of arms and ammunition for the protection force of FPS;

    (7)   Procure and contract for guard services and other goods and services related to the FPS mission, in accordance with applicable Department of Homeland Security management directives governing these topics;

    (8)   Recommend to the Secretary assignment of Home to Work vehicle transportation to designated officers and investigators of the FPS;

(9)     Authorize take-home-authority for weapons assigned to officers and agents in accordance with applicable guidelines;

(10)    Issue and authorize re-delegation of authority to issue property passes to employees for taking Government-owned property off-site; and

(11)    Administer the radio frequency program for the FPS.

(II)  Authority effective November 2, 2003 to exercise the authorities, functions and duties in connection with the administration of the Federal Air Marshal Program under 49 U.S.C. 44917 and supervise its personnel; and

(JJ)  Perform other such functions as I may direct.

In exercising the authority delegated by this Order, the Assistant Secretary of ICE shall be governed by the Homeland Security Act of 2002; all applicable federal laws, rules and regulations; and the policies, procedures, direction, authority and control of the Secretary, the Deputy Secretary, the Under Secretary for Border and Transportation Security, the Under Secretary for Management, or other officer authorized by the Secretary to prescribe such policies and procedures or exercise such authority, direction and control.  Nothing in this Order shall be construed to limit or detract from the authority of the Secretary under section 102(a)(2) and (3) of the Homeland Security Act of 2002 and other applicable law.

## 3.    Reservations

The above delegations of authority to the Assistant Secretary for ICE in no way limit the functions, rights, privileges, powers, and duties vested in the Commissioner of CBP or in the Director of CIS by law, including authority provided by the above listed statutes or any delegation from the Secretary of Homeland Security.

The Assistant Secretary is directed to coordinate, to the extent necessary and appropriate, his exercise of the authorities under this delegation with other officials to whom I have delegated authorities that complement, relate to, involve, or are concurrent with the authorities in this delegation.  Specific reference in this delegation to coordination or consultation with other officials as to certain matters is not meant to limit the responsibility of the Assistant Secretary to coordinate or consult in other matters when appropriate.  Delegation of an authority to the Assistant Secretary shall not be construed to mean that the authority may be exclusively exercised by the Assistant Secretary; in particular, reference is made to delegations of authority to the Commissioner of CBP and to the Director of CIS that are with respect to many

authorities parallel to, concurrent with, or overlapping with this delegation to the Assistant Secretary.

Unless specifically provided therein, nothing in this delegation authorizes the Assistant Secretary to adjudicate any application for any benefit under the immigration laws, grant any immigration status (including, but not limited to, U.S. citizenship, lawful permanent residence, nonimmigrant status, refugee status, asylum, temporary protected status), make any determination under the Convention Against Torture, grant any waiver of a ground of inadmissibility, grant employment authorization, admit any alien to the United States, or refer any case to the Attorney General under 8 C.F.R.  3.1(h)(2) or 28 C.F.R. 68.55(b).

Nothing in this delegation is intended to grant or provide authority or jurisdiction over any determination or matter within the sole authority of the Executive Office for Immigration Review of the Department of Justice.

# 4.    Re-delegations

Unless otherwise prescribed by statute, Executive Order, or the terms of this delegation, the authority contained in this delegation may be re-delegated in writing by the Assistant Secretary to an appropriate subordinate official of ICE, and may be successively re-delegated to other officers or employees of ICE qualified to exercise the authority.  The Assistant Secretary may also re-delegate the authority contained in this delegation to the Commissioner of CBP or to the Director of CIS, with their consent.

In addition, the following re-delegations to officers and employees of ICE (including officers and employees in an Interim or Acting capacity) are in effect pursuant to this delegation, unless modified or withdrawn by the Assistant Secretary or other authorized official:

(A)    Director of Intelligence.  The Director of Intelligence is delegated the authority to supervise and direct the ICE intelligence program and officers and employees within the INS intelligence program.  Officers and employees within the INS intelligence program will continue to be delegated the authorities and responsibilities they possess at 11:59 p.m. on February 28, 2003 following their transfer to ICE unless modified, revoked or withdrawn by the Assistant Secretary or other authorized official.

(B)    Director of the FPS.  The Director of the FPS is delegated the authority and responsibility to supervise and direct the FPS and officers, agents and employees of FPS.  Officers and employees of the FPS are designated with, and will continue to be delegated following their transfer to the BICE the authorities and responsibilities they exercise at 11:59 p.m. on February 28, 2003, unless modified, revoked or withdrawn by the

Assistant Secretary or other authorized official.

(C)     Director of Customs Investigations.  The Director of Customs Investigations is delegated authority and responsibility to supervise and direct the investigative activities of ICE with respect to the customs laws, and to provide direction and supervision to the following:

    (1)     Special Agents in Charge.
    (2)     Assistant Special Agent in Charge.
    (3)     Associate Special Agents in Charge.
    (4)     Resident Agent in Charge.
    (5)     Customs Officers.

(D)     Director of Immigration Interior Enforcement.  The Director of Immigration Interior Enforcement is delegated authority and responsibility for the field operations of ICE with respect to the immigration laws, for providing direction and supervision to the Immigration Investigations Program and the Removal and Detention Program, and for providing direction to and supervision of the Regional Directors for Interior Enforcement within their respective regions.

    (1)     Regional Directors for Interior Enforcement.  Regional Directors are delegated authority and responsibility for the field operations of ICE with respect to the immigration laws within their respective regions (including detention and removal), and for providing direction to and supervision of the District Directors within their respective geographic areas; Provided that, this re-delegation shall not be construed to delegate to Regional Directors for Interior Enforcement any authority or responsibility exceeding that provided to INS Regional Directors by chapter 8 of the Code of Federal Regulations as in force on February 28, 2003.

    (2)     District Directors for Interior Enforcement.  District Directors for Interior Enforcement are delegated authority and responsibility for the field operations of ICE with respect to the immigration laws within their respective geographical areas (including detention and removal); Provided that, this re-delegation shall not be construed to delegate to District Directors for Interior Enforcement any authority or responsibility exceeding that provided to INS District Directors by chapter 8 of the Code of Federal Regulations as in force on February 28, 2003.

    (3)     Immigration Officers.  The Assistant Secretary of ICE, the Director of Immigration Interior Enforcement, any Regional or District Director for Interior Enforcement, and any deportation officer, detention enforcement officer, detention officer, special agent,

investigative assistant, intelligence agent, immigration agent (investigations), or other immigration officer (as described in section 103 of the INA or 8 C.F.R. 103.1(j)), or senior or supervisory officer of such employee, within ICE, is designated as an immigration officer authorized to exercise, and hereby delegated, the powers and duties of such officer as specified by the immigration laws and chapter 8 of the Code of Federal Regulations.

(4)    Officers and employees within the INS programs transferred to ICE.  Officers and employees within the INS detention and removal program, investigations program or other INS program transferred to ICE will continue to be delegated following their transfer to ICE the authorities and responsibilities they possess at 11:59 p.m. on February 28, 2003, including but not limited to any authority to issue or cancel notices to appear under 8 C.F.R. Part 239 as in effect at such date and time, unless modified, revoked or withdrawn by the Assistant Secretary or other authorized official.

Nothing in the re-delegations to officers and employees of ICE provided by this delegation shall be construed to limit the exercise by the Assistant Secretary of such authority, or his authority to direct and control such officers and employees in their exercise of re-delegated authority.

Nothing in the re-delegations to officers and employees of ICE provided by this delegation shall be construed to authorize any officer or employee of ICE to perform any function or exercise any authority that has not been delegated to the Assistant Secretary.

Nothing in this delegation, including any re-delegations, shall be construed to authorize any officer or employee of ICE to perform any immigration officer, customs officer, law enforcement or other function unless such officer or employee has completed the training and possesses the qualifications prescribed for such function.

Any redelegation of authority in effect at 11:59 p.m. on February 28, 2003 shall remain in effect unless modified, revoked, or withdrawn by the Assistant Secretary or other authorized official.

# 5.    Authorities

Homeland Security Act, 116 Stat. 2135, Pub. L. 107-296,  101, 403, 441, 1502, 1706 (2002); 5 U.S.C.  301; Immigration and Nationality Act of 1952, as amended, 8 U.S.C. 1101 et seq.; the "immigration laws," as defined by section 101(a)(17) of the Immigration and Nationality Act of 1952, as amended, 8 U.S.C. 1101(a)(17); 40 U.S.C. 1315; The President's Homeland Security Reorganization Plan, November 25, 2002, as modified, January 30, 2003.

## 6.   Credentials

Any badge, credential, seal, stamp or such other documentation that is valid at 11:59 p.m. on February 28, 2003, and that identifies an officer or employee of the INS, Customs Service, or FPS who is transferred to ICE, shall continue in effect as a badge, credential or other documentation identifying an officer or employee of ICE until its expiration, revocation, withdrawal, or replacement, whichever comes first.  The Assistant Secretary of ICE may authorize replacement, renewal, or new issuance of badges, credentials, seals, stamps or other such items or other documents to ICE officers or employees using INS, Customs Service, or FPS identity and forms until ICE forms are available.

## 7.   Office of Primary Interest

The Office of the Assistant Secretary for U.S. Immigration and Customs Enforcement is the office of primary interest in this delegation.

## 8.   Cancellation

Delegation number 7030.1 is rescinded.

## 9.   Effective Date and Time

This delegation of authority shall take effect at 12:00 midnight, March 1, 2003.


*Tom Ridge*

Secretary of Homeland Security


NOV 1 3 2004

**Department of Homeland Security**
**U.S. Immigration and Customs Enforcement**

# ICE Delegation Order

| ORDER NUMBER:<br>ICE DO 04-002 | ISSUE DATE:<br>March 1, 2004 | EFFECTIVE DATE:<br>March 1, 2004 |
|---|---|---|

| SUBJECT: | Authority to Certify the Exemption of Undercover Operations From Certain Laws Within U.S. Immigration and Customs Enforcement |
|---|---|

| DELEGATED BY:<br>Assistant Secretary<br>U.S. Immigration and Customs Enforcement | DELEGATED TO:<br>Director of Operations; Director, Offices of Investigations; and Director, Office of Professional Responsibility |
|---|---|

| SOURCE OF AUTHORITY BEING DELEGATED:<br>- DHS Delegation Order (DO) 0160, "Delegation to Department of Homeland Security Organizational Elements"<br><br>- DHS DO 7030, "Delegation of Authority to the Assistant Secretary for the Bureau of Immigration and Customs Enforcement" | SUPERSEDED ORDER(S): |
|---|---|

**DELEGATION:**

By virtue of the authority granted to the Secretary under Section 102(a)(3) and 102(b)(1) of the Homeland Security Act and delegated to me by the Secretary in Department of Homeland Security Delegation Order Number 7030, I hereby delegate the authority to certify the exemption of undercover investigative operations from certain statutory provisions pursuant to 19 U.S.C. 2081 and 8 U.S.C. 1363a to the:

- Director of Operations
- Director, Office of Investigations
- Director, Office of Professional Responsibility

The certifications must determine that any actions authorized under the exemptions are necessary for the conduct of the particular undercover operation.

This authority may not be redelegated.

Assistant Secretary
U.S. Immigration and Customs Enforcement

**From:** ICE-Broadcast
**Sent:** Wednesday, June 09, 2010 3:00 PM
**Subject:** Realignment of ICE ███████████████████████

**Importance:** High

**Attachments:** Realignment FINAL.ppt; ███████████████████
**A Message from Assistant Secretary Morton**

**To all ICE employees**
**June 9, 2010**

**Internal Realignment of ICE Offices**

When I arrived last year as the Assistant Secretary, one of my priorities was to improve the management structure of ICE and to give the agency a clearer sense of identity and focus. ███████████████████
██████████████████████████

After thoroughly reviewing our agency's leadership and reporting structure, I have determined that ICE will be able to better fulfill its mission ██████████████████████████████ I am pleased to announce that ICE will now operate through three new directorates—**Homeland Security Investigations (HSI)**, **Enforcement and Removal Operations (ERO)**, and **Management and Administration**.  A revised organizational chart is attached.

With these three new directorates in place, ███████████████████████
████████████████████ Each directorate will be led by an Executive Associate Director who will be responsible for managing and coordinating the work of the offices within their offices.  Six program offices will remain distinct from the new directorates: the Office of the Principal Legal Advisor, the Office of Detention Policy and Planning, the Office of Professional Responsibility, the Office of Public Affairs, the Office of Congressional Relations, and the Office of State and Local Coordination.

The realignment is not a restructuring and will not alter any congressional appropriation or authorization.  Similarly, the realignment does not abolish any of the agency's existing offices.  These offices will remain, but will now be managed through a more efficient organization alignment.  The realignment does not alter ICE's mission or its priorities, and will allow ICE to better fulfill the goals outlined in the Quadrennial Homeland Security Review Report delivered to Congress this past February.

The role and responsibilities of each of the new directorates is as follows.

**Homeland Security Investigations (HSI):**
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████ James Dinkins will serve as Executive Associate Director of HSI.

**Enforcement and Removal Operations (ER**O): ██████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████

█████████████████████████████████████████████ James Chaparro will
serve as ERO Executive Associate Director.

**Management and Administration:** ████████████████████████████████
█████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████
███████████████████████████ Daniel Ragsdale will serve as Executive Associate Director for Management and
Administration.

█████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████

Please know that both the realignment and the Strategic Plan represent an opportunity to improve the agency's
management and performance.  I thank all of you for your continued hard work on behalf of the agency and the
many successes we achieve each day as we seek to protect homeland security and to uphold public safety.


John Morton
Assistant Secretary
U.S. Immigration and Customs Enforcement

*Homeland Security Investigations*
*Office of the Executive Associate Director*

500 12th Street, SW
Washington, D.C. 20536



# Homeland Security

OCT 0 5 2012

MEMORANDUM FOR:     Assistant Directors
                    Deputy Assistant Directors
                    Special Agents in Charge

FROM:               James A. Dinkins
                    Executive Associate Director
                    Homeland Security Investigations

SUBJECT:            Revised HSI Undercover Review Committee Process with the
                    Department of Justice

In the effort to maintain stringent accountability and oversight of Homeland Security
Investigations (HSI) Certified Undercover Operations (CUCs) and enhance coordination and
review of CUCs by the Department of Justice (DOJ), a series of changes to the Undercover
Review Committee (URC) process are being implemented. These changes are effective
immediately and apply to all CUCs seeking certification beginning with the December 2012
URC.

Background:

Since February 2012, Homeland Security Investigations (HSI) Investigative Services Division
(ISD) personnel have been engaged in discussions with DOJ Headquarters, to include
representatives from the ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████

Discussions have surrounded how to best update and enhance the role that DOJ-HQ
representatives serve within the HSI URC. ████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████

As a result of these discussions, HSI and DOJ negotiated a series of changes to the HSI URC
process that will include: ███████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████

The CUC proposal format is being revised to present pertinent information in a more streamlined
fashion ███████████████████████████████████████████████████████████████████████

  
Subject:  Revised HSI Undercover Review Committee Process with the Department of Justice
Page 2

████████████████ conduct a complete and thorough review of CUCs in a more efficient
manner. ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

Questions on the changes being implemented to the URC process can be directed to UOU
████████████████████████████████████████
██████████████████████



*Homeland Security Investigations*
*Office of the Executive Associate Director*

500 12th Street, SW
Washington, D.C. 20536

# Homeland Security

| | |
|---|---|
| MEMORANDUM FOR: | Assistant Directors<br>Deputy Assistant Directors<br>Special Agents in Charge |
| FROM: | Leigh Winchell<br>Assistant Director<br>Investigative Programs |
| SUBJECT: | Revised HSI Undercover Review Committee Process, Written<br>Materials and Enhanced Coordination with Department of Justice |

On October 5, 2012, a memorandum titled "Revised HSI Undercover Review Committee Process with the Department of Justice" signed by the Executive Associate Director was provided to the field, which outlined a series of changes to the Homeland Security Investigations (HSI) Undercover Review Committee (URC) process. Details as to the actual changes in the URC process are provided below.  These changes are effective immediately and apply to all CUCs seeking certification beginning with the December 2012 URC.

Since February 2012, HSI Investigative Services Division has been working jointly with the Department of Justice (DOJ) Headquarters (HQ) to negotiate a series of enhanced coordination and reviews of CUCs.  Central to this enhanced review process is the need for ▮▮▮▮▮▮▮▮▮▮



To enhance coordination with the individual U.S. Attorney's Office (USAO) providing concurrence for CUCs, HSI CUC ASAC Administrative Overseers (ASAC Overseers) will now

Subject: Revised HSI Undercover Review Committee Process, Written Materials and Enhanced Coordination with Department of Justice

Page 2

For CUCs requiring enhanced review by DOJ-HQ, ███████████████████████████████

███████████████████████████████████████████ A case write-up is not required to obtain this review and concurrence; however, the USAO must be provided with all pertinent information related to the use of the specific sensitive circumstance so an informed review of the activity can be completed.  ASAC Overseers and Criminal Chiefs may establish local protocols on how this information will be provided for review and concurrence.

██████████████ encouraged to maintain open communication with the Criminal Chiefs in their areas of responsibility throughout the duration of the CUC.

Questions on the changes being implemented to the URC process can be directed to UOU Program Manager ████████████████████████

Attachment



**U.S. Department of Justice**

United States Attorney's Office
Eastern District of Michigan

*Daniel L. Lemisch*
Acting United States Attorney

Telephone: ███████
Facsimile: ███████
E-Mail: ███████████

December 4, 2017

Steve K. Francis
Special Agent in Charge
Department of Homeland Security
U.S. Immigration and Customs Enforcement
Office of Investigations
██████████████████

     Re: Concurrence of Operation ████████ Investigation, Case ███████████
     Operation Paper Chase

Dear Mr. Francis,

I have received your request for continued support of Operation ████████ Investigation, Case ████████████ Operation Paper Chase, and I concur with its continued efforts targeting this investigation.

I understand the Department of Homeland Security, Homeland Security Investigations (HSI) has conducted and will continue to conduct a screening and review process to ensure compliance with all HSI directives and requirements. Further, I have been briefed on the specifics of Case ████████████, Operation Paper Chase.

To the extent the case becomes eligible for prosecution; the United States Attorney's Office will undertake every reasonable effort to support its prosecution.

If you have any further questions or comments, please do not hesitate to contact me.

Sincerely,

Daniel L. Lemisch
Acting United States Attorney

cc:    Andrew B. Birge, Acting U.S. Attorney
      Western District of Michigan

*Homeland Security Investigations*
Office of the Special Agent in Charge

**U.S. Department of Homeland Security**
477 Michigan Avenue, Suite 1850
Detroit, Michigan 48226



**U.S. Immigration
and Customs
Enforcement**

DEC 07 2017

| | |
|---|---|
| **MEMORANDUM FOR:** | Steve K. Francis<br>Special Agent in Charge |
| **THROUGH:** | Kyle D. Burns<br>Administrative ASAC Overseer<br>Certified Undercover Operation Sand Dollar |
| **FROM:** | Stephen Webber<br>Special Agent |
| **SUBJECT:** | Request to Use Certified Undercover Operation ▮▮▮▮▮<br>To Advance Case ▮▮▮▮▮ |

In accordance with policy established by the Undercover Operations Unit, HSI Special Agent Stephen Webber is requesting to use ICE-Certified Undercover (CUC) Operation ▮▮▮▮▮ to advance HSI case ▮▮▮▮▮

### Federal Criminal Charges Under Investigation:

18 U.S.C. §1546(a) – Fraud and misuse of visas, permits, and other documents
8 U.S.C. § 1324 – Bringing in and harboring certain aliens
18 U.S.C. § 1343 – Fraud by wire, radio or television

### Case Executive Summary and Objectives:

Operation Paper Chase is an HSI Detroit investigation targeting Student and Exchange Visitor Program (SEVP) schools, Designated School Officials (DSOs) and both legitimate and fraudulent academic institutions, immigration service businesses, employment agencies/consultancies, who fraudulently utilize the SEVP, commit visa fraud, smuggle and harbor illegal aliens for profit, launder money and commit additional violations of federal law.

In August 2016, in conjunction with the U.S. Attorney's Office, Eastern District of Michigan, a series of operational phases were developed for the anticipated three years of operation. Phase 1 of the operation is the recruitment of students to create a critical mass. Phase 2 (current phase) is the targeting of criminal violators, both individuals and enterprises and those of national security

Request to Use Certified Undercover Operation ███████ to Advance Case #
███████
Page 2

interest.  Phase 3 includes the prosecution of criminal targets and administrative immigration charges against those aliens who engaged in fraud.

**Name of Assistant United States Attorney and if applicable, Name of Main DOJ Attorney briefed on this investigation:**



Eastern District of Michigan

███████ has been briefed on this investigation and its progress since inception.  The most recent update took place in December 2017.  ICE Office of Chief Counsel SAUSA Tim McDonald is also updated on a weekly basis.

**DHS and/or ICE Sensitive Circumstances Requiring Main DOJ Review and Concurrence:**

DOJ Designated Circumstance:

**Type of Undercover Activity:**

Since the operation went active, UCAs, on behalf of the undercover university, have conducted monitored phone calls and email communications with aliens seeking fraudulent immigration benefits.  Numerous additional undercover methods have been employed at the storefront, including audio/visual surveillance of meets and the purchase of evidence (POE) payments.  HSI Detroit has covertly engaged suspects in incriminating conversations and acts with the goal of using that information to obtain arrest and search warrants, indictments, convictions, and removal of criminal aliens and those deemed threats to national security.

In January 2017, HSI established an undercover university that offers BA and MA degrees and that exists within the Student and Exchange Visitors Information System (SEVIS) as a means to backstop its identity as well as serve as a way for the UCA, posing as an Admissions Officer and DSOs, to accept and transfer aliens seeking to fraudulently maintain their immigration status.  The undercover university will serve as a facility in which recorded undercover meetings will occur.

UCAs acting as DSOs, an SEVP term for school officials that have access to the SEVIS database and the authority to grant certain student visa related immigration benefits, provide fraudulent immigration benefits to foreign nationals knowingly seeking to maintain their immigration status

Request to Use Certified Undercover Operation Sand Dollar to Advance Case #
█████████
Page 3

and to obtain work authorization for which they do not qualify.  Generally, immigration benefits
are derived from the issuance of ICE Form I-20 Certificate of Eligibility for Nonimmigrant
Status and accompanying Curricular Practical Training work authorization. ██████████████████
████████████████████████████████████████████████████████████████████████████
██████████████     In exchange for such benefits, subjects generally pay $2,500 USD every quarter or
$10,000 USD per year.  They are billed via electronic invoice.  The majority of payments are
made via credit card and processed through a UC merchant services provider. ██████████████████
████████████████████████████████████████████████████████████████████████     The
undercover university will continue to take in proceeds until the investigation moves into the
prosecution of criminal targets and administrative immigration charges against those aliens who
engaged in fraud.

**International Undercover Activity Concurrence:**

███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████

**Risk Mitigation:**

HSI will take all appropriate actions to ensure all undercover activity is in compliance with U.S.
laws and agency policies and procedures when taking operational steps to gather evidence in
furtherance of the investigation. ████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████

**Confidential Informant Information (if applicable):**

N/A

Request to Use Certified Undercover Operation ▓▓▓▓▓▓▓▓ to Advance Case #
▓▓▓▓▓▓▓▓▓▓
Page 4

Request to Use Certified Undercover Operation ██████ to Advance Case #
████████
Page 5

## HSI BUDGET AND ADMINISTRATIVE INFORMATION PAGE

**Case Name and TECS Case Number:**

████████████████████

**Case Agent Name/Cell Phone Number:**

HSI Special Agent Stephen Webber, ████████

**Group Supervisor Name/Cell Phone Number:**

HSI Group Supervisor Douglas Panning, ████████

Request to Use Certified Undercover Operation █████████ to Advance Case #
Page 6



**Anticipated Expenses:**

The undercover university is a brick and mortar location which requires regular and recurring expenses involving building rent, utilities, lease vehicles and maintaining technical surveillance equipment. Anticipated expenses in the near future involve travel, new lease/purchase of vehicles, updated technical equipment and an updated internet presence.

**Anticipated Seizures and Arrests/Coordination with Asset Identification and Removal**



# DOJ Meeting
## Sign in



### December 6, 2017

| | NAME | TITLE | AGNCY/DVSN/UNIT | PHONE# |
|---|---|---|---|---|
| 01. | | PM | UOU T | |
| 02. | | UC | UOU | |
| 03. | | | OPLA /ALA | |
| 04. | | | OPLA /ALA | |
| 05. | | | DoJ(c | |
| 06. | | | DoJ | |
| 07. | | | PIN | |
| 08. | | | OPLA /ALA | |
| 09. | | | UOU | |
| 10. | | | DY | |
| 11. | | | PM /IBFU | |
| 12. | | | Ops | |
| 13. | | | OPS | |
| 14. | | | Ops | |

USE NEW PAGE                                                    1



Appx256

16

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

D-1  BHARATH KAKIREDDY,
D-2  SURESH REDDY KANDALA,
D-3  PHANIDEEP KARNATI,
D-4  PREM KUMAR RAMPEESA,
D-5  SANTOSH REDDY SAMA,
D-6  AVINASH THAKKALLAPALLY,

      Defendants.

_____/

Case: 2:19-cr-20026
Judge: Friedman, Bernard A.
MJ: Patti, Anthony P.
Filed: 01-15-2019 At 04:47 PM
INDI USA V. SEALED MATTER (DA)

VIO: 18 U.S.C. § 371
(Conspiracy to commit visa
fraud and to harbor aliens for
profit)

# I N D I C T M E N T

THE GRAND JURY CHARGES:

At all times pertinent to this indictment:

## General Allegations

1) From approximately February 2017 through January 2019, the defendants, a group of foreign citizens acting in concert with each other and others, assisted at least 600 other foreign citizens to illegally remain, re-enter and work in the United States, and actively recruited them to enroll into a fraudulent school as

part of a "pay to stay" scheme. Because of their recruiting success, this alliance collectively profited in excess of quarter of a million dollars.

## The Student Visa Process

2) The laws of the United States require foreign citizen students to obtain a visa prior to entry into the United States. A visa is an endorsement placed within a passport that grants the holder official permission to enter, leave or stay in the United States for a specified period. A foreign citizen who wishes to enter and remain in the United States to pursue a course of study at a college, university, or other academic institution, must first obtain an F-1 non-immigrant visa, also known as a student visa ("F-1 visa"). The F-1 visa permits a foreign citizen student to enter and remain in the United States on a temporary basis to study, and requires the foreign citizen student to return to their native country after completing their course of study.

3) To obtain an F-1 visa, a foreign citizen must first apply to study at a school within the United States that has been certified by the Student and Exchange Visitor Program ("SEVP") to enroll and educate foreign students. The United States Department of Homeland Security oversees the certification and administration of the SEVP. If accepted, the school will provide the foreign citizen with a "Certificate of Eligibility for Nonimmigrant Student Status," also known as a Form I-20 ("Form I-20").

4) By issuing a Form I-20 to a foreign citizen student, an SEVP-approved school certifies that the individual: (1) meets all standards of admission for the school based on a review of the student's application, transcripts, proof of financial responsibility, and other records; and (2) has been accepted for, and would be required to pursue, a full course of study.

5) Once a foreign citizen student receives a Form I-20, that individual may apply for an F-1 visa. As part of the F-1 visa application process, the foreign citizen student must: 1) complete a non-immigrant visa application; and 2) attend an F-1 visa interview at the United States Embassy or Consulate in the student's native country. Upon approval of the F-1 visa, the foreign citizen student can use the F-1 visa and Form I-20 to enter and remain in the United States for the duration of study.

6) A foreign citizen student must present both their F-1 visa and the Form I-20 to a United States Immigration Officer upon arrival at any United States port-of-entry. Once a foreign citizen student has been admitted to the United States, the Form I-20 is used as their identification, and proof of legal and academic status.

7) After a foreign citizen student completes his or her course of study, that individual is required to depart the United States within 60 days. Conversely, if the foreign citizen student is no longer enrolled as a full-time student in an

approved educational program, making normal progress toward completion of the course of study, stops attending school, or drops below the full course of study without authorization, they are considered as being "out of status" or having "failed to maintain status." Once the foreign citizen student is "out of status" or having "failed to maintain status," they must depart the United States within 15 days.

8) The United States Department of Homeland Security manages foreign students in the United States through the Student and Exchange Visitor Information System ("SEVIS"). SEVIS is an internet-based data system that provides school and government officials, including immigration officials, with access to current information on nonimmigrant foreign citizen students, exchange aliens, and their dependents.

9) Once in the United States, a foreign citizen student is permitted to transfer from one SEVP-certified school to another, as long as that individual maintains valid F-1 student status and is pursuing a full course of study. To effect such a transfer while maintaining valid status, a foreign citizen student must first obtain a school acceptance letter and a SEVIS transfer form from the SEVP-certified school to which the student intends to transfer. The foreign citizen student may then transfer to that school, obtain a Form I-20, and

remain in the United States as long as he or she pursues a full course of study at the new SEVP-certified school.

10)    In addition to taking a full course of study at an accredited institution, certain F-1 foreign citizen students may also seek practical training -- which could include paid employment. However, the practical training must be directly related to the student's major and is therefore considered part of the student's program of study.

11)    One type of practical training available to certain F-1 students include curricular practical training ("CPT"). CPT is an alternative work/study, internship, cooperative education, or any other type of required internship or practicum that is offered by sponsoring employers through cooperative agreements with a SEVP-certified institution. An F-1 student may be authorized by designated school officials to participate in a CPT program that is an integral part of an established curriculum.

12)    If approved by, an F-1 student may obtain a new Form I-20 indicating that he or she has been approved for CPT. Generally, therefore, as long as an F-1 student has been properly enrolled at an SEVP- certified school, has taken classes and earned credits, and has made academic progress toward graduation, that F-1 student may have the opportunity to work full or part-time CPT, in addition to taking classes.

13)     When foreign citizen students want to travel abroad, they must have a valid travel endorsement on their Form I-20, which can be authorized by their school's designated officials. Additionally, foreign citizen students are required to take their Form I-20 with them when they travel abroad.  As such, the document is commonly referred to as a "Travel I-20." The "Travel I-20" acts as an entry document into United States. Therefore, the foreign citizen student must present their authorized "Travel I-20" to a United States immigration officer upon arrival at the United States port-of-entry to be able to lawfully re-enter the United States.

14)     The Form I-20 is a multipurpose document. Among other uses, the Form I-20: (1) allows an individual to apply for an F-1 student visa at a United States embassy or consulate abroad, lawfully enter and remain in the United States; (2) is used as identification, evidence of authorized stay, and proof of legal and academic status once a student has been admitted to the United States; (3) operates as an entry document for foreign citizen students who travel abroad and; (4) permits a foreign citizen student to participate in practical training related to their course of study.

15)     The non-immigrant F-1 student visa does not create a direct path to United States citizenship nor does it immediately allow a foreign citizen

student to lawfully work in the United States. However, a foreign citizen student who obtains an offer of employment with a United States company willing to sponsor the student to remain in the United States, may be eligible for an H1-B visa. This sponsoring company must demonstrate that it has an exclusive need for the foreign citizen student and must prove that the task being performed by the foreign citizen student cannot be accomplished by a local citizen because they are either unavailable or academically or professionally unqualified.

16)     Even though the H-1B visa is a non-immigrant visa it is one of the few United States visa categories recognized as dual intent, meaning that the sponsoring employer can petition for the foreign citizen student/employee to change from H1B to Lawful Permanent Resident status. A Lawful Permanent Resident, otherwise known as a "Green Card" holder, who is physically present in the United States for at least 5 years, and meets all other eligibility requirements, can seek to become a naturalized citizen of the United States.

**The University of Farmington**

17)     From on or about February 2017 through on or about January 2019, undercover agents from Homeland Security Investigations ("HSI") posed as owners and employees of the University of Farmington ("University"), which was physically located in Farmington Hills, Michigan.

18)     Beginning in 2015, the University was part of a federal law enforcement undercover operation designed to identify recruiters and entities engaged in immigration fraud. The University was not staffed with instructors/educators; it had no curriculum, no actual classes nor any educational activities being conducted therein.  Rather, the University was being used by foreign citizens as a "pay to stay" scheme which allowed these individuals to stay in the United States as a result of foreign citizens falsely asserting that they were enrolled as full-time students in an approved educational program and that they were making normal progress toward completion of the course of study.

19)     Each of the foreign citizens who "enrolled" and made "tuition" payments to the University knew that they would not attend any actual classes, earn credits, or make academic progress toward an actual degree in a particular field of study – a "pay to stay" scheme.  Rather, their intent was to fraudulently maintain their student visa status and to obtain work authorization under the CPT program. Each student knew that the University's program was not approved by the United States Department of Homeland Security ("DHS"), was illegal, and that discretion should be used when discussing the program with others.

20)     The defendants herein were "recruiters" and profited from the "pay to stay" scheme.  In exchange for cash, kickbacks, "scholarships" and tuition credits, the defendants enlisted hundreds of foreign citizens to enroll at the University.  The defendants, in furtherance of the fraud scheme, conspired with foreign citizens to fraudulently maintain their non-immigrant status as "students" and helped them unlawfully stay and obtain employment authorization in the United States.

21)     Additionally, the defendants facilitated the creation of false student records, including transcripts, for the purpose of deceiving immigration authorities.

These General Allegations are incorporated in each count of the indictment.

## **COUNT ONE**

**(Conspiracy to Commit Visa Fraud and Harbor Aliens for Profit, 18 U.S.C. § 371)**

D-1   BHARATH KAKIREDDY,
D-2   SURESH REDDY KANDALA,
D-3   PHANIDEEP KARNATI,
D-4   PREM KUMAR RAMPEESA,
D-5   SANTOSH REDDY SAMA,
D-6   AVINASH THAKKALLAPALLY,

From on or about February 2017 up to and including the date of this indictment, in Oakland County, in the Eastern District of Michigan, and elsewhere,

Bharath Kakireddy, Suresh Reddy Kandala, Phanideep Karnati, Prem Kumar Rampeesa, Santosh Reddy Sama, and Avinash Thakkallapally, defendants herein, did knowingly and intentionally conspire and agree with each other and with others, known and unknown to commit the following offenses against the United States:

(a) to knowingly, or knowingly cause another, to possess, obtain, accept, and receive a *"Certificate of Eligibility for Nonimmigrant Student Status,"* also known as a Form I-20, a document proscribed by statute and regulation for entry into and as evidence of authorized stay in the United States, knowing that such form had been procured by means of false claims and statements, and to have been otherwise procured by fraud and unlawfully obtained, in violation of Title 18, Sections 1546(a) and 2; and

(b) to knowingly, or in reckless disregard of the fact that an alien remains in the United States in violation of law, conceal, harbor or shield from detection, such alien in any place, for the purpose of commercial advantage or private financial gain, in violation of Title 8, Sections 1324(a)(1)(A)(iii); 1324(a)(1)(B)(i).

## Overt Acts

In furtherance of the conspiracy and to effect its unlawful objects, the defendants committed and caused to be committed the following overt acts, among others, in the Eastern District of Michigan and elsewhere:

1) On or about February 13, 2017, Santosh Reddy Sama telephoned an HSI undercover agent regarding enrolling in the University without attending classes in order to fraudulently maintain his immigration status. Sama further requested a tuition reduction for bringing students at the University. That same day, Sama emailed a recruited student's application to the University.

2) On or about March 1, 2017, Suresh Reddy Kandala telephoned an HSI undercover agent regarding enrolling in the University without attending classes in order to fraudulently maintain his immigration status.

3) On or about May 8, 2017 & May 10, 2017, Bharath Kakireddy telephoned an HSI undercover agent regarding enrolling in the University without attending classes in order to fraudulently maintain his immigration status.

4) On or about July 17, 2017, Avinash Thakkallapally telephoned an HSI undercover agent regarding enrolling in the University without attending classes in order to fraudulently maintain his immigration status. The following day, Sama telephoned the same agent regarding two to three students that Sama and Thakkallapally mutually recruited. Sama further discussed student referral fees.

5) On or about September 14, 2017, Karideddy came to the University and collected $5000 for recruiting students.

6) On or about December 13, 2017, Thakkallapally emailed an HSI undercover agent his bank account information so that Thakkallapally could collect $5000 for recruiting students.

7) On or about January 22, 2018, Sama and Kandala met with an HSI undercover agent at the University to collect $20,000 for recruiting students. During that meeting, Sama identified Phanideep Karnati as a person who helps Sama recruit students for the University.

8) On or about February 2, 2018, Thakkallapally emailed a photograph of one his recruited students to an HSI undercover agent requesting that the agent mail the student an identification card and a Form I-20.

9) On or about February 28, 2018, Karnati sent an email to an HSI undercover agent identifying Sama as his friend. Karnati asked that the University accept and enroll at least 50 students from Sama's list of recruited students.

10)   On or about April 18, 2018, Sama sent an email to an HSI undercover agent and stated that Karnati works for him. In addition, Sama stated that five of their recruited students paid their tuition to Karnati.

11)   On or about June 8, 2018, Sama came to the University and collected $ 20,000 for recruiting students. After payment, Karnati arrived at the University. Thereafter, Karnati and Sama discussed their student recruiting efforts with the HSI undercover agent.

12)    On or about August 24, 2018, Sama telephoned an HSI undercover agent and stated that Prem Kumar Rampeesa helps him recruit students for the University.

13)    On or about September 20, 2018, Sama emailed an HSI undercover agent his bank account information so that Sama could collect $9000 for recruiting students.

14)    On or about October 2, 2018, Rampeesa telephoned an HSI undercover agent regarding enrolling into the University knowing it was a "pay to stay" scheme. Rampeesa also discussed his business relationship with Sama, including the number of students he recruited to the University and the amount Sama pays him per student.

In violation of Title 18, United States Code, Section 371.

### Forfeiture Allegations

**(18 U.S.C. § 982(a)(6) and 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c))**

The General Allegations and allegations contained in Count One of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 982(a)(6), as well as 8 U.S.C. § 1324(b) and 28 U.S.C. § 2461(c).

Upon conviction of the forgoing violation of 18 U.S.C. § 371, as charged in Count One of this Indictment, the convicted defendant(s) shall forfeit to the United States, under 18 U.S.C. § 982(a)(6) and/or under 18 U.S.C. § 981(a)(1)(C) together with 28 U.S.C. § 2461(c) his/her right, title, and interest in any property, real or personal, which constitutes, or is derived from, or is traceable to proceeds of the commission of the offense, and all property, real or personal, which was used to facilitate or intended to be used to facilitate, the commission of such an offense.

Such property includes, but is not limited to, a forfeiture money judgment against the convicted defendant(s) in an amount to be determined, representing the total value of all property subject to forfeiture.

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the convicted defendant(s):

A. cannot be located upon the exercise of due diligence;

B. has been transferred or sold to, or deposited with, a third party;

C. has been placed beyond the jurisdiction of the court;

D. has been substantially diminished in value; or

E. has been commingle with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21

U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b) and/or 28 U.S.C. § 2461(c).

THIS IS A TRUE BILL

*s/Grand Jury Foreperson*
GRAND JURY FOREPERSON

MATTHEW SCHNEIDER
United States Attorney

*s/Cathleen Corken*
CATHLEEN CORKEN
Chief, National Security Unit
Assistant United States Attorney

*s/Brandon Helms*
BRANDON HELMS
Assistant United States Attorney

*s/Timothy P. McDonald*
TIMOTHY P. MCDONALD
Assistant United States Attorney

*s/Ronald W. Waterstreet*
RONALD W. WATERSTREET
Assistant United States Attorney

Dated: January 15, 2019

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | **Case Number** |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)[1]**: | **Judge Assigned:** |
| ☐ Yes    ☒ No | **AUSA's Initials:** _RW_ |

**Case Title:** USA v.  BHARATH KAKIREDDY, et al.

**County where offense occurred :**  Oakland County

**Check One:**    ☒ Felony          ☐ Misdemeanor          ☐ Petty

   ✓ Indictment/_____ Information --- **no** prior complaint.

   _____ Indictment/_____ Information --- based upon prior complaint [Case number:                    ]

   _____ Indictment/_____ Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:** _____    **Judge:** _____

   ☐ Corrects errors; no additional charges or defendants.
   ☐ Involves, for plea purposes, different charges or adds counts.
   ☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

_January 15, 2019_                    V    *Timoty P. McDonald (for)*
Date
   Ronald Waterstreet
   Assistant United States Attorney
   211 W. Fort Street, Suite 2001
   Detroit, MI  48226-3277
   Phone: 313-226-9593
   Fax:    313-226-5464
   E-Mail address: Ronald.Waterstreet@usdoj.gov
   Attorney Bar #:  P42197

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

AppX272

# UNITED STATES DISTRICT COURT
### Eastern District Of Michigan

| | |
|---|---|
| UNITED STATES OF AMERICA | § **JUDGMENT IN A CRIMINAL CASE** |
| | § |
| v. | § |
| | § Case Number: 0645 2:19CR20026 (6) |
| **Avinash  Thakkallapally** | § USM Number: 57215-039 |
| | § **Edward A. Bajoka** |
| | § <span style="font-size:smaller">Defendant's Attorney</span> |

## THE DEFENDANT:

| | | |
|---|---|---|
| ☒ | pleaded guilty to count(s) | **1 of the Indictment** |
| ☐ | pleaded nolo contendere to count(s) which was accepted by the court | |
| ☐ | was found guilty on count(s) after a plea of not guilty | |

The defendant is adjudicated guilty of these offenses:

| **Title & Section / Nature of Offense** | **Offense Ended** | **Count** |
|---|---|---|
| 18 U.S.C. § 371, Conspiracy to Commit Visa Fraud and Harbor Aliens for Profit | 1/15/2019 | 1 |

The defendant is sentenced as provided in pages 2 through 7 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐  The defendant has been found not guilty on count(s)

☐  Count(s) ☐ is  ☐ are dismissed on the motion of the United States

     It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

September 11, 2019
_____
Date of Imposition of Judgment


_____
Signature of Judge

The Honorable Gershwin A. Drain
United States District Judge
_____
Name and Title of Judge

**September 12, 2019**
_____
Date

AO 245B (Rev. 09/18) Judgment in a Criminal Case                                                    Judgment -- Page 2 of 7

DEFENDANT:         Avinash  Thakkallapally
CASE NUMBER:       0645 2:19CR20026 (6)

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of: **15 months. The Court waives the imposition of a fine, costs of incarceration and the costs of supervision.**

☐    The court makes the following recommendations to the Bureau of Prisons:

☒    The defendant is remanded to the custody of the United States Marshal.
☐    The defendant shall surrender to the United States Marshal for this district:

      ☐    at                 ☐    a.m.    ☐    p.m.   on

      ☐    as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

      ☐    before 2 p.m. on
      ☐    as notified by the United States Marshal.
      ☐    as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

    Defendant delivered on  to

at, with a certified copy of this judgment.

                                 UNITED STATES MARSHAL

                                      By
                         DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 09/18) Judgment in a Criminal Case                                              Judgment -- Page 3 of 7

DEFENDANT:           Avinash  Thakkallapally
CASE NUMBER:         0645 2:19CR20026 (6)

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of **. None**

# MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.

2. You must not unlawfully possess a controlled substance.

3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of
   release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   - ☐ The above drug testing condition is suspended, based on the court's determination that you
     pose a low risk of future substance abuse. (*check if applicable*)

4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence
   of restitution. (*check if applicable*)

5. ☒ You must cooperate in the collection of DNA as directed by the probation officer. (*check if applicable*)

6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et
   seq.)
   as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which you
   reside, work, are a student, or were convicted of a qualifying offense. (*check if applicable*)

7. ☐ You must participate in an approved program for domestic violence. (*check if applicable*)

        The defendant must comply with the standard conditions that have been adopted by this court as well as with any
additional conditions on the attached page.

AO 245B (Rev. 09/18) Judgment in a Criminal Case                                    Judgment -- Page 4 of 7

DEFENDANT:           Avinash  Thakkallapally
CASE NUMBER:         0645 2:19CR20026 (6)

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. I understand additional information regarding these conditions is available at the www.uscourts.gov.

Defendant's Signature _____     Date _____

AO 245B (Rev. 09/18) Judgment in a Criminal Case                                                    Judgment -- Page 5 of 7

DEFENDANT:            Avinash  Thakkallapally
CASE NUMBER:        0645 2:19CR20026 (6)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|                | **Assessment** | **JVTA Assessment*** | **Fine** | **Restitution** |
|----------------|---------------:|-------------------:|---------:|---------------:|
| **TOTALS**     | $100.00        | Not Applicable     | Waived   | Not applicable |

☐  The determination of restitution is deferred until  An *Amended Judgment in a Criminal Case (AO245C)* will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

      If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

☐  Restitution amount ordered pursuant to plea agreement $

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

      ☐  the interest requirement is waived for the    ☐  fine    ☐  restitution

      ☐  the interest requirement for the    ☐  fine    ☐  restitution is modified as follows:

\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22
\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 09/18) Judgment in a Criminal Case

Judgment -- Page 6 of 7

DEFENDANT:           Avinash  Thakkallapally
CASE NUMBER:      0645 2:19CR20026 (6)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**  ☒   Lump sum payments of $100.00 is due immediately, balance due

  ☐   not later than                                            , or

  ☐   in accordance     ☐  C,     ☐  D,     ☐  E, or     ☐  F below; or

**B**  ☐   Payment to begin immediately (may be combined with     ☐  C,     ☐  D, or     ☐  F below); or

**C**  ☐   Payment in  equal  *(e.g., weekly, monthly, quarterly)* installments of $  over a period of
        *(e.g., months or years)*, to commence  *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**  ☐   Payment in equal  *(e.g., weekly, monthly, quarterly)* installments of $  over a period of
        *(e.g., months or years)*, to commence  *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E**  ☐   Payment during the term of supervised release will commence within   *(e.g., 30 or 60 days)* after release from
        imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time;
        or

**F**  ☐   Special instructions regarding the payment of criminal monetary penalties:


Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

  ☐   Joint and Several
      Restitution is joint and several with the following co-defendants and/or related cases, in the amount specified below:

      Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount,
      and corresponding payee, if appropriate.

      ☐ Defendant shall receive credit on «dft_his_her» restitution obligation for recovery from other defendants who contributed to
      the same loss that gave rise to defendant's restitution obligation.
  ☐   The defendant shall pay the cost of prosecution.
  ☐   The defendant shall pay the following court cost(s):
  ☐   The defendant shall forfeit the defendant's interest in the following property to the United States:


Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) JVTA Assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

AO 245B (Rev. 09/18) Judgment in a Criminal Case                                                 Judgment -- Page 7 of 7

DEFENDANT:              Avinash  Thakkallapally
CASE NUMBER:       0645 2:19CR20026 (6)

## ADDITIONAL FORFEITED PROPERTY

Pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 18, United States Code, Section 982(a)(6), Title 28, United States Code, Section 2461(c), and Federal Rule of Criminal Procedure 32.2, defendant's interest in the following is forfeited to the United States:

- A forfeiture money judgment is entered against the defendant in favor of the United States in the amount of Twelve Thousand One Hundred Sixty-Six Dollars and Forty-Three Cents ($12,166.43).

The Preliminary Order of Forfeiture entered by the Court on 9/10/19, ECF No. 116, is incorporated herein by reference.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

No. 19-20026-6

        Plaintiff,

Hon. Gershwin A. Drain

v.

**Offense:**

D-6 Avinash Thakkallapally,

18 U.S.C. § 371
Conspiracy to commit visa fraud and
harbor aliens for profit

        Defendant.

**Maximum Penalty:** Up to 5 years

**Maximum Fine:** $250,000

**Supervised Release:**
Up to 3 years

## GOVERNMENT'S SENTENCING MEMORANDUM

    Defendant Avinash Thakkallapally is a foreign citizen who abused the student visa program so that he could remain and work in the United States illegally. Moreover, he and his co-conspirators recruited at least 600 foreign students to do the same. Thakkallapally is criminally responsible for the recruitment of over 100 students, 54 of which he personally recruited, and in return for his recruitment efforts, he received at least $15,000 in profits.   Accordingly, the United States of America respectfully recommends that the Court impose a sentence between **37–46**

**months,** the sentencing guideline range calculated by the United States. Such a sentence is necessary in light of the seriousness of the offense, the need to punish Thakkallapally, deter Thakkallapally and others from committing the same misconduct, Thakkallapally's personal characteristics and to avoid unwarranted sentencing disparities.

## I.   BACKGROUND

Defendant Avinash Thakkallapally is a citizen of India who first traveled to the United States in 2015 on a temporary student visa known as an F-1 visa. (*PSR* ¶ 9).   Before he could obtain his F-1 visa, Thakkallapally applied to study in the United States at a university through the Student and Exchange Visitor Program ("SEVP"), which is overseen by the Department of Homeland Security. (*Id.* at ¶ 10). Once accepted by a university—in this case Harrisburg University—the school issued a "Certificate of Eligibility for Nonimmigrant Student Status," better known as a Form I-20. (*Id.* at ¶ 10–11).

Thakkallapally's Form I-20 permitted him to enter the United States, (*PSR* ¶ 12), which he first did in 2015. (*Post Arrest Interview*). While in the United States, he used his Form I-20 for identification and proof of legal and academic status in the United States, and it also allowed for him to travel abroad and return to the United States. (*Id.* at ¶ 12). For his Form I-20 to remain valid, Thakkallapally knew that he needed to maintain his status as a full-time student "making progress toward

2

completion of [his] field of study," whether at his original school or any school to which he later transferred. (*Id.* at ¶ 13).

Thakkallapally's visa and Form I-20 also permitted him to participate in curricular practical training ("CPT"), which allowed him to find gainful employment as long as he continued to attend classes and make academic progress toward his degree. (*PSR* ¶ 15).

From February 2017 through January 2019, undercover agents from Homeland Security Investigations ("HSI") posed as employees of the University of Farmington ("the University"), located in Farmington Hills, Michigan. (*PSR* at ¶ 16-17). The University had no instructors, no classes, and no educational activities. Rather, it was a fictitious university used by foreign citizens as a "pay to stay" scheme. *Id.* Under the "pay to stay" scheme, foreign citizens would enroll with the University as "students," but they would take no classes nor attend any educational programs. Instead, they would pay tuition so that the University would issue them Form I-20's that identified them as students making progress toward a degree, and if they desired, they could also seek gainful employment through the CPT program. *Id.*

On July 17, 2017, Thakkallapally contacted the University to discuss enrolling in the University without attending classes in order to fraudulently maintain his immigration status. Thakkallapally was told the arrangement was illegal and he

3

should use discretion when talking about the arrangement with others. Below is an excerpt of that conversation (AT = Avinash Thakkallapally, UC = Undercover Agent):

> AT: Actually my OPT going to expire next month, I would like to do second masters or CPT University of Farmington.
>
> ****
>
> UC: So, what have heard about us....What have you heard about our program here?
>
> AT: I didn't heard about any program just heard about a college.
>
> UC: So my question is are you planning on moving to Michigan?
>
> AT: No, I'd like to (unintelligible) online only.
>
> UC: You know we don't have just online courses.
>
> UC: Let me ask you another question. Are you….. looking to actually go to classes or are you just looking to just maintain your status?
>
> AT: I am just looking to maintain my status.
>
> UC: So you don't want to go to a class or anything like that?
>
> AT: Exactly.
>
> UC: Ok. Listen I can help you out but obviously, you know… this arrangement is not legal, you know?
>
> AT: Yeah.
>
> UC: You understand that? I mean I could bring you in with no classes…and give you Day 1 CPT but obviously it's not legal

4

so it has to stay between us. You know?

AT:    Yeah. I not tell to anybody.

UC:    Are you comfortable with that arrangement?

AT:    Yeah.

The following day, Thakkallapally called the University to discuss his application process and the enrollment period. He also asked the undercover agent about whether he could refer students to the University of Farmington in exchange for money:

AT:    So, do you accept any referrals?

UC:    What do you mean….oh, you want to refer people?

AT:    Yeah, there are lot of friends coming up.

UC:    Sure, why not. Just tell them that you sent them.

AT:    How much is the referral?

UC:    How many people can you bring in?

AT:    Uh…Five to ten.

UC:    Five to ten?

AT:    Yeah.

UC:    Um….I don't know, what are you thinking?

****
AT:    Right now there are two people, so that is the reason I am telling….

5

UC:    Well, we can talk about it, let me think about it.

During the conversation Thakkallapally proposed receiving $400 per student and mentioned that he had previously received $500 per student from Harrisburg University for referring students[1]. (*7/18/17 Recorded phone call*).   The undercover agent told Thakkallapally that he wanted to think about Thakkallapally's proposal and would discuss it with him in the future. In a September 28, 2017 phone conversation, Thakkallapally and the undercover agent agreed to a referral fee of $500 per student:

AT:    How about the referral?

UC:    What about the referral?

AT:    Ali, actually, you tell me that.

UC:    Right, right. What are you thinking?

****

UC:    Do you have a number in your head?

AT:    Yeah.

UC:    What's your number?

AT:    I tell you. In Harrisburg university, in each and every university, in NPU…. for one student its $500.

---

[1] While recruiting foreign students for a *legitimate* university is not illegal, doing so is a violation of Thakkallapally's F1 student visa which only permits him to work under a practical training program such as Optical Practical Training (OPT) or Curricular Practical Training (CPT).

UC:   Ok, I can do $500.

In the weeks and months that followed, Thakkallapally continued his recruitment efforts. There were days when Thakkallapally called the University repeatedly to request various actions be taken on behalf of his students.   In addition, Thakkallapally updated the agent on his recruiting efforts, asked for additional students to be admitted and inquired about payment for recruiting students. Below are examples of Thakkallapally's exhaustive involvement in the affairs of his students:

10/20/17       "I sent ████████ photo and address      ….did you send student ID?"

10/30/17       "One guy, ██████ ..I am going to send photo and offer letter.

11/6/17         "One more thing , my cousin needs acceptance ASAP…can I send it to you, can you give acceptance by today…is it ok if I get 15-20 people for January"

11/13/17       "Actually, one more thing…that money…Thanksgiving is coming and shopping IPhone XP….that money….anything arranged?"

On November 27, 2017, Thakkallapally and the undercover agent agreed to a sum of $5000 for recruiting 14 students and further agreed that the money would be wired by the undercover agent to Thakkallapally's bank account.   Below, Thakkallapally, under the alias "Vineth errabelli" emailed the University with his

7

banking information:

> **From:** Vinith errabelli
> **Sent:** Wednesday, December 13, 2017 1:04 PM
> **To:** ▮▮▮▮▮▮
> **Subject:** Wire transfer
>
> Hi ▮▮ plz find the details
>
> Chase bank
> Account number ▮▮▮▮▮▮▮▮
> Routing number: ▮▮▮▮▮▮▮▮

Four months later, undercover agents wired an additional $10,000 to Thakkallapally's Wells Fargo bank account, which represented payment for recruiting students to the University.

In total, this conspiracy recruited over 600 foreign students to the University of Farmington. (R.1: Indictment, 1). Thakkallapally personally recruited at least fifty four (54) students (*Exhibit 1*), and he also received cash payments of at least $15,000 from the University (*Id.* at ¶ 19).

Thakkallapally has pled guilty to conspiring to commit visa fraud (18 U.S.C. § 1546(a)) and harboring aliens for profit (8 U.S.C. § 1324) in violation of 18 U.S.C. § 371—without the benefit of a Rule 11 agreement, although the government did offer one. (*PSR*, ¶¶ 1, 4). Thakkallapally's co-conspirators are the foreign citizen "students" he recruited and his co-defendants. (*Id.* at ¶¶ 19, 21).

The maximum sentence for his offense is not more than five years' imprisonment, a maximum fine of $250,000, and an applicable term of supervised

up to three years. (*PSR* ¶¶ 53, 56, 61).

## II.  SENTENCING GUIDELINES CALCULATIONS AND § 3553(a) FACTORS

### Thakkallapally's Sentencing Guidelines

The government believes that Thakkallapally's total offense level is 21 and his criminal history category is I, which results in a guideline range of **37–46 months**. However, the government expects that the United States Probation Department will ultimately calculate the range at 24-30 months. The difference between Probation's guidelines and the government's guidelines are two-fold. First, the Probation Department only assessed 6 points under USSG § 2L1.1(b)(2)(B) as the defendant harbored between 25-99 unlawful aliens. Thakkallapally should be assessed 9 points as the conspiracy harbored over 600 unlawful aliens and he is responsible for acts of other conspirators that are reasonably foreseeable and within the scope of jointly undertaken criminal activity. Nonetheless, while the United States believes Thakkallapally's conduct is broad enough to include to conduct of his co-conspirators, the government will leave the scoring of this enhancement in the Court's discretion.

Second, the Probation Department only assessed 2 points under USSG § 3B1.1(c) finding that Thakkallapally was an organizer or leader. Because Thakkallapally managed and supervised the recruitment process of at least 93

9

Appx288

unlawful aliens, Thakkallapally should be assessed 3 points under USSG § 3B1.1(b).

To qualify for a 3-point enhancement under USSG § 3B1.1(b), Thakkallapally must have a managed or supervised one or more of the participants and the criminal activity must have involved five or more participants or was otherwise extensive. USSG § 3B1.1(b); cmt. 2. "The burden of proving when the enhancement is appropriate is low: "'[T]here need only be evidence to support a finding that the defendant was a manager or supervisor of at least one other participant in the criminal activity....' "" *United States v. Beard*, 394 Fed. Appx. 200, 205 (6th Cir. 2010) (quoting *United States v. Henley,* 360 F.3d 509, 517 (6th Cir. 2004)). Control of subordinates is not necessary; Thakkallapally need only supervise or manage them. *United States v. Johnson*, 736 Fed. Appx. 568, 572 (6th Cir. 2018).

In determining the defendant's organizational role, and distinguishing between a leader and manager, Application Note 4 of § 3B1.1 identifies a number of non-exhaustive factors the Court can consider, including "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *See also United States v. Lalonde*, 509 F. 3d 750, 765-66 (6th Cir. 2007).

Here, Thakkallapally's 54 recruited students are undoubtedly participants in the criminal activity. Beyond recruiting these students to the University of Farmington in exchange for at least $15,000, Thakkallapally managed all of their paperwork, submitted the student's applications, received their acceptance letters, arranged their "start" date, requested deferrals on student's behalf, and facilitated the acceptance of fee receipts/SEVIS transfers.

Among many others, the emails below illustrate Thakkallapally's managerial role:

**From:** Vinith errabelli <vinni.rao9999@gmail.com>
**Sent:** Thursday, September 27, 2018 1:31 PM
**To:** studentaccounts@universityoffarmington.edu
**Subject:** Re: Outstanding Tuition Balance - Termination of Status

Hello ███ Gandam married to a US citizen, we can terminate his status right away.

---

**From:** Vinith errabelli
**To:** ███████
**Subject:** May intake last 4 applications
**Date:** Monday, April 23, 2018 9:07:28 AM
**Attachments:** ███████████ UF Intl Application.pdf
████████████.pdf
███████████.pdf
██████████.pdf

Hi ███, please find the attached last 4 applications for may intake, i will send the passport and visa copies to ████



Thanks
Vin

11

**From:** Vinith errabelli
**To:** ▮▮▮▮▮▮▮
**Subject:** ▮▮▮▮▮▮▮
**Date:** Monday, March 5, 2018 1:45:10 PM
**Attachments:** ▮▮▮▮ Emp Letter.pdf

Hi Ali, please find the CPT employer letter and send me his i20.

Thanks
Vin

### The 3553(a) Factors

In determining an appropriate sentence, the Court should use the Sentencing Guidelines as a "starting point and the initial benchmark." *United States v. Lalonde*, 509 F.3d 750, 763 (6th Cir. 2007) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). Indeed, a sentence within the guidelines range carries a "rebuttable presumption of reasonableness." *United States v. Buchanan*, 449 F.3d 731, 734 (6th Cir. 2006). This is so because the guidelines "represent nearly two decades of considered judgment about the range of sentences appropriate for certain offenses." (*Id.* at 736) (Sutton, J., concurring). In particular, the guidelines aggregate the "sentencing experiences of individual judges, the administrative expertise of the [Sentencing] Commission, and the input of Congress…." *Id.*

Beyond the Guidelines, the Court should consider all of the factors set forth in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. at 49–50. The § 3553(a) factors include:

(1) the nature and circumstances of the offense and the history and

12

characteristics of the defendant;
(2) the need for the sentence imposed—
        (A) to reflect the seriousness of the offense, to promote respect
        for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant;
        and
        (D) to provide the defendant with needed educational or
        vocational training, medical care, or other correctional
        treatment in the most effective manner; [and]
                            ***
(6) the need to avoid unwanted sentence disparities among defendants
with similar records who have been found guilty of similar conduct….

18 U.S.C. § 3553(a).

Thakkallapally's conduct in this case demonstrates why a sentence within the

guidelines is appropriate. Thakkallapally may suggest his role in committing fraud

and harboring illegal aliens for profit stemmed from his attempt to help foreign

national students obtain an education—including for some students who sought to

transfer from schools that were in danger of losing their accreditation.[2] But his and

his students' aims were not so noble.

Their true intent could not be clearer. While "enrolled" at the University, one

---

[2] These schools cater to "students" who want to exploit our foreign student
education program. While they are the exception rather than the rule, unfortunately
they do exist. Some of the "pay to stay" schools located around the United States
that have been exposed over the years are: Prodee University; Neo-America
Language School; Walter Jay M.D. Institute; the American College of Forensic
Studies; Likie Fashion and Technology College; Tri-Valley University; Herguan
University; the University of Northern Virginia; and the American College of
Commerce and Technology.

13

hundred percent of the foreign citizen students <u>never</u> spent a single second in a classroom. If it were truly about obtaining an education, the University would not have been able to attract anyone, because it had no teachers, classes, or educational services. Instead, Thakkallapally and the foreign nationals he recruited wanted to commit a fraud upon the United States. At the outset, Thakkallapally informed his recruits there would be no classes and no education. The "students" willingly paid thousands of dollars to the undercover agents so that they could obtain fraudulent documents (Form I-20's) that would allow them to illegally stay, re-enter, and work in the United States.

But Thakkallapally's conduct was much more offensive than that of his recruits. Once he knew exactly what the University was—a fraud—he, not the University, raised the idea of recruiting other students who would be willing to commit fraud. He did so in order to make money. Specifically, in exchange for finding, enlisting, and managing all of the paperwork for others to illegally remain in the United States, he received more than $15,000 in profits. Hence, his illegal arrangement with the University proved to be quite profitable for him.

Therefore, Thakkallapally's conduct necessitates a guidelines sentence, and there are no legitimate reasons to vary below that range. (*PSR* ¶ 67.). Nonetheless, under our immigration laws, Thakkallapally must be sentenced to at least 12 months in custody to permanently bar him from re-entering the United States. Such a bar is

certainly fitting in this case, since Thakkallapally intentionally exploited our student visa system for his own financial gain. He did so with the full knowledge that most of his recruits wanted to illegally enter the United States job market while unlawfully remaining in the United States. As a direct result of his actions, his recruited students—who were illegally working in the United States—deprived otherwise qualified individuals of employment or training opportunities.

### A. Sentencing Reform Act factors

#### 1. Seriousness of the offense

Thakkallapally's decision to conspire to harbor aliens and commit visa fraud is a serious offense, as indicated by Congress's decision to authorize up to five years in prison for the offense. *See* 18 U.S.C. § 371; (PSR, ¶ 57). Specifically in this case, the F-1 student visa program is designed to promote and encourage foreign students to study at American institutions. (PSR, ¶ 9–16). Once they finish their course of study, the students must leave within 15 days. (*Id.* at ¶ 13). The idea is that the students return to their native countries to share their new knowledge and skills for the betterment of themselves and their country. Accordingly, the F-1 student visa program is not a naturalization program—i.e., it is not intended to be a path to obtaining U.S. citizenship.

If he receives a guidelines sentence, Thakkallapally will be deported once he serves his sentence, and he will be permanently barred from returning to the United

States in the future. And even without a permanent bar from a guidelines sentence, Thakkallapally will likely be deported, and there is no way to know whether he will return to the United States. Yet his likely deportation should not trigger a variance windfall.

The Sixth Circuit has been clear that 18 U.S.C. § 3553 requires that the defendant's sentence reflect the seriousness of the offense, promote respect for the law, and provide just punishment. *United States v. Musgrave*, 761 F.3d 602, 608 (6th Cir. 2014). Deportation is not part of the defendant's sentence. Many things that happen to a defendant following his conviction and sentence are "impermissible facts" in determining a sentence. *Id.* Things such as losing a professional license, paying legal fees, suffering embarrassment or a damaged reputation, or as is the case here, being deported, are not part of this Court's sentence. "None of these things are [the defendant's] sentence. Nor are they consequences of his sentence," and a district court should therefore sentence the defendant "without considering these factors." *Id.*

Furthermore, Thakkallapally and his co-conspirators (his recruited students) ignored the purpose of the F-1 student visa program. In fact, Thakkallapally has remained in the United States since 2014, totaling over five years in the United States before he was arrested on January 31, 2019. (*Id.* at ¶ 4). During his time with the University, Thakkallapally illegally obtained employment and made approximately

16

$70,000 a year. (*Id.* at ¶ 51). Those jobs could have gone to U.S. citizens or to other foreign students who were lawfully in the United States on valid visas.

## 2.    Deterrence, protection of the public, and nature and circumstances of the offense

As noted above, Thakkallapally will likely be deported, and thus the likelihood of him re-engaging this same criminal conduct is highly unlikely. However, the Court's contemplation of §3553 factors regarding deterrence and protection of the public is not solely limited to whether the defendant is likely to be a recidivist. Rather, this Court is likewise required, in determining an appropriate sentence, to seek to deter others from committing such crimes and protect the public. This Court should do so in this instance. According to an SEVP summary issued by U.S. Immigration and Customs Enforcement in November 2016, 1.23 million foreign students were studying in the United States on student visas in 2016, and 8697 schools were certified to enroll international students.[3] A within guideline sentence for Thakkallapally would invariably serve as a warning and act as deterrence to any of the other one million other foreign students that are currently studying on student visas in the United States who may contemplate engaging in similar such conduct.

Additionally, this action and the related actions—19-cr-20024 and 19-cr-

---

[3] https://www.ice.gov/doclib/sevis/pdf/byTheNumbersDec2016.pdf (p.2).

17

20025—have garnered considerable media attention since the indictments were unsealed. Presumably, the sentences in this case and the related cases will also receive media focus. As a result, strong sentences against Thakkallapally and the other defendants would have a considerable chance of deterring other foreign students—and some schools—from abusing the F-1 student visa program. In addition, as indicated by the success Thakkallapally and the other defendants had in recruiting students to the University, their vast network of students and potential students, at the very least, could be deterred by a sentence with within the sentencing guidelines.

In light of the above, a deterrent prison sentence between 37 and 46 months is appropriate.

### 3.    Characteristics of the defendant

Thakkallapally indicated he has a loving and supportive family in India. (*PSR*, ¶ 41-43). He further indicated that he suffers from chronic asthma and was previously hospitalized in India for the condition. (*Id*. at 46).  He attended a Junior College university in India and pursued a Master's degree from Northwestern Polytechnic University in computer science. (*Id*. at 49). Thus, he has received support, love, and opportunities that many defendants who appear before this Court have not, and yet he still chose to commit the instant offense. As a result, Thakkallapally's personal characteristics counsel that a guideline sentence is

18

appropriate.

### 4. Need to avoid sentencing disparities

The Supreme Court reiterated in *Booker* that reducing sentencing disparities was Congress's basis statutory goal in passing the Federal Sentencing Guidelines. *United States v. Booker*, 543 U.S. 220, 250, 264 (2005). Thus, calculating and analyzing the guidelines is the primary driver in avoiding unwanted sentencing disparities. *Id.* at 264 ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."). Indeed, by correctly calculating and considering the Sentencing Guidelines, the Court automatically gives "significant weight and consideration to the need to avoid unwarranted disparities." *Gall v. United States*, 552 U.S. 38, 54 (2007). A variance in this matter would result in unwanted sentencing disparities.

Furthermore, a variance based on deportation would be contrary to the dictates of 18 U.S.C. § 3553 (2)(A) which requires that the defendant's sentence reflect the seriousness of the offense (see above). By allowing the Court to consider deportation as grounds for a downward variance for illegally harboring aliens, it would invariably grant the Court the authority to vary for an alien yet bar similar such consideration for an equally culpable defendant, who happens to be a U.S. citizen, and not subject to deportation. In essence, it would reward an alien while punishing a United States citizen for committing the exact same offense. This is universally

19

unfair and would likewise run afoul of 18 U.S.C. Section 3553(a)(6) which mandates that the Court's sentence should "… avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Here, Thakkallapally sought to abuse the student visa program so that he could remain and work in the United States illegally. While illegally present in the United States he chose to line his own pockets when he proposed illegally making money by managing, harboring and recruiting other foreign students to do the same. In return for his recruitment efforts, he received more than $15,000 in profit. Such calculated criminal acts do not warrant a downward variance.

Therefore, this factor favors a sentence within the guidelines. However, the Court should also be mindful of the five other recruiters charged in this case, along with the two recruiters charged in related cases, 19-cr-20024 and 19-cr-20025. Naveen Prathipati, who recruited less than twenty students, received a sentence of 12 months and a day, Bharath Kakireddy and Suresh Kandala, received a sentence of 18 months. Thakkallapally, like Kandala, helped enlist hundreds of foreign citizens to enroll at the University with the goal of fraudulently maintaining their status in the United States.

Appx299

## III.  CONCLUSION

For the reasons stated above, the government recommends this Court

sentence Thakkallapally within the sentencing guideline range.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

*/s/ Timothy P. McDonald*
Timothy P. McDonald
Ronald W. Waterstreet
Brandon C. Helms
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI   48226
Phone: (313) 226.9100
Email: Ronald.Waterstreet@usdoj.gov
Email: Timothy. McDonald@usdoj.gov
Email: Brandon.Helms@usdoj.gov

Dated: September 5, 2019

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 5, 2019, I electronically filed the

foregoing paper with the Clerk of the Court using the ECF system, which will

provide notification to all counsel of record.


<u>/s/Timothy P. McDonald</u>
Timothy P. McDonald
Assistant United States Attorney

22

**From:** Vinith errabelli
**To:** [redacted]e@universityoffarmington.edu
**Subject:** refferals
**Date:** Tuesday, September 25, 2018 1:45:58 PM
**Attachments:** Refferals by Avinash Thakkallapally.docx

hello , please find the attached document.


Regards
Rockstar





████████████-2000 ████████@gmail.com

████████████-2762 ████████@gmail.com

████████████-1356 ████████@gmail.com

████████████-6480 ████████@gmail.com

████████████-8006 ████████@gmail.com

████████████-3318 ████████@gmail.com

████████████3233 ████████@gmail.com
████████████-6875 ████████@gmail.com

████████████7244 ████████@gmail.com

████████████-8841 ████████@gmail.com

████████████-9692 ████████@gmail.com

████████████3780 ████████@gmail.com

████████████6352 ████████@gmail.com

████████████-8079 ████████@gmail.com

████████████505 ████████@gmail.com



██████████████ -6296 ████████ @gmail.com

██████████████ 1143███████ @yahoo.com

██████████████ -3497 ████████ @gmail.com

██████████████ -9199 ████████████ @gmail.com

██████████████ -6513 ████████ @gmail.com

██████████████ @gmail.com ████████ -3497

██████████████ -5013 ████████████ @gmail.com (Done)

████████ -7209 ████████ @gmail.com (Done)

██████████████ -4117 ██████████ @gmail.com

██████████████ -4884 ████████████ @gmail.com

██████████████ -1785 ██████████ @gmail.com

██████████████ -1792 ████████ @gmail.com

██████████████ 9186 ████████ @gmail.com

██████████████ -9307 ████████ @gmail.com

██████████████ -3324 ████████ @gmail.com

