IN THE UNITED STATES COURT OF FEDERAL CLAIMS

TEJA RAVI, *et al.*,

                                    Plaintiffs,

                    v.

THE UNITED STATES,

                                    Defendant.

No. 20-1237
Hon. Armando O. Bonilla

<u>MOTION TO COMPEL AND FOR ATTORNEY'S FEES</u>

Pursuant to Rule 26 and Rule 37 of the Rules of the United States Court of Federal Claims (RCFC), Plaintiffs students respectfully submits this Plaintiffs' Motion to Compel and for Attorney's Fees (the "Motion"). For the reasons set forth in the attached memorandum in support, the students respectfully requests that the Court:

(a) compel the defendant, the United States, as personified in this case by Immigration Customs Enforcement ("ICE"), a division of the United States Department of the Homeland Security, within twenty-one (21) calendar days of this Court's Order (a) to produce a class list with contact information (addresses, all email addresses, and phone numbers) for the list, the amount that each paid to the University and a designation of any recruiters and (b) state the total number– and designate on the class list– of students who were sent an admissions letter, sent a tuition invoice, and who made at least one payment to the University of Farmington. "Recruiters" is to be defined as anyone who received compensation in exchange for referring students to the University of Farmington.

(b) compel the defendant, the United States, as personified in this case by Immigration Customs Enforcement ("ICE"), a division of the United States Department of the Homeland Security, within twenty-one (21) calendar days of this Court's Order to respond to Requests for Admission 33, 43, 46, 47, 59, 70, 78, 86, 92, and 106, and deem Request for Admission 114 admitted.

(c) award Plaintiffs an amount sufficient to reimburse it for the attorney's fees and costs expended in bringing the Motion.

In accordance with RCFC 37(a)(1), undersigned counsel certifies that Plaintiffs conferred with counsel for ICE on July 25, 2025 and many times thereafter, in an effort to obtain the discovery requested without court intervention. Counsel for ICE insisted that ICE will not produce the class list and has provided very limited relevant discovery regarding the class action certification[1], as ordered by the Court on March 4, 2025, to date.

Dated: March 11, 2026

---

[1] The only relevant information that ICE has provided for class certification discovery is a number of students that is not responsive to the current proposed class definition as specified in Interrogatory 26(A). The number provided is overbroad and does not consider whether the student was sent an admissions letter from the University of Farmington or whether the student was sent a tuition invoice from the University of Farmington. Whether a student was sent an admission letter and tuition invoice prior to making payment is part of the class definition because these are elements of the contract formation typical of the class. A relevant number, which only includes the students who were sent offers of admission and tuition invoices, goes to numerosity, commonality and predominance–these are important inquiries for class certification.

Despite numerous, diligent inquiries for relevant information on the issue of class certification, ICE's counsel has repeatedly stated that discovery on the issue of class certification is not proportional to the needs of this case. S*ee* Ex. 2, pgs. 4, 7, 8, 9, 14, 17, 18, 22-23, 24, 25, 25-26, 27, 29; See Ex. pg. 3. 2;  Ex. 8, pg. 1, 3; Ex. 9, pg. 2. The Court ordered class certification discovery on March 4, 2025; ICE's position that discovery into class certification is not proportional to the needs of the case could be considered in contempt of the Court's March 4, 2025 order that this discovery be conducted. *See* Ex. 1, Paragraph 2.

Respectfully submitted,

/s/ *Amy E. Norris, Esq., (#1017140)*
Amy E. Norris
NORRIS LAW, PLLC
616 E Street NW
Suite 1156
Washington, DC 20004
(202) 530-0100
Amy@norrislawgroup.org

Anna Nathanson
NORRIS LAW, PLLC
616 E Street NW
Suite 1156
Washington, DC 20004
(202) 530-0100
Anna@norrislawgroup.org

*Attorneys for Plaintiffs*

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TEJA RAVI, *et al.*,<br><br>　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>THE UNITED STATES,<br><br>　　　　　　　　Defendant. | No. 20-1237<br>Hon. Armando O. Bonilla |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION TO COMPEL AND FOR ATTORNEY'S FEES**

Plaintiffs submits this Plaintiffs' Motion to Compel and for Attorney's Fees (the "Motion") pursuant to Rule 26 and Rule 37 of the Rules of the United States Court of Federal Claims.

I.　　SUMMARY OF REQUESTED RELIEF AND GROUNDS THEREFORE

Plaintiffs students respectfully request that the Court:

(a) compel the defendant, the United States, as personified in this case by Immigration Customs Enforcement ("ICE"), a division of the United States Department of the Homeland Security, within twenty-one (21) calendar days of this Court's Order (1) to produce a class list with contact information for the putative class members, the amount that each paid to the University, and a designation of any recruiters. "Recruiters" is defined as anyone who received compensation in exchange for referring students to the University of Farmington and (2) state the total number, and designate on the class list, of students who were sent an admissions letter from the University of Farmington, sent at least one

tuition invoice, and made at least one payment to the University of Farmington. The current class definition includes students who were enrolled, meaning students who both were sent admission letters and made at least one payment; the class definition excludes recruiters.

(b) compel the defendant, the United States, as personified in this case by Immigration Customs Enforcement ("ICE"), a division of the United States Department of the Homeland Security, within twenty-one (21) calendar days of this Court's Order to respond to requests for admission, and deem Request for Admission 114 admitted.

(c) award Plaintiffs an amount sufficient to reimburse it for the attorney's fees and costs expended in bringing the Motion.

## II.    LEGAL STANDARD

RCFC 37 provides that "a party may move for an order compelling disclosure or discovery." RCFC 37(a)(1). This Rule is "designed to encourage or secure compliance with the discovery rules, not to reward a party prevailing on a motion to compel." *Council for Tribal Employment Rights v. United States*, 110 Fed. Cl. 244, 248 (2013)

In acting on a motion to compel, the court exercises broad discretion, guided by the court's rules. *New Orleans Reg'l Physician Hosp. Org., Inc. v. United States*, 122 Fed. Cl. 807, 820 (2015); *see Schism v. United States*, 316 F.3d 1259, 1300 (Fed. Cir. 2002) (en banc). Pursuant to RCFC 37(a)(5), a prevailing party in a motion to compel may be entitled to reasonable expenses, including attorney's fees. RCFC 37(a)(5); *CENTECH Grp., Inc. v. United States*, No. 19-1752, 2021 WL 3027158, at *3–4 (Fed. Cl. July 16, 2021).

Generally, discovery rules "are to be accorded a broad and liberal treatment." *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *see also Afro–Lecon, Inc. v. United States,* 820 F.2d 1198, 1203 (Fed.Cir.1987)("The scope of civil discovery is broad and requires nearly total mutual disclosure of each party's evidence prior to trial."). However, discovery has "ultimate and necessary boundaries." *Hickman,* 329 U.S. at 507, 67 S.Ct. 385. RCFC 26(b)(1) allows for "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," subject to the limitations imposed by RCFC 26(b)(2)(C). Under RCFC 26(b)(2)(C), the court must limit discovery if it finds that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

> (iii) the burden or expense of the proposed discovery outweighs its likely benefit.

RCFC 26(b)(2)(C). The court must balance these considerations and "be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." *Heat & Control Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 1024 (Fed.Cir.1986)(quoting Fed.R.Civ.P. 26(b)(1) advisory committee's note to 1983 amendment); *Petro–Hunt, L.L.C. v. United States,* 114 Fed. Cl. 143, 144 (2013); *see also Hickman,* 329 U.S. at 507, 67 S.Ct. 385 (asserting that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation").

The party moving to compel discovery bears the burden of proving that the opposing party's answers are incomplete. *Jenkins v. United States,* 90 Fed.Cl. 585, 588 (2009); *Anaheim*

*Gardens v. United States,* No. 93–655, 2008 WL 2043240, at *3 (Fed.Cl. Feb. 29, 2008); *Equal Rights Ctr. v. Post Props., Inc.,* 246 F.R.D. 29, 32 (D.D.C.2007); *New Orleans Reg'l Physician Hosp. Org., Inc.*, 122 Fed. Cl. at 815.

The party on whom an interrogatory is served "must provide true, explicit, responsive, complete, and candid answers" which should be provided "directly and without evasion in accordance with information that the answering party possesses after due inquiry." *Lakeland Partners, L.L.C. v. United States*, 88 Fed. Cl. 124, 132 (2009) (citations omitted); *see also City of Fresno v. United States*, No. 16-1276C, 2021 WL 347750, at *2 (Fed. Cl. Feb. 1, 2021).

The Rules of the Court of Federal Claims provide that parties may serve written interrogatories that "relate to any matter that may be inquired into under RCFC 26(b)." RCFC 33(a)(2). Rule 26(b), in turn, states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." RCFC 26(b)(1).

III.    ARGUMENT

A.  The Court should Order that ICE produce a Class List of the Witnesses to this Breach of Contract Action, which Includes the Amount that Each Paid in Tuition and their Last Known Contact Information

The Court should grant the requested relief because it would help resolve factual issues concerning whether class-certification is warranted and because it would be inequitable and prejudicial if only defendants had access to the list of putative class members. "The Supreme Court has recognized the importance of allowing class counsel to communicate with potential class members for the purpose of gathering information ... prior to class certification." *M.J. v. D.C.*, No. 118CV01901EGSGMH, 2020 WL 1366855, at * 6 (D.D.C. July 1, 2020) (quoting

*Minns v. Advanced Clinical Emp't Staffing LLC*, No. C 13–03249 SI, 2014 WL 4352343, at *2 (N.D. Cal. May 9, 2014); *and citing Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102–03 (1981)). Pre-certification discovery of putative members'contact information may be warranted to resolve factual issues, such as numerosity, common questions, and adequacy of representation. *Id*.

It would be inequitable if only the defendant had access to the putative class members for purposes of class certification. Rule 24 requires that the Court consider factors such as commonality, numerosity, and typicality. Those factors cannot be determined by Plaintiffs for presentation to the Court without considering the class as a whole, and as such, the Court ordered class certification discovery on March 4, 2025. *See* Ex. 1, Paragraph 2. The class members are witnesses to the breach of educational contract – representations by an accredited University were made and students paid tuition as a result – and as such, those class members are witnesses who possess valuable information regarding ascertainability and commonality. It would be prejudicial if only the Defendant had access to those witnesses. Defendants would not receive an equal playing field to test the class definition. Obtaining the class list is imperative to ensure a level playing field and allow both parties the opportunity to obtain evidence.

The parties have already entered into a protective order that complies with the Privacy Act (5 U.S.C. § 552a). *See* ECF 84 and 86. Privacy should not be a concern here, due to that Order. When the Defendant eventually raises a constitutional right to privacy objection, that concern is mitigated by allowing the Defendant to designate any contact information as confidential pursuant to the protective order and thereby limit the invasion of any actual privacy interest.

Courts have broad discretion in handling discovery issues, reviewable only for an abuse of discretion. *See Brune v. I.R.S.*, 861 F.2d 1284, 1288 (D.C. Cir. 1988); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009).

In *Oppenheimer Fund, Inc. v. Sanders*, the Supreme Court determined that under Fed. R. Civ. P. 23,  where class member information concerned factual issues "such as numerosity or where contact with members of the class could yield information relevant to issues in the case" then discovery rules may warrant disclosure of class member information. *Id*. at 351 n. 13, 354 n. 20.

When the Government has exclusive control over documents concerning potential class members' information and that information would help plaintiffs and the court resolve the factual issue of who would be in the punitive class, then courts may order the Government to provide those documents as part of pre-certification discovery. *See Ingham Reg'l Med. Ctr. v. United States*, 169 Fed. Cl. 12, 25-26 (2024) (The "parties must both have an opportunity to review the relevant data held by the government to determine which [potential class members] should, or should not, be included in the putative class."); *and see Washington v. Alderwood Surgical Ctr., LLC*, No. C22-1835-RSM, 2023 WL 6461145, at *2 (W.D. Wash. Oct. 4, 2023) (holding Defendants had to disclose "names and emails of these patients in order to determine the nature" of claims).

Here, the Government has exclusive control over information relevant to the punitive class list and it would be prejudicial to not allow both parties to review that information. *Ingham Reg'l Med. Ctr.*, 169 Fed. Cl. at 25-26.  This is not a case where plaintiffs are trying to use discovery to find new clients. *See In re Williams-Sonoma, Inc.*, 947 F.3d 535, 540 (9th Cir. 2020) (granting writ of mandamus to vacate pre-certification class discovery order for class member

information where class did not yet have a named plaintiff); *Gawry v. Countrywide Home Loans, Inc.*, 395 F. App'x 152, 160 (6th Cir. 2010) (holding discovery of potential class member information not warranted where named plaintiff's claims were mooted, she could no longer represent the class, and no other class member "sought to be substituted as a named plaintiff in an attempt to preserve the…controversy."). Here, named plaintiffs are identified; the requested information is exclusively within the Government's control; and the information requested aims to resolve factual issues regarding numerosity, commonality, and predominance.

This case is similar to *Gutierrez v. City of East Chicago*, 2017 WL 840396 (N.D.Ind.) (Mar. 2, 2017). In that case, the Court determined that plaintiffs' request differs from those in *Oppenheimer* because the request is not based solely on a desire to give notice to the members of a Rule 23(b)(3) class or for class certification. In *Gutierrez*, in addition to the desire to communicate with the class members, Plaintiffs sought the names and addresses of . . . tenants to identify and contact individuals and potential witnesses who have knowledge about Defendants' search and inspection policy and practice, to which all tenants were subject. *See In re FedEx Ground Package Sys., Inc.*, 3:05-MD-527 (MDL-1700), 2007 WL 79312, at * 3 (N.D. Ind. Jan. 5, 2007) (allowing discovery of the names of individual employees of Fedex to gain witnesses who could testify about their employment relationship); *see also Taylor v. Universal Auto Group I, Inc.*, No. 1:14-MC-50, 2015 WL 2406071, at *4-5 (S.D. Ohio May 20, 2015) (allowing list of names and contact information to be exchanged in pre-certification discovery for class action, citing *Kane v. Nat'l Action Fin. Servs., Inc.*, No. 11-11505, 2012 WL 1658643, at *7 (E.D. Mich. May 11, 2012). The information was central to Plaintiffs' claims concerning the constitutionality of Defendant' policy. *Gutierrez*, 2017 WL 840396 (N.D.Ind.) (granting motion to compel contact

information about prospective class members and amount that the prospective class member paid and ordering the submission of a protective order).

This case is similar to *Gutierrez* as the University of Farmington plaintiffs are seeking the names and addresses of students who have knowledge about the University of Farmington practices to which all students were subject. In this case, the Court should grant the motion to compel last known contact information, which includes the list of names, last known contact information, and the amount that each student paid to the University for each prospective class member, in accordance with the current class definition specified in Interrogatory 26(A).  It would be prejudicial for that information to be exclusively within the Government's control as the students attempt to narrow and resolve factual issues regarding numerosity, commonality, and predominance. The plaintiffs in *Ingham Reg'l Med. Ctr.* even argued that "denying 'precertification discovery where it is necessary to determine the existence of a class is an abuse of discretion.'"[2] 169 Fed. Cl. at 20.

This request of the *Ingham* plaintiffs is similar to the request from the *Ravi* plaintiffs, as both requests are for discovery that allows for the determination of the existence of a class. The Court has broad discretion on these discovery issues, and the Court should order that relevant discovery be provided, including the discovery of students' last known contact information and the amount of tuition that each student paid.

This is not a fishing expedition to find new named plaintiffs. The class already includes five named plaintiffs. Rather, the putative class members may have information that may be relevant to numerosity, ascertainability, typicality, and commonality, and it is prejudicial for only the Defendant to have access to those witnesses. Those witnesses may have information that

---

[2] The Court of Federal Claims deemed that argument important enough to incorporate in the Court's Order in *Ingham Reg'l Med. Ctr. v. United States*, 169 Fed. Cl. 12, 20 (2024).

goes to the merits of the factors of class certification. Specifically, the list would enable comparison of named Plaintiffs' claims to those of the wider student body. Further, the class list goes to the adequacy prong, as it helps to ensure no conflicts among students and that the named Plaintiffs can fairly represent the class. Thus, the Court should order the production of the putative class members' contact information.

Putative class members' contact information is needed in order to test the class definition. In discovery, the Government has indicated that it may deem some of the students who referred other students to be recruiters. Plaintiffs are of the position that "recruiters" include only those who were officially solicited by ICE to recruit for the University. This definition has been established in the re-authorization documents. Those who were formally recruited for the University, and compensated by the University of Farmington for this recruitment, allegedly knew that the school was fake, and therefore are excluded from the class. Continuing to test the class definition is necessary. The punitive class members' contact information is relevant for testing the class.

As the punitive class members' contact information is relevant for testing the class, the putative class members' contact information is relevant for factors of class certification, and because the production does not infringe on the class members' privacy interest, due to the protective and privacy orders, the Court should order the government to produce the putative class members' information.

Initially Plaintiff students requested a list of all who made tuition payments to the University of Farmington and the amount of payment. See Ex. 2, pg. 27, Interrogatory 22. ICE refused to provide a list. After further testing of the class definition, the class list was refined to

include only those who enrolled[3] (excluding recruiters). See Ex. 3, pg. 1, Interrogatory 25. ICE refused to provide a list that was responsive to this further refined inquiry. See Ex. 3, pg. 2, Response to Interrogatory 25.

After a conversation with DOJ counsel on February 17, 2026, Plaintiff's counsel realized that DOJ's counsel took issue with the language of "received," as opposed to "sent" in the class definition with regards to the admission letter. DOJ counsel elucidated that she could not certify whether the students actually received the admissions letters, even if an admission letter was created by the University of Farmington and generated for a student. At that point, Plaintiff amended the class definition to include the language of "sent" rather than "received" and asked DOJ's counsel to substitute the new class definition for Interrogatory 26. The hearing occurred February 18, 2026, and with the Court's guidance, DOJ counsel agreed to substitute Interrogatory 26(A) for Interrogatory 26, which included the "sent" language versus "received". After the hearing, the students' counsel reached out again to the DOJ to amend Interrogatory 25 with Interrogatory 25(A)  to include the amended class definition. However, without the Court's guidance this time, DOJ counsel refused to substitute the new class definition with the language "sent" versus "received" for Interrogatory 25. See Ex. 12. The Court should compel the DOJ to answer Interrogatory 25(A) with a class list that is responsive to the amended class definition.

**B.  The Court should Compel ICE to produce a Number of Putative Class Members that is Responsive to Interrogatory 26(A)**

When ICE refused to provide a putative class list, Plaintiffs' counsel also requested the number of putative class members (i.e. students who received letters of admission and made a tuition payment.) See Ex. 4. ICE's counsel refused to provide even the number of students who

---

[3] "Enrolled" students are defined as students who were sent letters of admission and made one payment.

received letters of admission and made a tuition payment.[4] See *id*. Numerosity is a key inquiry for class certification. This Honorable Court has ordered discovery for class certification and that the Government to substitute Interrogatory 26(A) for Interrogatory 26.  ICE has provided a number that is not responsive to the Plaintiff students' interrogatory.

Defendant's counsel has elucidated (in the November 3, 2025 phone call) that each student has a folder and that the information that Plaintiff is seeking could be found by looking at the correspondence made to each student via email. See Ex. 6, Par. 4-7. However, despite being able to locate the information, Plaintiffs' counsel stated ICE would not certify an answer regarding the number of students who were sent admission letters. Ex. 6, Par. 9. The number of students who received letters of admission matters—the letters of admissions were the offers made by ICE for the educational contract. These offers for accredited educational services go to the heart of this breach of contract case. Unfortunately, ICE is hiding the ball to avoid liability, and this is why the Court's intervention is called upon so justice should be accomplished.

Defendant has refused to produce the putative class list, who are witnesses to the University of Farmington, and failed to produce the number of students who received admission letters that were sent by the University and made one payment. On June 25, 2025, in Plaintiff's Second Set of Interrogatories, Plaintiffs submitted to Defendant's counsel the following interrogatory:

Interrogatory [24]

Identify the number of people who received a letter stating they were accepted to the University of Farmington, and made a tuition payment to the University of Farmington, from 2015 to 2019. Exclude from this count the University of Farmington, its affiliates,

---

[4] Plaintiffs' counsel, Anna Nathanson, met with ICE's counsel, Galina Fomenkova on November 3, 2025 via phone. Following this conversation, Ms. Fomenkova represented via email that ICE was unwilling to provide the number of students who were sent letters of admission. See Ex 6.

employees, officers, and directors, persons or entities that distributed or recruited students for the University of Farmington, the Judge(s) assigned to this case, and the attorneys of record in this case.

*See* Ex. 4.

The Government's answer was incomplete, as it only specified the students who made payments to the University of Farmington. It was overinclusive, it did not exclude recruiters, and it did not only include those students who made payments and also received a letter of admission from the University of Farmington. *See* Ex. 4. After discussing with Defendant's counsel, Defendant's counsel supplemented a number that excluded recruiters, but it was still not complete, as the number included those who made a payment to the University of Farmington, but was not responsive to the inquiry of who received an admission letter AND made one payment. *See* Ex. 7.

Plaintiffs' counsel met and conferred with Defendant's counsel on multiple occasions via phone call to seek complete answers to Plaintiff students' interrogatories, but Defendant refuses to consider producing the putative class members' contact information nor a number that is responsive to the putative class definition. The interrogatory regarding the number of students was updated, when the putative class definition was updated, in Interrogatory 26 and 26(A). See Ex. 10.

 Plaintiffs' counsel have attempted in good faith to obtain the discovery without court action. Plaintiffs' counsel meet with Defendant's counsel via phone on July 25, 2025, November 3, 2025, and March 9, 2025 to attempt to resolve discovery disputes. Defendant's counsel repeatedly indicated that a class list would not be provided. Defendant's counsel repeatedly indicated that ICE would not give the number that was responsive to the proposed class definition  (i.e. a number that included only the students who received admission letters AND made at least one tuition payment, excluding recruiters).

Specifically, on the November 3, 2025 phone call, Plaintiffs' counsel discussed Interrogatory No. 24 at length with Defendant's counsel in an attempt to find a compromise solution that would resolve the issue with the response. Plaintiff's counsel explained why these responses were needed for class discovery and certification of the class. During the phone call, Defendant's counsel outlined a process by which Defendant would be able to certify a number of students sent letters of admission and tuition invoices. She discussed the possibility of the agency going through the students' individual files and taking note of this information. She said she would take this proposed solution under consideration and speak to the agency about if this could be conducted and incorporated into an amended response to Interrogatory No. 24. However, via email on November 7, 2025, Defendant's counsel stated Defendant would not be further responding to Interrogatory No. 24.

On the March 9, 2025 phone call, Plaintiff's counsel reiterated there was an ongoing discovery issue with Defendant's response to Interrogatory No. 24, and that relatedly the responses to Interrogatory 26(a), the other interrogatory regarding the number of students meeting the class definition, and the responses to Interrogatories No. 22 and 25(a), the interrogatories seeking a class list of students, were deficient. Plaintiff's counsel explained why these responses were needed for class discovery and certification of the class. They discussed these issues at length, but Defendant's counsel reiterated that they would not make any responses that would require them to provide information from students' individual files beyond the Plaintiffs'. It is thus necessary for Plaintiffs to seek court action to resolve the longstanding dispute about the relevance and proportionality of this series of interrogatories to class discovery and certification of the class.

Under Federal Rule 37,[5] a party may "move for an order compelling disclosure or discovery' after the 'movant has in good faith conferred or attempted to confer with the person or party." F.R.C.P. 37(a)(1). "[C]onferring with the opposing party is a prerequisite to any successful Rule 37 motion to compel." *United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 27 (D.D.C. 2012)(ordering parties meet and confer to resolve discovery issues). Here, Plaintiffs' counsel has conferred in good faith with Defendants' counsel to attempt to resolve the deficiencies in their responses, but those conversations have been unsuccessful in finding a solution. Court action is now needed.

The Court should compel ICE to provide a full and complete class list directed to the Plaintiff and compel ICE to produce the number of students who were sent an admissions letter AND received a tuition invoice AND made at least one payment to the University of Farmington, as specified in the attached proposed order. The Court should compel ICE to reimburse Plaintiffs students for attorney's fees and costs incurred in bringing this motion, as Defendant's answers are incomplete, as proven by the attached exhibits.

**C.  The Court Should Compel Adequate Responses to Requests for Admission 32, 33, 43, 46, 47, 59, 70, 78, 86, 92, and 106, and Deem Request for Admission 114 Admitted, as ICE's Responses are Inadequate under RCFC Rule 36**

Under Rule 36:

> [i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party

---

[5]  RCFC 37 is virtually identical to Rule 37 of the Federal Rules of Civil Procedure and interpretation of the federal rule is persuasive in interpreting the portions of RCFC 37 that are relevant to this opinion. *See* RCFC 2002 Rules Comm. Note at 1 ("[I]nterpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure."). *Compare* RCFC 37, with Fed.R.Civ.P. 37.

> qualify an answer or deny only a part of a matter, the answer must specify the part
> admitted and qualify or deny the rest. The answering party may assert lack of
> knowledge or information as a reason for failing to admit or deny only if the party
> states that it has made reasonable inquiry and that the information it knows or can
> readily obtain is insufficient to enable it to admit or deny.

*Cumis Ins. Soc'y, Inc. v. Clark*, 318 F. Supp. 3d 199, 215 (D.D.C. 2018). Thus, "[a] party served

with a request for admission has a number of options available to it. He or she can admit the

matter at issue, deny the assertion, object to the request, move for a protective order, do nothing,

or set out the reasons why he or she can not respond." *Foretich v. Chung*, 151 F.R.D. 3, 5

(D.D.C. 1993).

A requesting party may "move to determine the sufficiency of an answer or objection." Fed.

R. Civ. P. 36(a)(6). Courts may deem a matter admitted when parties' answers to requests for

admissions are "deficient". *Dist. of Columbia ex rel. Z-Modular, LLC v. MCN Build, Inc.*, 2020

WL 4001458, at * 2 (D.D.C. 2020) (quoting *Stark-Romero v. Nat'l R.R. Passenger Co.

(AMTRAK)*, 275 F.R.D. 551, 556 (D.N.M. 2011)) (citation modified). Deeming a matter admitted

is a "severe sanction that should be imposed only where it has been demonstrated that a party has

intentionally disregarded the obligations imposed by Rule 36(a)." *Dist. of Columbia ex rel.

Z-Modular, LLC*, 2020 WL 4001458, at * 2 (quoting *Stark-Romero*, 275 F.R.D. at 556) (citation

modified).

"Requests for admission are not games of 'Battleship' in which the propounding party must

guess the precise language coordinates that the responding party deems answerable." *Kansas

City Power & Light Co. v. United States*, 132 Fed. Cl. 28, 33 (2017) (quoting *House v. Giant of

Md., LLC*, 232 F.R.D. 257, 262 (E.D. Va. 2005)). When a respondent objects to an RFA by

claiming it is vague or ambiguous, courts will overrule the objection and order more fulsome

answers if the context, facts of the case, or previous RFAs render the objected to RFA

unambiguous. *See Jefferson v. Austin*, 345 F.R.D. 249, 257 (D.D.C. 2024); *Miller v. Holzmann*, 240 F.R.D. 1, 3 (D.D.C. 2006) (explaining based on context and facts of case that interrogatory was not vague). Courts have also noted that terms generally are not vague or ambiguous if they are used in the statutes at issue in the underlying case. See *United States v. All Assets Held at Bank Julius Baer & Co.*, No. 04-CV-798 (PLF/GMH), 2019 WL 1167743 * n.7 (D.D.C. Mar. 13, 2019) ("The government's vagueness objection […] is not well-taken. That objection focused on the word 'treaceable,' a word that is used in the very statute under which the government proceeds.").

Here, Defendant objected to RFAs 33, 43, 46, 59, 70, and 92 based on vagueness and ambiguity; however, the facts of the case and context of the RFAs render these RFAs unambiguous and worthy of a complete response. *See* Ex. 13. This motion will take each RFA and objection in turn. Moreover, admission, denial, or more complete explanations will likely help resolve factual issues related to numerosity, commonality and common questions among the class members, and typicality of class members.

**RFAs 33 and 46:** RFA 33 requested, "[a]dmit that your standard practice was to offer a letter of admission after admitting a student to the University of Farmington." Ex. 13. Similarly, RFA 46 requested "[a]dmit that your standard practice was to send a 'letter of admission' before enrolling a student." Ex. 13. The Government objected to both RFAs because the term "standard practice" was undefined. The term "standard practice" is not ambiguous in this context. First, the term "standard practice" is used here in its common, everyday meaning, and courts regularly assign undefined terms their plain, ordinary meaning. *See Nicely v. United States*, 147 Fed. Cl. 727 (2020), *aff'd*, 23 F.4th 1364 (Fed. Cir. 2022) (addressing ambiguity of statutory terms). Second, the context of this case and the RFAs themselves set forth the proffered "standard

practice" that the Defendant is being asked to admit or deny. A good-faith reading of RFAs 33 and 46 clearly shows the requests are unambiguous and the court should order more complete responses. While for both RFAs, the Government goes on to claim to admit to letters of admission being sent to "Individuals who chose to  participate in the 'pay to stay' scheme", this is not responsive to the RFAs, which are asking about the sequencing of events and also about *all* students admitted to/ enrolled in the University of Farmington, not just about those the Government alleges have chosen to participate in an alleged 'pay to stay' scheme. Ex. 13. The Government has made deficient answers that do not admit or deny the RFAs posed. Furthermore, an admission or denial to RFAs 33 and 46 is important and relevant to Plaintiff's case because these responses will help resolve common questions of fact among class members, and typicality of class members, regarding the sending of a letter of admission to students, which is part of the class definition as one of the elements of the contract formation. The timing of the sending of the letter of admission may be relevant to the formation of the contract.

**RFA 43:** RFA 43 requested "[a]dmit that the website was live at the time that all "tuition invoices" were paid." Ex. 13. The Government objected to the RFA, asserting that the term "website" is vague and ambiguous. The Government then concedes that it assumes "website" in RFA 43 referred to the University of Farmington website. To be sure, the Government provided more thorough responses to other RFAs concerning the "website." *See e.g.*, Ex. 13, RFA No. 34. Given Defendant's ability to answer other RFAs about the website, and given the full context of the case, RFA 43 is unambiguous, and this court should order a more complete response.

**RFA 59 and 70:** RFA 59 requested "[a]dmit that individuals who made at least one payment to the University of Farmington between 2015 and 2019 were not provided any actual educational services." Ex. 13. RFA 70 asked "[a]dmit that the individuals who enrolled at the

University of Farmington between 2015 and 2019 paid tuition and did not receive any educational services in return." Ex. 13. The Government objected to both RFAs because it claimed that the term "educational services" was too vague and ambiguous. Again, this term is not vague, and a good-faith reading of the term in its common and plain meaning warrants a more complete response. Characterizing the term "educational services" as vague and ambiguous in a case centered around a self-purported educational institution is akin to the Government asking Plaintiffs to guess the precise language coordinates that it deems answerable. For both RFAs, the Government goes on to claim to admit that such students "were not promised any classes and did not attend any classes," but this is not responsive to these RFAs, which ask if students received or were provided classes. Ex. 13. It would be a logically consistent theoretical scenario for a university to not promise classes, but then still provide classes, which students then fail to attend. The Government has made deficient answers that do not admit or deny the RFAs posed. An admission or denial to RFA 59 and 70 will likely help demonstrate typicality among class members and a central common issue of fact among class members, regarding the students making payments, which is part of the class definition as one of the elements of the contract formation, and not receiving educational services, which is the breach of contract and a common issue of fact.

**RFA 92:** RFA 92 asked "[a]dmit that the method for calculating tuition and fees paid is the same for all putative class members." Ex. 13. The Government objected to RFA 92 because it claimed the RFA was vague, though the Government did not identify what part of RFA 92 it believed was vague. Ex. 13. The Government's response stated in full, "[d]efendant objects to this request as irrelevant and vague in that there is no class, nor is this case suitable for class certification because, at minimum, the criminal intent of each individual participant precludes

class representation." Ex. 13. Because the Government failed to identify what part of RFA 92 it believes is too vague, the court should order a more complete response or require the Government to further explain why it cannot admit or deny the request.

**RFA 86:** The Government also objected to RFA 86, which asked the Government to admit, "that Defendant used the same or substantially the same marketing materials, website content, and representation for all students." Ex. 13. The Government objected because it claimed the request was compound. Ex. 13. However, "[c]ompound requests that are capable of separation into distinct components and that follow a logical or chronological order … should be denied or admitted in sequence with appropriate designation or qualification." *Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*, 247 F.R.D. 198, 203 (D.D.C. 2008) (quoting *Diederich v. Dep't of the Army*, 132 F.R.D. 614, 621 (S.D.N.Y.1990)). RFA 86 is easily separable into distinct components. The Government could address its marketing materials, website content, and representations in distinct answers if it believes RFA 86 is compound and warrants separate responses. Accordingly, the court should order the Government to admit, deny, or provide a more complete response to RFA 86.

The next set of objections the Government raises as a basis for not admitting or denying the RFAs center around its inability to admit or deny the requests due to lack of sufficient information. In *JZ Buckingham Invs. LLC v. United States*, the court explained that responding parties may not simply state that they cannot admit or deny the Requests for Admissions, but that parties are required to conduct a "reasonable inquiry" into Requests for Admissions. 77 Fed. Cl. 37, 47 (2007). A reasonable inquiry includes: "inquiry of documents and persons readily available and within the responding party's control… inquiry of a third party if there is an 'identity of interest' between the responding party and the third party … investigation and

inquiry of employees, agents and others, 'who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response.'" *Id.* Only if a reasonable inquiry fails to provide sufficient information to answer the Request for Admission may the responding party state that it cannot admit or deny the request. *Id.* Here, the Government responded that it could not admit or deny RFAs 43, 47, 78, 106, and 114, based on "the information known and readily obtainable." Ex. 13. These RFA are important to Plaintiff's case—their resolution will likely benefit Plaintiffs and the court by helping to resolve issues related to numerosity, common questions, and adequacy of representation. This motion will take each objection in turn.

**RFA 43:** RFA 43 asked "[a]dmit that the website was live at the time that all "tuition invoices" were paid." Ex. 13. The Government stated that "[t]he information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because it pertains to matters that are unknowable to defendant and beyond defendant's control as the website was hosted by a third party." Ex. 13. However, under the reasonable inquiry requirement, the Government has a duty to inquire into third party information where the third party was an agent or otherwise shared an "identity of interest" with the Government. The University of Farmington was controlled and operated by ICE, an agency of the U.S. Government. As such, the Government cannot avoid admitting or denying RFA 43 simply because its own agent hosted the website.

**RFA 47:** RFA 47 asked "[a]dmit that you sent letters of admission to all students before accepting their tuition money." Ex. 13. In its response the Government stated, "[t]he information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because it would require manual review of the files of every individual

participant and the burden of that review is not proportional to the needs of the case." Ex. 13. The Government's response conflates the issues of lacking sufficient information and an overly burdensome RFA. First, the Government admits that it has the information necessary to answer RFA 47, stating that to answer would require manual review. Ex. 13. Thus, it appears that the Government's only reason for not admitting or denying RFA 47 is its belief that the request is too burdensome.

Even where complying with discovery obligations requires extensive manual review, "[t]he mere fact that discovery requires work and may be time consuming is not sufficient to establish undue burden." *Buie v. D.C.*, 327 F.R.D. 1, 12 (D.D.C. 2018). In *Buie*, the U.S. District Court for the District of Columbia weighed the burden on defendants to produce several sets of documents spanning 31 years with the importance of the discovery issues related to those documents. *Id*. (referencing the factors under Fed. R. Civ. P. 26(b)(1)).[6] The *Buie* court held that identifying documents related to police policies and procedures was not overly burdensome, was related to the plaintiff's legal theory, and overruled the defendant's objection that reviewing the requested documents would be overly burdensome and require manual labor. *Id*. at 11-12. Here too, simply because admitting or denying RFA 47 would require manual review of letters of admission for every admitted student, does not render the RFA overly burdensome. The request covers a far shorter period than the decades of records sought in *Buie* and only requests an admission or denial, not that the Government produce the letters of admission. Moreover, an admission or denial of RFA 47 is important, as determining whether all students were sent admission letters ahead of Defendants accepting tuition payments are part of the class definition

---

[6] Under both Fed. R. Civ. P. 26(b)(1) and RCFC 26(b)(2)(C) courts weigh the burden of discovery against the likely benefit; these rules mirror one another and allow for the discovery of material based on identical factors.

as elements of the contract formation, and will likely help more precisely define the class and establish common questions of fact among class members. Accordingly, the court should find that the Government has the information necessary to respond to RFA 47 and doing so would not be overly burdensome. The Court should compel a more complete response.

**RFA 78:** RFA 78 asked "[a]dmit that all enrollees were subject to the same or substantially similar enrollment procedures." Ex. 13. The Government responded, "[t]he information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request in that defendant does not know what plaintiff means by 'same or substantially similar enrollment procedures.'" Ex. 13. Though the Government claims it cannot admit or deny RFA 78 due to insufficient information, its explanation suggests the Government is declining to respond because it believes the term "same or substantially similar enrollment procedures" is too vague or ambiguous. As previously discussed, courts may consider the full context of the case and RFAs to determine whether a term is vague or ambiguous. Here, "same or substantially similar enrollment procedures" is not ambiguous and the Government demonstrated its ability to respond to questions related to its enrollment procedures in several other responses, including to RFAs 65, 70, and 75, which each asked about the University of Farmington's enrollment processes. Drawing from the context of other RFAs and the case as a whole, RFA 78 is unambiguous and the Government demonstrated its ability to respond to the request by answering other RFAs on the same issue. Determining whether all enrollees were subject to the same or substantially similar enrollment procedures will help determine, *inter alia*, the important issues of typicality among class members and numerosity. Accordingly, the court should require a more complete response.

**RFA 106:** RFA 106 asked "[a]dmissions that all class members received substantially the same tuition invoices and admissions materials." Ex. 13. In response, the Government stated that it could not admit or deny this request in part that, "[t]he information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because it would require manual review of the files of every individual participant and the burden of that review is not proportional to the needs of the case." Ex. 13. As discussed above, manual review of records alone does not render complying with discovery requests overly burdensome. Courts weigh the burden on the respondent against the importance of the issue. *See Buie* 327 F.R.D. at 7, 11-12 (weighing factors outlined in Fed.R.Civ.P. 26(b)(1)). RFA 106 will likely help resolve an important issue in this case—the typicality of similar practices around tuition invoices and admission materials for class certification purposes. That students were sent tuition invoices is part of the class definition and is an element of the formation of the contract, and the typicality of admissions materials is important because it is evidence of the educational services promised to students. Accordingly, the court should find that the Government has the information necessary to admit or deny RFA 106 and to do so would not be overly burdensome.

The Government also stated it could not respond to RFA 106 because the request was irrelevant as, "there is no class, and accordingly no "class members." Ex. 13. Denying the relevancy of RFA 106 because "there is no class" ahead of class-certification ignores the purpose of pre-certification discovery. Courts have consistently recognized the relevance of discovery information regarding potential class members during pre-certification discovery. *See M.J. v. D.C.*, No. 118CV01901EGSGMH, 2020 WL 13668559 *6 (D.D.C. July 1, 2020) (collecting cases). The Supreme Court has noted that "[t]here may be instances where [class members' names and addresses] could be relevant to issues that arise under Rule 23, [...] or where a party

has reason to believe that communication with some members of the class could yield information bearing on these or other issues." *Oppenheimer Fund, Inc.*, 437 U.S. at n. 20. In other similar contexts, where plaintiffs have established a basis for the court's jurisdiction over defendants but cannot pursue their claims without the defendant's providing information regarding the defendant's identity through discovery, courts have found that identifying discovery material is "clearly" and "directly" relevant to the claims. *Strike 3 Holdings, LLC v. Doe*, No. CV 24-1582, 2024 WL 3638347, *2 (D.D.C. Aug. 2, 2024) (holding that plaintiff's subpoena for "John Doe" defendant's information was relevant because plaintiff would be unable to pursue claims without knowing the identity; thus, the information was clearly relevant.).

Here too, discovery information regarding potential class members during pre-certification discovery is directly relevant to this case and will help illuminate issues of the case. *See Oppenheimer Fund*, 437 U.S. 340 at 353-55. *See Ingham Reg'l Med. Ctr. v. United States*, 169 Fed. Cl. 12, 25-26 (2024) (The "parties must both have an opportunity to review the relevant data held by the government to determine which [potential class members] should, or should not, be included in the putative class.") Plaintiffs have established that Defendants are subject to the court's jurisdiction and will not be able to pursue their claims without more information regarding potential class members, making the information requested in this RFA and others regarding class members directly relevant. The Government repeats its irrelevancy justification for its deficient responses in RFAs 32, 34, and 92. Ex. 13. Those justifications should similarly be dismissed, and the court should order the Government to admit, deny, or further explain its responses to RFAs 106, 32, 34, and 92.

**RFA 114:** RFA 114 asked "[a]dmit that the email correspondence that is contained at UF0000157 and UF0000158 is substantially the same correspondence that was regularly sent by the University of Farmington in its course of business." Ex. 13. (The documents that are referenced in RFA 114 are available for the Court to view at Exhibit 9 and include what appears to be a standard email sent to students by the University of Farmington.) In response, the Government stated "[t]he information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because it is too vague; the references pages contain multiple emails and plaintiffs have not defined 'substantially the same' or 'regularly sent' or 'course of business.'" Again, the Government conflates vagueness and insufficient information as a reason for not responding to this RFA, as it did with RFA 78. Neither explanation is sufficient and a more complete response is warranted. First, the request is in no way vague. RFA 114 requested an answer in relation to *one* specific email correspondence, see Ex. 9, between the University of Farmington and a student, and the terms the Government characterizes as vague—"substantially the same," "regularly sent," and "course of business"—are not technical terms; these common terms are used here in their plain and common meaning. This RFA is highly specific to one email correspondence that appears likely to be a template sent regularly, and the Government does not deny having access to records of its email correspondence. *See* Ex. 9. To be sure, RFA 114 is seeking to resolve common issues of fact; specifically, illustrates email communications typical among class members from the University of Farmington concerning statements Defendant made advertising legitimate educational services to students. Ex. 9. Students were encouraged to apply to "The University of Farmington, a nationally accredited business and STEM institution" to participate in "an innovative learning environment that combines traditional instruction with fulltime professional

experiences" with an "offer" of "flexible class schedules and a focus on students who do not want to interrupt their careers".[7] Ex. 9. Therefore, there was no reason why the Government could not respond to RFA 114.

Plaintiffs request that the Court deem RFA 114 admitted. Though deeming a matter admitted is a severe remedy, it is appropriate in this instance because Defendant has intentionally disregarded the obligations imposed by Rule 36(a). *See Dist. of Columbia ex rel. Z-Modular, LLC*, 2020 WL 4001458, at * 2. The Government's mischaracterization of RFA 114 as "vague" and containing multiple emails is a clear example of disregarding its obligation to respond to the substance of the matter contained within the RFA. In fact, the Government's objections merely warp and attempt to rewrite the RFA to avoid providing a response. In addition, the Government does not specifically admit, deny, or clearly object. *See* Ex. 13. Pg. 24. Accordingly, the Court should deem this matter admitted.

Plaintiffs' counsel met and conferred with Defendant's counsel via phone call to seek substantive responses to Plaintiff students' requests for admission, but to date Defendant has refused to update their responses. Defendant's counsel reiterated that they would not make any responses that would require them to provide information from students' individual files beyond

---

[7] The email also stated their "programs include undergraduate and graduate degree programs in: Accounting, Finance, International Business, Supply Chain Management, Public Relations and Marketing, Business Information Systems, Computer Science, Information Technology, Industrial and Systems Engineering, Manufacturing Engineering, Mechatronics", that "In many instances, your prior Masters Degree's (MA) credits, combined with CPT, can be applied to a second MA in lieu of a traditional course load", and that "The University of Farmington operates on a quarterly academic calendar, each term is generally ten weeks, excluding exams, and the admissions process is on a rolling basis. Terms start every three months, beginning in September, December, March, and June. Sessions begin every month. Graduate programs tuition is $2500 per quarter." Ex. 9.

the Plaintiffs', and viewed most of these RFAs as requiring review of students' individual files. Plaintiffs' counsel have attempted in good faith to obtain the discovery without court action.

Specifically, Plaintiffs' counsel met with Defendant's counsel via phone on March 9, 2025, to attempt to resolve discovery disputes around the RFAs. They discussed the RFA responses for over an hour; Plaintiffs' counsel raised discovery issues with eighteen RFAs in total, but were able to resolve issues with seven of the RFAs through the conference. The eleven remaining RFAs (RFAs 33, 43, 46, 47, 59, 70, 78, 86, 92, 106, and 114) were discussed at length, but the parties were unable to resolve the discovery issues with them to date. For the RFAs with objections for vagueness and ambiguity, Plaintiffs' counsel challenged that the terms were vague, and also explained what that meant (typically, that the terms had their plain language meanings). For the RFAs with objections for "information known and readily obtainable" and/ or relevance, Plaintiffs' counsel offered suggestions for how Defendant knows or could obtain the responses, and also explained the relevance and importance of the requests to obtaining information needed for class certification. Plaintiffs' counsel also suggested caveats Defendant could make in their responses that might make them more comfortable updating their responses to admit or deny the RFAs. Thus, Plaintiffs' counsel have met their duty under RCFC 37(a) to confer in good faith with Defendant's counsel to resolve discovery issues.

Defendant's counsel said she would take under consideration Plaintiffs' counsel's suggestions for updating RFAs 33, 46, 59, 70, and 86; however, she stated she would not be able to make a decision about if any of these RFA responses would be updated until the week following March 11, the deadline for Plaintiffs' Motion to Compel Discovery. Plaintiffs' counsel stated that Plaintiffs' hands were tied by the March 11 deadline, and requested a communication of decisions by then, but Defendant's counsel refused and also stated a different position than

Plaintiffs' counsel about what procedurally could be included in the Motion to Compel Discovery.

Under these circumstances, Plaintiffs' counsel have met the requirement to confer in good faith about RFAs 33, 46, 59, 70, and 86, and their present motion is timely in regards to these RFAs. *See New Orleans Reg'l Physician Hosp. Org., Inc.*, 122 Fed. Cl. at 816 (finding Plaintiff made a good faith attempt to confer where she "questioned the sufficiency of Defendant's production and requested more information from Defendant," contacted Defendant about her concerns and to schedule a conference, and made requests to confer). In *New Orleans Regional Physician Hospital Organization*, the court found that, even though the non-moving party stated they would discuss the discovery issues the movant raised, they made clear they would not do so until after the discovery period closed, and so the moving party made the "reasonable decision to bring the dispute to the court's attention." *Id.*

Here, although Defendant's counsel has promised further communication addressing Plaintiffs' discovery concerns, Defendant's counsel has made clear they will not do so until after the March 11 deadline set by the court for Plaintiffs' Motion to Compel Discovery. This is Plaintiffs' only opportunity to raise issues with the responses to these RFAs with the Court. Furthermore, the discovery deadline is fast approaching. Plaintiffs and Defendant are aware of "the court's preference for motions to compel to be filed in advance of discovery deadlines" and "that a motion to compel is timely when filed sufficiently in advance of the discovery deadline to allow it to be heard by the court, and if granted, to allow the compelled discovery to be produced prior to the deadline." *New Orleans Reg'l Physician Hosp. Org., Inc.* 122 Fed. Cl at 816. Plaintiffs have engaged in good-faith efforts to confer with the Government; yet, the Government's responses continue to be insufficient. Plaintiffs ask that, as in *New Orleans Reg'l*

*Physician Hosp. Org., Inc.*, this Court find that Plaintiffs have satisfied their burden to confer and meet to resolve discovery disputes and grant the requested relief.

Plaintiffs's counsel have met and conferred with Defendant's counsel about RFAs 32, 33, 43, 46, 47, 59, 70, 78, 86, 92, 106, and 114 in good faith to resolve discovery issues and thus have met their duty under RCFC 37(a).

For the above reasons, Plaintiffs request that the Court order the Government to provide adequate responses to RFAs 32, 33, 43, 46, 47, 59, 70, 78, 86, 92, 106. The Court should order RFA 114 is deemed as admitted, or in the alternative, compel the Government to provide a more complete answer. The Court should order the relief in the proposed order, attached.

## IV. CONCLUSION

The Court should order the relief in the proposed order, attached, as the Government has repeatedly evaded class certification discovery, despite the Court ordering class certification discovery on March 4th, 2025.

Dated: March 11, 2026

32

Respectfully submitted,

/s/ *Amy E. Norris, Esq.,* (#1017140)
Amy E. Norris
NORRIS LAW, PLLC
616 E Street NW
Suite 1156
Washington, DC 20004
(202) 530-0100
Amy@norrislawgroup.org

Anna Nathanson
NORRIS LAW, PLLC
616 E Street NW
Suite 1156
Washington, DC 20004
(202) 530-0100
Anna@norrislawgroup.org

*Attorneys for Plaintiffs*

PROPOSED ORDER GRANTING LIMITED PRECERTIFICATION DISCOVERY

The Court, having considered the parties' submissions and proposals regarding certification discovery, hereby ORDERS:

1. Defendant shall, within twenty-one (21) days, produce a limited dataset covering potential class members, including:

    a. Name;

    b. Last known email;

    c. Last known phone number;

    d. Last known address;

    e. Amount of Tuition Paid;

    f. Recruiter Designation as necessary, for those compensated by ICE;

    g. Whether the student received a letter of admission;

    h. Whether the student received a tuition invoice.

2. The data shall be limited to individuals falling within the proposed class definition:

The proposed class consists of all persons who enrolled in the University of Farmington from 2015 to 2019. All persons who enrolled include any individual who made at least one payment to the University of Farmington after being sent an offer of admission and a tuition invoice. Excluded from the Class are the University of Farmington, its affiliates, employees, officers, and directors, persons or entities who recruited for the University of Farmington, receiving payment from the University of Farmington, the Judge(s) assigned to this case, and the

attorneys of record in this case. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

3. The data is produced subject to the Protective Order issued by the Court on June 2, 2025, and it is restricted only to purposes of class certification and related motions.

4. Plaintiffs may use this data only to analyze numerosity, class certification, and manageability—not to solicit individuals.

5. Any further discovery of putative class members beyond this limited dataset shall require additional court approval.

6. Defendant shall, within twenty-one  (21) days, produce a number in response to Plaintiff's Interrogatory Number 26A that only includes those who received a letter of admission, received at least one tuition invoice, and made at least one payment to the University of Farmington, excluding recruiters.

7. Defendant shall produce within twenty-one (21) days adequate responses to Plaintiffs' RFAs 33, 43, 46, 47, 59, 70, 78, 86, 92, 106.

8. RFA 114 is deemed admitted.

9.  The end of discovery deadline is extended by thirty (30) days to give the Government time to comply with this Order.

10.  All further deadlines remain in place unless extended.

11. Plaintiffs are hereby ordered to submit a supplemental filing detailing the attorney's fees and costs to bring the Motion to Compel by seven (7) days of this Order.

SO ORDERED.

Dated: _____

_____
Judge