EXHIBIT 1

# In the United States Court of Federal Claims

No. 20-1237C
(Filed: March 4, 2025)

| | |
|---|---|
| **TEJA RAVI, SWETHA BACHU, SNEHA PARTHASARATHY, RAJESH GHOURVANI,** *and* **AKHIL MOHAN**, *Individually and on Behalf of All Others Similarly Situated,*<br><br>*Plaintiffs,*<br><br>v.<br><br>**UNITED STATES**,<br><br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DISCOVERY SCHEDULING ORDER

On March 4, 2025, the Court conducted a preliminary scheduling conference (under seal) to discuss the parties' joint preliminary status report filed on February 25, 2025 (ECF 77), filed in accordance with Appendix A to the Rules of the United States Court of Federal Claims (RCFC). For the reasons stated on the record and by agreement of the parties:

(1) Initial disclosures under RCFC 26(a)(1)(A) shall be **MADE** on or before **March 26, 2025**.

(2) All discovery related to the five named plaintiffs as well as the discovery discussed during the status conference necessary to brief the issue of class certification under RCFC 23 shall **CLOSE** on **September 15, 2025**.

(3) The parties shall **FILE** a joint status report on or before **April 3, 2025**, and **every 30 days** thereafter, proving the Court with updates on the following:

    a. Discovery completed during the past thirty days;

    b. Discovery planned during the next thirty days; and

     c.  Proposed briefing schedules with regard to (1) motions to compel or quash, (2) motion for class certification and/or joinder, and (3) motion for partial summary judgment based on the statute of limitations, if and when counsel are prepared to seek such relief.

(4) The parties shall **FILE** a joint status within **fourteen days** of the close of discovery, on or before **September 29, 2025**, proposing schedule of further proceedings.

It is so **ORDERED**.

s/ Armando O. Bonilla
Armando O. Bonilla
Judge

EXHIBIT 2

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TEJA RAVI, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 20-1237<br>(Judge Armando O. Bonilla) |

### DEFENDANT'S RESPONSES AND OBJECTIONS TO
### PLAINTIFFS' FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Rules of the United States Court of Federal Claims, defendant, the United States hereby provides the following responses to plaintiffs' first set of interrogatories.

### OBJECTIONS TO INSTRUCTIONS & DEFINITIONS

The following objections to the Instructions and Definitions form a part of and are incorporated by reference into each of the specific responses below:

1.     Defendant objects to each definition, instruction, or request to the extent that it conflicts with the Rules of the United States Court of Federal Claims or any other applicable rules.  In particular, defendant objects to Instruction No. 2, Definition No. 16, 18, 19, 20.

2.     Defendant objects to the definition of "identify" as overly broad, unduly burdensome, not proportional to the needs of the case and likely to trespass on the privacy and confidentiality interests of third parties.  For example, the definition purports to seek information far in excess of what would be necessary for purposes of a subpoena, and the production of documents will control what associated metadata is made available.  Defendant will interpret the word "identify" in its ordinary sense.

3.     Defendant objects to the definition of "Plaintiffs" as including "all putative class

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

members." No class certification motion has been filed, and no class has been certified. Defendant will interpret the term "Plaintiffs" to refer only to Teja Ravi (who defendant understands to be the individual Ravi Teja Tiyyagura), Swetha Bachu, Sneha Parthasarathy, Rajesh Ghourvani, and Akhil Mohan, the named plaintiffs in this action.

4.    Defendant objects to the definition of "Defendant," "you," and "your," as it is not limited to Homeland Security Investigations (HSI), Immigration and Customs Enforcement, Department of Homeland Security, which is the organization whose actions are at issue. Consequently, an initial search for information beyond the HSI witnesses who managed the University of Farmington operation is not proportional to the needs of this case inasmuch as the proposed discovery would have little to no importance in resolving the issues and the burden of the proposed discovery outweighs its likely benefit. Defendant also objects to the definitions as they include "any employees, agents, representatives and all other persons purporting to act on their behalf" inasmuch as information that may be in the possession, custody, or control of "employees, agents, representatives and all other persons purporting to act on their behalf" is not necessarily in the possession, custody, or control of HSI. Defendant will interpret the terms "Defendant," "you," and "your" to refer only to HSI and will only provide information that is in the possession, custody, or control of HSI.

5.    Defendant objects to the definition of "DHS," "ICE," "USCIS," "DOE," and "DOJ" to the extent that it includes "subcomponents, employees, agents, representatives and all other persons purporting to act on its behalf," and to the extent that the interrogatories are directed to the U.S. Citizenship and Immigration Services, the Department of Education, or the Department of Justice at all. Information that may be in the possession, custody, or control of "subcomponents, employees, agents, representatives and all other persons purporting to act on its

2

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

behalf" is not necessarily in the possession, custody, or control of the named agency. And an initial search for information beyond the HSI witnesses who managed the University of Farmington operation at issue is not proportional to the needs of this case inasmuch as the proposed discovery would have little to no importance in resolving the issues and the burden of the proposed discovery outweighs its likely benefit.

6.    Defendant objects to the definition of "person" to the extent that it includes "partnership, corporation, business entity, legal or governmental entity, agency, organization or association, as well as its respective present and former officers, directors, agents, administrators, managers, representatives, contractors, consultants, employees or other persons acting or purporting to act on behalf of such person." Defendant will interpret the term "person" as referring to a "natural person."

7.    Defendant objects to the definition of "Operation Paper Chase" and "UF" to the extent that it extends beyond the authorized undercover operation by which the University of Farmington was operated by HSI.

8.    Defendant objects to the definition of "academic agent, broker, or recruiter" as vague to the extent that it purports to include any individual beyond the individuals prosecuted in Case Nos. 2:19-cr-20024, 2:19-cr-20025, and 2:19-cr-20026 in the United States District Court for the Eastern District of Michigan.

9.    Defendant objects to the definition of "immigration benefit of relief" as vague and overbroad, inasmuch as the plaintiffs have filed a breach of contract—not an immigration case— and consequently any "benefit or relief available under the Immigration and Nationality Act" has no bearing on the existence, breach, or enforceability of any contract, which are the issues in this case. Interrogatories that call for information regarding an "immigration benefit of relief" are

3

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

therefore not relevant to any party's claim or defense, and are not proportional to the needs of

this case inasmuch as the proposed discovery would have no importance in resolving the issues

and the burden of the proposed discovery outweighs its likely benefit.

<u>SPECIFIC RESPONSES AND OBJECTIONS</u>

<u>INTERROGATORY NO. 1</u>

Identify each and every person who was involved in any way with the preparation of the
answers to these Interrogatories, including the specific information each person provided and
how each obtained such information.

<u>RESPONSE</u>

Defendant objects to this interrogatory on the grounds that the information it seeks is

protected by the attorney-client privilege and the work product doctrine.

<u>INTERROGATORY NO. 2</u>

Identify all DHS employees who were in any way involved with the creation, planning,
design, execution, operation, and/or closure of UF, or any investigations relating to UF.

<u>RESPONSE</u>

Defendant objects to this interrogatory as seeking information that is not relevant to any

party's claim or defense and not proportional to the needs of the case in seeking "all" employees

who were "in any way involved," and by including "any investigations" without limitation to the

named plaintiffs.  For example, defendant does not understand plaintiffs to be disputing that

Operation Paper Chase was a duly authorized undercover operation as that would, by itself,

defeat any possibility of contract formation; compiling "all" employees through whose hands

that authorization process may have passed is therefore burdensome and not proportional to the

needs of the case.  The interrogatory also appears to seek the names of any individual who was

involved in the arrests following shutting down the University of Farmington operation;

collecting those names would also be burdensome and not proportional to the needs of the case,

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

and it would implicate law enforcement sensitive information.  Similarly, information pertaining

to individuals beyond the named plaintiffs is not relevant to any party's claim or defense as those

individuals are not parties to the litigation.  Defendant further objects to this interrogatory on the

ground that it is vague and ambiguous in that it is not clear how, if at all, plaintiffs are

differentiating between "creation," "planning," and "design" or "execution" and "operation" and

what plaintiffs mean by "closure" of a university that never existed.

Subject to its objections, defendant states that Stephen Webber and Ali Milani (alias)

were directly involved in setting up the University of Farmington operation, and Stephen

Webber, Carey Ferrante (alias), and Ali Milani (alias) were directly involved in managing and

executing the University of Farmington operation.

INTERROGATORY NO. 3

Identify all DHS employees who were in any way involved with the creation, planning,
design, execution, operation and/or closure of Operation Paper Chase, or any investigations
relating to Operation Paper Chase.

RESPONSE

Defendant objects to this interrogatory as being duplicative of Interrogatory No. 2;

Operation Paper Chase was the internal nomenclature for the University of Farmington

operation.  Defendant incorporates its objections and response to Interrogatory No. 2.

INTERROGATORY NO. 4

Identify all employees of any U.S. agency, including DOE, DOS, and DOJ, who were in
any way involved with the creation, design, planning, execution, or operation of UF, or any
investigations relating to UF.

RESPONSE

Defendant objects to this interrogatory as being duplicative of Interrogatory No. 2 in that

DHS is a U.S. agency.  Defendant further objects to this interrogatory as seeking information that

is not relevant to any party's claim or defense and not proportional to the needs of the case in

5

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

seeking "all" employees who were "in any way involved," and by including "any investigations" without limitation to the named plaintiffs. For example, defendant does not understand plaintiffs to be disputing that Operation Paper Chase was a duly authorized undercover operation as that would, by itself, defeat any possibility of contract formation; compiling "all" employees through whose hands that authorization process may have passed is therefore burdensome and not proportional to the needs of the case. The interrogatory also appears to seek the names of any individual who was involved in the arrests following shutting down the University of Farmington operation; collecting those names would also be burdensome and not proportional to the needs of the case, and it would implicate law enforcement sensitive information. Similarly, the University of Farmington operation was run by HSI; identifying "all" employees who may have "in any way" been "involved" at other agencies with—which on its face appears to include any individual with any awareness of—the operation is burdensome and not proportional to the needs of the case. In addition, information pertaining to individuals beyond the named plaintiffs is not relevant to any party's claim or defense as those individuals are not parties to the litigation. Defendant further objects to this interrogatory on the ground that it is vague and ambiguous in that it is not clear how, if at all, plaintiffs are differentiating between "creation," "planning," and "design" or between "execution" or "operation."

Subject to its objections, defendant states that Stephen Webber and Ali Milani (alias) were directly involved in setting up the University of Farmington operation, and Stephen Webber, Carey Ferrante (alias), and Ali Milani (alias) were directly involved in managing and executing the University of Farmington operation.

INTERROGATORY NO. 5

Identify all employees of any U.S. agency, including DOE, DOS, and DOJ who were in any way involved with the creation, design, planning, execution, or operation of Operation Paper

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Chase, or any investigations relating to Operation Paper Chase.

<u>RESPONSE</u>

Defendant objects to this interrogatory as being duplicative of Interrogatory No. 4; Operation Paper Chase was the internal nomenclature for the University of Farmington operation. Defendant incorporates its objections and response to Interrogatory No. 4.

<u>INTERROGATORY NO. 6</u>

Identify all foreign nationals who enrolled at the University of Farmington at any time with the beginning and ending dates of each student's enrollment.

<u>RESPONSE</u>

Defendant objects to this interrogatory as seeking information that is not relevant to any party's claim or defense and not proportional to the needs of the case in seeking information pertaining to individuals beyond the named plaintiffs as those individuals are not parties to the litigation and have no bearing on the existence, breach, or enforceability of any contract between the United States and the named plaintiffs, which are the issues in this case; in addition, the interrogatory trespasses on the privacy and confidentiality interests of those third parties. Defendant further objects to this interrogatory as vague and ambiguous in its use of the terms "enroll" and "student"—the University of Farmington operation was not a real university and the participants in the operation were not legitimate "students;" consequently they did not "enroll" at the University of Farmington as that word is commonly understood.

Subject to its objections, defendant states that according to our records:

- Ravi Teja Tiyyagura submitted an "application" dated February 13, 2018, received an "admission letter" dated February 15, 2018, and made payments to the University of Farmington operation between February 26, 2018 and January 6, 2019;

- Swetha Bachu submitted an "application" dated January 19, 2018, received an

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

"admission letter" dated January 23, 2018, and made payments to the University of Farmington

operation between February 28, 2018 and December 4, 2018;

- Sneha Parthasarathy submitted an "application" dated May 17, 2017, received an
"admission letter" dated May 18, 2017, and made payments to the University of Farmington
operation between August 8, 2017 and December 17, 2018;

- Rajesh Ghourvani tried to submit an "application" on November 13, 2017,
submitted an "application" on January 4, 2018, received an "admission letter" dated January 4,
2018, and made payments to the University of Farmington operation between February 15, 2018
and December 6, 2018;

- Akhil Mohan submitted an "application" dated September 19, 2017, received an
"admission letter" dated October 16, 2017, and made payments to the University of Farmington
operation between February 12, 2018 and December 7, 2018.

Defendant further states that the University of Farmington operation shut down by no

later than January 30, 2019.

<u>INTERROGATORY NO. 7</u>

Identify any foreign nationals who enrolled at the University of Farmington who DHS,
DOS, or DOJ has concluded committed fraud or made material misrepresentations under INA
§ 212(a)(6)(C)(i); 8 U.S.C. § 1182(a)(6)(C)(i) stemming from their enrollment in UF, and the
basis for any such determinations.

<u>RESPONSE</u>

Defendant objects to this interrogatory as seeking information that is not relevant to any

party's claim or defense and not proportional to the needs of the case in seeking information

pertaining to individuals beyond the named plaintiffs as those individuals are not parties to the

litigation and have no bearing on the existence, breach, or enforceability of any contract between

the United States and the named plaintiffs, which are the issues in this case; in addition, the

8

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

interrogatory trespasses on the privacy and confidentiality interests of those third parties.

Defendant further objects to this interrogatory as seeking information that is not relevant to any

party's claim or defense and not proportional to the needs of the case because INA

§ 212(a)(6)(C)(i), codified at 8 U.S.C. § 1182(a)(6)(C)(i), pertains to "*inadmissible* aliens," but

at the time of the named plaintiffs' involvement with the University of Farmington operation,

they had already all been admitted to the United States.  To the extent that any of the named

plaintiffs may seek admission to the United States in the future—and any admissibility

determinations that may be made at that time—those decisions have no bearing on the existence,

breach, or enforceability of any contract between the United States and the named plaintiffs,

which are the issues in this case.  Defendant further objects to this interrogatory as vague and

ambiguous in its use of the term "enroll"—the University of Farmington operation was not a real

university and the participants in the operation were not legitimate "students;" consequently they

did not "enroll" at the University of Farmington as that word is commonly understood.

<u>INTERROGATORY NO. 8</u>

Identify any foreign nationals who enrolled at the University of Farmington who DHS, DOS, or DOJ has found inadmissible or deportable under any other provision of the Immigration and Nationality Act stemming from their enrollment in UF, and the basis for any such determinations.

<u>RESPONSE</u>

Defendant objects to this interrogatory as seeking information that is not relevant to any

party's claim or defense and not proportional to the needs of the case in seeking information

pertaining to individuals beyond the named plaintiffs as those individuals are not parties to the

litigation and have no bearing on the existence, breach, or enforceability of any contract between

the United States and the named plaintiffs, which are the issues in this case; in addition, the

interrogatory trespasses on the privacy and confidentiality interests of those third parties.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Defendant further objects to this interrogatory as seeking information that is not relevant to any party's claim or defense and not proportional to the needs of the case in seeking information about "inadmissible" determinations because at the time of the named plaintiffs' involvement with the University of Farmington operation, they had already all been admitted to the United States. To the extent that any of the named plaintiffs may seek admission to the United States in the future, or gain admission to the United States in the future—and any admissibility determinations that may be made at that time—those decisions have no bearing on the existence, breach, or enforceability of any contract between the United States and the named plaintiffs, which are the issues in this case. Defendant further objects to this interrogatory as vague and ambiguous in that the term "deportable" is not defined; defendant will interpret "deportable" to mean "removable" or "subject to removal." Defendant further objects to this interrogatory as vague and ambiguous in its use of the term "enroll"—the University of Farmington operation was not a real university and the participants in the operation were not legitimate "students;" consequently they did not "enroll" at the University of Farmington as that word is commonly understood.

Subject to its objections, defendant states that:

• Swetha Bachu was charged as removable from the United States for failing to maintain or not complying with the conditions of her nonimmigrant status pursuant to § 237(a)(1)(C)(i) of the Immigration and Nationality Act, as amended. Ms. Bachu's nonimmigrant student status was terminated in the Student and Exchange Visitor Information System because she was not pursuing a full course of study or participating in authorized practical training as an integral part of any curriculum from on or about January 29, 2018 to January 29, 2019. Ms. Bachu conceded that she was removable under § 237(a)(1)(C)(i) of the

10

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Immigration and Nationality Act, as amended.  Ms. Bachu was granted, at her request, voluntary departure by an immigration judge and departed the United States on March 14, 2019.

- Sneha Parthasarathy was charged as removable from the United States for failing to maintain or not complying with the conditions of her nonimmigrant status pursuant to § 237(a)(1)(C)(i) of the Immigration and Nationality Act, as amended.  Ms. Parthasarathy's nonimmigrant student status was terminated in the Student and Exchange Visitor Information System because she was not pursuing a full course of study or participating in authorized practical training as an integral part of any curriculum from on or about May 22, 2017 to January 29, 2019.  Ms. Parthasarathy conceded that she was removable for failing to maintain or not complying with the conditions of her nonimmigrant status as alleged.  Ms. Parthasarathy was granted, at her request, voluntary departure by an immigration judge and departed the United States on February 13, 2019.

- Rajesh Ghourvani was charged as removable from the United States for failing to maintain or not complying with the conditions of his nonimmigrant status pursuant to § 237(a)(1)(C)(i) of the Immigration and Nationality Act, as amended.  Mr. Ghourvani's nonimmigrant student status was terminated in the Student and Exchange Visitor Information System because he was not pursuing a full course of study or participating in authorized practical training as an integral part of any curriculum from on or about January 24, 2018 to January 29, 2019.  Mr. Ghourvani conceded that he was removable for failing to maintain or not complying with the conditions of his nonimmigrant status as alleged.  Mr. Ghourvani was granted, at his request, voluntary departure by an immigration judge and departed the United States on March 19, 2019.

- Ravi Teja Tiyyagura's nonimmigrant student status was terminated in the Student

11

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

and Exchange Visitor Information System because he was not pursuing a full course of study or

participating in authorized practical training as an integral part of any curriculum.  On February

1, 2019, Mr. Tiyyagura departed the United States prior to any administrative enforcement

action.

- Akhil Mohan's nonimmigrant student status was terminated in the Student and

Exchange Visitor Information System because he was not pursuing a full course of study or

participating in authorized practical training as an integral part of any curriculum.  On February

2, 2019, Mr. Mohan departed the United States prior to any administrative enforcement action.

INTERROGATORY NO. 9

Identify any foreign nationals who enrolled at the University of Farmington who DHS,
DOS, DOJ, or any other U.S. agency has concluded violated any other provision of the U.S.
Code including any criminal violations stemming from their enrollment in UF, and the basis for
any such determinations.

RESPONSE

Defendant objects to this interrogatory as seeking information that is not relevant to any

party's claim or defense and not proportional to the needs of the case in seeking information

pertaining to individuals beyond the named plaintiffs as those individuals are not parties to the

litigation and have no bearing on the existence, breach, or enforceability of any contract between

the United States and the named plaintiffs, which are the issues in this case; in addition, the

interrogatory trespasses on the privacy and confidentiality interests of those third parties.

Defendant further objects to this interrogatory to the extent that it seeks information that is

protected by privilege, for example, regarding criminal charges that were not brought or

otherwise made public.  Defendant further objects to this interrogatory as vague and ambiguous

in its use of the term "enroll"—the University of Farmington operation was not a real university

and the participants in the operation were not legitimate "students;" consequently they did not

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

"enroll" at the University of Farmington as that word is commonly understood.

Subject to its objections, defendant states that:

- Ravi Teja Tiyyagura used the services of criminal recruiter Avinash Thakkallapally.  While Mr. Tiyyagura departed the United States on February 1, 2019, prior to any administrative enforcement action, Mr. Thakkallapally was convicted in the U.S. District Court for the Eastern District of Michigan on September 11, 2019, for the offense of Conspiracy to Commit Visa Fraud and Harbor Aliens for Profit in violation of 18 U.S.C. § 371 for his actions relating to the University of Farmington operation.  More information about the basis for Mr. Thakkallapally's criminal conviction is publicly available through the docket in Case No. 2:19-cr-20026 (E.D. Mich.).

- Swetha Bachu was taken into ICE custody and charged as removable from the United States for failing to maintain or not complying with the conditions of her nonimmigrant status.  At her request, she was granted voluntary departure by an immigration judge on February 21, 2019 and voluntarily departed the United States on March 14, 2019.

- Sneha Parthasarathy was taken into ICE custody and charged as removable from the United States for failing to maintain or not complying with the conditions of her nonimmigrant status.  At her request, she was granted voluntary departure by an immigration judge on February 12, 2019 and voluntarily departed the United States on February 13, 2019.

- Rajesh Ghourvani was taken into ICE custody and charged as removable from the United States for failing to maintain or not complying with the conditions of his nonimmigrant status.  At his request, he was granted voluntary departure by an immigration judge on February 21, 2019 and voluntarily departed the United States on March 19, 2019.

- Akhil Mohan departed the United States on February 2, 2019, prior to any

13

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

administrative enforcement action.

<u>INTERROGATORY NO. 10</u>

Identify any foreign nationals who enrolled at the University of Farmington who DHS or DOS have denied any immigration benefit or relief based upon their enrollment in UF, and the basis for any such determinations.

<u>RESPONSE</u>

Defendant objects to this interrogatory as seeking information that is not relevant to any party's claim or defense and not proportional to the needs of the case in seeking information pertaining to individuals beyond the named plaintiffs as those individuals are not parties to the litigation and have no bearing on the existence, breach, or enforceability of any contract between the United States and the named plaintiffs, which are the issues in this case; in addition, the interrogatory trespasses on the privacy and confidentiality interests of those third parties. Defendant further objects to this interrogatory as vague and ambiguous in its use of the term "enroll"—the University of Farmington operation was not a real university and the participants in the operation were not legitimate "students;" consequently they did not "enroll" at the University of Farmington as that word is commonly understood.

Subject to its objections, defendant states that rather than being denied benefits, the named plaintiffs obtained benefits as a result of their participation in the illegal "pay to stay" "special arrangement" through the University of Farmington. Indeed, plaintiffs paid money to the University of Farmington not with the intention of obtaining any education services, but precisely in order to maintain the appearance of their nonimmigrant student status despite not pursuing a full course of study or participating in authorized practical training as an integral part of any curriculum. Defendant further states:

- At minimum between February 2018 and his departure from the United States on February 1, 2019, Ravi Teja Tiyyagura was in violation of his nonimmigrant student status for

14

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

failing to pursue a full course of study or participating in authorized practical training as an integral part of any curriculum and was therefore removable from the United States. Nevertheless, as a result of participating in the illegal "pay to stay" "special arrangement" through the University of Farmington, Mr. Tiyyagura received a Form I-20, Certificate of Eligibility for Nonimmigrant Student Status during that time, which Mr. Tiyyagura could use as identification, evidence of authorized stay, and proof of legal and academic status to maintain employment in the United States and as an entry document if he traveled abroad.

- At minimum between on or about January 29, 2018 and her departure from the United States on March 14, 2019, Swetha Bachu was in violation of her nonimmigrant student status for failing to pursue a full course of study or participating in authorized practical training as an integral part of any curriculum and was therefore removable from the United States. Nevertheless, as a result of participating in the illegal "pay to stay" "special arrangement" through the University of Farmington, Ms. Bachu received a Form I-20, Certificate of Eligibility for Nonimmigrant Student Status during that time, which Ms. Bachu could use as identification, evidence of authorized stay, and proof of legal and academic status to maintain employment in the United States and as an entry document if she traveled abroad.

- At minimum between on or about May 22, 2017 and her departure from the United States on February 13, 2019, Sneha Parthasarathy was in violation of her nonimmigrant student status for failing to pursue a full course of study or participating in authorized practical training as an integral part of any curriculum and was therefore removable from the United States. Nevertheless, as a result of participating in the illegal "pay to stay" "special arrangement" through the University of Farmington, Ms. Parthasarathy received a Form I-20, Certificate of Eligibility for Nonimmigrant Student Status during that time, which Ms.

15

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Parthasarathy could use as identification, evidence of authorized stay, and proof of legal and academic status to maintain employment in the United States and as an entry document if she traveled abroad.

- At minimum between on or about January 24, 2018and his departure from the United States on March 19, 2019, Rajesh Ghourvani was in violation of his nonimmigrant student status for failing to pursue a full course of study or participating in authorized practical training as an integral part of any curriculum and was therefore removable from the United States. Nevertheless, as a result of participating in the illegal "pay to stay" "special arrangement" through the University of Farmington, Mr. Ghourvani received a Form I-20, Certificate of Eligibility for Nonimmigrant Student Status during that time, which Mr. Ghourvani could use as identification, evidence of authorized stay, and proof of legal and academic status to maintain employment in the United States and as an entry document if he traveled abroad.

- At minimum between February 2018 and his departure from the United States on February 2, 2019, Akhil Mohan was in violation of his nonimmigrant student status for failing to pursue a full course of study or participating in authorized practical training as an integral part of any curriculum and was therefore removable from the United States. Nevertheless, as a result of participating in the illegal "pay to stay" "special arrangement" through the University of Farmington, Mr. Mohan received a Form I-20, Certificate of Eligibility for Nonimmigrant Student Status during that time, which Mr. Mohan could use as identification, evidence of authorized stay, and proof of legal and academic status to maintain employment in the United States and as an entry document if he traveled abroad.

<u>INTERROGATORY NO. 11</u>

Explain the criteria used by DHS to terminate the F-1 status of foreign nationals previously enrolled in UF.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

RESPONSE

Defendant objects to this interrogatory as seeking information that is not relevant to any party's claim or defense and not proportional to the needs of the case in seeking information pertaining to individuals beyond the named plaintiffs as those individuals are not parties to the litigation and have no bearing on the existence, breach, or enforceability of any contract between the United States and the named plaintiffs, which are the issues in this case; in addition, the interrogatory trespasses on the privacy and confidentiality interests of those third parties. Even with respect to the named plaintiffs, the termination of their F-1 status has no bearing on the existence, breach, or enforceability of any contract, which are the issues in this case. Defendant further objects to this interrogatory as vague and ambiguous in its use of the term "enroll"—the University of Farmington operation was not a real university and the participants in the operation were not legitimate "students;" consequently they did not "enroll" at the University of Farmington as that word is commonly understood.

Subject to its objections, defendant states that:

• At minimum between February 2018 and his departure from the United States on February 1, 2019, Ravi Teja Tiyyagura was in violation of his nonimmigrant student status for failing to pursue a full course of study or participating in authorized practical training as an integral part of any curriculum;

• At minimum between on or about January 29, 2018 and her departure from the United States on March 14, 2019, Swetha Bachu was in violation of her nonimmigrant student status for failing to pursue a full course of study or participating in authorized practical training as an integral part of any curriculum;

• At minimum between on or about May 22, 2017 and her departure from the

17

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

United States on February 13, 2019, Sneha Parthasarathy was in violation of her nonimmigrant

student status for failing to pursue a full course of study or participating in authorized practical

training as an integral part of any curriculum;

- At minimum between on or about January 24, 2018 and his departure from the

United States on March 19, 2019, Rajesh Ghourvani was in violation of his nonimmigrant

student status for failing to pursue a full course of study or participating in authorized practical

training as an integral part of any curriculum;

- At minimum between February 2018 and his departure from the United States on

February 2, 2019, Akhil Mohan was in violation of his nonimmigrant student status for failing to

pursue a full course of study or participating in authorized practical training as an integral part of

any curriculum.

INTERROGATORY NO. 12

Identify every electronic database that contains any annotation, data entry, narrative, or
other mention relating to an individual's enrollment in UF.

RESPONSE

Defendant objects to this interrogatory as seeking information that is not relevant to any

party's claim or defense and not proportional to the needs of the case in seeking information

pertaining to individuals beyond the named plaintiffs as those individuals are not parties to the

litigation and have no bearing on the existence, breach, or enforceability of any contract between

the United States and the named plaintiffs, which are the issues in this case.  Even with respect to

the named plaintiffs, the existence of some "annotation, data entry, narrative, or other mention

relating to" the individual's participation in the University of Farmington in some electronic

database has no bearing on the existence, breach, or enforceability of any contract, which are the

issues in this case, and the burden of reviewing every electronic database anywhere in the

18

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Federal Government to determine whether any such mention exists is also not proportional to the needs of the case, especially considering HSI's myriad databases are not keyword searchable and would require a manual review of individual data entries. Plaintiffs have filed a breach of contract action, and the disputed factual issues in this case are quite narrow: whether anyone at HSI, with actual authority to do so, promised to provide educational services to any of the named plaintiffs; and whether any of the named plaintiffs actually intended to or tried to obtain educational services from the University of Farmington operation. This interrogatory does not appear to address either of those factual issues. Defendant further objects to this interrogatory as vague and ambiguous in its use of the term "enroll"—the University of Farmington operation was not a real university and the participants in the operation were not legitimate "students;" consequently they did not "enroll" at the University of Farmington as that word is commonly understood.

<u>INTERROGATORY NO. 13</u>

Identify, for each database listed in response to Interrogatory 12, all individuals who have knowledge of the creation, design, maintenance, operation, and use of the database.

<u>RESPONSE</u>

Defendant objects to this interrogatory as seeking information that is not relevant to any party's claim or defense and not proportional to the needs of the case in seeking information pertaining to individuals beyond the named plaintiffs as those individuals are not parties to the litigation and have no bearing on the existence, breach, or enforceability of any contract between the United States and the named plaintiffs, which are the issues in this case. Even with respect to the named plaintiffs, the existence of some "annotation, data entry, narrative, or other mention relating to" the individual's participation in the University of Farmington in some electronic database has no bearing on the existence, breach, or enforceability of any contract, which are the

19

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

issues in this case, and the burden of reviewing every electronic database anywhere in the

Federal Government to determine whether any such mention exists, and then identifying "all

individuals" who "have knowledge" of any such database—which would encompass thousands

of employees or more—is also not proportional to the needs of the case.  Plaintiffs have filed a

breach of contract action, and the disputed factual issues in this case are quite narrow: whether

anyone at HSI, with actual authority to do so, promised to provide educational services to any of

the named plaintiffs; and whether any of the named plaintiffs actually intended to or tried to

obtain educational services from the University of Farmington operation.  This interrogatory

does not appear to address either of those factual issues.

INTERROGATORY NO. 14

    Explain how DHS transfers or exchanges information regarding any individual
previously enrolled in UF to other U.S. agencies, including DOS and DOJ.

    RESPONSE

    Defendant objects to this interrogatory as seeking information that is not relevant to any

party's claim or defense and not proportional to the needs of the case in seeking information

pertaining to individuals beyond the named plaintiffs as those individuals are not parties to the

litigation and have no bearing on the existence, breach, or enforceability of any contract between

the United States and the named plaintiffs, which are the issues in this case; in addition, the

interrogatory trespasses on the privacy and confidentiality interests of those third parties.  Even

with respect to the named plaintiffs, "how DHS transfers or exchanges information" with other

agencies has no bearing on the existence, breach, or enforceability of any contract between the

United States and the named plaintiffs, which are the issues in this case.  Plaintiffs have filed a

breach of contract action, and the disputed factual issues in this case are quite narrow: whether

anyone at HSI, with actual authority to do so, promised to provide educational services to any of

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

the named plaintiffs; and whether any of the named plaintiffs actually intended to or tried to

obtain educational services from the University of Farmington operation.  This interrogatory

does not appear to address either of those factual issues.  Defendant further objects to this

interrogatory as vague and ambiguous in that the term "transfers or exchanges information" is

itself vague and ambiguous and overbroad.  For example, the interrogatory is unclear in whether

it contemplates active sharing or also includes passive sharing or jointly accessible databases,

whether it includes things like motions and hearings before immigration judges, etc.  Defendant

further objects to this interrogatory as vague and ambiguous in its use of the term "enroll"—the

University of Farmington operation was not a real university and the participants in the operation

were not legitimate "students;" consequently they did not "enroll" at the University of

Farmington as that word is commonly understood.

<u>INTERROGATORY NO. 15</u>

Identify all foreign nationals previously enrolled at UF who have any annotation, data
entry, narrative, or other mention of UF in their A-files and any other database.

<u>RESPONSE</u>

Defendant objects to this interrogatory as seeking information that is not relevant to any

party's claim or defense and not proportional to the needs of the case in seeking information

pertaining to individuals beyond the named plaintiffs as those individuals are not parties to the

litigation and have no bearing on the existence, breach, or enforceability of any contract between

the United States and the named plaintiffs, which are the issues in this case; in addition, the

interrogatory trespasses on the privacy and confidentiality interests of those third parties.  Even

with respect to the named plaintiffs, the existence of some "annotation, data entry, narrative, or

other mention" of the University of Farmington in "any [] database" has no bearing on the

existence, breach, or enforceability of any contract, which are the issues in this case, and the

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

burden of reviewing every electronic database—which may not be keyword searchable and instead require a manual review of records—anywhere in the Federal Government to determine whether any such mention exists is also not proportional to the needs of the case.  Plaintiffs have filed a breach of contract action, and the disputed factual issues in this case are quite narrow: whether anyone at HSI, with actual authority to do so, promised to provide educational services to any of the named plaintiffs; and whether any of the named plaintiffs actually intended to or tried to obtain educational services from the University of Farmington operation.  This interrogatory does not appear to address either of those factual issues.  Defendant further objects to this interrogatory as vague and ambiguous in its use of the term "enroll"—the University of Farmington operation was not a real university and the participants in the operation were not legitimate "students;" consequently they did not "enroll" at the University of Farmington as that word is commonly understood.

Subject to its objections, pursuant to Rule 33(d) of the Rules of the Court of Federal Claims, defendant will produce the Named Plaintiffs' Files as set out in its Responses and Objections to Plaintiffs' First Set of Requests for Production, which will include the A-File, to the extent one exists, for Ravi Teja Tiyyagura, Swetha Bachu, Sneha Parthasarathy, Rajesh Ghourvani, and Akhil Mohan.  The burden of deriving or ascertaining the information sought by this interrogatory with respect to the named plaintiffs is substantially the same for the plaintiffs as it would be for defendant.

<u>INTERROGATORY NO. 16</u>

Identify any academic agent, broker, or recruiter with whom any DHS, DOE, or DOS employee communicated regarding the University of Farmington.

<u>RESPONSE</u>

Defendant objects to this interrogatory as seeking information that is not relevant to any

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

party's claim or defense and not proportional to the needs of the case in seeking information

pertaining to individuals beyond the named plaintiffs as those individuals are not parties to the

litigation and have no bearing on the existence, breach, or enforceability of any contract between

the United States and the named plaintiffs, which are the issues in this case; in addition, the

interrogatory trespasses on the privacy and confidentiality interests of those third parties.

Defendant further objects to this interrogatory as seeking information that is not relevant to any

party's claim or defense and not proportional to the needs of the case in seeking information

from beyond HSI, which is the agency that ran the University of Farmington operation.

Subject to its objections, defendant states that Ravi Teja Tiyyagura used the services of

criminal recruiter Avinash Thakkallapally, who was convicted in the U.S. District Court for the

Eastern District of Michigan on September 11, 2019, for the offense of Conspiracy to Commit

Visa Fraud and Harbor Aliens for Profit in violation of 18 U.S.C. § 371 for his actions relating to

the University of Farmington operation.  Mr. Thakkallapally contacted HSI undercover special

agents regarding Mr. Tiyyagura.

INTERROGATORY NO. 17

Identify any academic agent, broker, or recruiter who enrolled or assisted in enrolling any
students at UF and the individual students who each agent or broker specifically enrolled.

RESPONSE

Defendant objects to this interrogatory as seeking information that is not relevant to any

party's claim or defense and not proportional to the needs of the case in seeking information

pertaining to individuals beyond the named plaintiffs as those individuals are not parties to the

litigation and have no bearing on the existence, breach, or enforceability of any contract between

the United States and the named plaintiffs, which are the issues in this case; in addition, the

interrogatory trespasses on the privacy and confidentiality interests of those third parties.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Defendant further objects to this interrogatory as vague and ambiguous in its use of the terms "enroll" and "student"—the University of Farmington operation was not a real university and the participants in the operation were not legitimate "students;" consequently they did not "enroll" at the University of Farmington as that word is commonly understood.

Subject to its objections, defendant states that Ravi Teja Tiyyagura used the services of criminal recruiter Avinash Thakkallapally, who was convicted in the U.S. District Court for the Eastern District of Michigan on September 11, 2019, for the offense of Conspiracy to Commit Visa Fraud and Harbor Aliens for Profit in violation of 18 U.S.C. § 371 for his actions relating to the University of Farmington operation.

INTERROGATORY NO. 18

Provide the full case name, case number, and court name for any criminal cases that have been filed in any court related to the University of Farmington operation.

RESPONSE

Defendant objects to this interrogatory as seeking information that is not relevant to any party's claim or defense and not proportional to the needs of the case in seeking information pertaining to individuals beyond the named plaintiffs as those individuals are not parties to the litigation and have no bearing on the existence, breach, or enforceability of any contract between the United States and the named plaintiffs, which are the issues in this case; in addition, the interrogatory trespasses on the privacy and confidentiality interests of those third parties. Defendant further objects to this interrogatory to the extent it seeks information that is publicly available and therefore equally available to plaintiffs.

Subject to its objections, defendant states that Ravi Teja Tiyyagura used the services of criminal recruiter Avinash Thakkallapally, who was convicted in the U.S. District Court for the Eastern District of Michigan on September 11, 2019, for the offense of Conspiracy to Commit

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Visa Fraud and Harbor Aliens for Profit in violation of 18 U.S.C. § 371 for his actions relating to

the University of Farmington operation.  Mr. Thakkallapally was prosecuted in Case

No. 2:19-cr-20026.

INTERROGATORY NO. 19

State the true identity of the persons who used the aliases "Carrie Fernand", "Carey
Ferrante" and "Ali Malani" during the course of the creation and execution of UF and Operation
Paper Chase.

RESPONSE

Defendant objects to this interrogatory as seeking information that is not relevant to any

party's claim or defense and not proportional to the needs of the case; defendant will be

collecting documents from these undercover agents and anticipates making them available for

depositions if necessary—their true identities have no bearing on the existence, breach, or

enforceability of any contract between the United States and the named plaintiffs, which are the

issues in this case.  Defendant further objects to this interrogatory as seeking information that is

protected by law enforcement privilege; release of the true identities of undercover agents could

jeopardize ongoing and future HSI criminal and civil investigations and is unnecessary in this

case, as discovery can proceed using their aliases.  Defendant further objects to this interrogatory

as vague and ambiguous in that no alias by the name of "Carrie Fernand" was used during the

operation.

INTERROGATORY NO. 20

Identify all individuals who posed as employees of the University of Farmington,
including full names, official job titles, and training records, and their corresponding fictious
name when posing as a UF employee.

RESPONSE

Defendant objects to this interrogatory as seeking information that is not relevant to any

party's claim or defense and not proportional to the needs of the case; defendant will be

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

collecting documents from the undercover agents who ran the University of Farmington operation and anticipates making them available for depositions if necessary—their true identities, to say nothing of their training records, have no bearing on the existence, breach, or enforceability of any contract between the United States and the named plaintiffs, which are the issues in this case.  Defendant further objects to this interrogatory as seeking information that is protected by law enforcement privilege; release of the true identities of undercover agents could jeopardize ongoing and future HSI criminal and civil investigations and is unnecessary in this case, as discovery in this case can proceed using their aliases.  Defendant further objects to this interrogatory as vague and ambiguous in its use of the term "training records;" defendant is unclear as to what documents plaintiffs are referring with this term and how they would be relevant to a breach of contract claim.

Subject to its objections, defendant states that only three undercover agents posed as University of Farmington employees:  Stephen Webber (who used the alias Edward Roberts), Carey Ferrante (alias), and Ali Milani (alias).  At the time they were working on the University of Farmington operation all three were Special Agents with the Office of the Special Agent in Charge located in Detroit, Michigan for HSI.

INTERROGATORY NO. 21

Provide the name of any organizations which provided accreditation to UF, how that accreditation was obtained, the name of the organizations' officials or employees directly involved in the accreditation, and the officials' or employees' titles, addresses, and telephone numbers.

RESPONSE

Defendant objects to this interrogatory as seeking information that is not relevant to any party's claim or defense and not proportional to the needs of the case.  Plaintiffs have filed a breach of contract action, and the disputed factual issues in this case are quite narrow: whether

26

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

anyone at HSI, with actual authority to do so, promised to provide educational services to any of the named plaintiffs; and whether any of the named plaintiffs actually intended to or tried to obtain educational services from the University of Farmington operation. The accreditation of the University of Farmington is collateral to those questions and has no bearing on the existence, breach, or enforceability of any contract between the United States and the named plaintiffs. Defendant further objects to this interrogatory as seeking information that is protected by privilege, including law enforcement privilege. Defendant further objects to this interrogatory as seeking information that is either public, and therefore equally available to plaintiffs, or if not public, then in the possession, custody, or control of third parties.

Subject to its objections, defendant states Operation Paper Chase was a duly authorized undercover operation which stood up the University of Farmington as its public face. In support of that undercover operation, HSI obtained a license from the Michigan Department of Licensing and Regulatory Affairs, accreditation by the Accrediting Commission of Career Schools and Colleges, and approval through the Student and Exchange Visitor Program along with access the Student and Exchange Visitor Information System. The operation also received an .edu website domain name through EDUCAUSE.

INTERROGATORY NO. 22

For each foreign national who enrolled at the University of Farmington at any time, list the students name and the amount of tuition that each paid.

RESPONSE

Defendant objects to this interrogatory as seeking information that is not relevant to any party's claim or defense and not proportional to the needs of the case in seeking information pertaining to individuals beyond the named plaintiffs as those individuals are not parties to the litigation have no bearing on the existence, breach, or enforceability of any contract between the

27

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

United States and the named plaintiffs, which are the issues in this case; in addition, the
interrogatory trespasses on the privacy and confidentiality interests of those third parties.
Defendant further objects to this interrogatory as vague and ambiguous in its use of the terms
"enrolled," "students," and "tuition"—the University of Farmington operation was not a real
university and the participants in the operation were not legitimate "students;" consequently they
neither "enrolled" nor paid "tuition" as those words are commonly understood.

Subject to its objections, defendant states that according to our records, the named
plaintiffs made the following payments to the University of Farmington operation:

| Plaintiff | Date | Amount |
|---|---|---|
| Ravi Teja Tiyyagura | February 26, 2018 | $1,000.00 |
| | March 16, 2018 | $500.00 |
| | March 17, 2018 | $500.00 |
| | March 19, 2018 | $500.00 |
| | June 28, 2018 | $1,000.00 |
| | June 28, 2018 | $500.00 |
| | June 29, 2018 | $300.00 |
| | June 29, 2018 | $670.00 |
| | June 29, 2018 | $30.00 |
| | October 2, 2018 | $700.00 |
| | October 3, 2018 | $1,800.00 |
| | January 6, 2019 | $1,000.00 |
| | January 6, 2019 | $900.00 |
| | January 6, 2019 | $300.00 |
| | January 6, 2019 | $300.00 |
| Swetha Bachu | February 28, 2018 | $2,500.00 |
| | May 28, 2018 | $2,500.00 |
| | August 27, 2018 | $2,500.00 |
| | December 4, 2018 | $2,500.00 |
| Sneha Parthasarathy | August 8, 2017 | $2,500.00 |
| | November 6, 2017 | $2,500.00 |
| | March 5, 2018 | $2,500.00 |
| | June 18, 2018 | $2,500.00 |
| | September 24, 2018 | $2,500.00 |
| | December 17, 2018 | $2,500.00 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Plaintiff | Date | Amount |
|---|---|---|
| Rajesh Ghourvani | February 15, 2018 | $2,500.00 |
| | June 1, 2018 | $2,500.00 |
| | September 19, 2018 | $2,500.00 |
| | December 6, 2018 | $2,500.00 |
| Akhil Mohan | February 12, 2018 | $1,000.00 |
| | March 2, 2018 | $1,500.00 |
| | May 19, 2018 | $2,500.00 |
| | August 31, 2018 | $2,500.00 |
| | December 7, 2018 | $2,500.00 |

INTERROGATORY NO. 23

Provide a description of every material that advertised the University, including websites, pamphlets, any emails or any other materials.

RESPONSE

Defendant objects to this interrogatory as seeking information that is not relevant to any party's claim or defense and not proportional to the needs of the case by seeking "every material" and "any emails" and therefore seeking information that the named plaintiffs were not necessarily aware of, and therefore would have no bearing on the existence, breach, or enforceability of any contract between the United States and the named plaintiffs, which are the issues in this case.  To the extent that plaintiffs were aware of any advertising material, defendant further objects to this interrogatory as seeking information that is either already in the possession, custody, or control of plaintiffs or else publicly available.  Defendant further objects to this interrogatory as seeking information that is not relevant to any party's claim or defense and not proportional to the needs of the case in seeking information pertaining to individuals beyond the named plaintiffs as those individuals are not parties to the litigation have no bearing on the existence, breach, or enforceability of any contract between the United States and the named plaintiffs, which are the issues in this case.  Defendant further objects to this interrogatory as vague and ambiguous in its use of the term "advertised;" plaintiffs do not specify what

29

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

constitutes an "advertisement."  Defendant further objects to this interrogatory as vague and ambiguous in that "provide a description" is an incredibly broad term and it is unclear what kind of information specifically plaintiffs are seeking.

Subject to its objections, defendant states that the University of Farmington operation used three rounds of paid advertising through Facebook, Twitter, and Google in its early stages. The operation also had a website (www.universityoffarmington.edu), a Facebook page, and a Twitter account.  Defendant states that pursuant to Rule 33(d) of the Rules of the Court of Federal Claims, defendant will produce the Named Plaintiffs' Files and the University of Farmington Operation Documents as set out in its Responses and Objections to Plaintiffs' First Set of Requests for Production; in addition the archived website is publicly available and can be accessed through the Wayback Machine (https://web.archive.org/).  The burden of deriving or ascertaining the information sought by this interrogatory is substantially the same for plaintiffs as it would be for defendant.

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/  Eric P. Bruskin
ERIC P. BRUSKIN
Assistant Director

s/  Galina I. Fomenkova
GALINA I. FOMENKOVA
Senior Trial Counsel
United States Department of Justice
Civil Division, Commercial Litigation Branch
P.O.  Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 514-5495
galina.fomenkova@usdoj.gov

June 2, 2025                                    *Attorneys for the United States*

<u>CERTIFICATION OF INTERROGATORY ANSWERS</u>

I certify under the penalties of perjury that the factual statements made in Defendant's Responses and Objections to Plaintiffs' First Set of Interrogatories, served on June 2, 2025 are true to the best of my knowledge, information, and belief.


Executed on June 2, 2025


STEPHEN A WEBBER  <small>Digitally signed by STEPHEN A WEBBER<br>Date: 2025.06.02 21:28:59 -04'00'</small>
_____
STEPHEN WEBBER

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of June, 2025, I caused a true and correct copy of the

foregoing to be served by electronic mail on the following counsel of record:

Amy E. Norris
NORRIS LAW, PLLC
616 E Street NW
Suite 1156
Washington, DC 20004
(202) 530-0100
amy@norrislawgroup.org

*Attorney for Plaintiffs*

s/  Galina I. Fomenkova
GALINA I. FOMENKOVA

EXHIBIT 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TEJA RAVI, *et al.*,<br><br>                 Plaintiffs,<br><br>        v.<br><br>THE UNITED STATES,<br><br>                 Defendant. | No. 20-1237<br>(Judge Armando O. Bonilla) |

DEFENDANT'S RESPONSES AND OBJECTIONS TO
PLAINTIFFS' SECOND SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Rules of the United States Court of Federal Claims,

defendant, the United States hereby provides the following responses to plaintiffs' second set of

interrogatories.

OBJECTIONS TO INSTRUCTIONS & DEFINITIONS

Defendant incorporates its objections to the instructions and definitions set forth in its

Responses and Objections to Plaintiffs' First Set of Interrogatories.

SPECIFIC RESPONSES AND OBJECTIONS

INTERROGATORY NO. [25]

Provide a class list for every person who paid tuition invoices to the University of
Farmington, including contact information and the amount each person paid to the University,
for the following:

The proposed class consists of all persons who enrolled in the University of Farmington from
2015 to 2019. All persons who enrolled include any individual who made at least one payment
to the University of Farmington after receiving an offer of admission and a tuition invoice.
Excluded from the Class are the University of Farmington, its affiliates, employees, officers, and
directors, persons or entities who recruited for the University of Farmington, receiving payment
from the University of Farmington, the Judge(s) assigned to this case, and the attorneys of record
in this case. Plaintiffs reserve the right to amend the Class definition if discovery and further
investigation reveal that the Class should be expanded or otherwise modified.

<u>RESPONSE</u>

Defendant objects to this interrogatory as vague and ambiguous in its use of the term "tuition"—the University of Farmington operation was not a real university and the participants in the operation were not legitimate "students;" consequently, they did not pay "tuition" as that word is commonly understood.  Defendant further objects to this interrogatory as vague and ambiguous in requesting to exclude "persons or entities who recruited for the University of Farmington" because numerous individuals, including named plaintiffs, referred or attempted to refer others to the scheme, *see*, *e.g.*, UFR0000724, UFR0000723.  Defendant further objects to this interrogatory as seeking information that is not relevant to any party's claim or defense and not proportional to the needs of the case and trespasses on the privacy and confidentiality interests of third parties in that (a) this case is not suitable for class certification because, at minimum, the criminal intent of each individual participant precludes class representation; (b) has not been certified as a class; and (c) beyond the five named plaintiffs in this action no other individual has opted into this litigation.  Moreover, the information sought by this interrogatory is not relevant even to the threshold question of class certification:  by definition the names, contact information, and the amount paid will be different among the individual participants, and those characteristics cannot help plaintiffs demonstrate that class action is warranted.  In the event that plaintiffs move for class certification and such certification is granted, defendant will cooperate in providing required notice to the extent practicable.

2

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/  Eric P. Bruskin
ERIC P. BRUSKIN
Assistant Director

s/  Galina I. Fomenkova
GALINA I. FOMENKOVA
Senior Trial Counsel
United States Department of Justice
Civil Division, Commercial Litigation Branch
P.O.  Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 514-5495
galina.fomenkova@usdoj.gov

September 2, 2025                    *Attorneys for the United States*

3

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of September, 2025, I caused a true and correct copy

of the foregoing to be served by electronic mail on the following counsel of record:

Amy E. Norris
NORRIS LAW, PLLC
616 E Street NW
Suite 1156
Washington, DC 20004
(202) 530-0100
norris.ae@gmail.com

*Attorney for Plaintiffs*

s/  Galina I. Fomenkova
GALINA I. FOMENKOVA

EXHIBIT 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

TEJA RAVI, *et al.*,

                              Plaintiffs,

                  v.

THE UNITED STATES,

                              Defendant.

No. 20-1237
(Judge Armando O. Bonilla)

DEFENDANT'S RESPONSES AND OBJECTIONS TO
PLAINTIFFS' SECOND SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Rules of the United States Court of Federal Claims,

defendant, the United States hereby provides the following responses to plaintiffs' second set of

interrogatories.

OBJECTIONS TO INSTRUCTIONS & DEFINITIONS

Defendant incorporates its objections to the instructions and definitions set forth in its

Responses and Objections to Plaintiffs' First Set of Interrogatories.

SPECIFIC RESPONSES AND OBJECTIONS

INTERROGATORY NO. [24]

Identify the number of people who received a letter stating they were accepted to the
University of Farmington, and made a tuition payment to the University of Farmington, from
2015 to 2019.  Exclude from this count the University of Farmington, its affiliates, employees,
officers, and directors, persons or entities that distributed or recruited students for the University
of Farmington, the Judge(s) assigned to this case, and the attorneys of record in this case.

RESPONSE

Defendant objects to this interrogatory as seeking information that is not relevant to any

party's claim or defense and not proportional to the needs of the case in that this case is not

suitable for class certification regardless of the number of individuals who paid money to the

University of Farmington operation and it is, therefore, both burdensome and unnecessary for

defendant to have to review the files of all non-plaintiffs to determine whether they were sent an "acceptance" letter or made any payments. Defendant further objects to this interrogatory on the grounds that whether a particular individual actually received a letter is information that defendant may not have. Defendant further objects to this interrogatory as vague and ambiguous in its use of the term "tuition payment"—the University of Farmington operation was not a real university and the participants in the operation were not legitimate "students;" consequently, they did not pay "tuition" as that word is commonly understood. Defendant further objects to this interrogatory as vague and ambiguous in requesting that the count exclude "persons or entities that distributed or recruited students for the University of Farmington" in that plaintiffs do not define what it means to "distribute" or "recruit" and numerous individuals referred others to the scheme.

Subject to its objections, defendant states that to the best of our knowledge, 757 individuals made at least one payment to the University of Farmington operation at some point over the course of the operation's duration. This number is given without regard to whether any of those individuals referred or "recruited" other participants.

2

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/  Eric P. Bruskin
ERIC P. BRUSKIN
Assistant Director

s/  Galina I. Fomenkova
GALINA I. FOMENKOVA
Senior Trial Counsel
United States Department of Justice
Civil Division, Commercial Litigation Branch
P.O.  Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 514-5495
galina.fomenkova@usdoj.gov

July 21, 2025                    *Attorneys for the United States*

<u>CERTIFICATION OF INTERROGATORY ANSWERS</u>

I certify under the penalties of perjury that the factual statements made in Defendant's Responses and Objections to Plaintiffs' Second Set of Interrogatories, served on July 21, 2025 are true to the best of my knowledge, information, and belief.


Executed on July 18, 2025


STEPHEN A WEBBER    Digitally signed by STEPHEN A WEBBER
Date: 2025.07.18 13:52:49 -04'00'

_____

STEPHEN WEBBER

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of July, 2025, I caused a true and correct copy of the

foregoing to be served by electronic mail on the following counsel of record:

Amy E. Norris
NORRIS LAW, PLLC
616 E Street NW
Suite 1156
Washington, DC 20004
(202) 530-0100
norris.ae@gmail.com

*Attorney for Plaintiffs*

s/  Galina I. Fomenkova
  GALINA I. FOMENKOVA

EXHIBIT 5



**University of Farmington**
*Office of Admissions*
30500 Northwestern Highway
Farmington Hills, MI 48334

February 15, 2018

Ravi Teja Tiyyagura
2525 Old Farm Rd.
Apt. #: 428
Houston, TX  77063

Dear Ravi Teja,

It is with great pleasure to inform you of your admission to the University of Farmington for the Spring 2017 Quarter, Session one, beginning March 5, 2018.

You were chosen from the largest and most competitive applicant pool in the institution's history for this opportunity. On behalf of myself and our faculty, students, and alumni - congratulations and welcome to the global community that is the University of Farmington!

Your admission to the University of Farmington is a reflection on your past academic achievements and future goals. We are confident in your ability to prosper and succeed at the University of Farmington.

At the University of Farmington, you will be part of a diverse community, where undergraduate, graduate, and international students work alongside renowned faculty in an environment of ingenuity, creativity, and innovation.  The professional faculty at the University of Farmington are drawn directly from business and industry and will provide you experiences needed to succeed in your career by exposing you to a blend of traditional, applied, and practical educational opportunities.

The opportunities a degree from the University of Farmington holds are endless.

If you have any further questions regarding your acceptance and next steps in the admissions process, please contact us at admissions@universityoffarmington.edu.

The University of Farmington community welcomes you, and I personally look forward to greeting you on campus.

Sincerely,

*Carey Ferrante*

Carey Ferrante
Assistant Director of Admissions

A nationally accredited institution authorized to enroll international students by the U.S. Department of Homeland Security.

EXHIBIT 6

## **Declaration of Anna Nathanson**

1. My name is Anna Nathanson and I am an Associate Attorney at Norris Law, PLLC. I am co-counsel on Ravi, et al. v. United States, No. 20-1237.

2. I had a phone call on November 3, 2025 with Defendant's counsel Galina Fomenkova to discuss Defendant's lack of full response to Plaintiff's Interrogatory No. 24, submitted as part of Plaintiff's Second Set of Interrogatories to Defendant.

3. During the phone conversation, for the purposes of resolving the discovery dispute regarding the request to "Identify the number of people who received a letter stating they were accepted to the University of Farmington, and made a tuition payment to the University of Farmington….", I stated that Plaintiffs were willing to narrow the request from those who received a letter, to those who were sent a letter. I stated that to receive a letter is 1) to be sent a letter and 2) for it actually be delivered into your possession, so answering as to only the first of these conditions is a narrowing of the original request.

4. Galina Fomenkova stated that a folder existed in Defendant's possession for each of 757 individuals who made a payment to the University of Farmington.

5. Ms. Fomenkova stated that letters generated stating acceptance to the University of Farmington would be stored within each of the 757 folders if they existed. She stated that the folders would have to be checked to respond with a total number of letters generated.

6. She further stated that records of all written correspondence sent to these individuals would also be within the folders.

7. I stated that by checking the 757 folders, which include records of the existence of the letters and of the letters being emailed or mailed out, Defendant could respond to Plaintiff's Interrogatory No. 24, narrowed to letters sent.

8. Ms. Fomenkova stated she would give this consideration and follow-up with us further.

9. On November 7, 2025, Ms. Fomenkova stated via email that Defendant would not be further supplementing its response to Plaintiff's Interrogatory No. 24.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 20, 2025.


Anna Nathanson

EXHIBIT 7

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

TEJA RAVI, *et al.*,

               Plaintiffs,

      v.

THE UNITED STATES,

               Defendant.

No. 20-1237
(Judge Armando O. Bonilla)

DEFENDANT'S SUPPLEMENTAL RESPONSE AND OBJECTIONS TO
PLAINTIFFS' SECOND SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Rules of the United States Court of Federal Claims,

defendant, the United States hereby provides the following responses to plaintiffs' second set of

interrogatories.

OBJECTIONS TO INSTRUCTIONS & DEFINITIONS

Defendant incorporates its objections to the instructions and definitions set forth in its

Responses and Objections to Plaintiffs' First Set of Interrogatories.

SPECIFIC RESPONSES AND OBJECTIONS

INTERROGATORY NO. [24]

Identify the number of people who received a letter stating they were accepted to the
University of Farmington, and made a tuition payment to the University of Farmington, from
2015 to 2019.  Exclude from this count the University of Farmington, its affiliates, employees,
officers, and directors, persons or entities that distributed or recruited students for the University
of Farmington, the Judge(s) assigned to this case, and the attorneys of record in this case.

RESPONSE

Defendant objects to this interrogatory as seeking information that is not relevant to any

party's claim or defense and not proportional to the needs of the case in that this case is not

suitable for class certification regardless of the number of individuals who paid money to the

University of Farmington operation and it is, therefore, both burdensome and unnecessary for

defendant to have to review the files of all non-plaintiffs to determine whether they were sent an "acceptance" letter or made any payments. Defendant further objects to this interrogatory on the grounds that whether a particular individual actually received a letter is information that defendant may not have. Defendant further objects to this interrogatory as vague and ambiguous in its use of the term "tuition payment"—the University of Farmington operation was not a real university and the participants in the operation were not legitimate "students;" consequently, they did not pay "tuition" as that word is commonly understood. Defendant further objects to this interrogatory as vague and ambiguous in requesting that the count exclude "persons or entities that distributed or recruited students for the University of Farmington" in that plaintiffs do not define what it means to "distribute" or "recruit" and numerous individuals referred others to the scheme.

Subject to its objections, defendant states that to the best of our knowledge, 757 individuals made at least one payment to the University of Farmington operation at some point over the course of the operation's duration. This number is given without regard to whether any of those individuals referred or "recruited" other participants.

SUPPLEMENTAL RESPONSE

Based on subsequent discussions with plaintiffs' counsel, defendant understands that in asking to exclude "persons or entities that distributed or recruited students for the University of Farmington" from the number sought in this interrogatory, plaintiffs sought to exclude individuals who received compensation from the University of Farmington operation for referring other participants. Thus, for example, although plaintiff, Rajesh Ghourvani, referred or attempted to refer a number of additional individuals into the illegal "special arrangement" at the University of Farmington, *see*, *e.g.*, UFR0000724, UFR0000723, plaintiffs were not looking to

exclude him from the count.

Subject to its objections and the above clarification, defendant further states that HSI is aware of 9 individuals who received, at their instigation and request, monetary compensation beyond credits on their own individual invoices as a result of their efforts in enlisting other individuals to participate in the illegal "pay to stay" scheme while the University of Farmington operation was live.  Defendant further states that additional individuals received credits on their own invoices as a result of their referrals, but defendant did not track the number of such individuals.  Defendant further states that in the event that any individual(s) received compensation directly from the individuals they referred—if that arrangement was not communicated to HSI agents, defendant would not be aware of any such arrangements or compensation.

Excluding the 9 individuals described above, 748 individuals made at least one payment to the University of Farmington operation at some point over the course of the operation's duration and, to the best of our knowledge, did not receive monetary compensation beyond credits on their own invoices as a result of their efforts, if any, in enlisting other individuals to participate in the illegal "pay to stay" scheme while the University of Farmington operation was live.

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/  Eric P. Bruskin
ERIC P. BRUSKIN
Assistant Director

s/  Galina I. Fomenkova
GALINA I. FOMENKOVA
Senior Trial Counsel
United States Department of Justice
Civil Division, Commercial Litigation Branch
P.O.  Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 514-5495
galina.fomenkova@usdoj.gov

August 20, 2025                    *Attorneys for the United States*

<u>CERTIFICATION OF INTERROGATORY ANSWERS</u>

I certify under the penalties of perjury that the factual statements made in Defendant's Supplemental Response and Objections to Plaintiffs' Second Set of Interrogatories, served on August 20, 2025 are true to the best of my knowledge, information, and belief.

Executed on August 20, 2025

STEPHEN A WEBBER    Digitally signed by STEPHEN A WEBBER
                    Date: 2025.08.20 15:16:15 -04'00'

_____
STEPHEN WEBBER

CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of August, 2025, I caused a true and correct copy

of the foregoing to be served by electronic mail on the following counsel of record:

Amy E. Norris
NORRIS LAW, PLLC
616 E Street NW
Suite 1156
Washington, DC 20004
(202) 530-0100
norris.ae@gmail.com

*Attorney for Plaintiffs*

s/ Galina I. Fomenkova
GALINA I. FOMENKOVA

EXHIBIT 8

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

TEJA RAVI, *et al.*,

               Plaintiffs,

        v.

THE UNITED STATES,

               Defendant.

No. 20-1237
(Judge Armando O. Bonilla)

DEFENDANT'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO
PLAINTIFFS' INTERROGATORY NOS. 6 AND 22

Pursuant to Rules 26 and 33 of the Rules of the United States Court of Federal Claims,

defendant, the United States hereby provides the following supplemental responses to plaintiffs'

Interrogatory Nos. 6 and 22.

OBJECTIONS TO INSTRUCTIONS & DEFINITIONS

Defendant incorporates its objections to the instructions and definitions set forth in its

Responses and Objections to Plaintiffs' First Set of Interrogatories.

SPECIFIC RESPONSES AND OBJECTIONS

INTERROGATORY NO. 6

Identify all foreign nationals who enrolled at the University of Farmington at any time
with the beginning and ending dates of each student's enrollment.

RESPONSE

Defendant objects to this interrogatory as seeking information that is not relevant to any

party's claim or defense and not proportional to the needs of the case in seeking information

pertaining to individuals beyond the named plaintiffs as those individuals are not parties to the

litigation and have no bearing on the existence, breach, or enforceability of any contract between

the United States and the named plaintiffs, which are the issues in this case; in addition, the

interrogatory trespasses on the privacy and confidentiality interests of those third parties.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Defendant further objects to this interrogatory as vague and ambiguous in its use of the terms "enroll" and "student"—the University of Farmington operation was not a real university and the participants in the operation were not legitimate "students;" consequently they did not "enroll" at the University of Farmington as that word is commonly understood.

Subject to its objections, defendant states that according to our records:

- Ravi Teja Tiyyagura submitted an "application" dated February 13, 2018, received an "admission letter" dated February 15, 2018, and made payments to the University of Farmington operation between February 26, 2018 and January 6, 2019;

- Swetha Bachu submitted an "application" dated January 19, 2018, received an "admission letter" dated January 23, 2018, and made payments to the University of Farmington operation between February 28, 2018 and December 4, 2018;

- Sneha Parthasarathy submitted an "application" dated May 17, 2017, received an "admission letter" dated May 18, 2017, and made payments to the University of Farmington operation between August 8, 2017 and December 17, 2018;

- Rajesh Ghourvani tried to submit an "application" on November 13, 2017, submitted an "application" on January 4, 2018, received an "admission letter" dated January 4, 2018, and made payments to the University of Farmington operation between February 15, 2018 and December 6, 2018;

- Akhil Mohan submitted an "application" dated September 19, 2017, received an "admission letter" dated October 16, 2017, and made payments to the University of Farmington operation between February 12, 2018 and December 7, 2018.

Defendant further states that the University of Farmington operation shut down by no later than January 30, 2019.

2

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

SUPPLEMENTAL RESPONSE

Based on a further review of its records, defendant supplements its response as follows:

- Sneha Parthasarathy submitted an "application" dated May 17, 2017, undercover agents at HSI created an "admission letter" for Ms. Parthasarathy dated May 18, 2017, and Ms. Parthasarathy made payments to the University of Farmington operation between May 22, 2017 and December 17, 2018.

Defendant further clarifies its initial response, that in stating that an individual "received an 'admission letter,'" we meant that an "admission letter" for that individual was prepared by undercover agents at HSI with the date indicated.  Whether or not any given individual actually received that "admission letter," and if so, on what date, is information that is beyond defendant's knowledge or control.

INTERROGATORY NO. 22

For each foreign national who enrolled at the University of Farmington at any time, list the students name and the amount of tuition that each paid.

RESPONSE

Defendant objects to this interrogatory as seeking information that is not relevant to any party's claim or defense and not proportional to the needs of the case in seeking information pertaining to individuals beyond the named plaintiffs as those individuals are not parties to the litigation have no bearing on the existence, breach, or enforceability of any contract between the United States and the named plaintiffs, which are the issues in this case; in addition, the interrogatory trespasses on the privacy and confidentiality interests of those third parties. Defendant further objects to this interrogatory as vague and ambiguous in its use of the terms "enrolled," "students," and "tuition"—the University of Farmington operation was not a real university and the participants in the operation were not legitimate "students;" consequently they

3

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

neither "enrolled" nor paid "tuition" as those words are commonly understood.

Subject to its objections, defendant states that according to our records, the named plaintiffs made the following payments to the University of Farmington operation:

| Plaintiff | Date | Amount |
|---|---|---|
| Ravi Teja Tiyyagura | February 26, 2018 | $1,000.00 |
| | March 16, 2018 | $500.00 |
| | March 17, 2018 | $500.00 |
| | March 19, 2018 | $500.00 |
| | June 28, 2018 | $1,000.00 |
| | June 28, 2018 | $500.00 |
| | June 29, 2018 | $300.00 |
| | June 29, 2018 | $670.00 |
| | June 29, 2018 | $30.00 |
| | October 2, 2018 | $700.00 |
| | October 3, 2018 | $1,800.00 |
| | January 6, 2019 | $1,000.00 |
| | January 6, 2019 | $900.00 |
| | January 6, 2019 | $300.00 |
| | January 6, 2019 | $300.00 |
| Swetha Bachu | February 28, 2018 | $2,500.00 |
| | May 28, 2018 | $2,500.00 |
| | August 27, 2018 | $2,500.00 |
| | December 4, 2018 | $2,500.00 |
| Sneha Parthasarathy | August 8, 2017 | $2,500.00 |
| | November 6, 2017 | $2,500.00 |
| | March 5, 2018 | $2,500.00 |
| | June 18, 2018 | $2,500.00 |
| | September 24, 2018 | $2,500.00 |
| | December 17, 2018 | $2,500.00 |
| Rajesh Ghourvani | February 15, 2018 | $2,500.00 |
| | June 1, 2018 | $2,500.00 |
| | September 19, 2018 | $2,500.00 |
| | December 6, 2018 | $2,500.00 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Plaintiff | Date | Amount |
|---|---|---|
| Akhil Mohan | February 12, 2018 | $1,000.00 |
| | March 2, 2018 | $1,500.00 |
| | May 19, 2018 | $2,500.00 |
| | August 31, 2018 | $2,500.00 |
| | December 7, 2018 | $2,500.00 |

<u>SUPPLEMENTAL RESPONSE</u>

Based on a further review of its records, defendant supplements its response as follows:

| Plaintiff | Date | Amount |
|---|---|---|
| Sneha Parthasarathy | May 22, 2017 | $2,500.00 |
| | August 8, 2017 | $2,500.00 |
| | November 6, 2017 | $2,500.00 |
| | March 5, 2018 | $2,500.00 |
| | June 18, 2018 | $2,500.00 |
| | September 24, 2018 | $2,500.00 |
| | December 17, 2018 | $2,500.00 |

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/  Eric P. Bruskin
ERIC P. BRUSKIN
Assistant Director

s/  Galina I. Fomenkova
GALINA I. FOMENKOVA
Senior Trial Counsel
United States Department of Justice
Civil Division, Commercial Litigation Branch
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 514-5495
galina.fomenkova@usdoj.gov

December 10, 2025                    *Attorneys for the United States*

5

<u>CERTIFICATION OF INTERROGATORY ANSWERS</u>

I certify under the penalties of perjury that the factual statements made in Defendant's Supplemental Responses and Objections to Plaintiffs' Interrogatory Nos. 6 and 22, served on December 12, 2025 are true to the best of my knowledge, information, and belief.

Executed on December 10, 2025

STEPHEN A WEBBER    Digitally signed by STEPHEN A WEBBER
Date: 2025.12.10 14:32:53 -05'00'
_____
STEPHEN WEBBER

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of December, 2025, I caused a true and correct copy

of the foregoing to be served by electronic mail on the following counsel of record:

Amy E. Norris
NORRIS LAW, PLLC
616 E Street NW
Suite 1156
Washington, DC 20004
(202) 530-0100
norris.ae@gmail.com

*Attorney for Plaintiffs*

s/  Galina I. Fomenkova
GALINA I. FOMENKOVA

EXHIBIT 9

**From: AkhilMohan** akhilaustin.619@gmail.com 📎
**Subject:** Fwd: Genral
**Date:** May 29, 2025 at 1:21 PM
**To:** Amy E Norris norris.ae@gmail.com, Anna L Nathanson anna@norrislawgroup.org, Amy Norris Amy@norrislawgroup.org

Thanks&regards,
Akhil Mohan.

Begin forwarded message:

**From:** AkhilMohan <akhilaustin.619@gmail.com>
**Date:** March 26, 2025 at 11:32:13 PM GMT+5:30
**To:** Anna Nathanson <anna@norrislawgroup.org>
**Subject: Fwd: Genral**

Thanks&regards,
Akhil Mohan.

Begin forwarded message:

**From:** Mohan <akhilaustin.619@gmail.com>
**Date:** May 24, 2020 at 8:33:15 PM GMT+5:30
**To:** Dominic Gallucci <gallucci.dominic@gmail.com>, Amy E Norris <norris.ae@gmail.com>
**Subject: Fwd: Genral**

---------- Forwarded message ---------
From: **Mohan** <akhilaustin.619@gmail.com>
Date: Sun, May 24, 2020 at 10:46 AM
Subject: Fwd: Genral
To: Akhil <akhil.mohan0109@gmail.com>

---------- Forwarded message ---------
From: **Akhil Mohan** <akhilaustin.619@gmail.com>
Date: Wed, Oct 18, 2017 at 1:53 PM
Subject: Fwd: Genral
To: jagadish a <jagu.alma564@gmail.com>

---------- Forwarded message ---------
From: <info@universityoffarmington.edu>
Date: Thu, May 18, 2017 at 2:00 PM
Subject: RE: Genral
To: Akhil Mohan <akhilaustin.619@gmail.com>

Yes, we have many international students and do offer Day 1 CPT.  Below is additional details on our school and programs:

Thank you for your recent interest in The University of Farmington, a nationally accredited business and STEM institution. Here at the University of Farmington we have created an innovative learning environment that combines traditional instruction with fulltime professional experiences.  We offer flexible class schedules and a focus on students who do not want to interrupt their careers.

In many instances, your prior Masters Degree's (MA) credits, combined with CPT, can be applied to a second MA in lieu of a traditional course load.

Our programs include undergraduate and graduate degrees in:

Accounting

Finance

International Business
Supply Chain Management
Public Relations and Marketing
Business Information Systems

UF000157

Computer Science
Information Technology
Industrial and Systems Engineering
Manufacturing Engineering
Mechatronics

The University of Farmington operates on a quarterly academic calendar, each term is generally ten weeks, excluding exams, and the admissions process is on a rolling basis.  Terms start every three months, beginning in September, December, March, and June. Sessions begin every month. Graduate programs tuition is $2500 per quarter. Depending on fees, average cost is $1,000 per month.

We are accredited by the Accrediting Commission of Career Schools and Colleges (www.accsc.org) and

licensed by the Michigan Department of Licensing and Regulatory Affairs as a private postsecondary college.

If you are interested in having your tomorrow start today, please complete the attached application and submit a copy of your passport and current visa. We have also attached a student admissions checklist for your reference.

You also can contact the University of Farmington Office of Admissions at (248) 702-6316 or admissions@universityoffarmington.edu.

Good luck in all your endeavors.

Office of Admissions

University of Farmington

30500 Northwestern Highway, Suite 210

Farmington Hills, MI 48334



A nationally accredited institution authorized to enroll international students by the U.S. Department of Homeland Security.





EXHIBIT 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

TEJA RAVI, *et al.*,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

No. 20-1237
(Judge Armando O. Bonilla)

DEFENDANT'S SUPPLEMENTAL RESPONSE AND OBJECTIONS TO
PLAINTIFFS' FIFTH SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Rules of the United States Court of Federal Claims,

defendant, the United States hereby provides the following responses to plaintiffs' fifth set of

interrogatories.

OBJECTIONS TO INSTRUCTIONS & DEFINITIONS

Defendant incorporates its objections to the instructions and definitions set forth in its

Responses and Objections to Plaintiffs' First Set of Interrogatories.

SPECIFIC RESPONSES AND OBJECTIONS

INTERROGATORY NO. 26A

Identify the number of people who meet the proposed class definition as follows:
The proposed class consists of all persons who enrolled in the University of Farmington
from 2015 to 2019. All persons who enrolled include any individual who made at least one
payment to the University of Farmington after being sent an offer of admission and a tuition
invoice by the University of Farmington. Excluded from the Class are the University of
Farmington, its affiliates, employees, officers, and directors, persons or entities who recruited for
the University of Farmington, receiving payment or other compensation from the University of
Farmington, the Judge(s) assigned to this case, and the attorneys of record in this case. Plaintiffs
reserve the right to amend the Class definition if discovery and further investigation reveal that
the Class should be expanded or otherwise modified.

RESPONSE

Per the discussion during the status conference of February 18, 2026, defendant

understands that the interrogatory plaintiffs previously served as their Fourth Set of

Interrogatories has been withdrawn by order of the Court, and no response to that interrogatory is further required.  Instead, defendant agreed to accept service of plaintiffs' Fifth Set of Interrogatories.

Defendant objects to this interrogatory as seeking information that is not relevant to any party's claim or defense and not proportional to the needs of the case in that this case is not suitable for class certification regardless of the number of individuals who "enrolled" in the University of Farmington operation and it is, therefore, both burdensome and unnecessary for defendant to have to manually review the files of all non-plaintiffs to determine what kind of documents are in their files, whether they made any payments, and the relative timing of any such payment.

Defendant further objects to this interrogatory as vague and ambiguous and unduly burdensome in its reference to individuals "being sent an offer of admission and a tuition invoice by the University of Farmington."  Numerous individuals, including some of the named plaintiffs, came to participate in the University of Farmington operation through recruiters, including some recruiters who were criminally prosecuted and pled guilty to Conspiracy to Commit Visa Fraud and Harbor Aliens for Profit as a result.  These recruiters acted as go-betweens, including by sometimes submitting "applications" on behalf of other subsequent participants in the University of Farmington operation, and such that the HSI special agents would sometimes send an "admission letter" for those individuals back to the recruiter, and it would be up to the recruiter to pass documents along to the individual participants.  Thus, for example, Mr. Ravi Teja Tiyyagura was brought into the University of Farmington operation by Mr. Avinash Thakkallapally (also known as Vinith Errabelli), *see* UFR0001501–505, who was subsequently prosecuted and pled guilty to one count of Conspiracy to Commit Visa Fraud and

Harbor Aliens for Profit, in Case No. 2:19-cr-20026-6 (E.D. Mich.).  Mr. Thakkallapally

submitted Mr. Tiyyagura's "application" materials to the University of Farmington operation,

and the University of Farmington operation sent Mr. Tiyyagura's "admission" materials to Mr.

Thakkallapally *not* Mr. Tiyyagura directly, *see* UFR0001490.  Whether Mr. Thakkallapally then

sent those materials to Mr. Tiyyagura is information in *Mr. Tiyyagura's* control, not the

defendant's, and although defendant has in fact sought Mr. Tiyyagura's communications with

Mr. Thakkallapally, none have been produced.

It is unclear from plaintiffs' interrogatory whether individuals such as Mr. Tiyyagura

would be included or excluded from the number plaintiffs seek in this interrogatory.  But either

way, determining both whether certain documents were sent, how and to whom they were sent,

and when, relative to when money was paid, would require significant manual review of

individual case files and may ultimately be unknown to the defendant because whether, for

example, an "admission letter" was sent to a particular individual was not information that was

relevant to the purpose of the undercover operation and therefore not information that the

operation tracked.  Thus, providing the number this interrogatory seeks with all the caveats that it

imposes may not be possible and would at minimum require effort that is not proportional to the

needs of this case, especially in light of the discovery already provided both through other

interrogatory responses and in response to plaintiffs' requests for admissions, and the legal

requirement for class actions in this Court as being entirely opt-in.

Defendant further objects to this interrogatory as vague and ambiguous in that plaintiffs

do not define the term "offer of admission," and also in its use of the terms "enroll," "offer of

admission," and "tuition"—the University of Farmington operation was not a real university and

the participants in the operation were not legitimate "students;" consequently, the University of

Farmington operation did not extend "offers of admission" and the individual participants did not "enroll" or pay "tuition" as those word would be commonly understood.

Defendant further objects to this interrogatory as vague and ambiguous in terms of which individual(s) plaintiffs seek to exclude from their "proposed class definition." For example, it is ambiguous whether the clause "receiving payment or other compensation from the University of Farmington" is intended to modify the preceding clause, "persons or entities who recruited for the University of Farmington," or stand on its own. Defendant assumes for purposes of its response, based on its prior discussions with plaintiffs' counsel, that plaintiffs intended it to modify the preceding clause, not stand on its own. Thus, for example, although plaintiff, Rajesh Ghourvani, referred or attempted to refer a number of additional individuals into the University of Farmington operation under an illegal "special arrangement," *see*, *e.g.*, UFR0000724, UFR0000723, plaintiffs are not looking to exclude him from the count. However, even with that assumption, the clause "receiving payment or other compensation from the University of Farmington" remains ambiguous in that plaintiffs do not define what they mean by "other compensation." For example, as defendant has previously explained, some participants received credits on their own invoices as a result of their referrals, but defendant did not track the number of such individuals, and it is unclear from plaintiffs' interrogatory whether they are excluding such individuals from their "proposed class definition" as having "receiv[ed] … other compensation." Additionally, we assume the limitation in plaintiffs' exclusion criteria that the "payment or other compensation" be received "from the University of Farmington" does not cover individual(s) who may have received "payment or other compensation" directly from the individuals they referred to the operation, but note that to the extent such arrangements may have been made, if they were not communicated to the HSI special agents, defendant would not be

aware of any such arrangements or compensation.

Subject to its objections, defendant states, as also addressed in response to Interrogatory No. 24, that to the best of our knowledge, 757 individuals made at least one payment to the University of Farmington operation at some point over the course of the operation's duration. Defendant further states that HSI is aware of 9 individuals who received, at their instigation and request, monetary compensation beyond credits on their own individual invoices as a result of their efforts in enlisting other individuals to participate in the illegal "pay to stay" scheme while the University of Farmington operation was live.  Excluding these 9 individuals, 748 individuals made at least one payment to the University of Farmington operation at some point over the course of the operation's duration and, to the best of our knowledge, did not receive monetary compensation beyond credits on their own invoices as a result of their efforts, if any, in enlisting other individuals to participate in the illegal "pay to stay" scheme while the University of Farmington operation was live.

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/  Eric P. Bruskin
ERIC P. BRUSKIN
Assistant Director

s/  Galina I. Fomenkova
GALINA I. FOMENKOVA
Senior Trial Counsel
United States Department of Justice
Civil Division, Commercial Litigation Branch
P.O.  Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 514-5495
galina.fomenkova@usdoj.gov

February 25, 2026                    *Attorneys for the United States*

5

<u>CERTIFICATION OF INTERROGATORY ANSWERS</u>

I certify under the penalties of perjury that the factual statements made in Defendant's

Response and Objections to Plaintiffs' Fifth Set of Interrogatories, served on February 25, 2026

are true to the best of my knowledge, information, and belief.


Executed on February 25, 2026

STEPHEN A
WEBBER

Digitally signed by
STEPHEN A WEBBER
Date: 2026.02.25
12:32:42 -05'00'

STEPHEN WEBBER

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of February, 2026, I caused a true and correct copy

of the foregoing to be served by electronic mail on the following counsel of record:

Amy E. Norris
NORRIS LAW, PLLC
616 E Street NW
Suite 1156
Washington, DC 20004
(202) 530-0100
norris.ae@gmail.com

*Attorney for Plaintiffs*

s/  Galina I. Fomenkova
GALINA I. FOMENKOVA

EXHIBIT 11



University of Farmington
*Office of Admissions*
30500 Northwestern Highway
Farmington Hills, MI 48334

January 4, 2018

Rajesh Ghourvani
38660 Lexington Street
Apt. #: 637
Fremont, CA 94536

Dear Rajesh,

It is with great pleasure to inform you of your admission to the University of Farmington for the Winter 2017 Quarter, Session three, beginning February 5, 2018.

You were chosen from the largest and most competitive applicant pool in the institution's history for this opportunity. On behalf of myself and our faculty, students, and alumni - congratulations and welcome to the global community that is the University of Farmington!

Your admission to the University of Farmington is a reflection on your past academic achievements and future goals. We are confident in your ability to prosper and succeed at the University of Farmington.

At the University of Farmington, you will be part of a diverse community, where undergraduate, graduate, and international students work alongside renowned faculty in an environment of ingenuity, creativity, and innovation. The professional faculty at the University of Farmington are drawn directly from business and industry and will provide you experiences needed to succeed in your career by exposing you to a blend of traditional, applied, and practical educational opportunities.

The opportunities a degree from the University of Farmington holds are endless.

If you have any further questions regarding your acceptance and next steps in the admissions process, please contact us at admissions@universityoffarmington.edu.

The University of Farmington community welcomes you, and I personally look forward to greeting you on campus.

Sincerely,

Ali Milani
Director of Admissions

248.702.6316                                              admissions@universityoffarmington.edu

A nationally accredited institution authorized to enroll international students by the U.S. Department of Homeland Security.
UF000017



University of Farmington
*Office of Admissions*
30500 Northwestern Highway
Farmington Hills, MI 48334

Date

XXX
Street
City, State, Zip

Dear XXX,

It is with great pleasure to inform you of your admission to the University of Farmington
for the Spring/Summer/Fall Winter XXX Quarter, beginning XXX.

You were chosen from the largest and most competitive applicant pool in the
institution's history for this opportunity. On behalf of myself and our faculty, students,
and alumni - congratulations and welcome to the global community that is the University
of Farmington!

Your admission to the University of Farmington is a reflection on your past academic
achievements and future goals. We are confident in your ability to prosper and succeed
at the University of Farmington.

At the University of Farmington, you will be part of a diverse community, where
undergraduate, graduate, and international students work alongside renowned faculty in
an environment of ingenuity, creativity, and innovation. The professional faculty at the
University of Farmington are drawn directly from business and industry and will provide
you experiences needed to succeed in your career by exposing you to a blend of
traditional, applied, and practical educational opportunities.

The opportunities a degree from the University of Farmington holds are endless.

If you have any further questions regarding your acceptance and next steps in the
admissions process, please contact us at admissions@universityoffarmington.edu.

The University of Farmington community welcomes you, and I personally look forward
to greeting you on campus.

Sincerely,

(b)(6), (b)(7)(C)

Director of Admissions

248 702 6316                                                admissions@universityoffarmington.edu

EXHIBIT 12

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **Teja Ravi, Swetha Bachu,** | : | |
| **Sneha Parthasarathy,** | : | |
| **Rajesh Ghourvani, and Akhil Mohan,** | : | |
| **Individually and on Behalf of** | : | |
| **All Others Similarly Situated** | : | |
| | : | **Civil Action No. 20-1237C** |
| **Plaintiffs,** | : | Judge Armando O. Bonilla |
| | : | |
| **v.** | : | |
| | : | |
| **The United States of America** | : | |
| | : | |
| **Defendant.** | : | |


### PLAINTIFFS' AMENDED THIRD SET OF INTERROGATORIES TO DEFENDANT

PLEASE TAKE NOTICE that, pursuant to Rules 26 and 33 of the Rules of the United States Court of Federal Claims, by and through undersigned counsel, hereby propound the following First Set of Interrogatories upon Defendant. Plaintiffs request that Defendant fully respond under oath to each Interrogatory in writing and serve its verified answers and any objections within thirty (30) days of service of this request.

### DEFINITIONS

As used herein, the following terms shall have the following meanings and should be considered part of each Interrogatory:

1. "You," "your" or "Defendant" shall refer to Defendant in the above-captioned action, as well as any of their employees, agents, representatives and all other persons purporting to act on their behalf.

2. "DHS" shall refer to the U.S. Department of Homeland Security, including any of its subcomponents, employees, agents, representatives and all other persons purporting to act on its behalf.

3. "ICE" shall refer to U.S. Immigration and Customs Enforcement, including any of its subcomponents, employees, agents, representatives and all other persons purporting to act on its behalf.

4. "HSI" shall refer to Homeland Security Investigations, a component of ICE.

5. "USCIS" shall refer to U.S. Citizenship and Immigration Services, including any of its subcomponents, employees, agents, representatives and all other persons purporting to act on its behalf.

1

6. "DOE" shall refer to the U.S. Department of Education, including any of its subcomponents, employees, agents, representatives, and all other persons purporting to act on its behalf.

7. "DOJ" shall refer to the U.S. Department of Justice and its subcomponents, including the Executive Office for Immigration Review and the Board of Immigration Appeals, employees, agents, representatives, and all other persons purporting to act on its behalf.

8. "Agent" or "agents" shall refer to any employees or agents of Defendants, DHS, USCIS, ICE, DOE, DOS, DOJ, or subcomponents of any of the listed departments.

9. "Plaintiffs" shall refer to the named Plaintiffs in the above captioned lawsuit and all putative class members.

10. "Person" shall refer to any natural person, partnership, corporation, business entity, legal or governmental entity, agency, organization or association, as well as its respective present and former officers, directors, agents, administrators, managers, representatives, contractors, consultants, employees or other persons acting or purporting to act on behalf of such person.

11. "UF" shall refer to the University of Farmington, a fictitious university established and operated by DHS in Farmington, Michigan.

12. "Operation Paper Chase" shall refer to the operation created, designed, and executed by HSI, ICE, DHS, and other U.S. agencies and their agents and employees to target academic agents, brokers, and recruiters for various criminal offenses related to visa fraud and that included the creation and operation of UF.

13. "Academic agent, broker, or recruiter" shall refer to any person who was targeted, investigated, arrested, criminally charged, prosecuted, or convicted in relation to their involvement in enrolling foreign nationals in UF.

14. "A-files" shall refer to the "alien files" maintained by DHS that each contain an individual alien's immigration and naturalization record.

15. "Immigration benefit or relief" shall refer to any benefit or relief available under the Immigration and Nationality Act, including but not limited to immigrant visas, nonimmigrant visas, adjustment of status, cancellation of removal, change of status, reinstatement of status, asylum, and naturalization.

16. The term "document" shall be accorded its broadest possible meaning under the Rules of the United States Court of Federal Claims, and shall refer to any document or thing, including all written, printed, recorded, typed, taped, mechanical, electronically stored, graphic material of any kind or nature, however produced or reproduced, in any format or medium which information can be obtained, whether drafts, originals, or non-identical copies, including without

2

limitation, audio or video tape, cartridge, computer disc or other computer retrievable form, record of telephone messages, appointment calendars, agendas, photographs, drawings, graphs, charts, facsimiles, transcripts, meeting minutes, notes, business records, letters, memoranda, e-mail or other correspondence, interoffice communications, text messages, instant messages, data, data compilations, meta data, telegrams, and all other tangible things on which any writing, printing, image, or sound is recorded or reproduced in any form capable of being read, viewed, heard or otherwise understood, whether prepared by Defendants or otherwise, which are in Defendants' possession or control or are known by Defendants to exist. A document is deemed to be in your control if you have the right or ability to secure the document or a copy thereof from another person or public or private entity having actual (physical) possession thereof.

18. "Communication" shall refer to any correspondence, memoranda, e-mail, telegram, facsimile transmission, contact, discussion, or exchange between two or more persons, including, without limitation, all documents, text messages, telephone conversations, face-to-face conversations, meetings and conferences, as well as any other transmission of information in any form, including oral and written.

19. When referring to a natural person, the term "identify" shall mean to provide the person's full name, present or last known address and telephone number, official position at present and at the time of the events that information is requested for, their current or last known email address, current or last known place of employment, and other methods to contact them for purposes of information or a subpoena. When referring to foreign nationals, identity also includes **the person's nationality, Alien Number ("A Number"), the person's current immigration status, whether the person is in removal proceedings and where, and any other immigration related identifying numbers used by government agencies.** Further, the term shall also include the presentation of all information that may be used to establish the identity of a natural person, or ascertain the origin, nature, or definitive characteristic of a given subject matter. When referring to a document, "identify" shall mean to provide, the following:

(a) the type of document;
(b) the general subject matter;
(c) the date the document was created and last revised or updated;
(d) the author(s), addressee(s), recipient(s) and custodian(s);
(e) the location of the document;
(f) whether the document has been destroyed; and if so, the date and reason(s) for its destruction, as well as the identity of the person(s) who destroyed it or ordered its destruction.

20. "Relating to" or "concerning" any given subject shall mean, directly or indirectly associated with, referring to, reflecting, describing, discussing, regarding, bearing upon, pertaining to, alluding to, depicting, involving, embodying, mentioning, arising out of, evidencing, constituting, in connection with or having any logical or factual connection with the matter in question.

21. "And," "or," "each," "any," and "all" shall not be interpreted to exclude any information otherwise within the scope of any Interrogatory. Such terms shall be accorded the broadest possible meaning under the Rules of the United States Court of Federal Claims and understood in whatever sense results in the broadest scope of coverage for each Interrogatory.

3

## INSTRUCTIONS

The following instructions apply and should be considered part of each Interrogatory:

1. If you provide your responses in a new document, restate each Interrogatory in your written response followed immediately by your answer to the Interrogatory.

2. In answering, you must furnish all information that is known or available to you as of the date of your response, including any information obtained by or in the possession of your employees, agents, representatives of any type, or any other person controlled by you, in any manner affiliated with you, or purporting to act on your behalf.

3. If, in responding to any Interrogatory, you claim any ambiguity or vagueness interpreting either the Interrogatory or a definition or instruction applicable thereto, such claim shall not be a basis for refusing to respond; instead, you shall identify as part of your response the language deemed to be ambiguous and/or vague and the interpretation you used in responding to the Interrogatory.

4. Pursuant to Rule 26(e), these Interrogatories are of a continuing nature and you must supplement or correct your response in a timely manner if you learn that in some material respect a response is incomplete or incorrect or any additional information responsive to these Interrogatories becomes available, is discovered, created or comes into your possession, custody, or control, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

5. If you withhold any information because of a claim of privilege or protection, you must identify with specificity the privilege or protection claimed and state the nature of the information withheld in sufficient detail to enable Plaintiffs to assess the applicability of the claimed privilege or protection.

6. If you are unable to answer an Interrogatory fully and completely after exercising due diligence to secure the necessary information to answer, so state and answer each such Interrogatory to the fullest extent possible, specifying the extent of your knowledge and your inability to answer the remainder, setting forth whatever information or knowledge you do have concerning the unanswered portion(s) thereof and all efforts made to obtain the necessary information to answer.

7. All words used herein, except for those terms specifically defined above, shall be given their plain and ordinary meaning given the context of their use to make the Interrogatory inclusive rather than exclusive.

8. The Interrogatories begin on the next page.

4

## INTERROGATORIES

25(A). Provide a class list for every person who paid tuition invoices to the University of Farmington, including contact information and the amount each person paid to the University, for the following:

The proposed class consists of all persons who enrolled in the University of Farmington from 2015 to 2019. All persons who enrolled include any individual who made at least one payment to the University of Farmington after being sent an offer of admission and a tuition invoice from the University of Farmington. Excluded from the Class are the University of Farmington, its affiliates, employees, officers, and directors, persons or entities who recruited for the University of Farmington, receiving payment or other compensation from the University of Farmington, the Judge(s) assigned to this case, and the attorneys of record in this case. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

**RESPONSE:**

Dated: March 4, 2026

Respectfully submitted,

/s/ *Amy Norris*

Amy E. Norris (1017140)
NORRIS LAW GROUP
616 E Street N.W.
Suite 1156
Washington, DC 20004
(202) 830-1225
amy@norrislawgroup.org

Anna Nathanson
NORRIS LAW GROUP
616 E Street N.W.
Suite 1156
Washington, DC 20004
(202) 830-1225
anna@norrislawgroup.org

*Attorneys for Plaintiffs*

5

**CERTIFICATE OF SERVICE**

I certify that, on March 4, 2026, I served a copy of the above document on all parties of record via electronic mail.

Respectfully submitted,

/s/ *Amy Norris*
Amy E. Norris (10170140)
NORRIS LAW GROUP
616 E Street N.W.
Suite 1156
Washington, DC 20004
(202) 830-1225
amy@norrislawgroup.org

6

EXHIBIT 13

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

TEJA RAVI, *et al.*,

                    Plaintiffs,

          v.

THE UNITED STATES,

                    Defendant.

No. 20-1237
(Judge Armando O. Bonilla)

DEFENDANT'S RESPONSES AND OBJECTIONS TO
<u>PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION</u>

Pursuant to Rules 26 and 36 of the Rules of the United States Court of Federal Claims,

defendant, the United States hereby provides the following responses to plaintiffs' first set of

requests for admission.

<u>OBJECTIONS TO INSTRUCTIONS & DEFINITIONS</u>

Defendant incorporates its objections to the instructions and definitions set forth in its

Responses and Objections to Plaintiffs' First Set of Interrogatories, its Responses and Objections

to Plaintiffs' First Set of Requests Production, and its Responses and Objections to Plaintiffs'

Second Set of Requests for Production.

SPECIFIC RESPONSES AND OBJECTIONS

| No. | Plaintiffs' Request for Admission | Defendant's Response |
|---|---|---|
| 1 | Admit that the vast majority of students who made payments to the University of Farmington left the United States after losing their F-1 status. | Denied. |
| 2 | Admit that the current geographic location of the individual class members is not easily identified. | The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because it seeks information that is presently unknowable and unknown to the defendant. First, there is no class, and accordingly no "class members," nor could one be certified regardless of the locations of its would-be potential members.  Second, we do not understand what it means for an individual's current location to be "easily identified."  Defendant also objects to this request as irrelevant. |
| 3 | Admit that the proposed class members have geographically dispersed. | The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because it seeks information that is presently unknowable—in that there is no class, nor is this case suitable for class certification regardless of the location of its would-be potential members—and seeking information that is unknown to the defendant.  We have no control over the geographic location of would-be plaintiffs, and do not know whether their locations would constitute "geographically dispersed," a term that is further undefined.  Defendant also objects to this request as irrelevant. |

2

| No. | Plaintiffs' Request for Admission | Defendant's Response |
|-----|-----------------------------------|----------------------|
| 4 | Admit that the location of the proposed class members was geographically dispersed at the time that they paid the "tuition invoice". | Defendant objects to this request as vague because the term "geographically dispersed" is undefined; for example, at the time that participants made payments to the University of Farmington operation, all the individuals had provided the University of Farmington with an address in the United States. To the extent "geographically dispersed" means dispersed within the United States, defendant admits the request for admission based on the addresses provided by the individuals participating the illegal "pay to stay" scheme when the University of Farmington operation was live, many of whom were not located near the University of Farmington. Defendant further objects to this request as irrelevant in that this case is not suitable for class certification regardless of the past locations of its would-be potential members. |
| 5 | Admit that purported class members are not likely to be geographically proximate. | The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because it seeks information that is presently unknowable—in that there is no class nor is this case suitable for class certification regardless of the past locations of its would-be potential members—and seeking information that is unknown to the defendant. We do not know how likely the locations of putative class members are "geographically proximate," a term that is undefined. Defendant also objects to this request as irrelevant. |
| 6 | Admit that purported class members are not geographically proximate. | The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because it seeks information that is presently unknowable—in that there is no class nor is this case suitable for class certification regardless of the past locations of its would-be potential members—and seeking information that is unknown to the defendant. We do not know if the locations of putative class members are "geographically proximate," a term that is undefined. Defendant also objects to this request as irrelevant. |

3

| No. | Plaintiffs' Request for Admission | Defendant's Response |
|---|---|---|
| 7 | Admit that the purported class size is more than 600. | Defendant objects to this request as irrelevant in that there is no class nor is this case suitable for class certification regardless of the number of its would-be potential members; and because whether the litigation proceeds on an individual basis or a class basis, all individuals who seek recovery would have to choose to opt into this litigation. Defendant admits that to the best of our knowledge, 757 individuals made at least one payment to the University of Farmington operation at some point over the course of the operation's duration. |
| 8 | Admit that the purported class size is more than 700. | Defendant objects to this request as irrelevant in that there is no class nor is this case suitable for class certification regardless of the number of its would-be potential members; and because whether the litigation proceeds on an individual basis or a class basis, all individuals who seek recovery would have to choose to opt into this litigation. Defendant admits that to the best of our knowledge, 757 individuals made at least one payment to the University of Farmington operation at some point over the course of the operation's duration. |
| 9 | Admit that the University of Farmington acted on grounds generally applicable to the purported class. | Defendant objects to this request as vague in that there is no class or "proposed class members" nor is this case suitable for class certification because, at minimum, the criminal intent of each individual participant precludes class representation. The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because defendant does not know what plaintiffs mean by "grounds generally applicable." |
| 10 | Admit that you offered the following curriculum: UF000002- UF000006. | Denied. |
| 11 | Admit that the University of Farmington created the following document: UF000002-UF000006. | Denied that the document produced at UF000002 was created by HSI agents or the University of Farmington. Admitted that undercover agents at HSI created the document produced at UF000003-UF000006 as part of the University of Farmington operation. |

4

| No. | Plaintiffs' Request for Admission | Defendant's Response |
|---|---|---|
| 12 | Admit that document UF000002-UF000006 is an accurate depiction of a document that the University of Farmington created. | Denied that the document produced at UF000002 was created by HSI agents or the University of Farmington. Admitted that the document produced at UF000003-UF000006 is an accurate depiction of a document created by undercover agents at HSI as part of the University of Farmington operation. |
| 13 | Admit that document UF000002-UF000006 was distributed to at least one prospective student. | Denied that the document produced at UF000002 was created by HSI agents or the University of Farmington. Defendant objects to this request as vague and ambiguous in that the term "distributed" is undefined. Admitted that the document produced at UF000003-UF000006 would have been available to at least one prospective participant in the University of Farmington operation. |
| 14 | Admit that document UF000002-UF000006 was used by the University of Farmington for accreditation purposes. | Denied. |
| 15 | Admit that the University of Farmington had a standard tuition invoice that you issued after issuing a letter of admission. | Denied. |
| 16 | Admit that the tuition per quarter was the same for all students. | Denied. |
| 17 | Admit that the student fees per quarter was the same for all students. | Denied. |
| 18 | Admit that the student fees per quarter was the same for all students. | Denied. |

5

| No. | Plaintiffs' Request for Admission | Defendant's Response |
|---|---|---|
| 19 | Admit that you advertised on your website that you were "accredited by the Accreditation of Career Schools and Colleges (www.accsc.org) and licensed by the Michigan Department of Licensing and Regulatory Affairs as a private postsecondary college." | Defendant objects to this request as vague and ambiguous in not specifying a time; the website associated with the University of Farmington operation changed during the lifespan of the operation. Admits that at least at one point the website associated with the University of Farmington operation stated "The University of Farmington is accredited by the Accrediting Commission of Career Schools and Colleges (www.accsc.org) and licensed by the Michigan Department of Licensing and Regulatory Affairs as a private postsecondary college." |
| 20 | Admit that you advertised on your website that "100%" of your students discuss classwork with a professor outside of class. | Defendant objects to this request as vague and ambiguous in not specifying a time; the website associated with the University of Farmington operation changed during the lifespan of the operation. Admits that at least at one point the website associated with the University of Farmington operation stated "Students who discuss classwork with a professor outside of class: 100%." |
| 21 | Admit that your graduate students were charged $2,500 per semester and approximately $1,000 in fees throughout the year. | Denied. |
| 22 | Admit that you advertised on your website that you were an accredited business and STEM institution. | Defendant objects to this request as vague and ambiguous in not specifying a time; the website associated with the University of Farmington operation changed during the lifespan of the operation. Admits that at least at one point the website associated with the University of Farmington operation stated "The University of Farmington is a nationally accredited business and STEM institution located in Metro Detroit." |

| No. | Plaintiffs' Request for Admission | Defendant's Response |
|-----|-----------------------------------|----------------------|
| 23 | Admit that you stated on your website, "We offer flexible class schedules and a focus on students who do not want to interrupt their careers." | Defendant objects to this request as vague and ambiguous in not specifying a time; the website associated with the University of Farmington operation changed during the lifespan of the operation. Admits that at least at one point the website associated with the University of Farmington operation stated "We offer flexible class schedules and a focus on students who do not want to interrupt their careers." |
| 24 | Admit that you stated on your website that you offered "MS degrees" in the following disciplines: "MS – Computer Science", "MS – Information Technology", "MS – Industrial and Systems Engineering", and "MS – Manufacturing Engineering". | Defendant objects to this request as vague and ambiguous in not specifying a time; the website associated with the University of Farmington operation changed during the lifespan of the operation. Admits that at least at one point the website associated with the University of Farmington operation stated "UF's PSP offers MS degrees in the following disciplines: MS – Computer Science, MS – Information Technology, MS – Industrial and Systems Engineering, MS – Manufacturing Engineering, MS – Mechatronics." |
| 25 | Admit that you created a logo for the University of Farmington that had a cross, a book, and the Latin words, "scientia et labor", which means knowledge and work in Latin. | Admitted. |
| 26 | Admit that you offered an admission event on your Facebook page for February 4, 2019 in Fremont, California. | Admitted that undercover agents at HSI made a post on Facebook about a social event in Fremont, California for February 4, 2019, but denied that any such event occurred. |
| 27 | Admit that it would be difficult or impossible for a student to decipher that the University of Farmington was a fake university based upon the University of Farmington's website, which stated that the University of Farmington was an accredited university. | The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because this request seeks information that is not within defendant's control. |

7

| No. | Plaintiffs' Request for Admission | Defendant's Response |
|-----|-----------------------------------|----------------------|
| 28 | Admit that all members of the purported class had access to your website if the members of the purported class could access the internet. | The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because this request seeks information that is not within defendant's control. |
| 29 | Admit that there was a "student login" feature on your website. | Defendant objects to this request as vague and ambiguous in not specifying a time; the website associated with the University of Farmington operation changed during the lifespan of the operation. Admits that at least at one point the website associated with the University of Farmington operation contained a "student login" feature. |
| 30 | Admit that you regularly referred to those who paid "tuition" invoices as students in your internal and external documents. | Defendant objects to this request as vague, in that "regularly" is not defined, and compound. Admitted that there are internal documents where the shorthand "students" was used to refer to the participants in the University of Farmington operation. Admitted that during the lifespan of the operation, the University of Farmington referred to "students" in external public-facing documents. |
| 31 | Admit that document UF000019 was the University of Farmington admission letter that used. | Objects to this request as not being a complete sentence. Admits that the form of the letter produced at UF000019, was sent to some individuals who participated in the University of Farmington operation. |
| 32 | Admit that the purported class all received document UF000019 after you filed in the Xs. | Defendant objects to this request as irrelevant in that there is no class nor is this case suitable for class certification because, at minimum, the criminal intent of each individual participant precludes class representation. Denied. |
| 33 | Admit that your standard practice was to offer a letter of admission after admitting a student to the University of Farmington. | Defendant objects to this request as vague and ambiguous in that the term "standard practice" is undefined. Admitted that it was the practice of the undercover HSI agents to create a "letter of admission" for individuals who chose to participate in the "pay to stay" scheme. |

8

| No. | Plaintiffs' Request for Admission | Defendant's Response |
|-----|-----------------------------------|----------------------|
| 34 | Admit that you stated that the University of Farmington had "professional faculty … drawn from business and industry" in your letter of admission. | Admitted that the "letter of admission" for each of the named plaintiffs stated "The professional faculty at the University of Farmington are drawn directly from business and industry and will provide you experiences needed to succeed in your career by exposing you to a blend of traditional, applied, and practical educational opportunities." |
| 35 | Admit that you stated that the University had a "competitive applicant pool" in your letter of admission. | Admitted that the "letter of admission" for each of the named plaintiffs stated "You were chosen from the largest and most competitive applicant pool in the institution's history for this opportunity." |
| 36 | Admit that every member of the purported class was issued a tuition invoice. | Defendant objects to this request as circular and therefore irresolvably vague. Admitted to the extent that if plaintiffs define their putative class on the basis of "receiving an offer of admission and a tuition invoice," this request would be true; denied that a putative class exists or that this case is suitable for class certification. |
| 37 | Admit that every member of the purported class was issued an offer of admission. | Defendant objects to this request as circular and therefore irresolvably vague. Admitted to the extent that if plaintiffs define their putative class on the basis of "receiving an offer of admission and a tuition invoice," this request would be true; denied that a putative class exists or that this case is suitable for class certification. |
| 38 | Admit that the Government advertised an accredited university to the purported class through the University of Farmington website. | Defendant objects to this request as irrelevant in that there is no class nor is this case suitable for class certification because, at minimum, the criminal intent of each individual participant precludes class representation. Admits that the website associated with the University of Farmington operation stated that it was "accredited." |

9

| No. | Plaintiffs' Request for Admission | Defendant's Response |
|---|---|---|
| 39 | Admit that throughout the period that the University enrolled students, the University was accredited by the Accrediting Commission of Career Schools and Colleges. | Admitted that as part of establishing the University of Farmington as the public face of its duly authorized undercover operation, HSI obtained permission from the Accrediting Commission of Career Schools and Colleges to state that the University of Farmington was "accredited." |
| 40 | Admit that throughout the period that the University enrolled students, the University was licensed by the Michigan Department of Licensing and Regulatory Affairs. | Admitted that as part of establishing the University of Farmington as the public face of its duly authorized undercover operation, HSI obtained permission from the Michigan Department of Licensing and Regulatory Affairs to state that the University of Farmington was "licensed." |
| 41 | Admit that *throughout the purported class period*, the University was accredited by the Accrediting Commission of Career Schools and Colleges. | Admitted that as part of establishing the University of Farmington as the public face of its duly authorized undercover operation, HSI obtained permission from the Accrediting Commission of Career Schools and Colleges to state that the University of Farmington was "accredited." |
| 42 | Admit that *throughout the purported class period*, the University was accredited by the Michigan Department of Licensing and Regulatory Affairs. | Admitted that as part of establishing the University of Farmington as the public face of its duly authorized undercover operation, HSI obtained permission from the Michigan Department of Licensing and Regulatory Affairs to state that the University of Farmington was "licensed." |
| 43 | Admit that the website was live at the time that all "tuition invoices" were paid. | Defendant objects to this request as vague and ambiguous in that it does not specify which website it is referring to; defendant assumes plaintiffs meant the website associated with the University of Farmington operation. The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because it pertains to matters that are unknowable to defendant and beyond defendant's control as the website was hosted by a third party. |

10

| No. | Plaintiffs' Request for Admission | Defendant's Response |
|-----|-----------------------------------|----------------------|
| 44 | Admit that a class action would achieve economies of time, effort, and expenses, and promote uniformity, versus adjudicating 700 claims. | Denied. |
| 45 | Admit that you sent letters of admission to all proposed class members before you issued tuition invoices. | Defendant objects to this request as circular and therefore irresolvably vague. Admitted to the extent that if plaintiffs define their putative class on the basis of "receiving an offer of admission and a tuition invoice," this request would be true; denied that a putative class exists or that this case is suitable for class certification. |
| 46 | Admit that your standard practice was to send a "letter of admission" before enrolling a student. | Defendant objects to this request as vague and ambiguous in that the term "standard practice" is undefined. Admitted that it was the practice of the undercover HSI agents to send a "letter of admission" to individuals who chose to participate in the "pay to stay" scheme. |
| 47 | Admit that you sent letters of admission to all students before accepting their tuition money. | The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because it would require manual review of the files of every individual participant and the burden of that review is not proportional to the needs of the case. |
| 48 | Admit that your standard practice was to issue a Student ID to the students. | Defendant objects to this request as vague and ambiguous in that the term "standard practice" is undefined. Admitted that it was the practice of the undercover HSI agents to issue an identification card to participants who made at least one payment to the University of Farmington operation and provided a photo. |
| 49 | Admit that your standard practice was to tell students that you would issue a "student ID". | Defendant objects to this request as vague and ambiguous in that the term "standard practice" is undefined. Admitted that it was the practice of the undercover HSI agents to inform participants that an identification card would be issued to participants who made at least one payment to the University of Farmington operation and provided a photo. |

11

| No. | Plaintiffs' Request for Admission | Defendant's Response |
|---|---|---|
| 50 | Admit that one of the objectives of Operation Paper Chase was to achieve a "critical mass". | Defendant objects to this request as vague in that defendant does not know what plaintiffs' mean by "objective." Admitted that at the start of the operation "[a] series of operational phases were developed during the anticipated three years of operations," with "Phase 1" at least sometimes described as "enrollment of students to create a critical mass." |
| 51 | Admit that the students are geographically dispersed after being required to leave the country. | The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because it seeks information that is unknown to the defendant. We have no control over the geographic location of participants in the University of Farmington operation—though we note that none would constitute "students" in the ordinary sense—or whether their locations constitute "geographically dispersed," a term that is undefined. Defendant also objects to this request as irrelevant. |
| 52 | Admit that the students were required to leave the country. | Denied. |
| 53 | Admit the letters of admissions were all substantially the same. | Admitted. |
| 54 | Admit the amount of tuition for all students per term was $2,500. | Denied. |
| 55 | Admit that the University of Farmington had a standard process for accepting students. | Defendant objects to this request as vague and ambiguous in that the term "standard process" is undefined. Admitted that it was the practice of the undercover HSI agents to inform all individuals who directly expressed interest in the University of Farmington that no classes would be provided prior to permitting them to transfer; and for any individuals who joined the scheme indirectly, through another participant, it was the practice of the undercover HSI agents to instruct and confirm with the referring individual that they were telling the people they were bringing into the scheme that it was illegal and no classes would be provided. |

12

| No. | Plaintiffs' Request for Admission | Defendant's Response |
|-----|-----------------------------------|----------------------|
| 56 | Admit that the University of Farmington had a standard process for issuing the document "Invoice", which included "tuition". Ex. UF000042. | Defendant objects to this request as vague and ambiguous in that the term "standard process" is undefined. Defendant further objects to this request as vague because UF000042 is, on its face, not an invoice. Denied. |
| 57 | Admit that you requested a $1,000 "enrollment deposit" before a student would receive a I-20. | Denied. |
| 58 | Admit that you offered "International Student Certification of Finances Guidelines". See UF000042. | Defendant object to this request as vague in that defendant does not know what plaintiff's mean by "offered". Admitted that the document produced at UF000041-42 was made available by the University of Farmington operation. |
| 59 | Admit that individuals who made at least one payment to the University of Farmington between 2015 and 2019 were not provided any actual educational services. | Defendant objects to this request as vague and ambiguous in that the term "educational services" is not defined. Admitted that individuals who made payments to the University of Farmington while the operation was live were not promised any classes and did not attend any classes. |
| 60 | Admit that the University of Farmington maintained records of payments received from individuals from 2015 to 2019. | Admitted. |
| 61 | Admit that the University of Farmington was operated in a manner intended to simulate a legitimate academic institution. | Denied. |

13

| No. | Plaintiffs' Request for Admission | Defendant's Response |
|---|---|---|
| 62 | Admit that the individuals who enrolled at the University of Farmington between 2015 and 2019 are geographically dispersed across multiple states and countries. | The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because the request is unclear whether it is asking about (a) the present geographic locations of these individuals, or (b) their geographic location between 2015 and 2019. Either way, the only geographic location defendant would be able to verify is the specific times when individuals were interacting in person with HSI agents, none of which would have occurred in other countries. Defendant also objects to this request as irrelevant. |
| 63 | Admit that joinder of all individuals who enrolled at the University of Farmington between 2015 and 2019 would be impracticable due to their number and geographic dispersion. | Denied. |
| 64 | Admit that the cost of individual litigation would deter many members of the proposed class from bringing separate claims. | The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because it is beyond defendant's control. |
| 65 | Admit that all individuals who enrolled at the University of Farmington between 2015 and 2019 were subject to the same tuition invoicing process. | Denied. |
| 66 | Admit that all named plaintiffs received representations regarding the University's accreditation and educational offerings, including "professional faculty". | Admitted that all named plaintiffs were made aware that the University of Farmington was not offering them any classes. |

14

| No. | Plaintiffs' Request for Admission | Defendant's Response |
|---|---|---|
| 67 | Admit that it on its face, it was impossible to distinguish the F-1s issued by the University of Farmington from real F-1s. | Denied; the University of Farmington did not issue F-1 visas. |
| 68 | Admit that the F-1s that you issued were not valid documents. | Denied; the University of Farmington did not issue F-1 visas. |
| 69 | Admit that the claims of the named Plaintiffs arise from the same course of conduct by the United States as the claims of the proposed class members. | Defendant objects to this request as vague in that there is no class or "proposed class members" nor is this case suitable for class certification because, at minimum, the criminal intent of each individual participant precludes class representation. The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because defendant does not know what plaintiffs mean by "same course of conduct by the United States." |
| 70 | Admit that individuals who enrolled at the University of Farmington between 2015 and 2019 paid tuition and did not receive any educational services in return. | Defendant objects to this request as vague and ambiguous in that the term "educational services" is not defined. Admitted that individuals who made payments to the University of Farmington while the operation was live were not promised any classes and did not attend any classes. |
| 71 | Admit that the number of individuals who made tuition payments to the University of Farmington between 2015 and 2019 exceeds the number of parties who could practicably be joined as named plaintiffs in a single action. | Denied. |

15

| No. | Plaintiffs' Request for Admission | Defendant's Response |
|-----|-----------------------------------|----------------------|
| 72 | Admit that there is no centralized location where all individuals who enrolled at the University of Farmington between 2015 and 2019 reside or work. | The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because (1) the request is unclear whether it is asking about (a) where these individuals reside and work now or (b) where they reside and worked between 2015 and 2019, and (2) defendant would have no way of independently verifying the information regardless of the time period at issue.  Defendant also objects to this request as irrelevant. |
| 73 | Admit that the cost of litigating an individual claim in the Court of Federal Claims, including filing fees and attorney time, would deter many individuals in the proposed class from filing separate lawsuits. | The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because it is beyond defendant's control. |
| 74 | Admit that all individuals who enrolled in the University of Farmington received identical or substantially similar offers of admission. | The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because it pertains to information that is not in defendant's control. |
| 75 | Admit that the tuition invoices issued by the University of Farmington were uniform or substantially similar across all enrollees from 2015 to 2019. | Denied. |
| 76 | Admit that the University of Farmington did not offer any live classes, online or in person, to enrolled individuals between 2015 and 2019. | Admitted. |

16

| No. | Plaintiffs' Request for Admission | Defendant's Response |
|---|---|---|
| 77 | Admit that no individuals enrolled in the University of Farmington were assigned academic instructors. | Admitted. |
| 78 | Admit that all enrollees were subject to the same or substantially similar enrollment procedures. | The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request in that defendant does not know what plaintiff means by "same or substantially similar enrollment procedures." |
| 79 | Admit that no degrees or course credits were issued to any individuals enrolled in the University of Farmington. | Admitted that the University of Farmington did not issue any legitimate degrees or course credits. |
| 80 | Admit that all tuition payments made to the University of Farmington were processed through the same payment system or vendor. | Denied. |
| 81 | Admit that the University of Farmington were authorized by a state accrediting agency to confer academic degrees. | Denied. |

17

| No. | Plaintiffs' Request for Admission | Defendant's Response |
|-----|-----------------------------------|----------------------|
| 82 | Admit that the website was available online during the period of enrollment for all class members. | Defendant objects to this request as irrelevant and vague in that there is no class, and accordingly no "class members," nor is this case suitable for class certification because, at minimum, the criminal intent of each individual participant precludes class representation. Defendant further objects to this request as vague and ambiguous in that it does not specify which website it is referring to; defendant assumes plaintiffs meant the website associated with the University of Farmington operation. The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because it pertains to matters that are unknowable to defendant and beyond defendant's control as the website was hosted by a third party. |
| 83 | Admit that the University of Farmington was created and operated by the U.S. Department of Homeland Security through Immigration and Customs Enforcement ("ICE"). | Admitted. |
| 84 | Admit that the University of Farmington did not conduct any actual educational classes or programs for enrolled students. | Admitted. |
| 85 | Admit that the representations about the University of Farmington's academic programs were uniform across all prospective students. | Denied. |
| 86 | Admit that Defendant used the same or substantially the same marketing materials, website content, and representations for all students. | Defendant objects to this request as compound. Denied. |

18

| No. | Plaintiffs' Request for Admission | Defendant's Response |
|-----|-----------------------------------|---------------------|
| 87 | Admit that the legal theory under which Plaintiffs seek relief is the same for all putative class members. | The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because it seeks information that is presently unknowable—in that there is no class, and no class could be certified because, at minimum, the criminal intent of each individual participant precludes class representation—and seeking information that is unknown to the defendant because it is beyond defendant's control. |
| 88 | Admit that the resolution of whether Defendant's action of enrolling students and not providing them educational services, and whether that enrollment action was a breach of contract, will resolve the claims of all or substantially all class members. | Defendant objects to this request as irrelevant and vague in that there is no class, and accordingly no "class members," nor is this case suitable for class certification because, at minimum, the criminal intent of each individual participant precludes class representation. Denied. |
| 89 | Admit that common questions of fact and law predominate over any individual questions in this case. | Denied. |
| 90 | Admit that the factual differences among putative class members, if any, are immaterial to the determination of liability. | Denied. |
| 91 | Admit that all putative class members paid tuition or fees to the University of Farmington. | Defendant objects to this request as circular and therefore irresolvably vague. Admitted to the extent that if plaintiffs define their putative class on the basis of "ma[king] at least one payment to the University of Farmington after receiving an offer of admission and a tuition invoice," this request would be true; denied that a putative class exists or that this case is suitable for class certification. |

19

| No. | Plaintiffs' Request for Admission | Defendant's Response |
|---|---|---|
| 92 | Admit that the method for calculating tuition and fees paid is the same for all putative class members. | Defendant objects to this request as irrelevant and vague in that there is no class, nor is this case suitable for class certification because, at minimum, the criminal intent of each individual participant precludes class representation. Denied. |
| 93 | Admit that the damages alleged by each class member was caused by the same course of conduct by Defendant. | Defendant objects to this request as irrelevant and vague in that there is no class, and accordingly no "class members," nor is this case suitable for class certification because, at minimum, the criminal intent of each individual participant precludes class representation. Denied. |
| 94 | Admit that the website captures of the University of Farmington website at Wayback Machine are accurate depictions of the University of Farmington Website, as suggested per your answers to Plaintiff's First Set of Interrogatories. | The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because defendant does not control the Wayback Machine. However, at this time, defendant is not aware of any basis to dispute the accuracy of those captures. |
| 95 | Admit that you referred those who enrolled at the University of Farmington as "students' on the University of Farmington website. | Defendant objects to this request as vague and ambiguous in not specifying a time; the website associated with the University of Farmington operation changed during the lifespan of the operation. Admits that at least at one point the website associated with the University of Farmington operation referred to "students"; denies that any of the named plaintiffs or putative class members were "students". |
| 96 | Admit that you stated that you offered "coursework" on the University of Farmington website. | Defendant objects to this request as vague and ambiguous in not specifying a time; the website associated with the University of Farmington operation changed during the lifespan of the operation. The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because it is unclear what portion of the website plaintiffs are referring to. |

20

| No. | Plaintiffs' Request for Admission | Defendant's Response |
|---|---|---|
| 97 | Admit that you stated that you offered "rigorous academics" on your website. | Defendant objects to this request as vague and ambiguous in not specifying a time; the website associated with the University of Farmington operation changed during the lifespan of the operation. The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because it is unclear what portion of the website plaintiffs are referring to. |
| 98 | Admit that you stated that you offered a "interactive and collaborative cohort program" that "helps students build strong ties with their professional faculty and gain perspectives from other disciplines and leaders in industry" on your website. | Defendant objects to this request as vague and ambiguous in not specifying a time; the website associated with the University of Farmington operation changed during the lifespan of the operation. Admits that at least at one point the website associated with the University of Farmington operation stated "This interactive and collaborative cohort program helps students build strong ties with their professional faculty and gain perspectives from other disciplines and leaders in industry." |
| 99 | Admit that you stated the following about the Masters of Science on your website: "The two-year schedule offers a convenient way for you to add a master's degree to your résumé while you work." | Defendant objects to this request as vague and ambiguous in not specifying a time; the website associated with the University of Farmington operation changed during the lifespan of the operation. Admits that at least at one point the website associated with the University of Farmington operation stated "The two-year schedule offers a convenient way for you to add a master's degree to your résumé while you work." |
| 100 | Admit that you stated on your website, "We offer flexible class schedules and a focus on students who do not want to interrupt their careers" on the front homepage. | Defendant objects to this request as vague and ambiguous in not specifying a time; the website associated with the University of Farmington operation changed during the lifespan of the operation. Admits that at least at one point the website associated with the University of Farmington operation stated "We offer flexible class schedules and a focus on students who do not want to interrupt their careers." |
| 101 | Admit that the University of Farmington was authorized by DHS. | Admitted. |

21

| No. | Plaintiffs' Request for Admission | Defendant's Response |
|-----|-----------------------------------|----------------------|
| 102 | Admit that the school was actually accredited by two accreditation boards. | Denied. |
| 103 | Admit that all the named plaintiffs paid tuition and fees. | Admitted that each of the named plaintiffs paid money to the University of Farmington operation. |
| 104 | Admit that the tuition charged was the same for all students. | Denied. |
| 105 | Admit that the fees charged were the same for all students. | Denied. |
| 106 | Admissions that all class members received substantially the same tuition invoices and admission materials. | Defendant objects to this request as irrelevant and vague in that there is no class, and accordingly no "class members," nor is this case suitable for class certification because, at minimum, the criminal intent of each individual participant precludes class representation. The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because it would require manual review of the files of every individual participant and the burden of that review is not proportional to the needs of the case. |
| 107 | Admit that DHS authorized the University of Farmington to operate as "a proprietary business". See *Case 1:20-cv-01237-NBF Document 25 *SEALED* Filed 07/02/21* from the accompanying Federal Circuit case. | Defendant objects to this request as vague because the case citation is not from a Federal Circuit case and defendant does not know where plaintiffs believe the quoted phrase appears in the referenced document from the Court of Federal Claims docket. Admitted that Operation Paper Chase was authorized to "[e]stablish or acquire proprietary corporations or business entities as part of the undercover operation, and to operate them on a commercial basis." |

| No. | Plaintiffs' Request for Admission | Defendant's Response |
|---|---|---|
| 108 | Admit that the first phase of Operation Paper Chase was "the enrollment of students to create a critical mass". See *1:20-cv-01237-NBF Document 25 *SEALED* Filed 07/02/21 Page 69 of 306* from the accompanying Federal Circuit case. | Defendant objects to this request as vague because the case citation is not from a Federal Circuit case and the quoted phrase does not appear on the page identified in the referenced document from the Court of Federal Claims docket. Admitted that at the start of the operation "[a] series of operational phases were developed during the anticipated three years of operations," with "Phase 1" at least sometimes described as "enrollment of students to create a critical mass." |
| 109 | Admit that the second phase of Operation Paper Chase included "targeting criminal violators" and using the operation to conduct other UC activities. | Admitted that at the start of the operation "[a] series of operational phases were developed during the anticipated three years of operations," with "Phase 2" at least sometimes described as "targeting of criminal violators and using the operation to support other UC activities." |
| 110 | Admit that the third phase of Operation Paper Chase included the prosecution of criminal targets and the administrative charges against those aliens who engaged in fraud. | Admitted that at the start of the operation "[a] series of operational phases were developed during the anticipated three years of operations," with "Phase 3" at least sometimes described as "the prosecution of criminal targets and administrative immigration charges against those aliens who engaged in fraud." |
| 111 | Admit that none of the University of Farmington students were administratively charged with fraud. | Defendant objects to this request as vague in that the term "administratively charged with fraud" is undefined and does not make sense in the removal context.  Denied. |
| 112 | Admit that all the University of Farmington students were administratively charged with fraud. | Defendant objects to this request as vague in that the term "administratively charged with fraud" is undefined and does not make sense in the removal context.  Denied. |

23

| No. | Plaintiffs' Request for Admission | Defendant's Response |
|-----|-----------------------------------|----------------------|
| 113 | Admit that all prospective students had access to the same Twitter account, the same Facebook account, and the same website, if they could access the internet. | Defendant objects to this request as vague and ambiguous in that it does not specify which Twitter account, Facebook account, or website it is referring to; defendant assumes plaintiffs meant the Twitter account, Facebook account, and website associated with the University of Farmington operation. The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because it pertains to matters that are unknowable to defendant and beyond defendant's control. |
| 114 | Admit that the email correspondence that is contained at UF0000157 and UF0000158 is substantially the same correspondence that was regularly sent by the University of Farmington in its course of business. | The information that is known and readily obtainable by the defendant is insufficient to enable the defendant to admit or deny the request because it is too vague; the referenced pages contain multiple emails and plaintiffs have not defined "substantially the same" or "regularly sent" or "course of business." |

24

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/ Eric P. Bruskin
ERIC P. BRUSKIN
Assistant Director

s/ Galina I. Fomenkova
GALINA I. FOMENKOVA
Senior Trial Counsel
United States Department of Justice
Civil Division, Commercial Litigation Branch
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 514-5495
galina.fomenkova@usdoj.gov

October 6, 2025                    *Attorneys for the United States*

25

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of October, 2025, I caused a true and correct copy of

the foregoing to be served by electronic mail on the following counsel of record:

Amy E. Norris
NORRIS LAW, PLLC
616 E Street NW
Suite 1156
Washington, DC 20004
(202) 530-0100
norris.ae@gmail.com

*Attorney for Plaintiffs*

s/  Galina I. Fomenkova
GALINA I. FOMENKOVA